UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
LEAH MCSWEENEY,

                        Plaintiff,

      v.

ANDY COHEN, LISA SHANNON, JOHN
PAPARAZZO, DARREN WARD, WARNER BROS.
DISCOVERY, INC, SHED MEDIA US INC.,
NBCUNIVERSAL MEDIA, LLC and BRAVO MEDIA
LLC,

                        Defendants.

-------------------------------------------------------------

Case No.: 1:24-cv-01503-LJL

ORAL ARGUMENT
REQUESTED

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    SUMMARY OF THE ARGUMENTS AND RELIEF REQUESTED ............................. 1

II.    PRELIMINARY STATEMENT ........................................................................... 2

III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... 5
    A.    Plaintiff Participates in *RHONY* and *RHUGT* ...................................... 5
    B.    Plaintiff Files Administrative Complaints for Disability Discrimination and
        Retaliation ........................................................................................ 6

IV.    ARGUMENT .......................................................................................... 7
    A.    Standard of Review ............................................................................. 7
    B.    Plaintiff's Requested Relief on Her Disability-Related Claims Impermissibly
        Abridges Defendants' First Amendment Rights .......................................... 8
    C.    Plaintiff's Sex/Gender Discrimination and Hostile Work Environment Claims
        Based on Sex/Gender Should Be Dismissed ............................................ 12
        1.    Plaintiff's Sex/Gender-Based Title VII and NYSHRL Claims Are
            Untimely .................................................................................. 13
            a)    The Claims Are Untimely Under Title VII .................................. 14
            b)    Plaintiff's Claims Are Untimely Under NYSHLR, and Two of
                the Allegations Are Untimely Under NYCHRL........................... 14
        2.    Plaintiff's Only Timely Allegation of Sex/Gender Discrimination and
            Hostile Work Environment Fails to Support Her Claim.......................... 15
            a)    The Single Alleged Text Message Cannot Provide the Basis
                for Plaintiff's NYCHRL Claim.............................................. 15
        3.    Two of the Untimely Sex/Gender-Based Factual Allegations Are
            Barred by the First Amendment and Too Trivial to Support a Claim ...... 18
        4.    Plaintiff's Allegations Concerning Other Individuals Should Be
            Disregarded ............................................................................. 18
    D.    Plaintiff's Retaliation Claim Based on Sex/Gender Should Be Dismissed .......... 19
    E.    Plaintiff's Religion-Based Discrimination and Hostile Work Environment
        Claims Should Be Dismissed............................................................... 21
    F.    Plaintiff's RICO Claim Should Be Dismissed ..................................... 22
    G.    Plaintiff's "Failure to Engage in Interactive Process" Claims Under ADA and
        NYSHRL Should Be Dismissed .......................................................... 24
    H.    Plaintiff's NY Labor Law Claims Should Be Dismissed ........................... 24
        1.    The Section 215 Claim Should Be Dismissed .......................... 24
        2.    The Section 740 Claim Should Be Dismissed .......................... 24
    I.    Plaintiff's Title VII and ADA Claims Should Be Dismissed as to the
        Individual Defendants ........................................................................ 25
    J.    Plaintiff's NYSHRL Claims Should Be Dismissed as to the Producer
        Defendants ...................................................................................... 26
    K.    Plaintiff's NYCHRL, NYSHRL, and NYLL Retaliation Claims Based on the
        March Letter Should Be Dismissed ...................................................... 26
    L.    Plaintiff's NYCHRL Interference Claim Should Be Dismissed.......................... 29

**TABLE OF CONTENTS**
<u>(continued)</u>

<u>**Page**</u>

V.     CONCLUSION ............................................................................................................ 30

20045238.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Abadi v. NYU Langone Health Sys.,
2023 WL 8461654 (S.D.N.Y. Dec. 7, 2023) ........................................17

Ahmad v. White Plains City Sch. Dist.,
2019 WL 3202747 (S.D.N.Y. July 16, 2019) ........................................12

Anderson v. Davis Polk & Wardwell LLP,
2013 WL 1809443 (S.D.N.Y. Apr. 29, 2013) ..................................16, 17

Arevalo v. Burg,
129 A.D.3d 417 (1st Dep't 2015) ........................................27

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ........................................7

Bailey v. Colgate-Palmolive Co.,
2003 WL 21108325 (S.D.N.Y. May 14, 2003) ........................................14

Bautista v. PR Gramercy Square Condo.,
2022 WL 17156628 (S.D.N.Y. Nov. 22, 2022) ........................................19

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2006) ........................................8

Bowen v. MTA New York City Transit Auth.,
2011 WL 7940367 (E.D.N.Y. Dec. 29, 2011) ........................................14

Brantman v. Fortistar Cap., Inc.,
2017 WL 3172864 (S.D.N.Y. July 22, 2017) ........................................19

Brown v. Cnty. of Westchester,
2024 WL 21937 (S.D.N.Y. Jan. 2, 2024) ........................................25

Burlington Northern & Santa Fe Ry. Co. v. White,
548 U.S. 53 (2006) ........................................27

Cadet v. All. Nursing Staffing of New York, Inc.,
632 F. Supp. 3d 202 (S.D.N.Y. 2022) ........................................29

Cajamarca v. Regal Entertainment Group,
2013 WL 5717119 (Sup. Ct. N.Y. Cnty. Oct. 17, 2013) ........................................30

Canosa v. Ziff,
2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ........................................23

20045238.1

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Clark v. Schuck,*
2008 WL 3843077 (N.D. Cal. Aug. 14, 2008) ........................................................23

*Claybrooks v. Am. Broad. Companies,*
898 F. Supp. 2d 986 (M.D. Tenn. 2012)...............................................3, 8, 9, 10, 11

*Corr v. MTA Long Island Bus,*
1999 WL 980960 (2d Cir.1999).............................................................................26

*DeFalco v. Bernas,*
244 F.3d 286 (2d Cir. 2001)...................................................................................22

*Douyon v. New York City Dep't of Educ.,*
665 F. App'x 54 (2d Cir. 2016) .............................................................................26

*Fattoruso v. Hilton Grand Vacations Co., LLC,*
873 F. Supp. 2d 569 (S.D.N.Y. 2012)....................................................................17

*Fischkoff v. Iovance Biotherapeutics, Inc.,*
2018 WL 4574890 (S.D.N.Y. July 5, 2018) ..........................................................28

*France v. Touro Coll.,*
2016 WL 1105400 (E.D.N.Y. Feb. 16, 2016)........................................................30

*Harris v. Off. of New York State Comptroller,*
2022 WL 814289 (S.D.N.Y. Mar. 17, 2022) .........................................................16

*Harrison v. SUNY Downstate Med. Ctr.,*
2017 WL 4326507 (E.D.N.Y. Sept. 25, 2017) ......................................................29

*HC2, Inc. v. Delaney,*
510 F. Supp. 3d 86 (S.D.N.Y. 2020).....................................................................24

*Hecht v. Com. Clearing House, Inc.,*
897 F.2d 21 (2d Cir. 1990)....................................................................................23

*Heiden v. New York City Health & Hosps. Corp.,*
2023 WL 171888 (S.D.N.Y. Jan. 11, 2023) ..........................................................24

*Howard v. Carter,*
615 F. Supp. 3d 190 (W.D.N.Y. 2022)....................................................................6

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos.,*
515 U.S. 557 (1995)................................................................................................8

iv

# TABLE OF AUTHORITIES
<u>(continued)</u>

<u>Page(s)</u>

*Katzman v. Victoria's Secret Catalogue,*
  167 F.R.D. 649 (S.D.N.Y. 1996) ..................................................................4, 22

*Klein v. Town & Country Fine Jewelry Grp.,*
  283 A.D.2d 368 (1st Dep't 2001) ................................................................26, 27

*Lateral Recovery, LLC v. Cap. Merch. Servs., LLC,*
  632 F. Supp. 3d 402 (S.D.N.Y. 2022).....................................................5, 8, 18, 19

*Leibovitz v. New York City Transit Auth.,*
  252 F.3d 179 (2d Cir. 2001).......................................................................19, 20, 29

*Marchuk v. Faruqi & Faruqi, LLP,*
  100 F. Supp. 3d 302 (S.D.N.Y. 2015).................................................................27

*Mitura v. Finco Servs., Inc.,*
  2024 WL 232323 (S.D.N.Y. Jan. 22, 2024) .......................................................21

*Moore v. Hadestown Broadway Ltd. Liab. Co.,*
  2024 WL 989843 (S.D.N.Y. Mar. 7, 2024) ....................................3, 8, 9, 10, 11, 18

*Mura v. Thomas,*
  2021 WL 4481346 (S.D.N.Y. Sept. 30, 2021)................................................22, 23

*N.Y. Times Co. v. Sullivan,*
  376 U.S. 254 (1964).........................................................................................8, 18

*Nam v. Permanent Mission of Republic of Korea to United Nations,*
  581 F. Supp. 3d 643 (S.D.N.Y. 2022)....................................................................5

*Nieblas-Love v. New York City Hous. Auth.,*
  165 F. Supp. 3d 51 (S.D.N.Y. 2016)...............................................................16, 28

*Pacific Gas & Elec. Co. v. Pub. Util. Comm'n of California,*
  475 U.S. 1 (1986)..............................................................................................10

*Plemmons v. Pennsylvania Mfrs. Ass'n Ins. Co.,*
  1991 WL 61128 (E.D. Pa. Apr. 13, 1991) ...........................................................23

*Quartararo v. J. Kings Food Serv. Pros., Inc.,*
  2021 WL 1209716 (E.D.N.Y. Mar. 31, 2021)......................................................24

*Ramirez v. Tifaret Disc., Inc.,*
  2023 WL 6318616 (S.D.N.Y. Sept. 28, 2023).....................................................25

v

## TABLE OF AUTHORITIES
<u>(continued)</u>

<u>Page(s)</u>

*Rapaport v. Barstool Sports, Inc.*,
    2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) ........................................................6

*Reichman v. City of New York*,
    179 A.D.3d 1115 (1st Dep't 2020) ......................................................................27

*Richards v. Dep't of Educ. of City of New York*,
    2022 WL 329226 (S.D.N.Y. Feb. 2, 2022)..........................................................14

*Roelcke v. Zip Aviation, LCC*,
    2018 WL 1792374 (S.D.N.Y. Mar. 26, 2018) .....................................................29

*Rossbach v. Montefiore Med. Ctr.*,
    2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) .......................................................29

*Rubin v. Napoli Bern Ripka Shkolnik, LLP*,
    2018 WL 5619731 (Sup. Ct. N.Y. Cnty. Oct. 29, 2018) ......................................27

*Ruiz v. Lenox Hill Hosp.*,
    146 A.D.3d 605 (1st Dep't 2017) ........................................................................25

*Rumsfeld v. F. for Acad. and Inst. Rights, Inc.*,
    547 U.S. 47 (2006)..................................................................................................9

*San Juan v. Leach*,
    278 A.D.2d 299 (2000) ..................................................................................16, 21

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*,
    2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019) .....................................................15

*Schad v. Borough of Mount Ephraim*,
    452 U.S. 61 (1981)..................................................................................................8

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)..............................................................................................23

*Smith v. City of New York*,
    385 F. Supp. 3d 323 (S.D.N.Y. 2019)..................................................................21

*Sosa v. Loc. Staff, LLC*,
    618 F. App'x 19 (2d Cir. 2015) ...............................................................16, 17, 21

*Spencer-Smith v. Ehrlich*,
    2024 WL 709291 (S.D.N.Y. Feb. 21, 2024).........................................................13

vi

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*Springs v. City of New York,*
2020 WL 3488893 (S.D.N.Y. June 26, 2020) .......................................................21

*Staehr v. Hartford Fin. Servs. Grp., Inc.,*
547 F.3d 406 (2d Cir. 2008)...................................................................................6

*Stanley v. Mount Sinai Health Sys., Inc.,*
2023 WL 8355393 (S.D.N.Y. Dec. 1, 2023) .........................................................26

*Stinson v. City Univ. of N.Y.,*
2018 WL 2727886 (S.D.N.Y. June 6, 2018) .........................................................15

*Strusman v. NYU Langone Hosps.,*
2020 WL 3415111 (S.D.N.Y. June 22, 2020) .......................................................14

*Tsatskin v. Kordonsky,*
189 A.D.3d 1296 (2d Dep't 2020).........................................................................24

*Webb-Weber v. Cmty. Action for Human Servs., Inc.,*
23 N.Y. 3d 448 (2014) ...........................................................................................25

*Williams v. New York City Hous. Auth.,*
61 A.D.3d 62 (2009) ...............................................................................................15

*Yost v. Everyrealm, Inc.,*
657 F. Supp. 3d 563 (S.D.N.Y. 2023)..............................................................16, 19

*Zhang v. Centene Mgmt. Co., LLC,*
2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023).........................................................25

**STATUTES**

18 U.S.C.
§ 1961.................................................................................................................22, 23
§ 1962.........................................................................................................................22

New York Labor Law
§ 215........................................................................................................................24
§ 740...................................................................................................................24, 25

New York State Human Rights Law
§ 296(1)...................................................................................................................26

U.S. Const. amend. I ..................................................................................................8

20045238.1

**TABLE OF AUTHORITIES**
<u>(continued)</u>

**Page(s)**

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure

12(b)(6) ................................................................................................................1, 7, 8, 19

12(f)....................................................................................................................................11

20045238.1

Defendants Andy Cohen, Lisa Shannon, John Paparazzo, Darren Ward, Warner Bros. Discovery, Inc., Shed Media US Inc., NBCUniversal Media LLC, and Bravo Media LLC ("Defendants"[1]) respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's First Amended Complaint (ECF 54, "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").

## I.    SUMMARY OF THE ARGUMENTS AND RELIEF REQUESTED

For the reasons set forth below, Defendants respectfully submit that the Court should:

- Dismiss Plaintiff's disability-related claims in their entirety, because granting Plaintiff's requested relief would impermissibly abridge Defendants' First Amendment rights (Counts 1, 3, 6, 9, 11, 14, 17-29); or, alternatively, strike those allegations that concern First Amendment protected activity;

- Dismiss Plaintiff's sex/gender-based claims in their entirety, as they are untimely and fail to state a claim (Counts 2, 4, 7, 10, 12, 15 & 17);

- Dismiss Plaintiff's religion-based claims in their entirety, as they fail to state a claim (Counts 5, 8, 13 & 16);

- Dismiss Plaintiff's RICO claim in its entirety, as it fails to state a claim (Count 29);

- Dismiss Plaintiff's NYLL claims in their entirety, as they fail to state a claim (Counts 21 & 22);

- Dismiss Plaintiff's claims for failure to engage in an interactive process under the ADA and NYSHRL in their entirety, as they fail to state a claim (Counts 26 & 27);

- Dismiss Plaintiff's claims under Title VII and the ADA as to the Individual Defendants, as they fail to state a claim (Counts 1, 2, 9, 10, 17, 18, 23 & 26);

- Dismiss Plaintiff's claims under the NYSHRL as to the Producer Defendants, as they fail to state a claim (Counts 3, 4, 5, 11, 12, 13, 19 & 24); and

- Dismiss Plaintiff's new claims for retaliation and interference under the NYSHRL, NYCHRL, and NYLL, as they fail to state a claim (Counts 30-33).

---

[1] At times herein, Shannon, Paparazzo, and Ward are referred to as the "Producer Defendants"; and the Producer Defendants and Cohen are referred to collectively as the "Individual Defendants."

## II.    PRELIMINARY STATEMENT

*The Real Housewives* is an enormously popular and long-running reality television franchise, which, in each series in the franchise, features and centers on the personal lives and friendships of a group of women. Cast composition routinely varies across seasons of a particular series for numerous creative reasons. Plaintiff appeared as an on-camera cast member on seasons 12 and 13 of *The Real Housewives of New York* ("*RHONY*"), and season 3 of *The Real Housewives Ultimate Girls Trip* ("*RHUGT*"). Based upon her participation as a cast member on those shows, Plaintiff has asserted 33 claims against Defendants: the producers, network, distributors, and certain individuals who worked on those shows. These wide-ranging causes of action include claims under multiple state and federal statutes, on theories of racketeering, disability discrimination, sex/gender discrimination, religious discrimination, and retaliation.

While Plaintiff attempts to overwhelm with a 955-paragraph complaint, even a cursory review of her allegations reveals that many concern matters entirely irrelevant to her claims, and most are devoid of any factual or legal support, speculative, misleading, and/or demonstrably false. As set forth below, many of Plaintiff's claims, supported only by the most conclusory and threadbare allegations, should be dismissed as a matter of law. The rest of Plaintiff's claims should be dismissed because they impermissibly seek to abridge Defendants' First Amendment rights to tailor and adjust the messages they wish to convey in their creative works, including through cast selection and other creative decisions.

**First**, Plaintiff's disability-related claims are based on the (false) allegations that Defendants discriminated against Plaintiff by encouraging her to relapse on alcohol during filming of *RHONY* and *RHUGT*, directing cast members to say offensive comments to her on-camera, and declining to cast her on future seasons of *RHONY* because Defendants purportedly prefer to depict cast members who drink alcohol on the franchise in service of ratings.

2

Defendants dispute these allegations. However, even accepting them as true, "Defendant's creative expression, and therefore [their] First Amendment Defense, is apparent" on the face of the FAC. *Moore v. Hadestown Broadway Ltd. Liab. Co.*, 2024 WL 989843, at *15 (S.D.N.Y. Mar. 7, 2024). Decisions about what to say or not say in an expressive work, as well as "casting decisions," are "part and parcel of the creative process," and therefore "merit[] First Amendment protection against the application of anti-discrimination statutes to that process." *Id.* (quoting *Claybrooks v. Am. Broad. Companies Inc.*, 898 F. Supp. 2d 986, 993 (M.D. Tenn. 2012)). Plaintiff's claims based on Defendants' casting and directing choices should be dismissed as a matter of law. *Id.*

**Second**, Plaintiff's sex/gender-based claims should be dismissed. Plaintiff bases her sex/gender claims on three alleged communications made in 2020: two comments allegedly made by Cohen on-air during a *RHONY* reunion show in the fall of 2020, and one private text message sent by Cohen in December 2020 in response to a social media post by Plaintiff. As a matter of law, each such allegation is time-barred under Title VII and the New York State Human Rights Law ("NYSHRL"). Only the December 2020 text is timely under the New York City Human Rights Law ("NYCHRL"). However, the alleged conduct—a stray remark by Cohen to Plaintiff in the context of a friendly text message exchange about a topic Plaintiff had just disclosed on her public social media accounts—is far too "trivial" to support a claim.

**Third**, Plaintiff's religious discrimination claims should be dismissed. These claims are based on one alleged incident: Defendants' alleged failure to provide a non-pork option at one meal provided to the cast during filming of *RHUGT* in Thailand. Even if this alleged incident occurred precisely as Plaintiff describes (which it did not), it is, at most, a petty slight or trivial inconvenience that is insufficient to support a claim under the NYCHRL or NYSHRL.

20045238.1

**Fourth**, Plaintiff's claim for violation of the federal RICO statute is patently frivolous and reflective of the incendiary nature of Plaintiff's FAC as a whole. To state a claim for RICO violations, a plaintiff must allege, *inter alia*, a "pattern" of certain enumerated **criminal acts**. Plaintiff does not even attempt to allege any criminal activity. Under well-settled law, violations of the civil rights laws alleged in the FAC cannot support a RICO claim as a matter of law. Plaintiff's RICO claim should be dismissed as what it transparently is—the "litigation equivalent of a thermonuclear device," the mere assertion of which is intentionally designed to have "an almost inevitable stigmatizing effect on those named as defendants." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

**Fifth**, similar to her RICO claim, Plaintiff asserts several other claims that either do not exist or undisputedly cannot be sustained as to particular defendants. They should all be dismissed as a matter of law. Her claims for "Failure to Engage in Interactive Process" under the federal Americans with Disabilities Act ("ADA") and NYSHRL are not cognizable. No such cause of action exists under those statutes. Her claims under Title VII and the ADA should be dismissed as to all of the Individual Defendants, because those statutes do not provide for individual liability. And her New York Labor Law ("NYLL") retaliation claims fail because complaints of discrimination are not covered by the NYLL.

**Sixth**, Plaintiff's new claims for retaliation and interference under the NYCHRL, NYSHRL, and NYLL fail as a matter of law. These claims are all based on a letter, sent by counsel for Defendant Cohen to Plaintiff's counsel after the filing of the initial Complaint, which demanded a retraction of, and apology for, allegations that Defendant Cohen used cocaine. This letter is not actionable for several reasons, including because: (1) it does not constitute an "adverse action"; and (2) it is not connected to Plaintiff's "protected activity," but rather only

addresses superfluous allegations of drug use, having nothing to do with Plaintiff or her claims.

Plaintiff has now had two attempts to articulate cognizable claims on her first 29 causes of action, but has failed to do so. Her new causes of action in the FAC are equally deficient. For the reasons set forth herein, Plaintiff's FAC should be dismissed as a matter of law.

## III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Plaintiff Participates in *RHONY* and *RHUGT*

*The Real Housewives* franchise centers on the "personal and professional lives of affluent women in various cities across the United States" and the relationships between those women. FAC ¶¶ 49, 51. On October 4, 2019, Plaintiff entered into a Talent Agreement with nonparty Forest Productions Inc. ("Forest"), relating to her anticipated participation in *RHONY* Season 12. Lepera Decl., Ex. 1 ("Talent Agreement").[2] Plaintiff agreed that Defendants had the right to record her at all times during production, assumed all risks associated with the show, and acknowledged that, among other things, there would be alcohol present during filming. *Id.*, App'x 1, ¶ 10 ("activities involved in or otherwise associated with the Series … may include … the consumption of alcohol by Artist and others"). Forest retained the option, but no obligation, to engage Plaintiff in future *RHONY* seasons. *Id.* ¶ 2(a). Plaintiff appeared as a cast member on *RHONY* Season 12, which was broadcast to the public starting on April 2, 2020. FAC ¶ 74.

On September 17, 2020, Plaintiff executed another agreement for purposes of her

---

[2] Plaintiff cites and relies on the Talent Agreement in the FAC. FAC ¶¶ 22-26. This document, and other documents submitted with this Motion, may be considered at this stage. In deciding a motion to dismiss, a court may consider "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, [] matters of which judicial notice may be taken," and "document[s] not expressly incorporated by reference in the complaint [that are] nevertheless 'integral' to the complaint[.]" *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 435 (S.D.N.Y. 2022) (Liman, J.) (citations omitted). Thus, the court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Nam v. Permanent Mission of Republic of Korea to United Nations*, 581 F. Supp. 3d 643, 647 (S.D.N.Y. 2022) (citations omitted).

anticipated appearance on *RHONY* Season 13. Lepera Decl., Ex. 2 ("*RHONY* Amendment"). The *RHONY* Amendment incorporated certain terms of the Talent Agreement. Plaintiff appeared as a cast member on *RHONY* Season 13, which was broadcast to the public.

On May 19, 2022, Plaintiff executed a third agreement for purposes of her appearance on *RHUGT* Season 3. Lepera Decl., Ex. 3 ("*RHUGT* Agreement"). *RHUGT* features cast members from various *Real Housewives* shows as they vacation together. The *RHUGT* Agreement incorporated certain terms of the Talent Agreement. Plaintiff participated in the filming of *RHUGT* Season 3 in Thailand over a two-week period starting July 18, 2022. FAC ¶ 219.

Plaintiff alleges that Defendants "terminated" her by failing to cast her for *RHONY* Season 14 or *RHONY Legacy*. That allegation is illogical because she concedes she was never hired for those shows, and thus, could not have been terminated. As is reflected in her Talent Agreement, if Defendants choose not to exercise their option to reengage a cast member for a subsequent cycle, the contracts terminate by their terms. *See* Talent Agreement ¶ 2(a). The decisions not to cast Plaintiff on *RHONY* Season 14 and *RHONY Legacy* were made by October and November 2022, respectively. Lepera Decl., Ex. 4 (cast announcement)[3]; FAC ¶ 282.

### B.    Plaintiff Files Administrative Complaints for Disability Discrimination and Retaliation

On March 16, 2023, Plaintiff filed charges with the New York State Human Rights Department ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"), complaining of disability discrimination. FAC ¶ 30. These charges included no allegations of any

---

[3] The Court may take judicial notice of this publicly available fact. *See Howard v. Carter*, 615 F. Supp. 3d 190, 194 (W.D.N.Y. 2022) (taking judicial notice of the date of release of an album) (subsequent history omitted); *Rapaport v. Barstool Sports, Inc.*, 2021 WL 1178240, at *22 n.22 (S.D.N.Y. Mar. 29, 2021), *aff'd*, 2024 WL 88636 (2d Cir. Jan. 9, 2024) (taking judicial notice of the fact of a radio broadcast); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (judicial notice may be taken of news articles).

20045238.1

sex/gender-based discrimination, harassment, or retaliation, as Plaintiff concedes. *Id.*; Lepera Decl., Ex. 5 (original NYSDHR charges).

Plaintiff amended her NYSDHR charges on June 30, 2023, complaining, for the first time, of sex/gender discrimination. Lepera Decl., Ex. 6. These allegations were general, and did not include specific alleged occurrences. *Id.* Plaintiff requested that her claim be dismissed on September 6, 2023, and the NYSDHR dismissed her claims on October 6, 2023. FAC ¶¶ 34-35. The EEOC issued Right to Sue letters on January 9, 2024 and January 23, 2024. *Id.* ¶ 36.

Plaintiff filed the Complaint on February 27, 2024. *See* ECF Doc. No. 1. On May 22, 2024, Defendants moved to dismiss the Complaint. Plaintiff did not respond to the motion, but instead filed the FAC on June 12, 2024. *See* FAC.

In the FAC, Plaintiff makes new allegations based on a March 6, 2024 letter, sent by Defendant Cohen's attorney to Plaintiff's counsel (the "March Letter").[4] In that letter, counsel demanded that Plaintiff "immediately retract and withdraw all allegations relating to Mr. Cohen's purported 'cocaine use,'" and "reserve[d] the right to hold" Plaintiff and her counsel "accountable to the fullest extent of the law." Lepera Aff., Ex. 12. Plaintiff alleges that the March Letter was "intended to intimidate Ms. McSweeney against engaging in protected activity, i.e. pursuing her claims against Defendant Cohen in this Court." FAC ¶ 309.

## IV.    ARGUMENT

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[4] *See* Lepera Aff, Ex. 12. Since Plaintiff cites and relies on the March Letter in her FAC, the Court may consider it on this motion. *See supra* note 2. The attorney and law firm that sent the March Letter never represented any Defendant other than Cohen in relation to Plaintiff's claims, and were never counsel of record for any Defendant in this proceeding.

20045238.1

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2006)). "In reviewing a motion to dismiss under Rule 12(b)(6), a court accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lateral Recovery*, 632 F. Supp. 3d at 435 (citations omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice, and a complaint must offer more than labels and conclusions, or a formulaic recitation of the elements of a cause of action to survive dismissal." *Id.* (citations omitted). The Court need not credit allegations that are contradicted by documents incorporated in or integral to the complaint. *Id.*; *see supra* note 3.

> **B.    Plaintiff's Requested Relief on Her Disability-Related Claims Impermissibly Abridges Defendants' First Amendment Rights**

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. I. "Judicial orders that curtail speech in private civil actions amount to the exercise of state power sufficient to warrant 'constitutional scrutiny' of a First Amendment violation." *Moore*, 2024 WL 989843, at *17 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964)).

It is well settled that "[e]ntertainment, as well as political and ideological speech, is protected" fully by the First Amendment. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981) ("programs broadcast by … television … fall within the First Amendment guarantee"); *see also Claybrooks*, 898 F. Supp. 2d at 993 (reality television protected by First Amendment). The author of a creative work, such as a television show, has "'the right to tailor [his] speech … not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid.'" *Moore*, 2024 WL 989843, at *18 (quoting *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos.*, 515 U.S. 557, 572-73 (1995)).

These protections extend to speech itself, as well as **conduct** that is "inherently expressive." *Id.* (citing *Rumsfeld v. F. for Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 66 (2006)). Accordingly, activities that are "part and parcel of the creative process behind a television program" are protected. *Claybrooks*, 898 F. Supp. 2d at 993. This includes decisions regarding whom to cast, or not cast, on a show. *Moore*, 2024 WL 989843, at *1. For example, in *Claybrooks*, the court held that the First Amendment protected the casting decisions by the producers of *The Bachelor* and *The Bachelorette* reality television programs. As the court noted:

> whatever messages [the shows] communicate or are intended to communicate—whether explicitly, implicitly, intentionally, or otherwise—the First Amendment protects the right of the producers of these Shows to craft and control those messages, based on whatever considerations the producers wish to take into account.

898 F. Supp. 2d at 1000.

Because casting decisions are constitutionally protected, the court dismissed the plaintiffs' claims, which sought to hold defendants liable for allegedly only selecting white cast members in violation of anti-discrimination laws. *Id.* ("'like a composer,' the defendants are entitled to select the elements (here, cast members) that support whatever expressive message the Shows convey or are intended to convey"). Likewise, in the recent *Moore* case, the court dismissed discrimination claims brought by former cast members against a Broadway producer, because the decisions giving rise to the plaintiffs' claims—the casting of the show—were protected by the First Amendment. As the court explained, "if successful, Plaintiff's effort to regulate this creative decision through the Court's enforcement of anti-discrimination statutes would violate Defendant's First Amendment right to decide the message it wanted to express." *Moore*, 2024 WL 989843, at *20.

This case is no different. Plaintiff seeks to hold Defendants liable, under anti-discrimination laws, for decisions that were allegedly made about whom to cast on *Real*

*Housewives* programs, as well as for actual speech depicted on *RHUGT* and *RHONY*. But, "[j]ust as the State is not free to 'tell a newspaper in advance what it can print and what it cannot,'" *Pacific Gas & Elec. Co. v. Pub. Util. Comm'n of California*, 475 U.S. 1, 10–12 (1986), the government and private actors under its guise are not free to mandate that Defendants cast certain individuals in their television series, *Claybrooks*, 898 F. Supp. 2d at 1000. To hold otherwise would require the Court to impermissibly regulate the message of a creative work. *Moore*, 2024 WL 989843, at *20.

Defendants' viable First Amendment defense is clear on the face of the FAC. As alleged,[5] Plaintiff claims that Defendants' allegedly discriminatory decisions were made to convey a particular creative message. Specifically, she alleges that: (i) Defendants wanted to make Plaintiff's drinking "the main storyline of RHONY season 12" because it "would create morbidly salacious reality television," FAC ¶¶ 70, 75; (ii) after she became sober, Defendants encouraged Plaintiff to drink again so that she would "display the erratic behavior they wanted," *id.* ¶ 148, based on their purported preference for cast members who "become[] inebriated" and "behave erratically on camera," *id.* ¶¶ 126, 141-42, 145, 175, 218, 250, 262, 386-87, 398, as opposed to cast members who did not drink, who they regarded as "boring;" *id.* ¶¶ 139, 220; (iii) Defendants directed her to "say lines such as 'time for a drink,'" *id.* ¶¶ 89, 91, and directed other show participants to bring up her substance abuse and mental health issues on camera, *id.* ¶¶ 236-239; and (iv) Defendants ultimately "did not cast Plaintiff" on future seasons because she refused to drink, and therefore, would not play into the stereotypical image of a Housewife that

---

[5] Defendants dispute these allegations and vehemently deny that they discriminated against Plaintiff in any way. However, on this Motion, "the court must analyze whether the well-pleaded factual allegations in the [] Complaint—not the defendants' briefing representations about the real world accuracy of those representations—establishes a First Amendment defense." *Claybrooks*, 898 F. Supp. 2d at 997.

Defendants purportedly intended to convey through their show, *id.* ¶¶ 435, 467, 535, "all in the name of selling drama," *id.* ¶ 1, and "achieving higher ratings and viewership," *id.* ¶¶ 395, 407.

Under well-settled law, even if Defendants did want to use the *Housewives* franchise to feature inebriated cast members (which they do not), that message—achieved through casting and directing decisions—would be protected under the First Amendment. *Claybrooks*, 898 F. Supp. 2d at 1000 ("whatever messages" Defendants "communicate or [] intended to communicate" with their shows is protected by the First Amendment); *Moore*, 2024 WL 989843, at *20 (defendants entitled "to tailor and adjust the message [they] preferred"). Judicial intervention into casting decisions for expressive works "impermissibly regulate[s] [Defendants'] right to alter the content of the story [they] tell[]—or choose[] not to tell." *Id.*[6]

Accordingly, Plaintiff's disability-related claims, all of which are premised on allegations that Defendants discriminated and retaliated against her in service of the alleged message of the show, should be dismissed. FAC Counts 1, 3, 6, 9, 11, 14, 17-29. Alternatively, those allegations should be stricken under Federal Rule of Civil Procedure 12(f). *Id.* ¶¶ 1, 69-70, 75, 82, 89, 91-92, 97-99, 107, 115, 126, 136-39, 141-42, 145, 148-53, 175, 188-92, 218, 220, 236-39, 250, 262, 284, 286-98, 318, 321, 327, 329, 341, 350-51, 354, 386-87, 381, 383-85, 389-98, 407, 435, 467, 535, 601-02, 629-31 724, 733, 746, 762, 775, 787, 795, 808, 821, 831, 844, 857, 863, 865.

---

[6] Plaintiff's allegations in support of her disability-related claims are also contradicted by her own allegations and judicially noticeable facts. For example, Plaintiff alleges that Defendants colluded with a nonparty cast member to "'out' Ms. McSweeney's confidential bipolar disorder diagnosis before Ms. McSweeney disclosed it publicly." FAC ¶ 100. Even setting aside the false and speculative allegation of collusion, Plaintiff's version of events is demonstrably untrue. It was **Plaintiff** who publicly "outed" her bipolar diagnosis **years earlier** in an article she wrote— "Manic McSweeney: My Love Affair With My Bipolar II Disorder: Married to the Mob's Leah McSweeney honestly addresses mental health"—which was published on the Internet. Lepera Decl., Ex. 7. Plaintiff's FAC references and relies on excerpts from numerous tabloids and public interviews, but does not acknowledge this article.

11

### C. Plaintiff's Sex/Gender Discrimination and Hostile Work Environment Claims Based on Sex/Gender Should Be Dismissed

Plaintiff's discrimination and hostile work environment claims based on sex/gender, under Title VII, NYSHRL, and NYCHRL (Counts 2, 4, 7, 10, 12, 15), are based on three alleged communications made in 2020. They are untimely under all three statutes with the exception of one communication, which does not support a viable claim of sex/gender discrimination or hostile work environment for several independent reasons. The alleged communications are:

- "[A]t the RHONY season 12 reunion, Defendant Cohen repeatedly, inappropriately questioned Ms. McSweeney about a tattoo that she had near her genital area." FAC ¶ 112.

- Also "at the RHONY season 12 reunion, Defendant Cohen highlighted the fact that Ms. McSweeney and castmate, Tinsley Mortimer, shared a platonic onscreen kiss. Defendant Cohen then proceeded to interrogate Ms. McSweeney regarding whether Ms. Mortimer was a 'good kisser' and sexualized the pair by remarking that the kiss was 'hot' and 'steamy.'" *Id.* ¶ 110.

- Cohen "comment[ed] that [Plaintiff's] recent breast augmentation made her a real 'Housewife.'" *Id.* ¶ 178.[7]

The dates of these alleged communications are apparent from Plaintiff's allegations,

---

[7] Plaintiff alleges, in vague and conclusory fashion, that she was "continually, routinely, and frequently subjected to offensive" sex-related comments. FAC ¶ 613; *see also* ¶ 218 (alleging, on information and belief and without factual examples, that Defendants "inten[ded] to treat and portray Ms. McSweeney as a hysterical, uncontrollable, alcohol-addicted woman"). But the only **factual** allegations that purportedly support Plaintiff's claims are the ones listed above. The Court should disregard the vague suggestion that there may have been other incidents, as none are alleged. *See Ahmad v. White Plains City Sch. Dist.*, 2019 WL 3202747, at *8 (S.D.N.Y. July 16, 2019) (dismissing discrimination claims because the factual allegations failed to support the claims, notwithstanding the vague allegations that the alleged incidents occurred "numerous times"). Similarly, Plaintiff alleges that, in response to her complaints of disability-related retaliation, Defendant Shannon told her "that it 'doesn't even matter' and she should focus on 'build[ing] on the momentum of today.'" FAC ¶ 255. On its face, this trivial allegation has nothing to do with sex. And her allegation that it shows that Shannon "held different expectations for women" (*id.* ¶ 256) is speculative and not based on any factual allegation. Indeed, this allegation makes little sense—it presumably is attempting to demonstrate disparate treatment of women, but it does not compare men and women who allegedly made complaints and suffered a hostile work environment; rather it superfluously, and without support, alleges that "male Producers" could harass Plaintiff. *Id.* Plaintiff fails to allege any comparable situation involving similarly-situated male employees.

judicially noticeable facts, and documents that are appropriate for consideration on this Motion.

Two of the incidents are alleged to have occurred "at the RHONY season 12 reunion," FAC ¶¶

110, 112, which was **broadcast** in September, 2020. Lepera Decl., Exs. 8-10 (referencing air

dates).[8] Therefore, those alleged comments were made before that date, during filming. The third

communication is a text message from Cohen to Plaintiff on December 28, 2020, immediately

following Plaintiff's public announcement of her "recent breast augmentation." FAC ¶ 178;

Lepera Decl., Ex. 11 (article discussing post from Plaintiff's public Instagram announcing her

breast augmentation on December 28, 2020).[9] Cohen's text stated:

> [C]ongrats on the new boobs! Now you're OFFICIALLY a HW

Cohen Decl., Ex. 1. Plaintiff responded:

> Thank u! Can't wait to Get [sic] naked next year and show them[.]
> I'm truly a HW[.] I felt Left [sic] out!!

*Id.*[10]

### 1.    Plaintiff's Sex/Gender-Based Title VII and NYSHRL Claims Are Untimely

Plaintiff's claims based on the alleged comments described above are untimely under

both Title VII and the NYSHRL and should be dismissed. Two of the three alleged

communications underlying her NYCHRL claim are also untimely and should be disregarded.

---

[8] The Court may take judicial notice of this fact. *See supra* note 3.

[9] The fact of this article, and its date, are proper subjects of judicial notice. *See supra* note 3.

[10] Plaintiff's FAC refers to and paraphrases Cohen's text (FAC ¶ 177), and, as discussed below, Cohen's text is the **only** alleged factual support for Plaintiff's sex/gender-related claims that is not time-barred under all statutes she invokes. It is therefore appropriately considered on this Motion. *Spencer-Smith v. Ehrlich*, 2024 WL 709291, at *4 (S.D.N.Y. Feb. 21, 2024) (Liman, J.) (since "the contents of [this] document appear to have been necessary to the short and plain statement of the claim showing that [a plaintiff was] entitled to relief," the Court may consider it on a motion to dismiss).

### a)       The Claims Are Untimely Under Title VII

Under Title VII, a plaintiff must "file a complaint with the Equal Employment Opportunity Commission (EEOC) or an equivalent state agency within 300 days of the allegedly discriminatory action." *Richards v. Dep't of Educ. Of City of New York*, 2022 WL 329226, at *6 (S.D.N.Y. Feb. 2, 2022) (Liman, J.). "[O]nly incidents that took place within the timely filing period are actionable." *Id.* The 300-day look-back period is triggered by the filing of an administrative complaint **addressing the specific type of discrimination at issue**. *See, e.g.*, *Bowen v. MTA New York City Transit Auth.*, 2011 WL 7940367, at *7 (E.D.N.Y. Dec. 29, 2011); *Bailey v. Colgate-Palmolive Co.*, 2003 WL 21108325, at *11–14 (S.D.N.Y. May 14, 2003), *aff'd*, 93 F. App'x 321 (2d Cir. 2004). With respect to Plaintiff's sex/gender-based claims, therefore, the relevant date is June 30, 2023, when Plaintiff amended her NYSDHR charge to add claims of sexual harassment/discrimination, not the March, 2023 date of her original charge, which alleged only disability discrimination. *Id.*; *see supra* § III.B. Accordingly, only incidents that took place on or after September 3, 2022 (300 days before June 30, 2023) are actionable. Since the three factual allegations underlying Plaintiff's Title VII sex discrimination and hostile work environment claims occurred in 2020, these claims are time-barred.

### b)       Plaintiff's Claims Are Untimely Under NYSHLR, and Two of the Allegations Are Untimely Under NYCHRL

Under NYSHRL and NYCHRL, the statute of limitations is three years. Both statutes ordinarily toll the limitations period during the pendency of an administrative complaint. Tolling under the NYCHRL is not impacted by the claimant's request for dismissal of the administrative charge. However, under the NYSHRL, if the claimant requests that the complaint be dismissed, she loses the benefit of that tolling. *Strusman v. NYU Langone Hosps.*, 2020 WL 3415111, *6-7 (S.D.N.Y. June 22, 2020) (Liman, J.).

20045238.1

Here, since Plaintiff requested that her administrative complaint be dismissed (*supra* § III.B), the NYSHRL and NYCHRL limitations periods differ. **For the NYSHRL, claims are untimely if they accrued before February 27, 2021** (three years before Plaintiff's original Complaint). All three communications underlying Plaintiff's sex/gender-based NYSHRL claims were made before that date, *supra* § IV.C, and therefore, those claims are time-barred.

For the NYCHRL, the time period between the June 30, 2023 amended charge and the October 6, 2023 NYSDHR dismissal (a period of 98 days) is disregarded. Accordingly, **under the NYCHRL, claims accruing before November 21, 2020 are untimely**. For purposes of Plaintiff's NYCHRL claims, two of the three underlying communications are untimely and should be disregarded. *Supra* § IV.C (both communications were made before September, 2020).

### 2. Plaintiff's Only Timely Allegation of Sex/Gender Discrimination and Hostile Work Environment Fails to Support Her Claim

As a matter of law, the solitary allegation that Cohen "comment[ed] that [Plaintiff's] recent breast augmentation made her a real 'Housewife'" (FAC ¶ 178) is insufficient to satisfy the NYCHRL standard.

### a) The Single Alleged Text Message Cannot Provide the Basis for Plaintiff's NYCHRL Claim

To survive dismissal of a claim for sex/gender discrimination under the NYCHRL, a plaintiff must plausibly allege that she was "treated less well than other employees because of her gender." *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (2009); *see also Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, 2019 WL 6916099, at *6 (S.D.N.Y. Dec. 19, 2019) (NYCHRL gender-based discrimination claim not plausibly pled where plaintiff failed to demonstrate defendants declined to hire her **because of** her gender); *Stinson v. City Univ. of N.Y.*, 2018 WL 2727886, at *10 (S.D.N.Y. June 6, 2018) (NYCHRL claim not plausibly pled where plaintiff did not allege comments were "based on" protected characteristic).

The "NYCHRL is not a 'general civility code.'" *Harris v. Off. Of New York State Comptroller*, 2022 WL 814289, at *13 (S.D.N.Y. Mar. 17, 2022). Courts will dismiss, at the pleading stage, claims based on alleged conduct that represents "nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Sosa v. Loc. Staff, LLC*, 618 F. App'x 19, 20 (2d Cir. 2015) (single comment, "You're so street," was insufficient to support a discrimination complaint under the NYCHRL at the pleading stage). A single incident may be sufficient to ground liability **only** where it is "extraordinarily severe." *San Juan v. Leach*, 278 A.D.2d 299, 300 (2000); *see also Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 69 (S.D.N.Y. 2016) ("isolated and episodic incidents of discriminatory language … are not sufficient to support a hostile work environment claim" under NYCHRL); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 581 (S.D.N.Y. 2023) (allegations of "a handful of comments relating to sex" insufficient to state an NYCHRL claim); *Harris*, 2022 WL 814289, at *13 (dismissing NYCHRL claim where plaintiff alleged he "was subjected to a constant stream of comments, jokes and other misconduct that signaled he was not a 'real man' in the eyes of his supervisors because he did not engage in sexual misconduct like they did"). Courts consider the allegations "based on the totality of the circumstances" from both an objective and subjective basis to determine whether the plaintiff was subjected to actionable "unwanted gender-based conduct." *Anderson v. Davis Polk & Wardwell LLP*, 2013 WL 1809443, at *2 (S.D.N.Y. Apr. 29, 2013). Under these standards, Plaintiff's NYCHRL claim fails for at least three reasons.[11]

First, Cohen's congratulatory text message, sent after Plaintiff publicly announced the

---

[11] Since "the NYCHRL supplies the—or tied with the NYSHRL for the—most lenient applicable liability standard," dismissal under the NYCHRL necessarily would mandate dismissal of the Title VII and NYSHRL claims, even if those claims were timely. *Yost*, 657 F. Supp. 3d at 578.

20045238.1

fact of her surgery, is too "trivial" to ground liability under the NYCHRL. *Sosa*, 618 F. App'x at 20 (requiring allegations based on a single incident to be "extraordinarily severe" to warrant liability under the NYCHRL).[12]

Second, viewing the communication "based on the totality of the circumstances," as the Court must for purposes of the NYCHRL, it is clear that this was not "unwanted gender-based conduct." *Anderson*, 2013 WL 1809443, at *2. Plaintiff initiated public discussion of her surgery and Cohen congratulated her the same day. Plaintiff responded by expressing gratitude, stating her desire to "get naked" and "show them," and agreed that she was "truly a HW." *Supra* § IV.C.

Third, Plaintiff fails to even allege that this comment demonstrates that she was treated less well than other employees **because of her gender**—*i.e.*, there is no allegation that Cohen's texts with males are different. *See Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (dismissing NYCHRL claim where "nothing … indicates that plaintiff was treated 'unequally' based upon his gender").[13]

Fourth, there is no allegation that any of the Defendants other than Cohen even knew about this private text message. Plaintiff does not allege that she reported this incident to anyone. *See infra* § IV.D. To prove liability under the NYCHRL, "the plaintiff must show that the individual was <u>personally involved</u> in engaging in discriminatory acts." *Abadi v. NYU Langone Health Sys.*, 2023 WL 8461654, at *7 (S.D.N.Y. Dec. 7, 2023) (emphasis in original). Accordingly, there can be no basis for liability as to the Producer Defendants.

---

[12] This would be the case even if the Court were disinclined to take judicial notice of the article referencing Plaintiff's public announcement of her surgery.

[13] Plaintiff's baseless allegations that Cohen does not ask males provocative questions and that men are not depicted in a stereotypical manner on the franchise should be disregarded as vague and conclusory. FAC ¶ 111. Those allegations are also illogical. The franchise is about women and their relationships with each other. *Supra* § III.A.

### 3.    Two of the Untimely Sex/Gender-Based Factual Allegations Are Barred by the First Amendment and Too Trivial to Support a Claim

In addition to being untimely under all three statutes, the two allegations concerning questions asked during the filming of *RHONY* Season 12, which were broadcast on the show, are protected under the First Amendment. *Moore*, 2024 WL 989843, at *19 (creator of expressive work may not be penalized for exercising "constitutionally protected expressive discretion") (citing *Sullivan*, 376 U.S. at 264). These questions, separately or together, are also far too trivial to sustain a claim under the NYCHRL, under the same law discussed *supra* § IV.C.2.a. For these additional reasons, those allegations do not support Plaintiff's claims of sex/gender-based discrimination or hostile work environment.

### 4.    Plaintiff's Allegations Concerning Other Individuals Should Be Disregarded

Plaintiff's FAC is replete with allegations concerning alleged conduct by Defendants that have nothing to do with Plaintiff (*see, e.g.*, FAC ¶¶ 51, 114-15), and therefore, cannot support her claims. *See Lateral Recovery*, 632 F. Supp. 3d at 435.[14] All of those allegations fall into one of two categories: (1) alleged comments by Cohen about **other cast members** on **different shows** that were **not witnessed by McSweeney** (FAC ¶¶ 347-56 (alleged comments relating to cast members on *The Real Housewives of Orange County* and *The Real Housewives of New Jersey*, and other vague and general allegations of sex-related "inappropriate questions," unrelated to Plaintiff); and/or (2) alleged sexual harassment **directed toward males** (*id.* ¶¶ 357-64 (citing lawsuit by **male** "low-level production employee" and allegations that **male** employees were sent pictures of another male employee's genitals)). Such comments cannot

---

[14] Plaintiff vaguely objects to the name of the *Housewives* franchise and its purported stereotypical portrayal of women. Leaving aside the pleading deficiencies of these allegations, these elements of the show are clearly protected by the First Amendment. *Moore*, 2024 WL 989843, at *20.

20045238.1

support Plaintiff's claim that **she** suffered sexual harassment because of **her** sex. *See Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 188–89 (2d Cir. 2001) (alleged harassment against other employees that did not occur in "plaintiff's immediate vicinity" does not "adversely affect[] the terms and conditions of [plaintiff's] own employment"); *Yost*, 657 F. Supp. 3d at 581 (harassment that is "disconnected from any protected characteristic of" the plaintiff cannot support a hostile work environment claim). Even taking these allegations as true, they belie Plaintiff's conclusory allegation that comparable male employees "were treated better than plaintiff was." *Bautista v. PR Gramercy Square Condo.*, 2022 WL 17156628, at *9 (S.D.N.Y. Nov. 22, 2022).

### D.    Plaintiff's Retaliation Claim Based on Sex/Gender Should Be Dismissed

To prevail on her claims for sex/gender-based retaliation under Title VII (Count 17), Plaintiff must show "1) that [she] engaged in a protected activity; 2) that [Defendants] had knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Brantman v. Fortistar Cap., Inc.*, 2017 WL 3172864, at *4 (S.D.N.Y. July 22, 2017). Plaintiff alleges that her "protected activity" was that she "complained to human resources, senior employees at Defendant Company, to Defendant Cohen, and to Defendant Producers regarding, *inter alia*, Defendants' discrimination on the basis of sex and gender and Defendants' creation of a hostile work environment on the basis of Plaintiff's sex and gender." FAC ¶ 729.

This bald allegation, asserted only in the recital of claim, is precisely the kind of "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," that "do[es] not suffice" under Rule 12(b)(6). *Lateral Recovery*, 632 F. Supp. 3d at 435. Not only is this allegation conclusory, it is contradicted by the factual allegations in the FAC and documents that the Court may consider on this Motion:

- Plaintiff alleges that she "formally complained of discrimination on the basis of **disability** to human resources" and the decision not to cast Plaintiff on subsequent shows "was direct retaliation" against her "formal complaint to human resources and informal complaints to, *inter alia*, Defendant Cohen and other Defendant Bravo employees of **disability** discrimination and harassment." FAC ¶¶ 297-98 (emphasis added). In comparison, she does not allege with any specificity that she formally complained of sex/gender-based discrimination to Defendants or that she otherwise put Defendants on notice of such discrimination at any point prior to the casting decisions she complains of here. Nor does she even allege that the casting decisions for *RHONY 14* or *RHONY Legacy* were based on her complaints of sex/gender discrimination.

- In her original NYSDHR complaint, Plaintiff complained **only** about alleged **disability** discrimination, and not sex/gender discrimination. *Supra* § III.B.

It is clear that Plaintiff made no complaint about sex/gender discrimination until June 30, 2023, when she amended her NYSDHR complaint to tack on sex/gender-related allegations. *See supra* § III.B. By that time, Defendants had already decided not to hire her for *RHONY Legacy* or *RHONY* season 14 (which Plaintiff incorrectly calls a "termination"). *Supra* § III.A.[15]

Accordingly, Plaintiff cannot establish any of the elements of her sex/gender-based retaliation claim, and it should be dismissed.[16]

---

[15] Plaintiff's vague allegations relating to alleged harm to unspecified individuals **other than Plaintiff** (FAC ¶¶ 365-71) are irrelevant to her claims. *See Leibovitz*, 252 F.3d at 188–89.

[16] Plaintiff does not specifically allege that her NYCHRL and NYSHRL retaliation claims are based on sex/gender. *See* FAC ¶¶ 736-65 (Counts 19 & 20). To the extent she now argues that they are, they should be dismissed for the same reasons. The elements of a prima facie case of retaliation under the NYCHRL are "identical" to Title VII, except that the NYCHRL employs a broader standard for an "adverse employment action" than its federal and state counterparts.

20

### E.    Plaintiff's Religion-Based Discrimination and Hostile Work Environment Claims Should Be Dismissed

Plaintiff asserts claims for religious discrimination and harassment under the NYSHRL and NYCHRL. *See* FAC Counts 5, 8, 13 & 16. The sole support for these claims arises from one alleged incident: during filming of *RHUGT*, "Defendant Producers hosted a cast lunch where each and every product was cooked in pork substances," even though they were allegedly aware that Plaintiff would be unable to eat such products due to her religion. FAC ¶¶ 260-266.

As a matter of law, even if this allegation were true (it is not), it cannot sustain Plaintiff's discrimination and hostile work environment claims. In *Springs v. City of New York*, 2020 WL 3488893, at *8 (S.D.N.Y. June 26, 2020), the Court considered a nearly identical fact pattern. The plaintiff alleged that, at a meal during work, the defendants cooked hamburgers in a pan that had been used to cook pork despite having been advised of the plaintiff's religious dietary restriction. The Court dismissed the plaintiff's claims for religious discrimination under the NYSHRL and NYCHRL because the alleged conduct was a "classic example[] of petty slights or trivial inconveniences." *Id.*; *see also Sosa*, 618 F. App'x at 20 (single comment insufficient to support a discrimination complaint under the NYCHRL); *San Juan*, 278 A.D.2d at 300 (only an "extraordinarily severe" single incident can support NYCHRL claim).

Since this alleged incident is not "extraordinarily severe," but is at most a "petty slight[] or trivial inconvenience[]," it cannot support her religion-based claims as a matter of law.[17]

---

*Smith v. City of New York*, 385 F. Supp. 3d 323, 345–46 (S.D.N.Y. 2019); *Mitura v. Finco Servs., Inc.*, 2024 WL 232323, at *11 (S.D.N.Y. Jan. 22, 2024) (same for NYSHRL). That is of no moment since Plaintiff fails, *inter alia*, to allege that she reported sex/gender-based discrimination before the alleged "adverse employment action."

[17] Plaintiff does not assert a Title VII claim for religion-based discrimination, in apparent recognition of the fact that she failed to raise it in either her original or her amended NYSDHR/EEOC charges. Plaintiff's failure to include a religion-based claim or the cast lunch in any of her agency charges bolsters the conclusion that these new allegations are "trivial."

### F.    Plaintiff's RICO Claim Should Be Dismissed

Plaintiff's 29th Cause of Action is for alleged violation of the federal civil RICO statute. This claim is patently frivolous, and it should be swiftly rejected.

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants, … courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman*, 167 F.R.D. at 655, 660 (citations omitted) (dismissing RICO claim and finding a Rule 11 violation where "even a cursory examination of the requirements for bringing suit under RICO would have revealed the impossibility of the claim's success").

The RICO statute "makes it unlawful for any person to (a) use money derived from a pattern of racketeering activity to invest in an enterprise, (b) acquire control of an enterprise through a pattern of racketeering activity, (c) conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, or (d) conspire to do any of those things." *Id.* (citing 18 U.S.C. §§ 1962(a)–(d)). A "pattern of racketeering activity" is defined as "at least two acts" of prohibited conduct within a ten-year period; these "predicate acts," in turn, are defined as specifically enumerated criminal offenses, 18 U.S.C. § 1961, which include "murder, kidnapping, gambling, arson, robbery, bribery and extortion." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *see Mura v. Thomas*, 2021 WL 4481346, at *4 (S.D.N.Y. Sept. 30, 2021).

Here, Plaintiff's allegations of "racketeering activity" consist of the same allegations underlying her other claims—alleged violations of employment laws. But Plaintiff does not, and by definition cannot, allege that these constitute indictable criminal offenses under the RICO statute. Indeed, the Second Circuit (like other courts) has routinely rejected attempts to ground RICO claims on alleged employment law violations like those asserted in the FAC. "[T]he

22

purpose of civil RICO liability does not extend to deterring any illegal act such as retaliatory firings for which there are state and common law remedies." *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990); *see also Plemmons v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 1991 WL 61128, at *2 (E.D. Pa. Apr. 13, 1991) ("Civil rights violations under Title VII … are not included within the statutory definition of 'racketeering activity.'"); *Clark v. Schuck*, 2008 WL 3843077, at *1 (N.D. Cal. Aug. 14, 2008) ("Civil rights violations and injury to reputation do not fall within the statutory definition of 'racketeering activity' and fail to state a RICO claim."); *Mura*, 2021 WL 4481346, at *5 ("Termination from employment—and thus, by extension, the lesser consequence of a professional demotion—is not itself an act of racketeering under Section § 1961(1)(B) …. Nor is … harassment."). Plaintiff's assertion of a RICO cause of action in light of this unambiguous and dispositive case law is vexatious and incendiary.[18]

Plaintiff's claim also fails because a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Canosa v. Ziff*, 2019 WL 498865, at *25 (S.D.N.Y. Jan. 28, 2019) (injuries that are "personal in nature," "such as emotional distress or physical injury[,] are not cognizable under RICO"). Plaintiff's alleged injuries are precisely such non-actionable "personal injuries": aside from her conclusory, amended allegation of injury "to her business and property," the only specific injury she alleges is "medical expenses related to Plaintiff's hospitalizations and therapy expenses." FAC ¶ 874.

Plaintiff's RICO claim should be dismissed with prejudice.

---

[18] This is particularly true given the fact that Plaintiff declined to withdraw this claim in the FAC, even after the foregoing law was presented to her in the original motion to dismiss.

G. **Plaintiff's "Failure to Engage in Interactive Process" Claims Under ADA and NYSHRL Should Be Dismissed**

Plaintiff's causes of action for "failure to engage in interactive process" under the ADA and NYSHRL (Counts 26 & 27) fail because "there is no independent cause of action for the failure to engage in an 'interactive process' under the ADA or NYSHRL." *Heiden v. New York City Health & Hosps. Corp.*, 2023 WL 171888, at *33 n.28 (S.D.N.Y. Jan. 11, 2023).

H. **Plaintiff's NY Labor Law Claims Should Be Dismissed**

Plaintiff asserts two claims under the NYLL: for retaliation under Section 215, and for whistleblower retaliation under Section 740 (Counts 21 & 22). Both should be dismissed.

1. **The Section 215 Claim Should Be Dismissed**

Section 215 makes it unlawful to retaliate against an employee "because such employee has made a complaint to his or her employer … that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [this chapter] or any order issued by [the Commissioner]." Claims under this provision should be dismissed where the complaint fails to allege that the plaintiff "made a complaint about a violation of the New York Labor Laws or an order of the Commissioner of Labor," *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 100 (S.D.N.Y. 2020) (Liman, J.), or the complaint fails "to identify any provision of the Labor Law which they reasonably believed was violated," *Tsatskin v. Kordonsky*, 189 A.D.3d 1296, 1299 (2d Dep't 2020). "Disability discrimination and retaliation for complaints of discrimination are instead covered by" the NYHRL, not labor law. *Quartararo v. J. Kings Food Serv. Pros., Inc.*, 2021 WL 1209716, at *15 (E.D.N.Y. Mar. 31, 2021). Since Plaintiff failed to allege that she made a complaint about Defendants' purported NYLL violation, her claim fails.

2. **The Section 740 Claim Should Be Dismissed**

Section 740, as amended January 26, 2022, prohibits retaliation by an "employer" against

an employee who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is a violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety." NYLL § 740(2)(a). Case law concerning the pre-amendment version of that statute uniformly required that the Plaintiff establish that the violation was "of the kind that 'creates a substantial and specific danger to the public health or safety." *Webb-Weber v. Cmty. Action for Human Servs., Inc.*, 23 N.Y. 3d 448, 452 (2014). Courts considering the amended version continue to require such pleadings and evidence. *See, e.g.*, *Brown v. Cnty. of Westchester*, 2024 WL 21937, at *12 (S.D.N.Y. Jan. 2, 2024) (dismissing section 740 claim absent plausible allegations that the violation "poses a substantial and specific danger to the public health and safety"); *Zhang v. Centene Mgmt. Co., LLC*, 2023 WL 2969309, at *19 (E.D.N.Y. Feb. 2, 2023) (applying amended law and requiring allegations of "specific danger to public health or safety"); *Ramirez v. Tifaret Disc., Inc.*, 2023 WL 6318616, at *8 (S.D.N.Y. Sept. 28, 2023) (noting that the court's analysis would not be different under amended statute). Plaintiff fails to allege any substantial and specific danger to public health or safety. *See* FAC ¶¶ 778-89. The claim should be dismissed.

Even if the Section 740 claim could survive, it could not be maintained against the Individual Defendants, because they are not "employers" under that statute. *See, e.g.*, *Ruiz v. Lenox Hill Hosp.*, 146 A.D.3d 605, 606 (1st Dep't 2017) ("[t]he motion court should have dismissed the Labor Law claims as against [individual defendant] since he is not an 'employer' within the meaning of Labor Law §§ 740 and 741").

## I.    Plaintiff's Title VII and ADA Claims Should Be Dismissed as to the Individual Defendants

All of Plaintiff's Title VII and ADA claims (Counts 1, 2, 9, 10, 17, 18, 23 & 26) should

be dismissed as to the Individual Defendants. It is firmly established that "there is no right of recovery against individual defendants under the ADA," *Corr v. MTA Long Island Bus*, 1999 WL 980960 at *1–2 (2d Cir. 1999), or Title VII, *Douyon v. New York City Dep't of Educ.*, 665 F. App'x 54, 58 (2d Cir. 2016).[19]

### J.    Plaintiff's NYSHRL Claims Should Be Dismissed as to the Producer Defendants

For similar reasons, Plaintiff cannot maintain her claims against the Producer Defendants under the NYSHRL. An individual defendant can only be liable as an "employer" under NYSHRL Section 296(1) "when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others,' *i.e.*, the power to hire or fire." *Stanley v. Mount Sinai Health Sys., Inc.*, 2023 WL 8355393, at *13 (S.D.N.Y. Dec. 1, 2023). Here, Plaintiff's vague, amended allegation that they "have decision making power over the terms of the Housewives' employment" (FAC ¶ 47) fails to allege that any of the Producer Defendants had hiring or firing power. All of the NYSHRL claims (Counts 3, 4, 5, 11, 12, 13, 19 & 24) should be dismissed as to the Producer Defendants.

### K.    Plaintiff's NYCHRL, NYSHRL, and NYLL Retaliation Claims Based on the March Letter Should Be Dismissed

Plaintiff's new retaliation claims based on the March Letter fail because: (1) the letter was not an "adverse action"; and (2) there is no causal connection between any "protected activity" and the letter.

First, Plaintiff fails to allege any actionable adverse action. While "[i]t is the rare case that the filing of a counterclaim can serve as the basis for a retaliation claim," *Klein v. Town &*

---

[19] Plaintiff appears to concede this, as the FAC states that such claims are asserted only "against the Company Defendants." However, the term "Company Defendants" is undefined, and the recital of claims continues to reference the Individual Defendants.

*Country Fine Jewelry Grp.*, 283 A.D.2d 368, 369 (1st Dep't 2001), a retaliation claim based on a **mere reservation of rights** to bring a counterclaim is rarer still—Defendants have found no such case. Indeed, allowing a retaliation claim in these circumstances would be contrary to public policy in that "[e]mployers should … not be discouraged from expressing their own potential claims, at least where, as here, such claims are addressed to the employee's attorney." *Klein*, 283 A.D.2d at 369. "To hold [otherwise] would be to hold that whenever a defendant is sued for sexual harassment, city law can nullify a defendant's right to recover under state law." *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 312–13 (S.D.N.Y. 2015) (post employment counterclaims did not constitute adverse employment action).

"To set forth a retaliation claim based on the filing of a counterclaim," in addition to meeting the normal requirements for such a claim (*see supra* § IV.D[20]), "a plaintiff must allege facts showing that the counterclaim could have a direct, adverse impact on [plaintiff's] present employment or future employment prospects." *Rubin v. Napoli Bern Ripka Shkolnik, LLP*, 2018 WL 5619731, at *5 (Sup. Ct. N.Y. Cnty. Oct. 29, 2018), *modified on other grounds*, 179 A.D.3d 495 (1st Dep't 2020). Courts decline to entertain such claims where there is no evidence that the counterclaim "in any way chilled plaintiff's exercise of her rights." *Id.*; *see also Arevalo v. Burg*, 129 A.D.3d 417, 417–18 (1st Dep't 2015) (same); *Reichman v. City of New York*, 179 A.D.3d 1115, 1119 (1st Dep't 2020) (under the NYSHRL, "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm") (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

Here, the alleged "adverse action" is a mere letter from Cohen's personal lawyer to

---

[20] Retaliation claims under the NYLL are subject to the same standards as Title VII. *Arevalo*, 129 A.D.3d at 417.

Plaintiff's litigation counsel, which does not even contain a direct threat of a counterclaim. There is no factual allegation of any harm to Plaintiff, let alone the requisite allegation that Plaintiff's employment prospects have been adversely impacted by the letter. It is also clear that Plaintiff was not deterred—not only did she continue to pursue her "cocaine" allegations; she has now brought new claims based on the March Letter itself. It is therefore apparent that the letter did not "disadvantage [her] in any way, as is required to establish an adverse employment action." *Fischkoff v. Iovance Biotherapeutics, Inc.*, 2018 WL 4574890, at *6 (S.D.N.Y. July 5, 2018) (dismissing retaliation claim based on the filing of counterclaims, since the plaintiff "alleges no facts suggesting that the filing of counterclaims harmed his professional prospects or affected his ability to seek legal redress through this action").

    Second, Plaintiff fails to allege the requisite causal connection between "protected activity" and the March Letter. The March Letter was not directed to her "protected activity" at all; it does not demand that Plaintiff withdraw any of her discrimination or retaliation claims, or any allegation of conduct that relates to those claims. The letter only takes issue with Plaintiff's false allegations relating to Cohen's supposed drug use with certain unnamed cast members. These allegations have nothing to do with Plaintiff or her alcohol- and mental health-based disability, sex, and religious discrimination claims.[21] At best, these are superfluous allegations of unrelated bad acts, the assertion of which is not a "protected activity." NYCHRL does not protect a plaintiff's right to (falsely) accuse a coworker of drug use. *See Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 78 (S.D.N.Y. 2016) ("The right to aggressively confront a coworker with baseless allegations" is not a "right granted or protected pursuant to

---

[21] Indeed, Plaintiff pleads no direct involvement or knowledge regarding these allegations, which she alleges on information and belief, and with a total lack of specifics.

[section 8-107]"); *see also Leibovitz*, 252 F.3d at 188–89 (harassment against other employees that did not occur in "plaintiff's immediate vicinity" does not "adversely affect[] the terms and conditions of [plaintiff's] own employment").

### L.    Plaintiff's NYCHRL Interference Claim Should Be Dismissed

Plaintiff's claim for "interference" under NYCHRL § 8-107(19), also based on the March Letter, likewise fails. That provision "makes actionable intimidation, threats or interference with ... a person's exercise or enjoyment of rights protected under § 8-107." *Harrison v. SUNY Downstate Med. Ctr.*, 2017 WL 4326507, at *5–6 (E.D.N.Y. Sept. 25, 2017). A plaintiff must plead at least two elements: (1) an "affirmative threat beyond the adverse employment action itself," which creates an "impression of impending injury," *Cadet v. All. Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 236–37 (S.D.N.Y. 2022) (citation omitted); and (2) "a nexus between [the threats] and [the plaintiff's] exercise of rights under the NYCHRL." *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 930710, at *8 (S.D.N.Y. Mar. 11, 2021). Here, Plaintiff cannot satisfy either element.

First, as discussed in Section IV.K, *supra*, there is no nexus between the March Letter and any protected activity. Since the alleged "threat" was not related to Plaintiff's exercise of a protected right, the claim fails. *See Roelcke v. Zip Aviation, LCC*, 2018 WL 1792374, at *9 (S.D.N.Y. Mar. 26, 2018) (dismissing interference claim where the allegations failed to create an inference that the alleged threat "was related to [plaintiff's] exercise of a protected right under the NYCHRL").

Second, the March Letter is not an "affirmative threat" at all. It merely demands retraction of false allegations, and creates no impression of "impending injury." *Cadet*, 632 F. Supp. at 236-37. The mere fact that it contains a reservation of rights cannot support a claim; rather, "a cause of action for interference with a protected activity requires plaintiff to allege that

the plaintiff's ability to complain was interfered with by the defendant." *France v. Touro Coll.*, 2016 WL 1105400, at *13 (E.D.N.Y. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016). Here, Plaintiff's own actions reveal that her rights were not, in fact, interfered with. Plaintiff continues to assert her claims, continues to assert her allegations regarding cocaine use, and even makes additional claims based on the March Letter itself. *See Cajamarca v. Regal Entertainment Group*, 2013 WL 5717119 (Sup. Ct. N.Y. Cnty. Oct. 17, 2013) (dismissing interference claim where the alleged threat did not "prevent [plaintiff] from exercising her right to make complaints").

## V. CONCLUSION

For the foregoing reasons, the Court should: Dismiss Plaintiff's disability-related claims in their entirety (Counts 1, 3, 6, 9, 11, 14, 17-29), or, in the alternative, strike those allegations that Defendants discriminated and retaliated against her in service of the alleged message of the show; Dismiss Plaintiff's sex/gender-based claims in their entirety (Counts 2, 4, 7, 10, 12, 15 & 17); Dismiss Plaintiff's religion-based claims in their entirety (Counts 5, 8, 13 & 16); Dismiss Plaintiff's RICO claim in its entirety (Count 29); Dismiss Plaintiff's NYLL claims in their entirety (Counts 21 & 22); Dismiss Plaintiff's claims for failure to engage in an interactive process under the ADA and NYSHRL in their entirety (Counts 26 & 27); Dismiss Plaintiff's retaliation and interference claims under the NYCHRL, NYSHRL, and NYLL in their entirety (Counts 30-33); Dismiss Plaintiff's Title VII and ADA claims as to the Individual Defendants (Counts 1, 2, 9, 10, 17, 18, 23 & 26); and Dismiss Plaintiff's NYSHRL claims as to the Producer Defendants (Counts 3, 4, 5, 11, 12, 13, 19 & 24).

DATED:  New York, New York         MITCHELL SILBERBERG & KNUPP LLP
        July 17, 2024

                                  By: /s/ Christine Lepera

30

20045238.1

Christine Lepera (ctl@msk.com)
Jacob D. Albertson (j1a@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Adam Levin (axl@msk.com)
(admitted *pro hac vice*)
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone: (310) 312-3116
Facsimile: (310) 312-3100

*Attorneys for Defendants Andy Cohen,
Lisa Shannon, John Paparazzo, Darren
Ward, Warner Bros. Discovery, Inc., Shed
Media US Inc., NBCUniversal Media,
LLC, and Bravo Media LLC*

20045238.1