# EXHIBIT 3

<u>"REAL HOUSEWIVES LIMITED SERIES" /LEAH MCSWEENEY   / TALENT AGREEMENT</u>

| Effective Date: | May 19, 2022 **Effective Date**") | |
|---|---|---|
| Project: | "Real Housewives Limited Series" (working title) and all material produced in connection therewith, including, without limitation, all series episodes ("**Episodes**") and any enhanced, promotional, development, pitch and other material shall collectively be referred to as, the "**Series**." | |
| Studio: | Forest Productions Inc.<br>3800 Barham Blvd., Suite 410<br>Los Angeles, CA 90068<br>Attention:  SVP, Business & Legal Affairs | |
| Artist: | Name: Leah McSweeney ("**Artist**") | |
| | Contact Details:<br><br>c/o Adelman Matz, PC<br>1173A Second Avenue #153<br>New York, NY 10065<br>Attn: Gary Adelman | Loan-out Company (if applicable): |

As used herein, "**Network**" shall mean 1 or more of the television networks or platforms (e.g., Bravo) of NBCUniversal Media, LLC or its related and/or affiliated entities. For good and valuable consideration, the sufficiency of which is hereby acknowledged (including, without limitation, the potential to appear in the Series), Studio and Artist hereby agree as follows:

1. **CONTINGENCIES:** Studio's obligations are contingent on the following ("collectively, "**Contingencies**"): (a) Artist's execution of this Agreement, on terms and conditions acceptable to Network; (b) Studio's receipt of a written non-contingent order from Network for the production of the Cycle (as defined below); (c) Network's receipt of a talent agreements between Studio and all principal participants approved by Network for participation in the Series, on terms and conditions acceptable to Network; (d) Network's approval of the budget, production schedule and key creative for the Cycle (as defined below); and (e) Artist's compliance with all applicable laws, codes and regulations and Studio's safety requirements (including, without limitation, safety requirements with respect to COVID-19, and Artist's completion, execution and delivery to Studio of all required tax and immigration forms, as applicable) and completion and delivery to Studio of all documentation required by Studio or its payroll company.

2. **ENGAGEMENT:** Subject to satisfaction of the Contingencies, Artist to render services in connection with a cycle of 60-minute Episodes (the "**Cycle**"). Studio may order additional Episodes beyond its initial or any subsequent order in the Cycle. Artist's services in connection with the Series are currently intended to include, without limitation (a) approximately 12-13 days filming on location (currently anticipated to commence in mid July 2022), (b) 1 home filming day, and (c) 3-4 sit-down interview filming days, with all such dates and locations to be determined by Studio.

3. **FEES:**

   (a) Subject to Artist's compliance with Artist's obligations hereunder (including, without limitation, Network's Talent Guidelines) and the remainder of this paragraph 3:

   (i) if Artist is engaged to render on-camera Services in connection with the Initial Cycle, Artist shall receive an ▮▮▮▮ of ▮▮▮▮ to appear in and render services in connection with original Episodes (including special Episodes, e.g., reunion and lost footage Episodes) (each, an "**Original Episode**") in the Cycle ("**Cycle Fee**"); and

   (j) if Artist appears in, and render services in connection with, more than ▮▮▮▮ Original Episodes in the Cycle for which Artist is engaged hereunder, Artist shall receive an additional fee in connection with each such additional ▮▮▮▮ Original Episode in excess of such ▮ Original Episodes (each, an "**Additional Episode**") equal to a pro-rata portion of Artist's Cycle Fee (i.e., ▮▮▮▮) per such Original Episode ("**Additional Episode Fee**"). 

   (b) Artist's Cycle Fee shall remain the same for up to ▮-minutes of over-run time (i.e., "super-sizing") per ▮ minute Original Episode. Artist's Additional Episode Fee shall remain the same for up to ▮-minutes of either, over-run time per Additional Episode (i.e., "super-sizing"), after which the applicable Additional Episode Fee will be subject to increase on a pro-rata basis, or under-run time (i.e., a shortened Episode) per Additional Episode, after which the applicable Additional Episode Fee will be subject to good faith negotiation between the parties.

   (c) Notwithstanding anything contained herein: (i) if Artist is engaged to render new services (e.g., voiceover, wraps) in connection with production of newly-created (as opposed to "re-branded" Episodes – e.g., a "social edition") clip, compilation, "making of," casting, "best of," "countdown," and/or similar types of Episodes that are substantially comprised of either footage that has already been exhibited and/or footage from Cycles other than the then-current Cycle (collectively, "**Repackaged Episodes**"), then in lieu of any other fees that Artist would otherwise be entitled to hereunder, Artist shall receive a fee of ▮▮ of Artist's then-current Original Episode fee or Additional Episode Fee; and (ii) if no new services are required of Artist in connection with any Episode (including, without limitation, any Original Episode, Repackaged Episode or any other non-original Episode such as a repeat or "re-branded" Episode), Artist shall not receive any fee.

4. **EXCLUSIVITY:** From the Effective Date and for as long as Studio has the option to engage Artist hereunder until the date that is the earlier of 3 months after Network's initial exhibition of the last Episode of the Initial Cycle or 6 months after the date of Network's final acceptance of delivery of all Episodes of such Initial Cycle (collectively, the "**Exclusivity Period**"), the following shall apply:

   a. Artist shall be exclusive to Network in all forms of docu-follow programming and content (whether such programming or content is still or moving, audio and/or visual) in all forms of media, whether now known or hereafter devised. Any activities that Artist is not prohibited from participating in or which are otherwise authorized by Network (including, without limitation, appearances and services for third parties) shall be referred to collectively as, "**Permitted Activities**." Notwithstanding anything contained herein, Artist's participation in Permitted Activities shall be, contingent on satisfaction of, and subject to, the following conditions: (i) Artist must be and remain in compliance with Artist's obligations under this Agreement (including, without limitation, the Publicity and Confidentiality provisions of the Standard Terms and Studio's Talent Guidelines); (ii) Artist's obligations to Studio shall remain in first priority at all times during the Exclusivity Period, and Artist's Permitted Activities shall not interfere therewith; (iii) Artist shall not appear as Artist's

      self in scripted programming (i.e., playing the role of Artist); (iv) such Permitted Activities shall not be in connection with programming or content scheduled for exhibition in a time period in which an Episode is being premiered or during the 4 weeks preceding or the 2 weeks following the initial exhibition of the initial Episode or the finale Episode of any Cycle; (v) Artist shall put any third party engaging Artist's services on notice of Artist's obligations pursuant to subparagraph (iv); (vi) Artist shall not render services in connection with any programming or content with a substantially similar format or other material elements to that/those of the Series; (vii) Artist shall provide Network's publicity department with reasonable advance notice of any Permitted Activities that Artist intends to participate in; and (viii) Artist shall, in accordance with the terms of this Agreement and the instructions of Network's publicity department, use Artist's good faith efforts to identify Artist's self as Network talent during all Permitted Activities.

      b.    Without limiting Network's exclusivity rights pursuant to subparagraph (a) above, Artist's obligations hereunder shall take first priority over Artist's other obligations and Permitted Activities, which shall not interfere with Artist's obligations hereunder.

      c.    Without limiting Network's exclusivity rights pursuant to subparagraph (a) above, Artist shall not directly or indirectly (e.g., through Artist's businesses) endorse, or render services in connection with any endorsement for, any product, service or brand, without Network's prior written approval.

5. **TRAVEL:** If Artist is required by Studio or Network to travel in connection with any Services to a location ("**Required Location**") that is outside the metropolitan area (a) in which Artist resides ("**Artist's Residence**"), in connection with publicity and promotion Services, or (b) in which the Series is regularly produced ("**Primary Production Location**"), in connection with all other Services, Artist shall receive the following, subject to availability and Studio's Standard Terms: (i) ground transportation to and from Artist's home, accommodation, airports (if applicable), and the Required Location(s); (ii) a per diem for each day of Services rendered at the Required Location in accordance with Studio or Network policy (as applicable); (iii)  and (iv) if overnight stays at the Required Location are required, lodging accommodations (room and room tax only).

6. 

7. **NON-UNION:** Artist's Services shall not be subject to any union, guild or collective bargaining agreement.

8. **STANDARD TERMS / ENTIRE AGREEMENT:** Reference is made to that certain Talent Agreement between Artist and Forest Productions Inc. ("**Forest**") dated as of September 26, 2019, in connection with the series "The Real Housewives of New York" (the "**RHNY Agreement**"). The Standard Terms and Conditions and Arbitration Provisions agreed by Artist and Forest in the RHNY Agreement, as set forth in Appendix I thereof are hereby also agreed by Studio and Artist to apply in connection with this Series and are incorporated herein by this reference (with all references to Studio and Network therein to be deemed to have the meanings set forth in this Agreement) (the "**Incorporated Terms**"). Artist acknowledges and agrees that other than the Incorporated Terms, no other terms of the RHNY Agreement shall be applicable to the Series (including options, series compensation, bonus, travel, and exclusivity provisions). This agreement is comprised of, and as used herein the term "**Agreement**" shall collectively refer to these main agreement terms (the "**Main Agreement'**) and the

incorporated Terms. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior and contemporaneous agreements, drats, negotiations, undertakings, arrangements and communications of any nature with respect thereto. Artist has not executed this Agreement in reliance on any promise, representation or warranty not expressly contained herein. This Agreement cannot be amended except by a written agreement signed by both parties. Unless otherwise expressly set forth in this Agreement, in the event of a conflict between the Main Agreement, on the one hand, and the Incorporated Terms, on the other hand, the terms and conditions of the Main Agreement shall govern. The provisions in the Incorporated Terms that add to but do not expressly conflict with the provisions in the Main Agreement shall be deemed to supplement.

ACCEPTED AND AGREED BY STUDIO:　　　　　　ACCEPTED AND AGREED BY ARTIST:

*Lisa Shannon*
Lisa Shannon (Jun 6, 2022 11:10 PDT)

(Signature)　　　　　　　　　　　　　　　　　　(Signature)

**Lisa Shannon**　　　　　　　　　　　　　　　Leah McSweeney

(Print Name)　　　　　　　　　　　　　　　　　(Print Name)

**Authorized Signatory**　　　　　Date: 05/19/22

(Title)

Date: Jun 6, 2022　　　　　　　　　　　　　　Date of Birth (MM/DD/YY):* ▮

∗ For verification purposes only pursuant to 18 U.S.C. §§ 2256 et seq.

# RHUGT S3.Leah McSweeney.Talent Agreement.v2.05 19 2022.CLEAN (0189108xC5E9E)1743

Final Audit Report 2022-06-06

| | |
|---|---|
| Created: | 2022-06-06 |
| By: | ▮ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA2KqYCY8UApFCiffirgG2cGsYHz-r0n1k |

## "RHUGT S3.Leah McSweeney.Talent Agreement.v2.05 19 2022 .CLEAN (0189108xC5E9E)1743" History

📄 **Document created by** ▮
2022-06-06 - 4:45:41 PM GMT- IP address: ▮

✉️ **Document emailed to Lisa Shannon** ▮ **for signature**
2022-06-06 - 4:46:18 PM GMT

📄 **Email viewed by Lisa Shannon** ▮
2022-06-06 - 6:10:41 PM GMT- IP address: ▮

✍️ **Document e-signed by Lisa Shannon** ▮
Signature Date: 2022-06-06 - 6:10:59 PM GMT - Time Source: server- IP address: ▮

✅ **Agreement completed.**
2022-06-06 - 6:10:59 PM GMT

![Adobe Acrobat Sign]