UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------X

LEAH MCSWEENEY,                                    Case No.: 1:24-cv-01503-LJL


                            Plaintiff,


                    v.




ANDY COHEN, LISA SHANNON, JOHN
PAPARAZZO, DARREN WARD, WARNER
BROS. DISCOVERY, INC, SHED MEDIA US
INC., NBCUNIVERSAL MEDIA, LLC and
BRAVO MEDIA LLC,
                            Defendants.

X------------------------------------------------------X




**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, AND
ALTERNATIVELY, TO STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFF'S
FIRST AMENDED COMPLAINT**




**ADELMAN MATZ P.C.**
**1159 Second Ave, Suite 153**
**New York, New York 10065**
**Phone: (646) 650-2207**
*Attorneys for Plaintiff*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................... iii

PRELIMINARY STATEMENT .................................................................... 1

STANDARD OF REVIEW ........................................................................... 2

I.    THE FIRST AMENDMENT IS NOT A DEFENSE TO DISCRIMINATION OR
RETALIATION .......................................................................................... 3

   A.    Defendants Do Not Have a Constitutional Right to Discriminate Against Plaintiff ...... 3

   B.    Employment Discrimination Laws Limit Defendants' Right to Free Speech ............... 5

   C.    Defendants' Reliance on *Claybrooks* and *Moore* is Misplaced ..................... 7

II.    PLAINTIFF'S SEX/GENDER-RELATED CLAIMS SHOULD NOT BE DISMISSED. 9

   A.    Defendants Failed to Meet their Burden to Prove that Plaintiff's Sex/Gender-Related
Claims and Hostile Work Environment Claims Are Trivial .................................. 9

      a.    Plaintiff's Sex/Gender-Related Claims Are Not Trivial ........................... 10

      b.    Plaintiff Adequately Pled that Defendants Engaged in Unwanted Sex/Gender-Based
Conduct ................................................................................. 12

      c.    Plaintiff Adequately Pled that Defendants' Took Adverse Employment Action
Against Her ............................................................................. 15

      d.    Plaintiff Adequately Pled that Defendants Discriminated Against Her Because of
Her Sex/Gender ......................................................................... 16

      e.    Plaintiff Adequately Alleges that Defendants' Created a Hostile Work Environment
Because of her Sex and Gender .......................................................... 16

   B.    Plaintiff's Sex/Gender Discrimination Claims are Timely ............................. 17

   C.    This Court Should Not Dismiss the Retaliation Claims Based on Plaintiff's
Sex/Gender-Related Discrimination Claims .................................................. 19

III.    PLAINTIFF'S RELIGIOUS-DISCRIMINATION CLAIMS MUST NOT BE
DISMISSED ........................................................................................ 19

IV.    PLAINTIFF ADEQUATELY ALLEGED THAT THE PRODUCER DEFENDANTS
ARE LIABLE UNDER NYSHRL AND NYCHRL ............................................. 22

V.    PLAINTIFF'S RICO CLAIM SHOULD NOT BE DISMISSED .................................. 23

VI.    PLAINTIFF'S NEW YORK LABOR LAW CLAIMS SHOULD NOT BE DISMISSED ................................................................................................................ 25

    A.    Plaintiff's §215 Claim is Adequately Pled.................................................... 25

    B.    Plaintiff's Section 740 Claim is Adequately Pled......................................... 26

    C.    Plaintiff's Labor Law Claims Should Not Be Dismissed Against the Individual Defendants ................................................................................................................ 26

VII.    PLAINTIFF'S RETALIATION CLAIMS PREDICATED ON DEFENDANT COHEN'S LETTER MUST NOT BE DISMISSED................................................................. 27

CONCLUSION....................................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023)....................................................................................... 1

*Ahmad v. White Plains City Sch. Dist.*,
  2019 WL 3202747 (S.D.N.Y. 2019).............................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................... 2

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).............................................................................. 2

*Bascunan v. Elsaca*,
  874 F.3d 806 (2d Cir 2017)........................................................................... 24

*Baty v. Willamette Indus., Inc.*,
  1997 WL 292123 (D. Kan. 1997).............................................................. 5, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................... 2

*Benzinger v. Lukoil Pan Americas, LLC*,
  447 F. Supp. 3d 99 (S.D.N.Y 2020).............................................................. 25

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*,
  461 U.S. 731 (1983)........................................................................... 27, 28, 29

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*,
  36 F. Supp. 2d 560 (E.D.N.Y. 1999) ............................................................ 24

*Bonito v. Avalon Partners, Inc.*,
  106 A.D.3d 625 (1st Dep't 2013) ............................................................ 26, 27

*Calise v. Casa Redimix Concrete Corp.*,
  2022 WL 355665 (S.D.N.Y. 2022)................................................................ 30

*Callahan v. HSBC Sec. (USA) Inc.*,
  2024 WL 1157075 (S.D.N.Y. 2024).............................................................. 26

*Carlton v. Mystic Transp., Inc.*,
  202 F.3d 129 (2d Cir. 2000)........................................................................... 11

*Cherry v. New York City Hous. Auth.*,
  564 F. Supp. 3d 140 (E.D.N.Y. 2021) ................................................................. 22

*Chiara v. Town of New Castle*,
  126 A.D.3d 111 (2nd Dep't 2015) ........................................................................ 11

*Claybrooks v. Am. Broad. Companies, Inc.*,
  898 F. Supp. 2d 986 (M.D. Tenn. 2012) ................................................................ 8

*Cornwell v. Robinson*,
  23 F.3d 694 (2nd Cir. 1994) ........................................................................... 14, 18

*Cosme v. Henderson*,
  287 F.3d 152 (2nd Cir. 2002) ............................................................................. 21

*Dawson v. Cty. of Westchester*,
  373 F.3d 265 (2d Cir. 2004) ............................................................................... 17

*Duarte v. St. Barnabas Hosp.*,
  265 F. Supp. 3d 325 (S.D.N.Y. 2017) .................................................................. 26

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015) ........................................................................................... 20

*Engelmann v. Natl. Broadcasting Co., Inc.*,
  1996 WL 76107 (S.D.N.Y. Feb. 22, 1996) ..................................................... 17, 18

*Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*,
  265 F. Supp. 3d 179 (D. Conn. 2017) ................................................................... 5

*Equal Opportunity Empl. Commn. v. United Health Programs of Am., Inc.*,
  213 F Supp 3d 377 (E.D.N.Y. 2016) ............................................................... 21, 22

*Faison v. Leonard St., LLC*,
  2009 WL 636724 (S.D.N.Y. Mar. 9, 2009) ..................................................... 20, 21

*Farmer v. Shake Shack Enterprises, LLC*,
  473 F. Supp. 3d 309 (S.D.N.Y. 2020) ......................................................... 16, 18, 19

*Feingold v. New York*,
  366 F.3d 138 (2d Cir. 2004) ............................................................................... 22

*Fowler v. Scores Holding Co., Inc.*,
  677 F. Supp. 2d 673 (S.D.N.Y. 2009) ................................................................... 3

*Fox v. Costco Wholesale Corp.*,
   918 F.3d 65 (2d Cir. 2019) ................................................................................... 27

*Friedl v. City of New York*,
   210 F.3d 79 (2d Cir. 2000) ................................................................................ 8, 13

*Friel v. Cnty. of Nassau*,
   947 F. Supp. 2d 239 (E.D.N.Y. 2013) ................................................................. 15

*Frilando v. New York City Transit Auth.*,
   513 F. Supp. 3d 356 (S.D.N.Y. 2021), *aff'd*, 2022 WL 3569551 (2d Cir. Aug. 19, 2022) ......... 8

*Gottwald v. Sebert*,
   40 N.Y.3d 240 ...................................................................................................... 28

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993) ........................................................................................ passim

*Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
   470 F. Supp. 2d 345 (S.D.N.Y. 2007) ................................................................. 19

*Heart of Atlanta Motel, Inc. v. United States*,
   379 U.S. 241 (1964) ............................................................................................... 5

*Higueros v. New York State Cath. Health Plan, Inc.*,
   526 F. Supp. 2d 342 (E.D.N.Y. 2007) .......................................................... 25, 26

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ............................................................................................. 3, 4

*Honeyfund.com, Inc. v. DeSantis*,
   622 F. Supp. 3d 1159 (N.D. Fla. 2022) ................................................................. 5

*Goel v. Bunge,Ltd.*,
   820 F.3d 554 (2d Cir. 2016) ........................................................................ 8, 14, 17

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
   716 F.3d 10 (2d Cir. 2013) ................................................................................... 27

*Leibowitz v. Cornell Univ.*,
   445 F.3d 586 (2d Cir. 2006) ................................................................................. 17

*Lewis v. Danos*,
   83 F.4th 948 (5th Cir 2023) ................................................................................. 23

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015) ............................................................................ 10

*Lynch v. Southampton Animal Shelter Found. Inc.*,
   278 F.R.D. 55 (E.D.N.Y. 2011) ......................................................................... 5

*Makhsudova v. City of New York*,
   2022 WL 1571152 (S.D.N.Y. 2022) ........................................................... 20, 21

*Marchuk v. Faruqi & Faruqi, LLP*,
   100 F. Supp. 3d 302 (S.D.N.Y. 2015) ........................................................ 17, 21

*McKenney v. New York City Off-Track Betting Corp.*,
   903 F. Supp. 619 (S.D.N.Y. 1995) ................................................................. 18

*Mendoza v. Zirkle Fruit Co.*,
   301 F.3d 1163 (9th Cir.2002) ....................................................................... 24

*Michael Grecco Prods., Inc. v. Alamy, Inc.*,
   372 F. Supp. 3d 131 (E.D.N.Y. 2019) ........................................................... 12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2nd Cir. 2013) .................................................................. passim

*Mitura v. Finco Servs., Inc.*,
   2024 WL 232323 (S.D.N.Y. 2024) ................................................ 22, 28, 29, 30

*Mondschein v. NY 101, Inc.*,
   2020 WL 1275471 (E.D.N.Y. 2020) ......................................................... 27, 28

*Moore v. Hadestown Broadway Ltd. Liab. Co.*,
   2024 WL 989843 (S.D.N.Y. 2024) ....................................................... 3, 7, 9, 19

*Muhammad v. New York City Tr. Auth.*,
   52 F. Supp. 3d 468 (E.D.N.Y. 2014) ............................................................. 20

*Mullins v. City of New York*,
   626 F.3d 47 (2d Cir. 2010) ............................................................................ 25

*Natl. Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
   74 F. Supp. 2d 221 (E.D.N.Y. 1999) ......................................................... 23, 24

*Natl. Org. for Women, Inc. v. Scheidler*,
   510 US 249 (1994) ........................................................................................ 23

*Norman v. NYU Langone Health Sys.*,
   2021 WL 5986999 n.2 (2d Cir. Dec. 17, 2021) ...................................................... 29

*Norwood v. Harrison*,
   413 U.S. 455 (1973) ................................................................................................. 3

*Odigie v. Gateway Sec. Guard Servs., Inc.*,
   213 A.D.3d 495 (1st Dep't 2023) ......................................................................... 27

*Oram v. SoulCycle LLC*,
   979 F. Supp. 2d 498 (S.D.N.Y. 2013) .................................................................. 25

*Patane v. Clark*,
   508 F.3d 106 (2nd Cir. 2007) ............................................................................... 16

*Perry v. Slensby*,
   2018 WL 1136922 (S.D.N.Y. 2018) ............................................................... 16, 17

*Podell v. Citicorp Diners Club, Inc.*,
   859 F. Supp. 701 (S.D.N.Y. 1994) ....................................................................... 14

*Porsch v. LLR, Inc.*,
   380 F. Supp. 3d 418 (S.D.N.Y. 2019) .................................................................... 5

*Porter v. Dartmouth-Hitchcock Med. Ctr.*,
   92 F.4th 129 (2nd Cir. 2024) ............................................................................... 11

*Posr v. City of New York*,
   835 F. Supp. 120 (SDNY 1993) ........................................................................... 19

*Pucino v. Verizon Wireless Communications, Inc.*,
   618 F.3d 112 (2nd Cir. 2010) .......................................................................... 13, 14

*Quinby v. WestLB AG*,
   2007 WL 1153994 (S.D.N.Y. 2007) ......................................................... 11, 15, 16

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) ............................................................................................ 4, 6

*Redd v. New York Div. of Parole*,
   678 F.3d 166 (2nd Cir. 2012) ....................................................................... passim

*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984) ............................................................................................ 3, 4

*Robertson v Amtrak/Natl. R.R. Passenger Corp.*,
   400 F. Supp. 2d 612 (S.D.N.Y 2005)................................................................. 6

*Robinson v. Jacksonville Shipyards, Inc.*,
   760 F. Supp. 1486 (M.D. Fla. 1991)......................................................... 5, 6, 10

*Roelcke v. Zip Aviation, LLC*,
   2018 WL 1792374 (S.D.N.Y. Mar. 26, 2018) ...................................................... 29

*Rotary Int'l v. Rotary Club of Duarte*,
   481 U.S. 537 (1987)..................................................................................... 4

*Ruiz v. Lenox Hill Hosp.*,
   146 A.D.3d 605 (1st Dep't 2017) ................................................................... 26

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
   547 U. S. 47  (2006)..................................................................................... 4

*Saxe v. State Coll. Area Sch. Dist.*,
   240 F.3d 200 (3d Cir. 2001).................................................................... passim

*Schulman v. Anderson Russell Kill & Olick, P.C.*,
   458 N.Y.S.2d 448 (N.Y. Sup. Ct. 1982) .......................................................... 29

*Sclafani v. PC Richard & Son*,
   668 F. Supp. 2d 423 (E.D.N.Y. 2009) ............................................................. 16

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
   473 U.S. 479 (1985)..................................................................................... 23

*Shi-Hsin Chang v. Phoenix Satellite Television (U.S.), Inc.*,
   2014 WL 5017838 (S.D.N.Y. Sept. 22, 2014).................................................... 29

*Sletten v. LiquidHub, Inc.*,
   2014 WL 3388866 (S.D.N.Y. July 11, 2014) ..................................................... 29

*Sorrell v. IMS Health Inc.*,
   564 U. S. 552 (2011)..................................................................................... 4

*Springs v. City of New York*,
   2020 WL 3488893 (S.D.N.Y. June 26, 2020) .................................................... 20

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008)............................................................... 13, 15, 17

*Swierkiewicz v. Sorema N. A.,*
    534 U.S. 506 (2002) ................................................................................. 2, 21

*Terry v. Ashcroft,*
    336 F.3d 128 (2d Cir. 2003) ........................................................................ 19

*Torres v. Gristede's Operating Corp.,*
    628 F. Supp. 2d 447 (S.D.N.Y. 2008) .......................................................... 28

*Trans World Airlines, Inc. v. Hardison,*
    432 U.S. 63 (1977) .................................................................................. 20, 21

*Tribune Co. v. Purcigliotti,*
    869 F. Supp. 1076 (S.D.N.Y. 1994) ............................................................. 24

*Trollinger v. Tyson Foods, Inc.,*
    370 F.3d 602 (6th Cir. 2004) ....................................................................... 24

*Ulrich v. Soft Drink, Brewery Workers & Delivery Employees, Indus. Employees,*
    *Warehousemen, Helpers & Miscellaneous Workers, Greater New York & Vicinity, Local*
    *Unio*n No. 812,
    2019 WL 6498089 (S.D.N.Y. 2019) ............................................................. 27

*United States v. O'Brien,*
    391 U.S. 367 (1968) ...................................................................................... 3

*Van Praagh v. Gratton,*
    993 F. Supp. 2d 293 (E.D.N.Y. 2014) .......................................................... 12

*Vega v. Hempstead Union Free Sch. Dist.,*
    801 F.3d 72 (2d Cir. 2015) .......................................................... 2, 12, 15, 27

*Williams v. New York City Hous. Auth.,*
    61 A.D.3d 62 (1st Dep't 2009) ..................................................................... 10

*Wisconsin v. Mitchell,*
    508 U.S. 476 (1993) ...................................................................................... 4

*Wise v. New York City Police Dept.,*
    928 F Supp 355 (S.D.N.Y. 1996) ..................................................... 13, 14, 18

*Youmans v. Smith,*
    153 N.Y. 214 (1897) .................................................................................... 27

*Zarda v. Altitude Express, Inc.,*
    883 F.3d 100 (2d Cir. 2018) ........................................................................ 12

*Zimmerman v. Poly Prep Country Day School*,
   888 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................................... 23

**Rules**

Fed.R.Civ.P. 12(b)(6)..................................................................................................... 19

**Other Authorities**

N.Y.C. Admin. Code § 8-130(a) ................................................................................... 1

Plaintiff[1] submits this memorandum of law in opposition to Defendants' motion to dismiss Plaintiff's FAC, dated July 17, 2024 [Dkt Nos. 57-60] (the "Motion").

## PRELIMINARY STATEMENT

"Time and again, businesses and other commercial entities have claimed constitutional rights to discriminate.  And time and again, this Court has courageously stood up to those claims." *303 Creative LLC v. Elenis*, 600 U.S. 570, 623 (2023) (Sotomayor, J. dissenting).  Defendants evidently believe that, merely because they are in the business of filming and displaying 'reality' television, the First Amendment provides them the unfettered right to discriminate against their employees.  If Defendants were correct, which they are not, then every employer in the entertainment industry would be permitted to engage in invidious discrimination against their employees, such as subjecting employees to racially-charged slurs and requiring their employees to engage in *quid pro quo* "casting-couch" activities, under the guise of "creative expression."

Well-settled law holds otherwise.  Indeed, "time and again" the Supreme Court of the United States reminds employers that whatever First Amendment rights they might have are qualified by employment discrimination laws' proscriptions against the non-communicative discriminatory effects Defendants' speech.  The First Amendment does not immunize Defendants from liability simply because Defendants claim to be in the business of creative expression.

Defendants also cannot absolve themselves of liability for unlawful retaliation, sex/gender

---

[1] Plaintiff respectfully incorporates by reference all defined terms included in her first amended complaint dated June 12, 2024 [Dkt. No. 54] (the "FAC") by reference as if fully stated and defined herein. Plaintiff's FAC asserts thirty-three (33) claims against Defendants both individually and collectively under the Americans with Disabilities (the "ADA"), Title VII of the Civil Rights Act of 1965 ("Title VII"), alleges that Defendants violated the Racketeer Influenced And Corrupt Organization Act ("RICO"), New York State Labor Laws ("NYLL"), New York State Human Rights Laws (Ex. L. §292 et seq.) ("NYSHRL"), and/or the New York City Human Rights Laws (N.Y.C. Admin. Code § 8-130(a) et seq.) ("NYSCHRL").   Plaintiff's claims may be categorized as follows: counts 1, 3, 6, 9, 11, 14, 17-29 (the "Disability-Related Claims"); counts 2, 4, 7, 10, 12, 15,  17 (the "Sex/Gender-Related Claims"); counts 5, 8, 13 , 16 (the "Religious-Based Discrimination Claims"); count 29 (the "RICO Claim"); counts 21 and 22 (the "NYLL Claims"); and counts 30-33 (the "Letter-Retaliation Claims").

discrimination, religious discrimination, and hostile work environment claims by misrepresenting the well-plead allegations in Plaintiff's FAC.  Indeed, the entirety of Defendants' Motion attempts to trivialize Plaintiff's allegations of unlawful discrimination by transparently misrepresenting the FAC's nine hundred fifty-five (955) allegations as little more than petty slights.  Defendants, however, proffer no viable factual or legal basis for this Court to find that the FAC is inactionable because the FAC recounts—in vivid detail—the years of unlawful discrimination Defendants subjected Plaintiff to.  This Court, therefore, should deny Defendants' Motion.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the Court must draw all reasonable inferences in Plaintiff's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  A Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007).  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citing *Twombly*, 550 U.S. at 570).

In *Swierkiewicz* the Supreme Court held that an employment discrimination complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 506 (2002).  The Second Circuit harmonized this ruling with the subsequent *Twombly* and *Iqbal* decisions and now requires an employment discrimination plaintiff to plead only that "(1) the employer took adverse action against [her] and (2) [her] . . . religion, sex, or [other protected trait] was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  Thus, to survive dismissal, an employment discrimination plaintiff need only "assert [enough] nonconclusory factual matter ... to nudge [her] claim[ ] across the line from conceivable to plausible to proceed." *Vega*, 801 F.3d at 85 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-680 (2009); *Twombly*, 550 U.S. at 555-56).  Employment discrimination claims brought under the NYCHRL must be reviewed "independently from, and more

liberally than" their federal and state law equivalents.  *Fowler v.  Scores Holding Co., Inc*., 677 F. Supp. 2d 673, 682 (S.D.N.Y. 2009).

## I.    THE FIRST AMENDMENT IS NOT A DEFENSE TO DISCRIMINATION OR RETALIATION

Defendants' assertion that Plaintiff's Disability-Related Claims must be dismissed because the First Amendment allows them the right to engage in discriminatory behavior defies not just logic—but also precedential Supreme Court, Circuit Court, and District Court precedent.  It is axiomatic that "potentially expressive activities that produce special harms distinct from their communicative impact ... are entitled to no constitutional protection"; therefore, the First Amendment provides Defendants' invidious discrimination against Plaintiff's disability no refuge.  *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984).

### A.  Defendants Do Not Have a Constitutional Right to Discriminate Against Plaintiff

The Supreme Court of the United States has repeatedly held that Defendants' do not have a constitutional right to violate employment discrimination laws by engaging in discriminatory speech. *United States v.  O'Brien*, 391 U.S. 367, 382 (1968) (holding the First Amendment does not provide protection for the "noncommunicative impact of [Defendants'] conduct.").  It is telling that Defendants' main support for their purported First Amendment affirmative defense consists of one (1) non-binding district court decision and one (1) unreported case (both of which actually favor Plaintiff, *infra* §I(C)).  *See* Motion at 8 (citing *Claybrooks. Am. Broad. Companies*, F. Supp. 2d 986, 993 (M.D. Tenn. 2012); *Moore v.  Hadestown Broadway Ltd. Liab. Co.*, 2024 WL 989843, at * 18 (S.D.N.Y. 2024)).  Indeed, Defendants cannot find robust support for this specious argument because the Supreme Court unequivocally ruled that "[i]nvidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, ***but it has never been accorded affirmative constitutional protections.***"  *Hishon v.  King & Spalding*, 467 U.S. 69, 78 (1984) (*quoting Norwood v.  Harrison*, 413 U.S. 455, 470 (1973)) (emphasis added).  Thus, black-

letter precedent precludes this Court from dismissing Plaintiff's Disability-Related Claims, in favor of Defendants' alleged right to free speech, because *Hirshon* counsels that employment discrimination laws do not unconstitutionally abridge an employer's First Amendment rights. *Id.*

In fact, the opposite of Defendants' argument is true: Defendants plainly do not have a First Amendment right to discriminate against Plaintiff because the "government may constitutionally prohibit speech", such as Defendants' discriminatory speech because "its non-expressive qualities promote discrimination." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 208 (3d Cir. 2001) (quoting *R.A.V., 5*05 U.S. at 382–83 (1992). Indeed, the Supreme Court and Circuit Courts consistently hold that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U. S. 552, 567 (2011); *see, e.g., Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) (eliminating discrimination against women is compelling governmental interest); *Roberts*, 468 U.S. at 626 (compelling governmental interest lies in removing barriers to economic advancement and political and social integration that have historically plagued women); *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U. S. 47, 62  (2006) (prohibiting employers from engaging in race-based hiring discrimination). Moreover, Supreme Court precedent requires this Court to deny Defendants' Motion because an employer's First Amendment rights are qualified by employment discrimination laws proscribing against the employer's engagement in unlawfully discriminatory speech. *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) ("In *Hishon*, we rejected the argument that Title VII infringed employers' First Amendment rights. And more recently, in *R.A.V. v. St. Paul* . . . we cited Title VII . . . as an example of a permissible content-neutral regulation of conduct."); *see also R.A.V. v. City of St. Paul,* 505 U.S. 377, 389–90 (1992) (reasoning that a defendant is not "shielded from regulation merely because they express a discriminatory idea or philosophy."). Thus,

4

Defendants cannot weaponize the First Amendment to avoid liability for their discrimination against Plaintiff.[2]

### B. Employment Discrimination Laws Limit Defendants' Right to Free Speech

There is no circumstance in which an entity has an unqualified right to speech and employment discrimination laws that "constitute[]nothing more than a time, place, and manner regulation of speech" validly disallow Defendants from discriminating against Plaintiff. *Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486, 1535 (M.D. Fla. 1991); *Baty v. Willamette Indus., Inc.*, 1997 WL 292123, at *7 (D. Kan. 1997); *Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 194 (D. Conn. 2017) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Defendants' assertion that their alleged First Amendment protections supplant Plaintiff's Title VII claims, therefore, are blatantly false. Federal and state laws proscribing employment discrimination "do not regulate speech"; rather, these laws "target[] conduct—discriminating with respect to ... compensation, terms, conditions, or privileges of employment—and only incidentally burden[]speech." *See Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1178 (N.D. Fla. 2022), *aff'd sub nom. Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024).

Like the Supreme Court's analysis of Title II in *Heart of Atlanta Motel, Inc.*, employment discrimination effectuates a public policy goal to "vindicate the deprivation of personal dignity that surely accompanies denials of equal" treatment in the workplace. *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964). Indeed, preventing discrimination in the workplace. . . is

---

[2] This Court should also deny Defendants' unsupported request to strike certain of the FAC's allegations because motions to strike "are not favored" and will be granted only if "it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011); *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 429 (S.D.N.Y. 2019). As Defendants argue only that these allegations somehow infringe Defendants' First Amendment rights, and not that these allegations are inadmissible, prejudicial, and/or utterly irrelevant to Plaintiff's claims, this Court should not strike any of the FAC's allegations. *See Lynch*, 278 F.R.D. at 63; *Porsch*, 380 F. Supp. 3d at 429.

not only a legitimate, but a compelling, government interest." *Saxe*, 240 F.3d at 209; *Robinson*, 760 F. Supp. at 1535. Defendants' argument that the FAC does not state a claim for Disability-Related Discrimination because forcing Defendants *not* to discriminate against Plaintiff unlawfully either compels speech or curtails expression, therefore, must fail.[3]

Merely because some of Defendants' discrimination against Plaintiff was caught on film does not exempt Defendants from employment discrimination liability—to the contrary it is proof of discrimination. *Saxe*, 240 F.3d at 208. "Few audiences are more captive than the average worker" and Plaintiff, as Defendants' 'average worker' is entitled to robust protections against "offensive speech." *Robinson,* 760 F. Supp. at 1535; *see also Saxe*, 240 F.3d at 206. Thus, as Defendants' interest in creating morbidly salacious reality television is "of such slight social value" their interest is clearly outweighed "by the social interest in order and morality" effectuated by eradicating insidious discrimination against Plaintiff because she is disabled. *R.A.V.*, 505 U.S. at 382–83; *Saxe*, 240 F.3d at 208 ("[A] supervisor's statement 'sleep with me or you're fired' may be proscribed not on the ground of any expressive idea that the statement communicates, but rather because it facilitates the threat of discriminatory conduct. Despite the purely verbal quality of such a threat, it surely is no more 'speech' for First Amendment purposes than the robber's demand 'your money or your life.'"); *R.A.V.*, 505 U.S. at 382–83; *Saxe*, 240 F.3d at 206. Moreover, the majority of the discriminatory conduct alleged in Plaintiff's FAC does not even arguably have a connection to Defendants' alleged "creative expression" in broadcasting a television show, nor is Plaintiff's FAC uniquely predicated on whether Defendants' casted Plaintiff in future Real Housewives programs. This Court, therefore,

---

[3] Furthermore, to the extent Defendants' argue that the First Amendment vests them the right discriminate against Plaintiff by pressuring her to relapse into her alcohol use disorder on-camera, such discriminatory conduct is clearly proscribed by employment discrimination laws and not salvaged by the First Amendment. *Robertson v Amtrak/Natl. R.R. Passenger Corp.*, 400 F. Supp. 2d 612, 623 (S.D.N.Y 2005); *see, e.g.*, FAC ¶¶68, 73 81-87, 135-136, 140-145, 171-176, 214-241.

may not consider Defendants' affirmative defense to these charges because it falls outside the four-corners of the FAC.  *C.f. Moore*, 2024 WL 989843 at *15.

In actuality, Plaintiff's FAC states a claim for disability discrimination predicated on Defendants' unlawful, non-communicative, discriminatory *behind the scenes* conduct throughout the pendency of Plaintiff's employment with Defendants as the FAC is replete with allegations that Defendants perversely discriminated against her on the basis of her disabilities and that such discrimination was never intended to be (and never was) a part of Defendants' televised product.[4] For example, Defendants outright refusal to accommodate Ms. McSweeney's request to attend *off camera* AA meetings while filming RHUGT, and Defendants continuing failure to even attempt to engage in an interactive process necessary to accommodate Plaintiff's alcohol-use disorder, has absolutely no bearing on Defendants' alleged "creative process" because the requested accommodation would not be and never was be televised.  FAC ¶¶211-217, 229-235.  Similarly, Defendants' attempt to force Plaintiff to relapse into alcohol-use disorder so that Defendants could sell dramatic television, is also not protected under the First Amendment because the act of discriminating against Plaintiff itself constitutes unprotected non-communicative conduct.  *See Saxe*, 240 F.3d at 208.  In essence, the First Amendment does not—and cannot—provide a basis to dismiss Plaintiff's discrimination claims.

**C.  Defendants' Reliance on *Claybrooks* and *Moore* is Misplaced**

Simply because Defendants create a television program does not, somehow, absolve Defendants of liability for discriminating against Plaintiff.  Neither *Moore* nor *Claybrooks* support

---

[4] See, e.g., FAC ¶¶3-4, 65-66, 71-72, 76-78, 84-89, 106-107, 132-135, 137, 151, 154, 158, 164-165, 171, 173-177, 206, 210-218, 224-235, 393, 434, 466, 534 (evidencing Defendants' failure to provide Plaintiff reasonable accommodations or engage in an interactive process to accommodate Plaintiff's Disabilities); *id.* ¶¶67, 70, 80-81, 91, 136, 138-139, 142-145, 147-153, 155-157, 190-193, 220-223, 238-239 (evidencing Defendants' discriminatory conduct because of Plaintiff's mental health disabilities).

7

the proposition that the non-communitive impacts of discriminatory speech are protected by the First Amendment; instead, *Moore* and *Claybrooks*, synthesized, stand for the narrow proposition that a creative employer may make decisions regarding who to cast, based on protected traits, but only to the extent that such casting decisions further the employer's creative expression. *Id.*; *see also Claybrooks v. Am. Broad. Companies, Inc.*, 898 F. Supp. 2d 986, 999 (M.D. Tenn. 2012). To that end, very few of the discriminatory acts complained of in the FAC are related to whether Defendants chose to cast her;[5] rather, Plaintiff complains that she repeatedly requested accommodations in the form of Defendants' commitment not to interfere with her sobriety by pressuring her to consume alcohol (FAC ¶¶88, 106, 132, 136-137, 152-156, 161-162, 173, 188, 209-213, 233, 226, 229), Defendants' ignored Plaintiff's requests for accommodations (FAC ¶¶92, 135, 137, 151, 158, 164, 165), feigned ignorance as to her disability status (*id.* ¶¶123-126, 250, 260), humiliated Plaintiff by negatively discussing Plaintiff's relapse into alcohol use disorder and displays of her mental health disorders (*id.* ¶¶98, 100, 36, 238-240), and treated Plaintiff less well than other cast members who elected to consume alcohol while filming (*id.* ¶¶131, 139, 143-146, 172-175, 220-224, 234).[6] Indeed, Defendants have not and cannot argue that these instances of discrimination are protected "casting decisions"; and therefore, neither *Moore* nor *Claybrooks* compels dismissal of Plaintiff's Disability-Related Claims.

Moreover, *Moore* held that Defendant's First Amendment defense does not protect it from

---

[5] This Court must not consider Exhibit 7 because Defendants impermissibly attempt to convert the FAC's allegations regarding Plaintiff's mental health disability with matter that is outside of the pleadings. *Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000) (vacating dismissal of plaintiff's complaint because a Court relied on exhibits defendants' proffered, which contained factual assertions outside the four-corners of plaintiff's complaint.). Indeed, Defendants state "Plaintiff's FAC . . . ***does not acknowledge this article***", and therefore, this Court may not consider Exhibit 7. *Id.*; *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

[6] Even if this Court dismisses Plaintiff's claims for failure to engage in the interactive process, the factual allegations in support of those claims nonetheless provide further evidence Defendants' unlawful discrimination against Plaintiff. *Frilando v. New York City Transit Auth.*, 513 F. Supp. 3d 356, 364–65 (S.D.N.Y. 2021), *aff'd*, 2022 WL 3569551 (2d Cir. Aug. 19, 2022) ("[F]ailure to engage in a good-faith interactive process is evidence tending to show disability discrimination.")

Plaintiff's four claims of retaliation, which is Defendants' only argument to dismiss that claim. *Moore*, 2024 WL 989843, at *20. In making this distinction, this Court reasoned that a that engagement in discriminatory retaliation is not "related in any way to [an employer's] 'inherently expressive' artistic decisions." *Id.* *20.[7] Thus, *Moore* holds that Plaintiff's Disability-Related retaliation claims are adequately pled. *Id.* Plaintiff's FAC alleges that, as a direct result of Plaintiff's engagement in protected activity: the Individual Defendants provided Plaintiff with unfounded negative performance constituting a veiled threat to her continued employment (FAC ¶138, 141-142, 171-172, 220); Defendants attempted to blackball Plaintiff from continued employment in the entertainment industry (*id.* ¶189-193, 257-259); Defendant Producers acknowledged their retaliation against Plaintiff as "payback for making them look bad" (*id.* ¶248); and Defendants ultimately terminated Plaintiff because she engaged in protected activity (*id.* ¶¶285, 289-290, 292-298).[8] *Moore*, 2024 WL 989843, at *20. This Court should not dismiss Plaintiff's Disability-Related Claims because Plaintiff's Disability-Related Claims do not compel speech nor seek to alter the message of Plaintiff's speech; rather, the Disability-Related Claims are predicated on Defendants' rampant, not constitutionally protected discrimination against Plaintiff's Disabilities. *See* FAC at Counts 1, 3, 6, 9, 11, 14, 17-29.

## II.    PLAINTIFF'S SEX/GENDER-RELATED CLAIMS SHOULD NOT BE DISMISSED

### A.  Defendants Failed to Meet their Burden to Prove that Plaintiff's Sex/Gender-Related Claims and Hostile Work Environment Claims Are Trivial

A Court generally may not dismiss employment discrimination claims upon on a triviality

---

[7] Defendants proffer no argument that Plaintiff's Disability-Related Claims should be dismissed as inadequately pled. See Motion to Dismiss at 8-12. Thus, the adequacy of Plaintiff's Disability-Related Claims must be deemed conceded because Defendants' failure to raise the issue in their moving papers necessarily precludes them from raising this issue on reply. *Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 205 (S.D.N.Y. 2023).
[8] Indeed, Defendant Cohen directly cited Plaintiff's engagement in protected activity as part of the reason Defendants terminated Plaintiff's employment. FAC ¶287.

defense as "[t]he line between complaints that are easily susceptible to dismissal as a matter of law and those that are not is indistinct." *Redd v. New York Div. of Parole*, 678 F.3d 166, 177 (2nd Cir. 2012). This is especially true because claims of discrimination must be analyzed by the totality of the circumstances, which will necessarily require fact-intensive inquiries. *Id.* at 175-76; *Durkin*, 678 F. Supp. 2d at 132 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).[9]

### a. Plaintiff's Sex/Gender-Related Claims Are Not Trivial

To survive dismissal,[10] Plaintiff must only plead facts sufficient to show "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent" and need not plead "substantial evidence of discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Plaintiff's FAC readily satisfies this burden. If this Court determines that Plaintiff's Sex/Gender-Related Claims are uniquely predicated on three (3) communications, or even just the one text between Defendant Cohen and Plaintiff, which they are not, those communications are sufficient to state a claim for Sex/Gender-Related Discrimination. Defendants' Motion to Dismiss "place[s] too much emphasis" on their contention that NYCHRL and NYSHRL are not "general civility code[s]" and "too little emphasis on" the fact that "even 'a single comment' may be actionable in appropriate circumstances."[11] *Mihalik*, 715 F.3d at 114; *Redd*, 678 F.3d at 176; *see also Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 80 (1st Dep't 2009) ("One can easily

---

[9] Defendants' moving papers fail to mention, in any capacity, that Defendants bear the burden to prove that Plaintiff's Sex/Gender-Related Claims on a motion to dismiss predicated on a triviality affirmative defense. *See* Motion to Dismiss at 12-18. As Defendants raised an affirmative defense of triviality, it is their burden to prove it. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 111 (2nd Cir. 2013).

[10] Defendants assert that this Court must dismiss Plaintiff's ADA and Title VII claims against Defendants Cohen, Ward, Paparazzo, and Shannon; however, the FAC does not allege ADA and Title VII claims against these Defendants. *See generally* FAC. As such, this argument is moot.

[11] For the reasons articulated, *supra* §I, Defendants' on-air discriminatory comments towards Plaintiff are no more protected by the First Amendment than Defendants' disability discrimination against Plaintiff. *Saxe*, 240 F.3d at 209; *Robinson*, 760 F. Supp. at 1535; *Baty*, 1997 WL 292123, at *7.

imagine a single comment that objectifies women being made in circumstances where that comment would, for example, signal views about the role of women in the workplace and be actionable."); *but see* Motion at 16.

Indeed, though Plaintiff is not required to plead direct evidence to support her Sex/Gender-Related Claims, the FAC clearly evidences the "proverbial smoking gun" by pleading numerous "statements or actions by [the employer's] decisionmakers" that were discriminatory in nature. *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 149 (2nd Cir. 2024) (quotations omitted). This is especially true considering Plaintiff's allegations that Defendant Cohen, a person with the authority and/or responsibility to decide whether to terminate Plaintiff, made sexually discriminatory remarks against her. *Quinby v. WestLB AG*, 2007 WL 1153994, at *6 (S.D.N.Y. 2007). Thus, contrary to Defendants' argument, Defendant Cohen's communications to Plaintiff are sufficient to state a claim for Sex/Gender-Related Discrimination. *Id.*; *but see* Motion at n.10. For example, Defendant Cohen's remark that Plaintiff's decision to surgically alter her body and obtain larger breasts made her a "real" Housewife, which evidences his belief that Plaintiff must look the part to succeed in her place of work. FAC ¶¶178, 614; *see* also Def. Ex. 12. Defendant Cohen also commented that Plaintiff's platonic kiss with co-worker Tinsley Mortimer was "hot" and "steamy" and inquired into the appearance of a tattoo near Plaintiff's genital area, which directly evidences Defendant Cohen's hyper sexualization of female employees. FAC ¶110-112. Thus, considering the totality of the circumstances discussed even if these three (3) statements comprised the entirety of Plaintiff's Sex/Gender-Discrimination claims (which they do not)—these three statements "bear a more ominous significance" and cannot properly be disposed of as "stray remarks"; rather, Defendant Cohen's remarks "evidence invidious discrimination" on the basis of sex/gender. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (quotations omitted); *Chiara v. Town of New Castle*,

11

126 A.D.3d 111, 124 (2nd Dep't 2015).

      **b. Plaintiff Adequately Pled that Defendants Engaged in Unwanted Sex/Gender-Based Conduct**

Plaintiff's FAC adequately pleads her Sex/Gender-Related Claims because Plaintiff alleged facts sufficient to show that she was the target of "unwanted gender-based conduct." *Mihalik*, 715 F.3d at 110; *Redd*, 678 F.3d at 182. Contrary to Defendants' assertion that Plaintiff pled only three (3) instances of discriminatory conduct, the FAC states Sex/Gender-Related claims by "creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87*; Redd*, 678 F.3d at 182 (to survive a motion to dismiss a plaintiff is not required to "recount each and every instance of abuse to show pervasiveness.") Defendants, however, impermissibly contest the veracity of Plaintiff's allegations in contending that Cohen's "gender-based conduct" was not "unwanted" as a desperate attempt to dismiss Plaintiff's claims.[12] This argument is as misguided as it is specious. Indeed, Defendants' argument that Plaintiff wanted Cohen to sexually harass her is tantamount to the argument that a rape victim "asked for it." *See* Motion at 17. This argument is both wrong and not surprising as it is in line with how Defendants derogate female employees—if female employees are sexually harassed then they must have "wanted" it and if a female employee complains of sexual harassment she must

---

[12] Defendants cannot controvert the veracity of allegations in the FAC as a basis to dismiss the FAC. *Michael Grecco Prods., Inc. v. Alamy, Inc*., 372 F. Supp. 3d 131, 135 (E.D.N.Y. 2019) (A Court must not consider a dismissal argument, in essence, claiming "the allegations [in the FAC] are false."); *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 299 (E.D.N.Y. 2014). What is relevant and as evidenced by Plaintiff's text exchange with Defendant Cohen, however, Defendants created a culture whereby Plaintiff felt as if she was required to undergo a breast augmentation to officially become a 'real Housewife.' *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 120 (2d Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) ("employment decisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females" (quotations omitted); but see Motion to Dismiss at 17; Cohen Decl. at Ex. 1.

be "hysterical."[13]

Contrary to Defendants' argument, Plaintiff's FAC pleads a "mosaic of discrimination" by enumerating multiple instances where Defendant Cohen subjected Plaintiff to significant and unwanted gender-based conduct, such as allegations that Defendant Cohen inappropriately commented on: a tattoo that Plaintiff has near her genital area (*id.* ¶112), Plaintiff's breasts (*id.* ¶178), and Plaintiff's intimate moments (*id.* ¶110).[14]  Plaintiff also pled that Defendants repeatedly projected their discriminatory animus against women unto Plaintiff by engaging in conduct whereby Plaintiff her continued employment was dependent on her behaving like a 'hysterical', 'irrational', 'emotional' sex-kitten.  *See, e.g.*, FAC ¶¶99, 115, 178, 218, 250 275.  Thus, as a matter of law, Plaintiff's Sex/Gender-Related Claims must not be dismissed because Defendant Cohen's comments "objectif[ying] women . . . rating the female employees' appearances, and making lascivious comments about women's outfits and bodies" constitutes "more than petty slights or trivial inconveniences."  *Mihalik*, 715 F.3d at 114; *but see* Motion at 15-16.

The FAC's allegations that Defendants discriminated against other similarly-situated females throughout their employment further bolsters Plaintiff's Sex/Gender-Discrimination claims because these allegations evidence that Defendants' workplace promulgated "a discriminatory policy or practice."  *Brown*, 257 F.3d at 253; *Pucino*, 618 F.3d 112, 118; *Wise v. New York City Police Dept.*, 928 F Supp 355, 365 (S.D.N.Y. 1996).  It is black-letter law that Plaintiff may state a claim for

---

[13] Defendants' continued attempt to victim-blame Plaintiff is evidenced by Defendants' inclusion of Exhibit 11, an article discussing Plaintiff's breast augmentation, which Defendants' use to somehow support their specious contention that Plaintiff wanted to be discriminated against.  Motion to Dismiss at 13.  This Court should not consider Exhibit 11.  *Friedl*, 210 F.3d at 83 (reversing dismissal of plaintiff's complaint and holding that "a district court errs when it consider[s] affidavits and exhibits submitted by defendants . . . or relies on factual allegations contained in legal briefs or memoranda . . . in ruling on a 12(b)(6) motion to dismiss.").  *Arguendo*, if this Court does consider Exhibit 11, it must only consider it to the extent that the article represents press coverage and may not consider the truth of the contents therein.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 428 (2d Cir. 2008).

[14] Defendant Cohen, himself, admits that  "I've asked too many inappropriate questions.  I've asked women questions about their vaginas, their sex lives . . ."  FAC ¶350.

sex/gender discrimination by alleging not only that Defendants discriminated against her *but also* that Defendants discriminated against other members of her protected class. *Wise*, 928 F Supp at 365. Such allegations evidence that Defendants' pattern of discrimination "was sex-based and reflect hostility to women" and demonstrate specific ongoing discriminatory policies or practices. *Cornwell v. Robinson*, 23 F.3d 694, 704 (2nd Cir. 1994); *Pucino*, 618 F.3d at 118; *but see* Motion ¶18-19.[15]

The allegations regarding Defendants' discrimination against other women evidence that Defendants engaged in sex-based discrimination reflecting hostility towards women and, contrary to Defendants' argument that Plaintiff alleged only three (3) discriminatory communications, this Court must not analyze the sufficiency of Plaintiff's Sex/Gender-Related Claims as "individual incidents isolation." *Redd*, 678 F.3d at 176; but see Motion at 12-13. First, the FAC alleges that, throughout the pendency of the *Real Housewives* franchise, male employees often enjoy exaltation and their poor behavior is excused[16] while female employees are frequently objectified and their poor behavior attributed to archetypical female hysteria.[17] Second, the FAC includes numerous direct quotes from Defendant Cohen articulating that he frequently objectifies women by commenting on their sexuality, bodies, and intelligence. *Id.* ¶¶349-350, 354. The FAC specifically quotes Defendant Cohen's admission that he views and treats female cast in a derogatory, hypersexualized manner because he cannot believe that female cast members with "big . . . boobs" could be independently intelligent and

---

[15] Defendants' argument in footnote 13 of the Motion to Dismiss fails, as it is yet another impermissible attempt to controvert the veracity of the FAC's allegations, which this Court must assume the truth of. *See Podell v. Citicorp Diners Club, Inc.*, 859 F. Supp. 701, 704 (S.D.N.Y. 1994); *Goel*, 820 F.3d at 559.

[16] Though Defendants claim that allegations regarding Defendant Paparazzo's sexual harassment towards male employees belie Plaintiff's Sex/Gender-Related Claims, the Second Circuit has held otherwise. *Brown v. Henderson*, 257 F.3d 246, 254 (2d Cir. 2001) ("[I] t may be the case that a co-worker or supervisor treats both men and women badly, but women worse."). Moreover, Plaintiff does not need to allege that "Cohen's texts with males are different"--Plaintiff sufficiently alleged that she was treated less well than male employees. *Mihalik, Inc.*, 715 F.3d at 110 ("[C]omments . . . objectifying women's bodies . . . even if considered 'isolated,' clearly signaled that defendant considered it appropriate to foster an office environment that degraded women.")

[17] *See, e.g.,* FAC ¶¶52, 256, 347, 355 (evidencing Defendants' favorable treatment towards male employees); *id.* ¶¶50-51, 58, 109, 349-350, 354. (evidencing Defendants' unfavorable treatment towards female cast members).

successful. *Id.* ¶351.  Third, the FAC identifies at least twelve (12) female cast members who have complained that Defendants' workplace culture was permeated with discrimination against women. *Id.* ¶356.  Thus, in viewing the "totality of the circumstances" alleged in the FAC, including allegations that Defendants also discriminated against other similarly-situated members of Plaintiff's protected class, this Court should find that Plaintiff adequately alleged that Defendants engaged in unwanted gender-based conduct against not only Plaintiff but other similarly situated female employees. *Durkin v. Verizon New York, Inc.*, 678 F. Supp. 2d 124, 132 (S.D.N.Y. 2009) (quoting *Harris.*, 510 U.S. at 23).

### c. Plaintiff Adequately Pled that Defendants' Took Adverse Employment Action Against Her

An adverse employment action may include allegations that Plaintiff suffered "termination of employment, a demotion . . ., a less distinguished title, a material loss of benefits, [and/or] significantly diminished material responsibilities." *Vega*, 801 F.3d at 87.  Termination is the clearest example of an adverse employment action sufficient to withstand a motion to dismiss. *Friel v. Cnty. of Nassau*, 947 F. Supp. 2d 239, 251 (E.D.N.Y. 2013).  Here, Plaintiff pled Defendants terminated her employment that after she complained of *inter alia* sex/gender discrimination, which unequivocally alleges that Plaintiff suffered an adverse employment action.  FAC ¶¶286-287; 291, 298.[18] [19]

---

[18] As discussed, infra §II(C)(b), Cohen's derogatory remarks evidencing his beliefs that female casts members must fit into a stereotypical mode, coupled with Plaintiff's termination when she elected not to fit into that mode, sufficiently plead that she suffered an adverse employment action. *Quinby v. WestLB AG*, 2007 WL 1153994, at *7 (S.D.N.Y. Apr. 19, 2007) ("According to Plaintiff, Parker mischaracterized her as obstinate and insubordinate at the workplace, even while he tolerated insubordination from male employees.").

[19] Defendants' request for the Court to take judicial notice of the news article in Ex. 4 should be denied, as the article is being offered to prove the truth of the matter asserted, i.e., that that Defendants' decisions not to cast Plaintiff on RHONY Season 14 and Legacy were made on certain dates, as opposed to showing that the decisions were publicized on a certain date. The former is impermissible. *C.f. Staehr v Hartford Fin. Services Group*, Inc., 547 F3d 406, 425 (2d Cir 2008) ("The materials . . . were offered to show that certain things were said in the press, and that assertions were made in lawsuits and regulatory filings . . . [n]one of those materials were offered for the truth of the matter asserted.").

### d. Plaintiff Adequately Pled that Defendants Discriminated Against Her Because of Her Sex/Gender

To survive a motion to dismiss, it is well-settled that a Plaintiff need only plead facts sufficient to show that discrimination might have motivated an adverse employment action; therefore, Defendants' argument that Plaintiff's FAC should be dismissed for failure to plead causation with particularity is incorrect. *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 325-26 (S.D.N.Y. 2020); *but see* Motion at 17. Plaintiff's FAC, however, does allege a direct, causal link between Defendants' discrimination against her because of her sex and Defendants' decision to terminate her employment. *Farmer*, 473 F. Supp. 3d at 325-26.[20] Indeed, Plaintiff pled—in no uncertain terms—that Defendants terminated her employment when she stopped playing ball, i.e. comporting to Defendants' idealized vision of how a female cast member must behave. *Id.* Specifically, Plaintiff alleged that she "issued a formal complaint related to Defendants' unlawful employment practices" (FAC ¶291) and that after she issued this complaint, Defendants terminated her employment and that Defendant Cohen referenced the fact that her complaint contributed to Defendants' decision to terminate her employment. FAC ¶286-287, 298.

### e. Plaintiff Adequately Alleges that Defendants' Created a Hostile Work Environment Because of her Sex and Gender

To avoid dismissal, Plaintiff's pleading must only evidence that her work environment was hostile to the extent that she was faced with "a reasonable employee would find the conditions of her employment altered for the worse" and that that the hostility went beyond "ordinary socializing in the workplace" *Patane v. Clark*, 508 F.3d 106, 113 (2nd Cir. 2007); *Perry v. Slensby*, 2018 WL 1136922, at *8 (S.D.N.Y. 2018); *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 431 (E.D.N.Y. 2009)

---

[20] *Arguendo*, to the extent that this direct causal link between Defendants' discrimination against Plaintiff because of her sex/gender and Defendants' decision to terminate Plaintiff does not establish but-for causation, it certainly survives Defendants' motion to dismiss because these allegations proffer sufficient circumstantial evidence sufficient to raise an inference of discriminatory intent. *Quinby*, 2007 WL 1153994, at *6; FAC ¶¶178, 275, 319-320, 331-332, 339.

("[t]he environment need not be unendurable or intolerable.").[21] Thus, the Court may review a myriad of non-dispositive factors to determine whether Plaintiff adequately pled her Sex/Gender-Related hostile work environment claim, including the frequency of the discriminatory conduct and the severity of the complained of conduct.[22] *Perry*, 2018 WL 1136922, at *5 (citing *Harris*, 510 U.S. at 23); *Dawson v. Cty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004). Accordingly, hostile work environment claims are best resolved at a later stage in litigation, i.e. not at the motion to dismiss stage, because such claims are necessarily fact dependent, and may be later proven through discovery. *See Leibowitz v. Cornell Univ.*, 445 F.3d 586, 592 (2d Cir. 2006); *Redd*, 678 F.3d at 177-178; *Kear*, 2007 WL 431883 at *6. Plaintiff's FAC readily satisfies this standard for the reasons articulated, *supra* §§II(A)(a)-(d).[23]

### B. Plaintiff's Sex/Gender Discrimination Claims are Timely

Plaintiff's Sex/Gender-Related Claims are undoubtably timely because the discriminatory conduct alleged, *supra* §§II(A), evidences a continuing violation that tolls the statute of limitations.[24] As a threshold matter, the statute of limitations on an employment discrimination claim does not begin to run until all elements of a claim are present. *Engelmann v. Natl. Broadcasting Co., Inc.*, 1996 WL 76107, at *14 (S.D.N.Y. Feb. 22, 1996). When, however, Defendants' discrimination is part of an ongoing pattern, it might be difficult for a Plaintiff to recognize that this pattern is discriminatory.

---

[21] Furthermore, to adequately plead a hostile work environment under the NYCHRL, Plaintiff need only plead that she was treated "less well" because of her protected trait, which she readily satisfies. *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 308 (S.D.N.Y. 2015).

[22] Like sex/gender discrimination claims, an isolated incident may suffice to state a claim for a Hostile Work Environment. *Perry*, 2018 WL 1136922, at *5

[23] For the reasons discussed, *infra* §IV, this Court may not dismiss the Sex/Gender-Related Claims against the Defendant Producers.

[24] This Court may not consider Defendants' Exhibits 8-10 because these documents are not referenced by the FAC, not "integral" to the FAC, and not incorporated by reference in the FAC. *Goel*, 820 F.3d at 559 (holding that courts cannot consider documents outside the complaint even when proffered to evidence whether a claim is timely). *Arguendo*, if this Court does consider Exhibits 8-10, it must consider those documents only to the extent that they evidence "press coverage", which "contained certain information" and cannot consider the truth of the contents therein. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

*Cornwell*, 23 F.3d at 704; *McKenney v. New York City Off-Track Betting Corp.*, 903 F. Supp. 619, 621 (S.D.N.Y. 1995). Thus, in these situations, the statute of limitations does not begin until the last discriminatory act in furtherance of Defendants' pattern. *Cornwell*, 23 F3d at 703.

A continuing violation occurs when "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Engelmann*, 1996 WL 76107 at *14. To evidence a continuing violation, Plaintiff pled that Defendants' animus towards both Plaintiff and other similarly-situated female cast-members was open, notorious, and created a persistent pattern. *McKenney v. New York City Off-Track Betting Corp.*, 903 F. Supp. 619, 622 (S.D.N.Y. 1995). Plaintiff satisfied this burden, as discussed *supra* §§II(A)(a)-(b), through alleging that Defendants either established a pattern of discrimination against sex/gender and/or knew of this culture of sex/gender discrimination took no action to remedy it. *Wise*, 928 F. Supp. at 365; FAC ¶¶178, 275, 319-320, 331-332, 339. Moreover, Plaintiff also pled facts sufficient to show that Defendants engaged in "invidious comments about others in [Plaintiff's] protected class" on the basis of sex/gender. *Farmer*, 473 F. Supp. 3d at 326; *Wise*, 928 F. Supp. at 365; FAC ¶¶99, 110, 112, 115, 178, 218, 250, 275, 350. Accordingly, Defendants' attempt to pigeonhole Plaintiff's Sex/Gender-Related Claims into three (3) isolated communications myopically fails to consider the plethora of allegations evidencing that Defendants' ongoing discrimination against Plaintiff (and other similarly situated female employees) that tolled the applicable statute of limitations. *Engelmann*, 1996 WL 76107 at *14.[25]

---

[25] Plaintiff's reliance on *Ahmad* is misplaced. *See* Motion to Dismiss at 12 n.7 (citing *Ahmad v. White Plains City Sch. Dist.*, 2019 WL 3202747, at *8 (S.D.N.Y. 2019)). In *Ahmad*, the Court dismissed the plaintiff's hostile work environment claim because he alleged only isolated incidents where different people made vaguely discriminatory comments. *Ahmad*, 2019 WL 3202747, at *8. As discussed, *supra* §II(a)-(b), Defendant Cohen continuously made discriminatory comments towards Plaintiff and the workplace culture of discrimination was so severe that numerous other female employees complained. These allegations are sufficient to allege a hostile work environment. *Engelmann*, 1996 WL 76107 at *16.

**C. This Court Should Not Dismiss the Retaliation Claims Based on Plaintiff's Sex/Gender-Related Discrimination Claims**

According to Defendants, because Plaintiff did not use unspecified 'magic words' when reporting Defendants' discrimination, her claims must be dismissed. Motion at 19-20. This Court, however, does not require as much to find that a plaintiff adequately pled Sex/Gender-Related retaliation. *Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007); *Moore*, 2024 WL 989843, at *13. To the contrary, as discussed *supra* §II(A), Defendants are presumed to have "general corporate knowledge" both of the discrimination Plaintiff experienced and of the protected activity she engaged in *inter alia* by reporting this discrimination at least to HR. *Moore*, 2024 WL 989843 at *14. Thus, Plaintiff's FAC adequately pleads that she was terminated after repeatedly reported Defendants' wide-swath of discriminatory behavior, including after reporting Defendants' discrimination because of her sex/gender. *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020); FAC ¶¶286-287, 291, 298.[26]

**III. PLAINTIFF'S RELIGIOUS-DISCRIMINATION CLAIMS MUST NOT BE DISMISSED**

This Court should not dismiss Plaintiff's Religious-Discrimination Claims[27] because Defendants failed to meet their burden to prove that they are trivial.[28][29] Defendants' proffer one (1)

---

[26] Count 19 and 20 of Plaintiff's FAC do allege Sex/Geder-Related retaliation claims, and for the reasons articulated *supra* §II(C), counts 19 and 20 are adequately pled. The Second Circuit has "cautioned against setting the bar too high" for hostile work environment claims. *Farmer* 473 F. Supp. 3d at 335 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

[27] Plaintiff's Religious-Discrimination Claims are brought under both the NYSHRL and NYCHRL; the former is analyzed under an identical standard to its Title VII counterpart, and the latter is reviewed "more liberally" than the NYSHRL standard. *Levy*, 408 F. Supp. 3d at 217.

[28] As discussed, *supra* §II(A), triviality is an affirmative defense for which Defendants must prove that Plaintiff's Religious-Discrimination Claims are too trivial to withstand dismissal. *See Mihalik*, 715 F.3d at 111.

[29] To the extent Defendants rely on the fact that Plaintiff did not assert religion-based discrimination claims in her administrative complaints, or a Title VII religion-based claim here, to 'bolster' their 'conclusion' that these allegations are trivial, this argument should not be considered as it is entirely irrelevant and prejudicial. It is not the Court's job to make credibility determinations on a motion to dismiss. *See Posr v City of New York*, 835 F Supp 120, 123 (S.D.N.Y 1993), affd, 22 F3d 1091 (2d Cir 1994) ("On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the trial court's function is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered.").

case, *Spring v. City of New York*, to support the entirety of their dismissal argument; however, *Spring* is readily distinguishable from Plaintiff's Religious-Based Discrimination Claims. Motion at 21-22 (citing *Springs v. City of New York*, 2020 WL 3488893, at *2 (S.D.N.Y. June 26, 2020)). Indeed, in *Springs*, the Court determined that co-workers'—**not supervisors'**—failure to prepare non-pork-based meals at a workplace breakroom did not constitute actionable discrimination. *Springs*, 2020 WL 3488893 at *2. Plaintiff's Religious-Based Discrimination Claims, however, are predicated on Defendants', Plaintiff's supervisor's, provision of dietary accommodations to non-Jewish cast members but failure to provide the same to the only Jewish cast member, Plaintiff. FAC ¶¶263-274. Moreover, Defendants failure to accommodate Plaintiff's religious dietary restrictions occurred while Plaintiff was in a foreign country and was entirely dependent on Defendants to satisfy all of her needs for food and/or water; therefore, Defendants' intentional deprivation of food that Plaintiff could consume significantly negatively impacted Plaintiff's health and well-being. *Id.* Such allegations are sufficient to withstand a motion to dismiss because they evidence quintessential disparate treatment discrimination and/or discriminatory failure to accommodate. *See, e.g.*, *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015); *Faison v. Leonard St., LLC*, 2009 WL 636724, at *6 (S.D.N.Y. Mar. 9, 2009); *Muhammad v. New York City Tr. Auth.*, 52 F. Supp. 3d 468, 480 (E.D.N.Y. 2014).

Indeed, the NYSHRL and NYCHRL require an employer to "to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Faison*, 2009 WL 636724, at *5 (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)). Plaintiff need not "specify the dates", "name specific individuals", or "specify the date and time on" where Defendants denied her requests, though she does so in her FAC. *Makhsudova*, 2022 WL 1571152 at *9; *see* FAC ¶¶263-274. To survive a motion

to dismiss, Plaintiff need only allege that: she requested religious accommodations, Defendants failed to provide those accommodations, and Defendants accommodated other similarly-situated employees who are not members of Plaintiff's protected class. *Makhsudova*, 2022 WL 1571152 at *9. (alleging that the Defendant Producers denied her religious dietary accommodation requests while Plaintiff was filming RHUGT). Here, the FAC adequately alleges that Plaintiff was treated "less well" because of her religious beliefs by evidencing that: Defendants knew that Plaintiff could not consume pork-products based on her religion, Defendants ignored Plaintiff's requests for non-pork based food products to consume and failed to provide non-pork based food for her to consume, and that Defendants provided similarly-situated cast members with dietary accommodations but failed to do the same for Plaintiff. *Levy*, 408 F. Supp. 3d at 217 (citing *Swierkiewicz*, 534 U.S. at 515); FAC ¶¶263-274. Thus, Defendants' failure to accommodate Plaintiff is not a "petty slight", it is patently unlawful. *Faison*, 2009 WL 636724, at *5 (citing *Trans World Airlines, Inc.*, 432 U.S. at 74; *Cosme v. Henderson*, 287 F.3d 152, 158 (2nd Cir. 2002)). Accordingly, this Court may not dismiss Plaintiff's Religious-Discrimination Claims because "any inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial." *Levy*, 408 F. Supp. 3d at 216.

Plaintiff's Religious-Based Discrimination hostile work environment claims are also adequately pled[30] because Plaintiff alleged facts to show that Defendants' failure to accommodate her religious-dietary requirements were sufficiently severe. *See Equal Opportunity Empl. Commn. v. United Health Programs of Am., Inc.,* 213 F Supp 3d 377, 415 (E.D.N.Y. 2016) (citing *Redd*, 678 F.3d at 175). Indeed, Defendants' failure to accommodate Plaintiff's religious dietary requirements directly caused Plaintiff to lose seven (7) pounds, become dangerously dehydrated and deprived of

---

[30] As discussed, *supra* §II(A)(e), Plaintiff need only plead that she was treated "less well" because of her religion to state a claim for hostile work environment under the NYCHRL. *Marchuk*, 100 F. Supp. 3d at 308.

nutrients, which culminated in Plaintiff's emergent hospitalization, and which in turn, caused Plaintiff to forfeit her ability to attend her filming requirements.  FAC ¶¶271-274.  Defendants' Religious-Based Discrimination clearly "unreasonably interfere[d]" with Plaintiff's work performance, which renders Defendants' work environment unlawfully hostile.  *Equal Opportunity Empl. Commn.*, 213 F. Supp. 3d at 415 (quoting *Harris*, 510 U.S. at 23).  Moreover, to the extent Defendants argue that such failure to provide Plaintiff with adequate religious accommodations is an "isolated incident", emergency hospitalization certainly constitutes a "sufficiently severe" incident precluding dismissal of Plaintiff's Religious-Based Discrimination hostile work environment claims.  *Redd*, 678 F.3d at 175–76.

## IV.    PLAINTIFF ADEQUATELY ALLEGED THAT THE PRODUCER DEFENDANTS ARE LIABLE UNDER NYSHRL AND NYCHRL

Plaintiff adequately alleged that the Producer Defendants may be liable for her claims brought under the NYSHRL because the Producer Defendants *inter alia* participated in conduct giving rise to the discrimination, or *arguendo*, aided and abetted unlawful discrimination.  *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 182 (E.D.N.Y. 2021); *see also Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).  Contrary to Defendants' assertion, Plaintiff was not required to plead that the Producer Defendants had actual knowledge of Defendant Cohen's text message; rather, Plaintiff adequately stated her Sex/Gender-Related Claims against the Producer Defendants because she alleged that the Producer Defendants participated in discriminatory conduct and/or failed to attempt to remediate discriminatory conduct.  *Cherry*, 564 F. Supp. 3d at 184-185.  *See, e.g.,* FAC ¶¶92-93, 104-106, 135-139, 141-143, 158-162, 171, 194-195, 214-218, 230-232, 235-241, 246-250, 258, 260, 263-266, 275, 290.[31]

---

[31] Indeed, contrary to Defendants' bald assertion, Plaintiff need not allege that the Producer Defendants had the power to hire and/or fire her.  *Feingold*, 366 F.3d at 159; *Mitura v. Finco Servs., Inc.*, 2024 WL 232323, at *11 (S.D.N.Y. 2024).

V.    **PLAINTIFF'S RICO CLAIM SHOULD NOT BE DISMISSED**

Defendants' Motion demonstrates a fundamental misunderstanding of what is required to state a claim under RICO.  *See* Motion at 22-23.  As a threshold matter, though Defendants cite the Supreme Court's *Sedima, S.P.R.L.* opinion, Defendants intentionally omit relevant potions of the Court's reasoning articulating "the term 'violation' . . . refers only to a failure to adhere to legal requirements." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 489 (1985) (quotations omitted).[32] The Supreme Court further articulated that predicate acts *in some instances* may encompass allegations of criminal conduct but that  "Congress wanted [RICO]to reach both 'legitimate' and 'illegitimate' enterprises." *Id.* at 499; *Natl. Asbestos Workers Med. Fund v.  Philip Morris, Inc.*, 74 F. Supp. 2d 221, 230 (E.D.N.Y. 1999) (emphasizing that the RICO statute must be broadly construed).

Moreover, contrary to Defendants' misleading argument that a predicate act must include "kidnapping, gambling," etcetera, the Supreme Court's *Sedima S.P.R.L.* opinion emphatically disavowed this narrow view of RICO as both antithetical to the plain language of RICO and inapposite to Congress' intent in enacting RICO.  *Sedima, S.P.R.L.*, 473 US at 498 (noting that the legislative history evidenced that RICO could be used to combat violations of "title IX", which is a federal civil rights law in the United States that prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance);[33] *Natl. Org. for Women, Inc. v.  Scheidler*, 510 US 249, 260-61 (1994) ("Congress did nothing to indicate that "enterprise" should exclude those entities whose sole purpose was criminal."); *but see* Motion at 22.   Defendants are also incorrect in

---

[32] RICO claims, generally speaking, are not subject to a heightened pleading standard.  *Natl. Org. for Women, Inc. v. Scheidler*, 510 US 249, 256, (1994). In analyzing a motion to dismiss a RICO claim, "general allegations" may suffice to state a claim under RICO and the Court must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.*

[33] Both the Supreme Court and various Circuit Courts have also determined that a plaintiff may state a claim under RICO in alleging that Defendants' predicate acts include civil rights violations or otherwise impugn a plaintiff's civil rights. *Natl. Org. for Women, Inc. v. Scheidler*, 510 US 249, 252 (1994);  *Lewis v.  Danos*, 83 F.4th 948, 957 (5th Cir 2023) (dismissed on other grounds);  *Zimmerman v.  Poly Prep Country Day School*, 888 F. Supp 2d 317, 328 (E.D.N.Y. 2012) (dismissed on other grounds).

arguing that that RICO cannot be used to remedy civilly unlawful employment enterprises because RICO has been used to do exactly that. *See, e.g., Trollinger v. Tyson Foods, Inc.,* 370 F.3d 602, 605, 615–20 (6th Cir. 2004); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168–72 (9th Cir.2002); *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1082 (S.D.N.Y. 1994), *aff'd sub nom.* 66 F.3d 12 (2d Cir 1995). Defendants' argument to dismiss Plaintiff's RICO Claim, therefore, is meritless and as well-settled precedent proves Plaintiff stated a claim under RICO because violations of civil law are sufficient to allege predicate acts in furtherance of an unlawful conspiracy.

This Court also may not dismiss Plaintiff's RICO claim because she adequately alleged damage to business and property by alleging that Defendants' conspiracy caused her monetary damage in *inter alia* the form of payments to satisfy medical bills necessitated by Defendants' unlawful enterprise. *Bascunan v. Elsaca*, 874 F.3d 806, 820 (2d Cir 2017). Medical expenses incurred as a direct result of Defendants' unlawful conspiracy are considered actionable damages to business and/or property. *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36 F Supp 2d 560, 569 (E.D.N.Y. 1999). Defendants' misrepresent Plaintiff's allegations by claiming that that Plaintiff alleged "non-actionable 'personal injuries'"[34] because Plaintiff clearly alleged that Defendants' unlawful racketeering "caused Ms. McSweeney to suffer severe mental and emotional distress for which Ms. McSweeney was twice hospitalized ***and for which Ms. McSweeney has incurred, and continues to incur, various additional medical expenses related to Ms. McSweeney's ongoing mental health care that Defendants' unlawful enterprise necessitated***." FAC ¶427

---

[34] To the extent that Defendants mistakenly conflate Plaintiff's claimed non-pecuniary damages related to other claims asserted in her FAC with the monetary damages she alleges related to her RICO claims, Defendants' confusion cannot compel dismissal of Plaintiff's RICO claim. *See Blue Cross and Blue Shield of New Jersey, Inc.*, 36 F Supp 2d at 570-71 (citing inter-jurisdictional precent holding that if a plaintiff alleges both non-pecuniary and pecuniary damages in a RICO cause of action, Courts will not dismiss the RICO cause of action, and instead will deny Plaintiff any non-pecuniary relief requested). Indeed, at least the Eastern District of New York has held that RICO should not be construed to "exclude all pecuniary losses associated in any way with a personal injury" because "such an interpretation would undermine the policies of RICO." *Natl. Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 230 (E.D.N.Y. 1999).

(emphasis added).  This Court, therefore, should not dismiss Plaintiff's RICO claim because Supreme

Court, Circuit Court, and District Court precedent prescribe that it is adequately pled.

## VI.  PLAINTIFF'S NEW YORK LABOR LAW CLAIMS SHOULD NOT BE DISMISSED

### A.  Plaintiff's §215 Claim is Adequately Pled

Plaintiff adequately pled her §215 Claim by pleading that she complained of unsafe workplace

activities, and as a result, Defendants' terminated her employment and otherwise engaged in

retaliatory behavior.  To state a claim under §215, Plaintiff was required to allege only that: (1) she

engaged in protected activity under §215; (2) she suffered a disadvantageous employment action; and

(3) a causal connection exists between her protected activity and the adverse employment action.

*Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 130 (S.D.N.Y 2020) (quoting *Mullins*

*v.  City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)); *Oram v.  SoulCycle LLC*, 979 F. Supp. 2d 498,

511 (S.D.N.Y. 2013).  Protected activity under §215 is defined as "a complaint to [her] employer . . .

or her authorized representative . . . that the employer has engaged in conduct that the employee,

reasonably and in good faith, believes violates any provision of this chapter."  LAB §215.

As a threshold matter, the fact that Plaintiff's Complaint does not identify an exact provision

of the Labor Laws that she complained she believed Defendants violated, does not warrant dismissal

of Plaintiff's §215 claim.  *See Higueros v.  New York State Cath. Health Plan, Inc.*, 526 F. Supp. 2d

342, 348 (E.D.N.Y. 2007).  Crucially, Plaintiff alleges that she complained of Defendants' retaliatory

treatment against her after she "disclose[d] to her supervisor" that she intended to complain that

Defendants are engaged in a practice "that is in violation of law", which is actionable under LAB

§740(2).  FAC ¶¶276, 283, 297.  Plaintiff also alleges that she complained of Defendants'

discrimination against her decision not to consume alcohol while filming RHONY season 13 and

RHUGT season 3, which she could have reasonably believed is actionable under LAB §201-d(2)(b-

c).  FAC ¶¶187, 241, 250-252.  Moreover, Plaintiff alleges that she complained of unsafe working

conditions, which she could have reasonably believed is actionable under either or both LAB §211 and/or LAB §200. FAC ¶¶244. Regardless of whether Plaintiff's complaints would have been meritoriously actionable, Plaintiff reasonable belief that she reported a violation of labor laws is sufficient to state a claim. *See Higueros*, 526 F. Supp. 2d at 348. Accordingly, this Court should not dismiss Plaintiff's §215 claim.

### B. Plaintiff's Section 740 Claim is Adequately Pled

Plaintiff's §740 claim is adequately pled because she alleged that, after she complained to Defendants that she believed they engaged in unlawful employment practices, Defendants terminated her employment and took other retaliatory actions. FAC ¶¶276, 283, 297. To state a claim under §740, Plaintiff is not required to uniquely allege that she reported a serious threat to public health and/or safety as Defendants argue; rather, this Court has held that a plaintiff's threat to complain of unlawful activity is sufficient to state a claim under §740 as such unlawful activity could pose a "substantial and specific danger to the public health and safety." *Callahan v. HSBC Sec. (USA) Inc.*, 2024 WL 1157075, at *7 (S.D.N.Y. 2024); *Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 355 (S.D.N.Y. 2017); *see also Ruiz v. Lenox Hill Hosp.*, 146 A.D.3d 605, 606 (1st Dep't 2017). Thus, this Court should not dismiss Plaintiff's §740 claim.

### C. Plaintiff's Labor Law Claims Should Not Be Dismissed Against the Individual Defendants

This Court should not dismiss Plaintiff's Labor Law Claims against the individuals because, contrary to Defendants' assertion, individual defendants may be held liable for labor law claims as Plaintiff's employer regardless of whether the Individual Defendants actually had hiring or firing power over Plaintiff. *Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625, 626 (1st Dep't 2013); *but see* Motion at 25. Plaintiff adequately alleged that each of the Individual Defendants were, respectively, Plaintiff's employers and that the Individual Defendants shared management responsibilities, exercised control over day-to-day operations, supervised Plaintiff, and exercised control over

Plaintiff's hiring and eventual termination; and therefore, the Individual Defendants may be held liable for Plaintiff's Labor Law Claims. *See, e.g., Odigie v. Gateway Sec. Guard Servs., Inc.*, 213 A.D.3d 495, 496 (1st Dep't 2023); *Bonito*, 106 A.D.3d at 626; FAC ¶¶37-48.

## VII.  PLAINTIFF'S RETALIATION CLAIMS PREDICATED ON DEFENDANT COHEN'S LETTER MUST NOT BE DISMISSED

As articulated by the Supreme Court of the United States "it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with the intent of retaliating against an employee for the exercise of rights." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 744 (1983).  Thus, Supreme Court precedent unequivocally precludes Defendants' argument to dismiss Plaintiff's Letter-Retaliation Claims because Defendant Cohen's Letter is indisputably intentionally retaliatory. *Id.*; *but see* Motion at 26-27; Def. Ex. 12.  This is so because is axiomatic that an action is "adverse" when it would "dissuade a reasonable worker from making or supporting a charge of discrimination"[35]—which is exactly what Defendant Cohen's Letter is intended to do.  *Vega*, 801 F.3d at 90; *Mihalik*, 715 F.3d at 112.[36]

The Letter intends to intimidate Plaintiff against pursuing the claims in her Complaint by falsely warning her that the allegations therein are "defamatory per se" and "lost any arguable legal immunity." Def. Ex. 12.  It is well-settled that "a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation." *Youmans v. Smith*, 153 N.Y. 214, 219

---

[35] Contrary to Defendants' argument, Plaintiff's allegations regarding Defendant Cohen's drug usage directly evidence that Defendants created a hostile work environment on the basis of Plaintiff's disability because Defendants Cohen's more favorable treatment of employees that could consume illicit substances, i.e. did not have an addiction disability, significantly altered the conditions of Plaintiff's employment. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019); FAC ¶¶333-338.

[36] When analyzing the viability of the Letter-Retaliation Claims, this Court must  take a "generous view" of whether the Letter is retaliatory.  *Mondschein v. NY 101, Inc.*, 2020 WL 1275471, at *4 (E.D.N.Y. 2020) (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)).  Indeed, the test to determine whether to dismiss retaliation claims requires the Court to solely analyze whether such claims are *plausible* not whether they might ultimately be meritorious. *Id.* (citing *Ulrich v. Soft Drink, Brewery Workers & Delivery Employees, Indus. Employees, Warehousemen, Helpers & Miscellaneous Workers, Greater New York & Vicinity, Local Union No. 812*, 2019 WL 6498089, at *6 (S.D.N.Y. 2019).

(1897). Therefore, Defendants, once again, misstate Plaintiff's Letter-Retaliation Claims in attempt to bend reality to suit their arguments. *See* Motion at 26-27. Indeed, Defendant Cohen either knew or should have known that this threat is false because his lawyer authored an article on June 15, 2023 exalting the New York Court of Appeals' *Gottwald v. Sebert* decision and advising that "if a statement was made in connection with a judicial proceeding and was pertinent to that proceeding, the absolute privilege applies." *See* Def. Ex. 12 (discussing *Gottwald v. Sebert*, 40 N.Y.3d 240).[37]

Plaintiff's Letter-Retaliation Claims are not predicated on Defendant Cohen's "reservation of rights"; rather, the Letter-Retaliation Claims allege that the Letter was intended to "intentionally humiliate[] and embarrass[]" Plaintiff and to "harass and dissuade" Plaintiff from proceeding with her Complaint. *See Mondschein*, 2020 WL 1275471 at *5. The Letter contained "baseless claims" that Defendant Cohen *knew to be frivolous*, and therefore, Defendant Cohen indisputably sent the Letter to attempt to intimidate Plaintiff out of pursuing the causes of action against him. *Bill Johnson's Restaurants, Inc.*, 461 U.S. at 747; *see also Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008). Moreover, the Letter ironically warned Plaintiff that "[l]itigation cannot be used to create fake news . . . [and] cannot be used as a vehicle to spread false and malicious lies, in furtherance of a shakedown"; however, immediately upon sending the Letter to Plaintiff's counsel, Defendant Cohen caused the Letter to be widely disseminated with news organizations. *See* Exs. 3-4. Not only did the Letter threaten Plaintiff with knowingly frivolous legal claims but Defendant Cohen published the Letter with actualized intent to humiliate Plaintiff for engaging in protected activity. *Kreinik*, 2003 WL 22339268 at *9; *Mitura*, 2024 WL 232323 at *12. Thus, as Defendant Cohen knew that his threatened defamation per se claim was baseless, the Letter served no purpose

---

[37] To that end, Defendant Cohen's present trial counsel, Mitchell Silberberg & Knupp LLP, and specifically Defendant Cohen's attorney Christine Lepera, should also know that Defendant Cohen's Letter contained frivolous legal threats because she served as lead counsel in the *Gottwald* matter. *See Gottwald* 40 N.Y.3d at 240.

other than to Plaintiff's engagement in protected activity, i.e. filing her Complaint. *Mitura v Finco Services, Inc.*, 2024 WL 232323, at *12 (S.D.N.Y. Jan. 22, 2024). The Letter, therefore, is an adverse action sufficient to state a claim for retaliation. *Bill Johnson's Restaurants, Inc.*, 461 U.S. at 747; *see, e.g., id.*; *Roelcke v. Zip Aviation, LLC*, 2018 WL 1792374, at *9 (S.D.N.Y. Mar. 26, 2018); *Sletten v. LiquidHub, Inc.*, 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014); *Schulman v. Anderson Russell Kill & Olick, P.C.*, 458 N.Y.S.2d 448, 454–55 (N.Y. Sup. Ct. 1982).[38]

Defendants' argument that the Letter was not proximately caused by Plaintiff's Complaint is as specious as the threats against Plaintiff included therein. Indeed, the Letter states: "The publication of the complaint *was a malicious act* that [subjects] [sic] [Plaintiff] to *substantial compensatory and punitive damages*" and concludes by demanding Plaintiff issue a "public retraction and apologize to [Defendant Cohen]." Def. Ex. 12. Though, as articulated *supra* §II(A)(d), Plaintiff need not plead but-for causation to state her Letter-Based Retaliation Claims, the Letter's direct assertion that the Complaint caused Defendant Cohen to send the Letter could not make but-for causation more clear. *Norman v. NYU Langone Health Sys.*, 2021 WL 5986999, at *5 n.2 (2d Cir. Dec. 17, 2021); *Mitura*, 2024 WL 232323 at *12. Finally, the fact that Defendant Cohen's Letter did not achieve its purpose of coercing Plaintiff against pursuing her Complaint does not absolve Defendant Cohen of liability for his unlawful retaliation. *Mihalik*, 715 F.3d at 112; *Shi-Hsin Chang v. Phoenix Satellite Television (U.S.), Inc.*, 2014 WL 5017838, at *8 (S.D.N.Y. Sept. 22, 2014); *but see* Motion at 27-28.

Defendant Cohen's Letter directly harmed Plaintiff by subjecting her to humiliation, ridicule, loss of reputation, and industry-wide embarrassment. *Kreinik v Showbran Photo, Inc.*, 2003 WL 22339268, at *9 (S.D.N.Y Oct. 14, 2003). Indeed, by immediately disseminating the Letter (which

---

[38] Moreover, the Letter itself directly threatens Plaintiff with a frivolous lawsuit seeking punitive damages, which is an actionable "affirmative threat" under NYCHRL §8-107(19). *Mitura*, 2024 WL 232323 at *12 (holding a demand letter baselessly threatening to seek sanctions for allegations in a complaint is plausible enough to survive a motion to dismiss).

was addressed to Plaintiff's counsel), Defendant Cohen directly negatively impacted Plaintiff's ability to work in the entertainment industry by creating a false narrative that Plaintiff is a vexatiously litigious liar. *Calise v. Casa Redimix Concrete Corp.*, 2022 WL 355665, at *6 (S.D.N.Y. 2022). Moreover, this Court can infer that Defendant Cohen's baseless threats to seek punitive damages against Plaintiff directly intended to "intimidate her from into not pursuing this litigation." *Mitura*, 2024 WL 232323 at *12. It is telling that Defendants moved to strike certain allegations in the FAC and to dismiss Plaintiff's Disability-Related Claims based on an affirmative defense; however, Defendant Cohen proffered neither an affirmative defense to the allegations that the Letter claimed were "defamatory per se" nor did Defendant Cohen move to strike those allegations. This Court, therefore, should not dismiss Plaintiff's Letter-Retaliation Claims.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the Motion in its entirety.

Dated: New York, New York  
      August 21, 2024

Respectfully submitted,

ADELMAN MATZ P.C.


<u>/s/ Sarah M. Matz</u>  
Sarah M. Matz, Esq.  
*Attorneys for Defendants*  
1159 Second Ave, Suite 153  
New York, New York 10065  
Telephone: (646) 650-2207  
E-mail: sarah@adelmanmatz.com