# EXHIBIT 3

UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF NEW YORK
X-----------------------------------------------------X
LEAH MCSWEENEY,                                    Case No.: 1:2024-cv-01503

                  Plaintiff,

        v.                                         **FIRST AMENDED COMPLAINT
                             AND DEMAND FOR JURY
                                  TRIAL**

ANDY COHEN, LISA SHANNON, JOHN
PAPARAZZO, DARREN WARD, WARNER
BROS. DISCOVERY, INC, SHED MEDIA US
INC., NBCUNIVERSAL MEDIA, LLC and
BRAVO MEDIA LLC,

                  Defendants.
X-----------------------------------------------------X

Plaintiff, Leah McSweeney ("Ms. McSweeney"), by and through her attorneys, Adelman

Matz P.C., as and for her complaint against Andy Cohen ("Cohen" or "Co-Conspirator 1"), John

Paparazzo ("Paparazzo" or "Co-Conspirator 2"), Lisa Shannon ("Shannon" or "Co-Conspirator

3"), Darren Ward ("Ward" or "Co Conspirator 4") (the "Co-Conspirator Producers"), Warner Bros.

Discovery, Inc ("Warner"), Shed Media US Inc. ("Shed"), NBCUniversal Media, LLC ("NBC"),

and Bravo Media, LLC ("Bravo") (the "Companies" or the "Co-Conspirator Companies")

(collectively "Defendants" or the "Co-Conspirators") alleges as follows:

<u>**NATURE OF THE CASE**</u>

1.      Where there is smoke, there is fire. Defendants discriminated against, tormented,

demoralized, demeaned, harassed and retaliated against Ms. McSweeney because she is a woman

with disabilities, such as alcohol use disorder and various mental health disorders, all in the name

of selling drama. But being in the business of reality television does not relieve Defendants of their

obligation to follow employment laws that prohibit the exact type of discrimination, hostile work

environment and retaliation that Defendants subjected Ms. McSweeney to.  Now, Ms. McSweeney seeks justice.

2.      Defendants established a rotted workplace culture that uniquely depended on pressuring its employees to consume alcohol. Defendants, however, abdicated the duties they owed to Ms. McSweeney, as her employer, to maintain a safe working environment and accommodate Ms. McSweeney's disabilities including alcohol use disorder and mental health disorders.

3.      Instead, Defendants with the knowledge that Ms. McSweeney struggled with alcohol use disorder, colluded with her colleagues to pressure Ms. McSweeney to drink, retaliated against her when she wanted to stay sober, and intentionally failed to provide reasonable accommodations that would aid her efforts to stay sober and able to perform.

4.       Defendants also employed psychological warfare intentionally weaponized to break Ms. McSweeney's psyche. Defendants knew Ms. McSweeney suffered from depression but intimidated and prevented her from visiting her dying grandmother by implicitly threatening to terminate her employment and cut her pay if she left the filming location. Defendants also knew of Ms. McSweeney's bipolar, depression, and anxiety disorders. Yet, rather than engaging in the interactive process to provide Ms. McSweeney with reasonable accommodations, Defendants trapped her—alone—in a foreign country and manipulated her castmates into traumatizing Ms. McSweeney.

5.      Defendants repeatedly engaged in retaliation against Ms. McSweeney, rather than accommodating her disabilities as they were legally obligated to do.

6.      Defendants created an enterprise that ventures to discriminate against and harass its employees and attempts to silence its employees by forcing them to sign overly broad, unconscionable confidentiality provisions, which Defendants admit are not enforceable, and which

Defendants admit are meant to scare participants from speaking out and making Defendants' unlawful employment practices and patterns of retaliation public.

7.      Ms. McSweeney brings this action to hold Defendants' accountable for their unlawful employment acts of disability discrimination, hostile work environment, retaliation, sex and gender discrimination, . Reality always reveals itself: these unconscionable practices will no longer be tolerated; the pattern of discrimination and retaliation must stop—it is time that Defendants answer.

## NATURE OF THE PARTIES

8.      Ms. McSweeney is a natural person currently residing in the State of New York.

9.      Upon information and belief, Cohen is a natural person currently residing in the State of New York, and at all relevant times is and was employed by one or more of the Defendants.

10.      Upon information and belief, Paparazzo is a natural person currently residing in the State of California, and at all relevant times is and was employed by one or more of the Defendants. Upon information and belief, and at all relevant times, Paparazzo's place of employment was New York, New York.

11.      Upon information and belief, Shannon is a natural person currently residing in the State of California, and at all relevant times is and was employed by one or more of the Defendants. Upon information and belief, and at all relevant times, Shannon's place of employment was New York, New York.

12.      Upon information and belief, Ward is a natural person currently residing in the State of California, and at all relevant times is and was employed by one or more of the Defendants. Upon information and belief, and at all relevant times, Ward's place of employment was New York, New York.

3

13. Upon information and belief, Warner is a corporation duly formed and existing under the laws of the State of Delaware with a principal place of business located at 230 Park Ave S, New York, New York 10003.

14. Upon information and belief, Shed is a corporation duly formed and existing under the laws of the State of Delaware with a principal place of business located at 3800 Barham Blvd., Suite 410, Los Angeles, California 90068.

15. Upon information and belief, NBC is a corporation duly formed and existing under the laws of the State of Delaware with a principal place of business located at 100 Universal City Plaza, Universal City, California 91608.

16. Upon information and belief, Bravo is a corporation duly formed and existing under the laws of the State of California with a principal place of business located at 100 Universal City Plaza, Universal City, California 91608.

17. Upon information and belief, Defendants were and are the agents, employees, servants, partners, independent contractors, joint venturers, and/or participants with all other Defendants, and with each other, and in doing the things hereinafter mentioned, were agents, employees, servants, partners, and joint venturers and/or acted with the consent and permission of the co-Defendants, and each of them.

## JURISDICTION AND VENUE

18. This Court has federal question jurisdiction over the subject matter of this action pursuant to 23 U.S.C. §§ 1331 and 1338(a) because this action alleges violations of federal statutes.

19. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over this action because, as stated above, this Court properly has federal question jurisdiction and because

all other claims are so related within this Court's original jurisdiction that they form part of the same case or controversy.

20.     Upon information and belief, this Court has personal jurisdiction over the Defendants pursuant to NY CPLR § 302 because Defendants have purposefully availed themselves to conducting business in New York through employing Plaintiff and establishing an employment location and principal place of business within the State of New York and, specifically, in New York, New York.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because the Defendants are subject to the Court's personal jurisdiction with respect to the action, as Defendants employed Plaintiff in New York, New York.

## **FACTUAL ALLEGATIONS**

### **A. Defendants Cannot Weaponize the Arbitration Clause to Silence Ms. McSweeney's Claims of Abuse**

22.     Plaintiff and Defendant Bravo entered into a contract dated October 4th, 2019, (respectively, the "RHONY Contract" and the "RHUGT Contract", collectively the "Contracts").

23.     The Employment Contracts stipulate that either party's dispute against the other, regarding the employment contract, shall be resolved in a confidential arbitration.

24.     Ms. McSweeney's claims against Defendants, however, do not pertain to Defendants' breaches of either the RHONY Contract or the RHUGT Contract; rather, Ms. McSweeney complains that Defendants habitually engaged in unlawful employment practices in violation of their obligations under relevant Federal, State, and City employment laws as set forth herein.

25. Included in those acts, as set forth herein, Defendants sexually harassed Ms. McSweeney, as further detailed below, which would also render any Arbitration Clause unenforceable.

26. Also, in both the RHONY Contract and the RHUGT Contract, Ms. McSweeney is party to a confidentiality clause. Until recently, Ms. McSweeney feared that Defendants would weaponize this confidentiality clause and silence Ms. McSweeney's claims of abuse.

27. However, amidst mounting pressure that these clauses were being used to scare victims of unlawful employment practices from speaking out, Defendants have acknowledged that they are not enforceable to prevent such disclosures.

28. Indeed, lawyers for Defendant Bravo confirmed that they would not enforce the confidentiality clause against any Bravo employee's claim of abuse:

> Confidentiality clauses are standard practice in reality programming to prevent disclosure of storylines prior to air. They are not intended to prevent disclosure by cast and crew of unlawful acts in the workplace, and they have not been enforced in that manner. To be clear: any current or former cast or crew is free to discuss and disclose any allegedly unlawful acts in the workplace, such as harassment or discrimination, or any other conduct they have reason to believe is inappropriate. We are also working with our third-party production companies to remind all cast and crew that they are encouraged to report any such concerns through the channels made available by the production company so concerns can be promptly addressed.

*See* Dominic Patten, *"'Vanderpump Rules' Stars & Other Reality TV Participants Can Break NDAs To Reveal 'Unlawful Acts,' Bravo Says, As Potential Lawsuits Loom"*, Deadline (Aug. 25, 2023, 4:50 PM) https://deadline.com/2023/08/vanderpump-rules-reality-tv-nda-lawsuit-bravo-1235528642/.

29.     As a matter of public policy, the Arbitration and Confidentiality Clauses are unenforceable because both would operate in tandem to ensure that Ms. McSweeney cannot disclose Defendants' abuse, even in a Court.

**B. Ms. McSweeney Exhausted All Administrative Remedies Available to Her**

30.     On or around March 15, 2023, Ms. McSweeney dual-filed three complaints (the "Complaints") against Defendants with the New York State Human Rights Department ("NYSDHR") and the Equal Employment Opportunities Commission ("EEOC"), all of which alleged claims of disability discrimination, hostile work environment, and retaliation.

31.     On or around May 15, 2023, Defendants jointly answered the Complaints and denied all allegations asserted therein.

32.     On or around June 30, 2023, Ms. McSweeney dual-filed three First Amended Complaints (the "FACs") against Defendants with the NYSDHR and EEOC, all of which included all claims previously alleged in the Complaints and an additional claim of sexual harassment against all Defendants.

33.     Defendants answered the FACs and denied all allegations therein.

34.     On or around September 6, 2023, Ms. McSweeney formally requested that NYSDHR and EEOC administratively dismiss her claims against Defendants and that the EEOC issue her a right-to-sue letter with respect to her claims against Defendants.

35.     On or around October 6, 2023, the NYSDHR administratively dismissed the FACs filed before it.

36.     On or around January 9, 2024 and January 23, 2024, the EEOC issued Ms. McSweeney right to sue letters (the "Right to Sue Letters") that allow her to pursue her claims against the Defendants before this Court.

### C. Introduction to the Defendants

37.     Defendant Warner is a mass media and entertainment conglomerate headquartered in New York City.

38.     Defendant Warner is the parent company of Shed, a media company that produces various 'unscripted' reality television shows, including some installments of the *Real Housewives* franchise.

39.     Upon information and belief, Defendant Warner directs, authorizes, and exercises control over all of Defendant Shed's corporate policies, including employment policies.

40.     Upon information and belief, Defendant Shed employs Defendants Shannon, Ward, and Paparazzo (collectively, the "Defendant Producers" or "Co-Conspirator Producers") as producers of, inter alia, RHONY and RHUGT.

41.     Upon information and belief, Defendant NBC owns the television network, Defendant Bravo, which owns, controls, and airs the television franchise "*Real Housewives*."

42.     Upon information and belief, Defendant NBC directs, authorizes, and exercises control over all of Defendant Bravo's corporate policies, including employment policies.

43.     Upon information and belief, Defendant Bravo directly reports to Defendant NBC and Defendant NBC makes all final decisions regarding Defendant Bravo's programming, including the *Real Housewives*.

44.     Upon information and belief, Defendant NBC also exercises control over Defendant Bravo's employees and makes final decisions regarding employment policies, hiring, termination, and payment of Defendant Bravo employees, including the *Real Housewives* employees and cast members.

45.     Upon information and belief, Defendant Cohen is the Executive Producer of the Real Housewives, serves as a host for each and every "reunion" episode of every Real Housewives

franchise, and hosts Watch What Happens Live ("WWHL"), which is a late-night show that often features interviews with cast members of the Real Housewives ("Housewives").

46.     Upon information and belief, Defendant Cohen decides whether to cast each Housewife, when to terminate each Housewife, directly supervises each Housewife, and controls each and every episode and scene filmed for each and every *Real Housewives* installment.

47.     Upon information and belief, Defendant Producers also directly supervise the Housewives, control each episode and scene filmed for the *Real Housewives* installments that they work on, and have decision making power over the terms of the Housewives' employment.

48.     Upon information and belief, at all relevant times each of the Defendants was the joint employer of Plaintiff and was engaged with some or all of the other Defendants in a joint enterprise for profit. Plaintiff performed services for each and every one of Defendants, and to the mutual benefit of all Defendants, and all Defendants shared control of Plaintiff as employers, either directly or indirectly, and of the manner in which Defendants' business was conducted.

**D. Introduction to the *Real Housewives* Enterprise**

49.     The *Real Housewives* is a reality television series aired on, *inter alia*, Defendant Bravo, which is a television network owned and run by NBC. The *Real Housewives* consists of programming that dramatically exploits the personal and professional lives of affluent women in various cities across the United States, most of whom often openly or secretly suffer from mental health disabilities, personality disorders, and addiction disabilities. Each woman who appears on a *Real Housewives* production is referred to as a "Housewife."

50.     Defendants' antiquated view of what a woman should be and how they should be treated, which is markedly different than the men on the show, infects every aspect of the *Real Housewives* production.

9

51.     Defendants' disparate treatment of women, like Ms. McSweeney, began with the very name of their reality television show. The word "Housewives" forces its subjects into the proverbial "kitchen" by demeaning and diminishing its subjects' individual careers, success, and livelihoods, and encouraging the women on the show to engage in what they view is female drama i.e. bickering and infighting amongst the female cast members.

52.     Male talent, however, are treated with deference, their careers are highlighted and exulted, and they are not nearly as of often featured as engaging in drama with other cast members.

53.     Upon information and belief, the *Real Housewives* premiered in or around spring 2006.

54.     Upon information and belief, RHONY premiered in or around September 2007 as the second installment of *Real Housewives*.

55.     Due, in large part to RHONY, the *Real Housewives* franchise became a cultural phenomenon.

56.     Upon information and belief, in or around November 2021, RHUGT premiered on the streaming service, Peacock.

57.     RHUGT is a *Real Housewives* spin-off that brings together "Housewives" from various *Real Housewives* installments and chronicles their group vacations, which are replete with unlimited supplies of alcohol (that Defendant Bravo supplies and pressures its cast members to consume), little to no food or water, and where cast members are forced to film from at least eight in the morning to one in the morning. Much like all other *Real Housewives* installments, these conditions are intended to induce female cast members to behave inappropriately and unsafely.

58.     Two seasons of RHUGT are referred to in the media, and by Defendants, as the "ex-wives" club, which further perpetuates Defendants' sexist belief that a woman's value exists

only to the extent that she is tied to a male-dominated enterprise, such as the *Real Housewives.* Defendants' patronizing attitude towards female cast members permeates throughout production.

**E. RHONY Season 12: Ms. McSweeney's *Real Housewife* Debut**

59.     Prior to joining RHONY, Ms. McSweeney had maintained her sobriety for approximately nine (9) years.

60.     Five (5) months prior to joining RHONY, Ms. McSweeney relapsed into alcohol use disorder.

61.     In or around 2019, Defendants approached Ms. McSweeney with the opportunity to appear as a cast member of RHONY.

62.     In Ms. McSweeney's initial casting tape for RHONY, Ms. McSweeney disclosed that she had broken her sobriety and began to consume alcohol again.

63.     In or around 2019, Defendants created an employment relationship with Ms. McSweeney and employed Ms. McSweeney as a cast member of RHONY. Defendants knew at the time that Ms. McSweeney suffered from alcohol use disorder.

64.     Just before Ms. McSweeney began filming RHONY season 12, Defendant Producers began to use their position of power, as Ms. McSweeney's employers, to discriminate against Ms. McSweeney.

65.     Near or around the of beginning filming RHONY season 12, Ms. McSweeney regained sobriety and expressed to Defendant Producers and various RHONY cast members her desire to remain sober while filming RHONY season 12.

66.     After Ms. McSweeney told her employers of her newfound sobriety, none of the Defendants engaged in any type of interactive process with Ms. McSweeney regarding reasonable accommodations that would help her maintain her sobriety.

67.     Instead, beginning in or around October 2019, the Defendant Producers nefariously began to extract personal, confidential information regarding Ms. McSweeney's disabilities, which they would later use against her.

68.     Upon information and belief, beginning in or around October 2019, Defendant Producers developed an artificially close relationship with Ms. McSweeney so as to manipulate Ms. McSweeney into confiding in them regarding her alcohol use disorder and mental health disabilities, and further, potential scenarios that might trigger her to relapse into alcohol use disorder or otherwise exacerbate her mental health disabilities.

69.     The result was that Defendant Producers cultivated a treasure trove of Ms. McSweeney's dark secrets with intent to place her in situations known to exacerbate her alcohol use disorder and mental health disabilities because they thought that intentionally making these conditions worse would create good television.

70.     Upon information and belief, Defendant Cohen and Defendant Producers discriminated against Ms. McSweeney's mental health and alcohol use disorders by intentionally planning scenarios intended to exacerbate Ms. McSweeney's disabilities throughout RHONY season 12. Upon information and belief, Defendant Producers did this to drive Ms. McSweeney to the brink of insanity and force her to break her sobriety because it would create morbidly salacious reality television.

71.     The fact that Defendant Producers are employed to produce a reality television show, however, does not permit Defendant Producers to *carte blanche* ignore their legal obligations to engage in the interactive process, make legally required reasonable accommodations for, or to discriminate against Ms. McSweeney's mental health and addiction-related disabilities.

72.     Defendant Producers had a legal obligation to engage in an interactive process regarding how to accommodate Ms. McSweeney and to reasonably accommodate Ms. McSweeney's disabilities.

73.     Defendant Producers maliciously disregarded these obligations and chose to discriminate against Ms. McSweeney on the basis of her disability by engaging in guerilla-type psychological warfare intended to pressurize Ms. McSweeney into a psychological break and cause Ms. McSweeney to relapse.

74.     Shortly thereafter in or around April 2nd, 2020, Ms. McSweeney debuted as a RHONY season 12 cast member.

75.     Unbeknownst to Ms. McSweeney, in the time between fall of 2019 and throughout RHONY season 12, Defendants intended to weaponize Ms. McSweeney's alcohol use disorder as the main storyline of RHONY season 12.

76.     Ms. McSweeney told Defendant Producers that she had not consumed alcohol for thirty (30) days prior to the date she began filming RHONY season 12 and that she was working to maintain her sobriety.

77.     Ms. McSweeney told Defendant Producers that she was intensely concerned about relapsing into alcohol use disorder on national television.

78.     Once again, because Ms. McSweeney told Defendant Producers that she was disabled, Defendant Producers became legally obligated to provide Ms. McSweeney with reasonable accommodations, which they failed to do.

79.     Instead, Defendant Producers pressured Ms. McSweeney to drink and, upon information and belief, directed and/or encouraged other RHONY cast members to do the same.

80. Defendant Producers not only supplied Ms. McSweeney with unlimited, free-of-charge alcoholic beverages throughout Ms. McSweeney's employment as a cast member on RHONY season 12, but also encouraged her to consume those alcoholic beverages.

81. This environment caused Ms. McSweeney to relapse into alcohol addiction shortly after joining RHONY season 12.

82. Ms. McSweeney's relapse came to a head in an infamous cast trip, which Defendants named "Hurricane Leah."

83. While relapsing, Ms. McSweeney grew mentally and physically ill, which manifested into extreme depressive symptoms. All of which occurred while Defendant Producers were present and filming Ms. McSweeney. Accordingly, they were clearly on notice of this occurrence.

84. Defendants never offered Ms. McSweeney any accommodations for her aggravated mental health symptoms and relapse. Instead, Defendants exacerbated Ms. McSweeney's disabilities by increasingly pressuring her to consume alcoholic beverages.

85. After certain cast members expressed concerns regarding Ms. McSweeney's erratic behavior, Defendant Shannon called Ms. McSweeney and, rather than discuss any accommodations that Ms. McSweeney might need, told Ms. McSweeney that, despite relapsing into alcohol use disorder, Ms. McSweeney should continue to consume alcohol so long as she "remain[ed] lucid" while filming.

86. The "Hurricane Leah" episode became the highest-rated episode of RHONY season 12, all due to Defendants' exacerbation of Ms. McSweeney's clear disabilities.

87. Upon information and belief, because exacerbation of Ms. McSweeney's disabilities directly caused Defendants' unprecedented success, Defendants continued to ignore

14

their obligation to engage in the interactive process or provide reasonable accommodations throughout the pendency of Ms. McSweeney's employment, even when Ms. McSweeney asked for them.

88.     In fact, Defendants continued to discriminate against Ms. McSweeney and ignored her requests for accommodations after RHONY season 12 wrapped.

89.     After Ms. McSweeney regained her sobriety at the conclusion of RHONY season 12, Defendant Producers forced her to partake in "Confessionals"[1], where Defendant Producers told Ms. McSweeney to say lines such as "time for a drink", without any care or interactive process regarding accommodating Ms. McSweeney's disability—especially in light of the fact that Ms. McSweeney had again recently became sober.

90.     Defendant Producers did so notwithstanding their collective and individual knowledge of Ms. McSweeney's alcohol use disorder and that she was attempting to maintain her newfound sobriety.

91.     After Ms. McSweeney regained her sobriety and told Defendants that she intended to remain sober: Defendants also created a special episode called "Leah's Best Moments" that was, essentially, a highlight reel of Ms. McSweeney's relapse. In the midst of her renewed sobriety, Defendants forced Ms. McSweeney to narrate this special episode, which required Ms. McSweeney to watch as she relapsed into alcohol use disorder and humiliate herself by

---

[1] "Confessionals" on the *Real Housewives* franchise are interviews that occur after the Housewives complete filming and that are later interposed contemporaneously with certain scenes when an episode is complete. In these Confessionals producers ask the Housewives to react to certain events that occur during filming. At least on RHONY, the Co-Conspirator Producers often prompt Housewives to say certain lines or react in a specific way to continue to craft a narrative or "story line" that Co-Conspirator Producers predetermine each Housewife should have.

commenting on its supposed "hilarity" rather than allow Ms. McSweeney to engage in a truthful dialogue that was helpful to her sobriety.

92.    Ms. McSweeney felt extraordinarily uncomfortable and targeted throughout filming both the Confessional scenes and narrating the "Leah's Best Moments" episode, but because Defendant Producers controlled Ms. McSweeney's public image, she felt she had no choice but to comply with whatever Defendant Producers told her to say regarding her alcohol use disorder.

93.    Ms. McSweeney also understood from other cast and crew that if she did not follow the directions of Defendant Producers, they would retaliate against her.

94.    Defendants retrospectively summarize RHONY season 12 as: "defined early on by *boozy chaos* and thrown tiki torches, and that party lifestyle was especially concerning given [Ms. McSweeney's] early admission that she had been to rehab and had been sober for years prior to filming." Dave Quinn, *Not All Diamonds and Rosé*, Andy Cohen Books, Henry Holt and Co., 165 (2021) (emphasis added).

95.    Defendant Cohen also admitted:

> There was a discomfort at Bravo with the amount of alcohol this season and with the lack of awareness of it on behalf of some of the women. *And that has been a recurring thing with the New York Housewives. There's already a negative association with the New York Housewives and alcohol . . .* And this season it seemed to be worse than ever.

Dave Quinn, *Not All Diamonds and Rosé*, Andy Cohen Books, Henry Holt and Co., 166 (2021) (emphasis added).

96.    Long after RHONY season 12 concluded, Defendants continued to discriminate against Ms. McSweeney's alcohol use disorder.

97.     In the book that Defendant Cohen commissioned, *Not all Diamonds and Rose*, Defendant Cohen included an interview with former RHONY Housewife, Sonja Morgan. Morgan disparaged both Ms. McSweeney and Ms. McSweeney's non-cast member sister for their alcohol consumption on a RHONY season 12 cast trip.

98.     Upon information and belief, Defendant Cohen chose to include this interview and other like interviews with intent to humiliate, degrade, and demean Ms. McSweeney on the basis of her alcohol use disorder disability.

99.     Defendants did not target their discrimination against Ms. McSweeney uniquely to her alcohol use disorder. Throughout RHONY season 12, Defendants also exploited Ms. McSweeney's mental health disabilities with intent to characterize and portray Ms. McSweeney as the deeply sexist archetypical role of an emotionally irrational, hysterical woman.

100.    Upon information and belief, Defendants colluded with fellow RHONY cast member, Ramona Singer ("Singer"), to "out" Ms. McSweeney's confidential bipolar disorder diagnosis before Ms. McSweeney disclosed it publicly.

101.    Upon information and belief, as a direct result of Defendant Producers' plan, Singer maliciously rumored to other cast members that Ms. McSweeney suffered from bipolar disorder.

102.    Singer stated that Ms. McSweeney's behavior while drinking could be attributed to both Ms. McSweeney's bipolar diagnosis and falsely posited that Ms. McSweeney abused her bipolar prescription medication by combining that prescription with alcohol.

103.    Ms. McSweeney complained that Singer's 'outing' of her mental health disability caused her to suffer extreme anxiety and depression, thereby exacerbating her disclosed mental health disabilities.

17

104.     Defendant Producers had a duty to accommodate Ms. McSweeney or engage in an interactive process with Ms. McSweeney to develop a mutually agreed upon accommodation, but Defendant Producers again failed to do so.

105.     Instead Defendant Producers shamed Ms. McSweeney for complaining of depression and anxiety as a direct result of Singer's actions. Defendant Producers even attempted to gaslight Ms. McSweeney into falsely believing that her worsened mental health symptoms did not exist.

106.     Furthermore, Ms. McSweeney repeatedly requested accommodations when her mental health disorders were so exacerbated. For example, after Ms. McSweeney relapsed during the "Hurricane Leah" cast trip, Ms. McSweeney complained to Defendant Producers that she was experiencing a panic attack and requested relief from filming a scheduled scene.

107.     Rather than accommodate Ms. McSweeney or engage in an interactive process to develop an accommodation for Ms. McSweeney, Defendant Shannon told Ms. McSweeney that she would help "craft Ms. McSweeney's storyline"—the veiled threat: if Ms. McSweeney did not film that scene, Defendant Shannon would edit Ms. McSweeney poorly to turn viewers against Ms. McSweeney.

108.     As if unlawful disability discrimination was not bad enough, Ms. McSweeney's employment with Defendants was also rife with gender and sex-based discrimination and sexual harassment.

109.     For example, on both RHONY and WWHL, Defendant Cohen habitually forces Housewives, including Ms. McSweeney, to publicly discuss details of their sex lives, badgering Housewives about whether they have "taken a dip in the lady pond." *See* Dejan Jotanovic, *Andy*

*Cohen Has a Women Problem*, Into More (Oct. 4, 2018), https://www.intomore.com/culture/andy-cohen-has-a-woman-problem/.

110.    Similarly, at the RHONY season 12 reunion, Defendant Cohen highlighted the fact that Ms. McSweeney and castmate, Tinsley Mortimer, shared a platonic onscreen kiss. Defendant Cohen then proceeded to interrogate Ms. McSweeney regarding whether Ms. Mortimer was a "good kisser" and sexualized the pair by remarking that the kiss was "hot" and "steamy."

111.    Upon information and belief, though many husbands of Housewives have shared same-sex, onscreen kisses, Defendant Cohen does not question the husbands about their sexual preferences on air or behind the scenes as he does with woman, nor does he comment on the husband's increased sexual desirability resulting from those kisses.

112.    Also, at the RHONY season 12 reunion, Defendant Cohen repeatedly, inappropriately questioned Ms. McSweeney about a tattoo that she had near her genital area.

113.    Upon information and belief, Defendant Cohen does not question men that appear on the *Real Housewives* regarding whether the men have tattoos near their respective genital areas.

114.    Such instances illustrate Defendant Cohen's intent to create a narrative that the Housewives are promiscuous sexual objects, especially because Defendant Cohen does not ask the same questions of the Housewives' male counterparts.

115.    Ultimately, upon information and belief, Defendants intend to perpetuate gender-based stereotypes by treating and portraying Ms. McSweeney as a hysterical, uncontrollable, alcohol-addicted woman who is a sex object.

116.    Public discourse regarding RHONY season 12 shows that Defendants overwhelmingly succeeded.

117.    Throughout RHONY season 12, Defendant Producers and Defendant Cohen's disparately sexist treatment and disability discrimination against Ms. McSweeney caused Ms. McSweeney to suffer severe emotional and mental distress.

118.    Ms. McSweeney, however, felt afraid to voice her concerns more than she had for fear that she would be retaliated against with worse treatment.

119.    Ultimately, Ms. McSweeney feared speaking out publicly because she feared that Defendants would fire her and blackball her from the industry, like many before her.

**F.    Ms. McSweeney Agrees to Continue Employment with Defendants and Appear on RHONY Season 13.**

120.    Tantamount to an abusive relationship, Ms. McSweeney agreed to return for RHONY season 13 because she felt she could make her experience better.

121.    There is no question that Defendants maintained acute awareness of Ms. McSweeney's disabilities, which include depression, anxiety, bipolar disorder, and addiction.

122.    In fact, prior to filming RHONY season 13, on or around February 4, 2020, Ms. McSweeney met Defendant Bravo employees at the Odeon in New York to discuss the upcoming season.

123.    At this meeting, Defendant Bravo employees, Sezin Cavusoglu and Ryann Flynn, questioned why Ms. McSweeney did not consume alcohol.

124.    Ms. McSweeney responded that she was recently sober and intended to remain sober while filming RHONY season 13.

125.    Defendant Bravo employees responded, "well you don't have a *problem* . . . do you?" even though they knew Ms. McSweeney suffered from alcoholism and had openly discussed her struggles with alcoholism on many occasions.

126.    Upon information and belief, Defendant Bravo employees asked Ms. McSweeney this question with intent to pressure her to consume alcohol on RHONY season 13 and to minimize her alcohol use disorder disability rather than accommodate it.

127.    Also, before Ms. McSweeney began filming RHONY season 13, the Defendant Bravo employees told Ms. McSweeney that former castmate, Dorinda Medley, was fired from RHONY and would not appear on RHONY 13.

128.    Defendant Shannon specifically told Ms. McSweeney, and upon information and belief, also told the other cast members, that Defendants terminated Medley because Medley transformed from a "fun drunk" to a "mean drunk."

129.    In fact, Defendants' employees continued to make discriminatory comments directed towards other cast members' alcohol use disorder disabilities prior to filming RHONY season 13.

130.    Barrie Bernstein, an executive producer employed by Defendant Shed, told Ms. McSweeney that she tired of cast member Sonja Morgan's storyline, which involved excessive alcohol consumption, because it was becoming "pathetic."

131.    Upon information and belief, Defendant Shannon told this to Ms. McSweeney with the implication that Ms. McSweeney should be a 'fun drunk' and not a "mean" or "pathetic" drunk—blatantly ignoring Ms. McSweeney's requests for a reasonable accommodations request, namely, for Defendants to respect and not interfere with Ms. McSweeney's sobriety.

132.    When RHONY season 13 began filming, in spite of the discrimination she was faced and continued to face, Ms. McSweeney worked vigorously to protect her sobriety and, throughout the season, increasingly made requests for accommodations and issued complaints of discrimination.

21

133. After the success of the Hurricane Leah episode, however, Defendants had no plans to help Ms. McSweeney maintain her sobriety.

134. On one occasion, Ms. McSweeney, whom Defendants knew to be particularly sensitive to emotionally distressing situations, began to suffer a panic attack and exclaimed "I wish I still f**king drank right now."

135. Despite knowing that Ms. McSweeney was struggling to maintain her sobriety, Defendant Cohen and Defendant Producers failed to offer her any reasonable accommodations or engage in any interactive process to develop a mutually agreeable accommodation. Instead, Defendants saw Ms. McSweeney's struggle as an opportunity to put Ms. McSweeney in situations where she felt pressured to relapse into alcohol use disorder.

136. Defendant Producers also humiliated Ms. McSweeney by joking about Ms. McSweeney's experience with alcohol use disorder on RHONY season 12 while filming RHONY season 13. Though Ms. McSweeney requested Defendants accommodate her disorder by no longer joking about her relapse, Defendants ignored her request for accommodations and refused.

137. Ms. McSweeney's request for accommodation was both simple and completely reasonable: she requested that Defendants allow her to remain sober without interference and harassment. However, these requests fell on deaf ears.

138. Upon information and belief, Ms. McSweeney's efforts to maintain her sobriety caused Defendants to retaliate against her for making requests for accommodations.

139. Indeed, while Ms. McSweeney maintained her sobriety throughout of RHONY season 13, Defendant Producers and other persons employed by the Defendant Companies created a hostile and retaliatory work environment by providing Ms. McSweeney with negative performance reviews that the audience would think she was "boring."

140.     Upon information and belief, however, Defendants conducted a focus group that determined Ms. McSweeney to be the favorite RHONY cast member during season 12.

141.     Upon information and belief, Defendant Producers and other employees of Defendant Companies told Ms. McSweeney that the audience would think she was boring, when the same was not true, in hopes that Ms. McSweeney would relapse while filming season 13.

142.     Defendant Shannon also tried to bait Ms. McSweeney into a relapse by telling Ms. McSweeney that the audience would not like her because she was not drinking.

143.     Defendant Producers also attempted to manipulate Ms. McSweeney to relapse by Defendant Shannon failing to accommodate other female cast members' disabilities, and instead glorifying their alcohol use.

144.     For example, Defendant Shannon and executive producer Barrie Bernstein glorified the fact that another RHONY cast member, Luann de Lesseps ("Luann" or "Ms. De Lesseps"), who had vocalized her experience with alcohol use disorder and incarceration due to alcohol use disorder on RHONY, relapsed. After Ms. de Lesseps began drinking again, Defendant Shannon remarked to Ms. McSweeney: "I love when Luann is ON", another thinly veiled direction to Ms. McSweeney that she, too, needed to be "ON", i.e., drinking.

145.     Upon information and belief, Defendant Shannon expressed this to Ms. McSweeney their hope that she would, once again, relapse during filming.

146.     As a result, Ms. McSweeney feared that her sobriety would cause a trickledown effect, where if she continued not to drink during RHONY season 13, then Defendant Cohen, Defendant Producers, and the audience would think she was boring, Defendant Cohen would no longer want her on the show, and she would lose her job and future employment opportunities with Defendant Companies.

147.     Despite her fears of losing her job, Ms. McSweeney refused to drink, and as a result Defendants retaliated against her.

148.     Upon information and belief, because Ms. McSweeney refused to relapse into addiction, Defendants attempted to exacerbate Ms. McSweeney's mental health disabilities in hopes that Ms. McSweeney's worsened mental health would cause her to display the erratic behavior they wanted.

149.     For example, during a cast trip to the Hamptons (the "Hamptons Trip"), Ms. McSweeney experienced a significant decline in mental health due to the impending death of her grandmother. Specifically, Ms. McSweeney's disability manifested itself in the form of repeated panic attacks that Defendant Producers witnessed.

150.     Ms. McSweeney asked Defendant Producers to reasonably accommodate her disability by allowing her to leave the Hampton's Trip and temporarily cease filming RHONY. Ms. McSweeney asked for this accommodation to visit her dying grandmother and because Ms. McSweeney's panic attacks interfered with her ability to work.

151.     Instead of reasonably accommodating Ms. McSweeney and/or engaging in an interactive process with Ms. McSweeney, the Defendant Producers told Ms. McSweeney to "lighten up", "have more fun", and that her "personality is a lot different when [she was] drinking."

152.     Furthermore, in flagrant disregard of Ms. McSweeney's request to temporarily cease filming RHONY as a reasonable accommodation, Defendants only allowed Ms. McSweeney to discuss the possibility of visiting her dying grandmother while filming her.

153.     Rather, Defendants filmed Ms. McSweeney as they told her that she could "leave if she wanted"; however, after working for Defendants for more than two (2) years, Ms. McSweeney understood this to mean that if she left she would have to suffer severe consequences.

154.    After Defendants stopped filming Ms. McSweeney, she continued to request a reasonable accommodation to visit her dying grandmother and temporarily cease filming. Instead of reasonably accommodating Ms. McSweeney and/or engaging in an interactive process necessary to develop a mutually agreeable accommodation, Defendant Producers also threatened Ms. McSweeney's ability to earn an income.

155.    Indeed, Defendants warned Ms. McSweeney that, if they granted her accommodation (i.e. to temporarily cease filming and attend to her dying grandmother), Ms. McSweeney would miss five (5) episodes of RHONY filming and would not be paid for those episodes.

156.    Ms. McSweeney understood Defendants' threat of nonpayment to be an implicit threat intended to dissuade her from continuing to ask for a reasonable accommodation to visit her dying grandmother and temporarily cease filming.

157.    Defendants knew that Ms. McSweeney was a single mother who relied on her RHONY salary to support her daughter. Upon information and belief, Defendants' threat after Ms. McSweeney requested an accommodation was intended to dissuade Ms. McSweeney from ever requesting an accommodation again.

158.    Despite knowing that Ms. McSweeney's disability was interrupting her ability to perform at her place of work, Defendant Producers entirely failed to reasonably accommodate Ms. McSweeney and/or engage in an interactive process to suggest other accommodations.

159.    In fact, Defendant Producers aimed cameras at Ms. McSweeney—mid-panic attack—and caused her to feel that if she ceased filming RHONY season 13, the Defendant Producers would retaliate against her, and she would lose her job.

160. Specifically, Defendant Producers told Ms. McSweeney that she could leave the Hampton's Trip but did so passive aggressively and intimated that there would be serious consequences for Ms. McSweeney if she left.

161. Moreover, upon information and belief, Defendants continued to fail to accommodate Ms. McSweeney and even retaliated against her for requesting reasonable accommodations.

162. Furthermore, after Ms. McSweeney's grandmother died, Defendants continued to film Ms. McSweeney while Ms. McSweeney prepared to attend her grandmother's funeral, notwithstanding Ms. McSweeney's reasonable requests for privacy.

163. Defendant Producers personally saw Ms. McSweeney suffer multiple panic attacks due to her grandmother's illness, yet, directed Ms. McSweeney "lighten up" near or around the time of Ms. McSweeney's grandmother's funeral.

164. As a result of Defendants' failure to accommodate Ms. McSweeney or otherwise engage in an interactive process with her, Ms. McSweeney suffered significant, repeated suicidal ideations.

165. Furthermore, at no point before, during, or after Ms. McSweeney's panic attacks did Defendants offer or otherwise attempt to supply Ms. McSweeney with mental health support or accommodate her so she could seek it. Upon information and belief, Defendants intended to punish Ms. McSweeney in retaliation for refusing to consume alcohol and requesting accommodations for her mental health disabilities.

166. While RHONY season 13 was airing, Ms. McSweeney also began to receive some threatening messages  that saw her relapse on RHONY season 12 and her behavior on season 13.

167.     Worse, Ms. McSweeney received fan messages telling her that her daughter should commit suicide.

168.     Ms. McSweeney, who was already suffering from significant depression and anxiety related to her grandmother's death, told Defendant Shannon about the threatening fan messages.

169.     Ms. McSweeney also told Defendant Shannon and the remaining Defendant Producers that the threatening messages related to her daughter caused her depression and anxiety to worsen.

170.     In fact, Ms. McSweeney told Defendant Shannon that she was suffering from suicidal ideations.

171.     Rather than engaging in an interactive process with Ms. McSweeney to accommodate her disabilities and worsening mental health conditions, Defendant Shannon exploited Ms. McSweeney's disabilities in attempt to manipulate Ms. McSweeney to relapse into alcohol use disorder.

172.     In diametric opposition to her obligations as an employer Defendant Shannon encouraged Ms. McSweeney to relapse and told her that the RHONY season 13 fans would like her more during the season if Ms. McSweeney still consumed alcohol.

173.     As a result of these messages, Ms. McSweeney also requested a future accommodation by asking Defendants to remove her daughter's filming obligations in the prospective RHONY season 14.

174.     Ms. McSweeney understood such accommodation to be reasonable because Defendants allowed RHONY Housewife Sonja Morgan to hide her daughter from the show.

175.    Defendants responded that they would not give Ms. McSweeney that accommodation as they had to Morgan, because Morgan, specifically, is the "golden goose" that becomes inebriated on camera, unlike Ms. McSweeney.

176.    Again, not only did Defendants fail to reasonably accommodate Ms. McSweeney's disabilities nor engage in any interactive process with Ms. McSweeney: Defendants used Ms. McSweeney's worsening disability to attempt to convince her to relapse into alcohol use disorder by implying that they would help save her child if Ms. McSweeney consumed alcohol.

177.    Though Defendant Producer's witnessed Ms. McSweeney suffering greatly with anxiety, depression, and maintaining her sobriety, Defendant Producers never once asked Ms. McSweeney whether she required assistance remaining sober and/or with her mental health disabilities.

178.    In the midst of Ms. McSweeney's suffering, rather than provide reasonable accommodations, or otherwise support Ms. McSweeney, Defendant Cohen chose to further perpetuate gender-based stereotypes and sexually harass Ms. McSweeney and comment that her recent breast augmentation made her a real "Housewife."

179.    In fact, almost a year after the Hampton's Trip, Ms. McSweeney's mental health disorders continued to significantly decline because Defendants did not give her a reasonable accommodation to leave the Hampton's Trip or be allowed even a break to seek medical assistance.

180.    As a result, after RHONY season 13, Ms. McSweeney was institutionalized into a psychiatric care facility because she suffered from, *inter alia*, suicidal and self-harm ideations.

181.    Throughout Ms. McSweeney's experience of extreme psychological distress, hospitalization, and additional out-patient therapy, Ms. McSweeney could not work to support

herself nor her daughter. In fact, Ms. McSweeney required around-the-clock care to ensure that she would stay alive and would not harm herself.

182.    As a direct result of Defendants' failure to accommodate Ms. McSweeney, the hostile work environment Defendants created, and Defendants' retaliation against Ms. McSweeney for failing to relapse into alcohol use disorder: Ms. McSweeney suffered extreme emotional distress, monetary costs associated with hospitalization and other medical costs, lost wages for the time period that her exacerbated mental health disorders prevented her from working, and her work product during RHONY season 13 was negatively affected.

183.    After RHONY season 13 concluded, Ms. McSweeney called Defendant Shannon and requested that she not be considered for RHONY season 14 due to Defendants' discrimination.

184.    Defendant Shannon remarked that if it is what's best for Ms. McSweeney's "mental health" then she would not stop her from removing herself.

185.    Defendant Shannon, however, continued to pressure Ms. McSweeney to remain a cast member in RHONY season 14.

186.    Unfortunately, Defendants discrimination against Ms. McSweeney did not cease when RHONY season 13 concluded.

187.    After RHONY season 13 concluded, Ms. McSweeney complained directly to Defendant Cohen that Defendants' lack of accommodations caused her to suffer extreme mental anguish.

188.    In fact, Ms. McSweeney begged Defendant Cohen not to mention her grandmother's death in the media, again requesting an accommodation, because it would exacerbate her mental health disabilities.

189.     In response, Defendant Cohen chose to dedicate a section of his talk show, WWHL, towards lambasting Ms. McSweeney's "decision" not to visit her dying grandmother and stay at the Hampton's Trip.

190.     Additionally, Defendant Cohen retaliated against Ms. McSweeney's requests for accommodations (i.e. not to pressure her to consume alcohol throughout RHONY season 13) by publicly mocking Ms. McSweeney's sobriety.

191.      Defendant Cohen, specifically, retaliated against Ms. McSweeney's complaints of discrimination and Defendant' failure to reasonably accommodate her by publicly tarnishing Ms. McSweeney's reputation which, upon information and belief, was with intent to blackball Ms. McSweeney from the entertainment industry.

192.     Defendant Cohen stated on Sirus XM's radio show that "Leah's not — somebody's not built to be a housewife." after Ms. McSweeney complained of disability discrimination on RHONY season 13, notwithstanding the fact that Ms. McSweeney was among the most popular "Housewives" cast on RHONY.

193.     Defendant Cohen's remark was clearly intended to retaliate against Ms. McSweeney's complaints because he and the Defendants later cast Ms. McSweeney on RHUGT— indicating that Defendants did believe that Ms. McSweeney was "built to be a Housewife."

194.     All the while Defendant Cohen retaliated against Ms. McSweeney's complaints of discrimination in the media, privately, Defendant Cohen and the Defendant Producers continued to discuss the prospects of Ms. McSweeney's ability to rejoin the RHONY cast for season 14.

195.     Upon information and belief, Defendant Cohen and Defendant Producers did so to dissuade Ms. McSweeney from making additional complaints of discrimination by dangling the

prospect of continued, lucrative employment in front of her, with the implicit condition that Ms. McSweeney keep silent and obey.

196.    Ultimately, Defendants elected to abruptly, temporarily pause production of RHONY after RHONY season 13.

197.    Notwithstanding Defendants' decision to pause production of RHONY, Defendants continued to contact Ms. McSweeney regarding future employment prospects in prospective ventures such as *Real Housewives of New York: Legacy* ("RHONY Legacy"), RHUGT, and RHONY season 14.

198.    Ms. McSweeney's employment relationship with Defendants, therefore, did not end there.

### G. Defendants' Discrimination Against Ms. McSweeney Peaks Throughout Her Continued Employment with Defendants on RHUGT

199.    On or around November 21, 2021, Defendants Warner, Bravo, and Cohen publicly introduced their new *Real Housewives* spin-off series, RHUGT, which would air on the streaming-service, Peacock.

200.    Also around this time, Defendants conceived of a new RHONY program—RHONY Legacy.

201.    Upon information and belief, RHONY Legacy was intended to feature star RHONY Housewives that appeared at some point throughout RHONY's thirteen season run.

202.    Similarly, although Defendants announced their intent to temporarily pause production of RHONY, Defendants purportedly changed their tune regarding Ms. McSweeney's desirability as a cast member on *Real Housewives* related productions.

203.    Upon information and belief, Defendants remained motivated by the success of RHONY season 12's "Hurricane Leah" episode and intended to weaponize Ms. McSweeney's

31

alcohol use disorder and hopeful relapse to promote either or both RHONY Legacy and/or RHUGT.

204.    In or around 2022, Defendants approached Ms. McSweeney to join RHUGT's season 3 as a cast member.

205.    Notably, the Defendant Producers also signed-on to produce RHUGT; and therefore, maintained acute awareness of Ms. McSweeney's disabilities.

206.    As soon as Ms. McSweeney became a cast member, Defendants again had a legal responsibility to reasonably accommodate or otherwise engage in an interactive process necessary to accommodate Ms. McSweeney's disabilities because they knew of Ms. McSweeney's disabilities from RHONY seasons 12 and 13.

207.    Yet immediately, Defendants Ward and Paparazzo called Ms. McSweeney and asked, "are you still not drinking?"

208.    Similarly, Housewife Marysol Patton texted Ms. McSweeney to state "I wish you were still drinking", in reference to Ms. McSweeney's alcohol use disorder and newfound sobriety.

209.    Ms. McSweeney, therefore, began to fear relapsing into alcohol use disorder before she even began filming for RHUGT, and requested reasonable accommodations that the Defendants not question her regarding her sobriety and to direct their employees to do the same.

210.    Ms. McSweeney requested these accommodations because, after experiencing Defendants' constant interrogation regarding her sobriety on RHONY seasons 12 and 13, she feared that Defendants would continue to do so on RHUGT.

211.    Ms. McSweeney expressly requested reasonable accommodations that would allow her the ability to attend Alcoholics Anonymous meetings ("AA meetings") while filming RHUGT.

212. As soon as Ms. McSweeney requested these accommodations Defendants had a legal responsibility to reasonably accommodate Ms. McSweeney or engage in an interactive process to find a mutually agreeable accommodation for Ms. McSweeney.

213. Ms. McSweeney knew this accommodation to be reasonable because other RHONY cast members, Ms. de Lesseps and Sonja Morgan, were previously allowed to attend AA meetings while filming RHONY, and specifically, on RHONY cast trips.

214. Defendant Producers falsely told Ms. McSweeney that this request would not be a problem.

215. Upon information and belief, however, Defendant Producers were secretly hoping and planning for Ms. McSweeney to relapse into alcohol addiction through consumption of alcohol while filming RHUGT.

216. Upon information and belief, therefore, Defendant Producers willfully ignored their legal obligations to accommodate Ms. McSweeney in favor of intentionally discriminating against Ms. McSweeney to cause her to relapse into alcohol use disorder.

217. Upon information and belief, Defendant Producers decided that they would drive Ms. McSweeney to drink or retaliate against Ms. McSweeney's refusal to drink by forcing and/or manipulating the other RHUGT cast members to turn against Ms. McSweeney.

218. Upon information and belief, Defendant Producers' failure to provide Ms. McSweeney with reasonable accommodations and engage in the interactive process was in furtherance of their intent to treat and portray Ms. McSweeney as a hysterical, uncontrollable, alcohol-addicted woman.

219. On or around July 18, 2022, Defendants began production of RHUGT season 3.

220.    Defendant Producers immediately ignored Ms. McSweeney's reasonable request for accommodations and also began to discriminate against Ms. McSweeney by instantly providing Ms. McSweeney with negative performance reviews, which stated that because Ms. McSweeney did not relapse into addiction that her scenes were "boring."

221.    Specifically, Defendant Shannon directly stated to Ms. McSweeney that because Ms. McSweeney elected to film RHUGT sober, Ms. McSweeney was "not the Leah we know and love."

222.    Upon information and belief, Defendant Producers also directed RHUGT cast members to interrogate Ms. McSweeney regarding her sobriety and pressure her to consume alcohol.

223.    Ms. McSweeney, therefore, again reiterated her request for a reasonable accommodation to not discuss her sobriety and/or alcohol use disorder and issued a complaint regarding this discrimination by sending a text message to Defendant Ward stating that she felt very uncomfortable because the women were "trying to undermine [her sobriety]."

224.    Instead of providing Ms. McSweeney with a reasonable accommodation such as, *inter alia*, directing employees to refrain from ostracizing Ms. McSweeney on the basis of her alcohol-related disability and/or investigating Ms. McSweeney's complaint, Defendant Ward responded: "get out of your head" and "deal with it."

225.    Defendant Ward failed to provide Ms. McSweeney with any reasonable accommodations for her disabilities and failed to engage in the interactive process with Ms. McSweeney to discuss possible accommodations.

226. Similarly, Ms. McSweeney reiterated her request for a reasonable accommodation and expressed discomfort to Defendant Paparazzo after another cast member had told her, "I wish you were still drinking."

227. Instead of providing Ms. McSweeney with a reasonable accommodation, Defendant Paparazzo replied: "You're good."

228. Defendant Paparazzo failed to provide Ms. McSweeney with reasonable accommodations for her disability and failed to engage in the interactive process with Ms. McSweeney to discuss possible accommodations.

229. In response, Ms. McSweeney urgently requested the ability to attend AA meetings.

230. Defendant Producers, however, despite their prior promises that they would accommodate Plaintiff, failed to accommodate Ms. McSweeney's need to go to AA meetings during the filming of RHUGT or engage in any interactive process to suggest alternative reasonable accommodations.

231. Specifically, despite the Defendant Producer's promise to provide Ms. McSweeney with this accommodation, after transporting Ms. McSweeney to Thailand to film RHUGT season 3, Defendant Paparazzo told Ms. McSweeney that Defendant Shed refused to provide transportation to get to the AA meetings in Thailand and that there would not be time for her to attend AA meetings given the filming schedule.

232. Defendant Producers offered no reasonable accommodation that would allow Ms. McSweeney the ability to attend AA meetings in Thailand.

233. Upon information and belief, it would not have caused Defendant Producers unreasonable hardship or unreasonable expense to modify Ms. McSweeney's filming schedule and

allow her the ability to attend AA meetings. That is especially true as they knew of the need to provide this accommodation long prior to filming.

234. Indeed, Defendants were more than willing to provide free alcohol to the RHUGT cast, along with transportation to nightclubs if the RHUGT cast expressed a desire to go out clubbing but refused to provide Ms. McSweeney with any reasonable accommodation to attend AA meetings.

235. Defendant Producers also failed to engage in an interactive process with Ms. McSweeney to suggest other accommodations that might fit within her filming schedule.

236. Again, in flagrant disregard of Ms. McSweeney's requests for accommodations: Defendant Producers specifically requested that RHUGT cast members taunt Ms. McSweeney about her sobriety and mental health diagnoses while the RHUGT cast members were filmed.

237. Upon information and belief, Defendant Producers directed castmate Heather Gay to confront Ms. McSweeney, during a filmed scene, regarding whether Ms. McSweeney intended to remain sober while filming RHUGT.

238. Upon information and belief, Defendant Producers also directed a guest "fortune teller" to bring up Ms. McSweeney's mental health diagnoses and addiction during filming.

239. Upon information and belief, Defendant Producers also directed or otherwise encouraged fellow castmate, Portia Williams, to call Ms. McSweeney a "drug addict."

240. Upon information and belief, Defendant Producers did so with express intent to discriminate against Ms. McSweeney's alcohol use disorder.

241. Ms. McSweeney then complained of disability discrimination on the basis of her alcohol use disorder by reporting that Defendant Producers' acts of encouraging her to drink and

36

directing other cast members to harass Ms. McSweeney based on her disabilities worsened her mental health and addiction disabilities at her place of work.

242.    Defendants failed to even investigate Ms. McSweeney's complaint while RHUGT was still filming, let alone attempt to provide Ms. McSweeney with accommodations to support her disabilities.

243.    In retaliation for requesting accommodations and complaining of alcohol use disorder discrimination, Defendant Shannon attempted to gaslight Ms. McSweeney into believing that she never requested accommodations by telling Ms. McSweeney that she was "mute" while filming RHUGT.

244.    Also while filming RHUGT, and in conversation with her fellow castmates, Ms. McSweeney relayed the unsafe working conditions and failure to accommodate her requests for accommodations that she experienced during the Hamptons Trip.

245.    The day after Ms. McSweeney made such disclosure to the other RHUGT cast members, Defendants Ward and Paparazzo began retaliating against Ms. McSweeney and threatened that Defendant Shannon was "pissed."

246.    Worse, the Defendant Producers attempted to gaslight Ms. McSweeney into believing that Ms. McSweeney was not mistreated nor discriminated against during the Hamptons Trip and called Ms. McSweeney a liar.

247.    In retaliation, Defendants Paparazzo and Ward even went on to threaten Ms. McSweeney's continued employment, both stated: "Maybe you're not made for this", "You're going to get it today", and "If you want to be on TV act like it."

248.    Upon information and belief, in further retaliation for Ms. McSweeney's disclosures—or as the Defendant Producers stated, "payback for making them look bad"—the

Defendant Producers spent every day that Ms. McSweeney filmed RHUGT devising novel methods to trigger, harass, and torment Ms. McSweeney.

249. In fact, fellow RHUGT cast member Gizelle Bryant told Ms. McSweeney that the Defendant Producers directed other cast members to discriminate against Ms. McSweeney.

250. Upon information and belief, Defendant Producers did so with the express purpose of retaliating against Ms. McSweeney's complaints of discrimination and requests for accommodation and to cause Ms. McSweeney mental pain and suffering, and then trivialize same as nothing more than the archetypal hysteria associated with the women on the show.

251. As just one example, Defendants Ward and Paparazzo showed Ms. McSweeney's fellow RHUGT cast members Ms. McSweeney's private text messages where she complained to Defendants Paparazzo and Ward of the cast member's routine discussion of Ms. McSweeney's sobriety.

252. Ms. McSweeney complained of this retaliation to Defendant Shannon. Ms. McSweeney also complained that this retaliation was exacerbating her mental health disabilities by ostracizing her from her fellow castmates.

253. In response, Defendant Shannon warned that if Ms. McSweeney continued to complain, Ms. McSweeney "would not like what the other women are saying about you", implying that she would coach the women to further disparage Ms. McSweeney.

254. Defendant Shannon, again, gaslit Ms. McSweeney and attempted to convince Ms. McSweeney that her complaints were invalid, all while allowing Defendants' culture of discrimination and retaliation to continue by failing to investigate Ms. McSweeney's complaints.

255.     Defendant Shannon trivialized Ms. McSweeney's legitimate complaints by telling Ms. McSweeney that it "doesn't even matter" and she should focus on "build[ing] on the momentum of today".

256.     Clearly, Defendant Shannon held different expectations for the women, like Ms. McSweeney, who were expected to keep working and suffer such a hostile work environment in silence, while the male Producers could continue to harass Ms. McSweeney with impunity.

257.     Eventually, Defendants retaliation increased such that Defendants began to threaten Ms. McSweeney's continued employment.

258.     For example, prior to the RHUGT finale dinner, a non-defendant producer warned Ms. McSweeney that if she continued to complain about Defendant Producers' harassment and failure to accommodate Ms. McSweeney's disabilities, Defendant Producers would ensure that Ms. McSweeney "will never work again." That producer directed Ms. McSweeney to, instead, discuss her struggles with drinking, anxiety, and depression in attempt to save Ms. McSweeney from further provoking Defendant Producers' ire.

259.     Faced with the knowledge of this threat, and institutional knowledge that other Housewives who spoke out against Defendants were blackballed from the entertainment industry, Ms. McSweeney feared that Defendants would soon blackball her, too.

260.     In retaliation, and throughout the course of RHUGT, Defendant Producers mocked, humiliated, isolated, shamed, and gaslit Ms. McSweeney on the basis of, *inter alia*, her sobriety and her mental health diagnosis.

261.     Upon information and belief, Defendants ignored Ms. McSweeney's requests for accommodations, discriminated against Ms. McSweeney's alcohol use disorder, and retaliated against Ms. McSweeney's complaints of discrimination with intent to cause Ms. McSweeney to

suffer severe emotional distress because Defendants knew Ms. McSweeney was particularly susceptible to experiencing such distress due to her known mental health disorders.

262.    Furthermore, with intent to exacerbate Ms. McSweeney's mental health disorders and cause Ms. McSweeney to behave erratically on camera, Defendants failed to provide Ms. McSweeney with adequate amounts of food and water while filming RHUGT, which took place in Thailand during the summer months.

263.    Upon information and belief, Defendants intentionally deprived Ms. McSweeney of food she could eat to trigger Ms. McSweeney's mental health disabilities. Ms. McSweeney knew that Defendants treated her disparately because she witnessed Defendant Producers providing other castmates, such as Portia Williams, with outside fast food immediately upon request.

264.    Additionally, though Defendant Producers asked Ms. McSweeney if she had any dietary restrictions, and therefore knew that Ms. McSweeney could not eat pork products due to her religious beliefs, Defendant Producers hosted a cast lunch where each and every product was cooked in pork substances and provided no alternatives.

265.    In fact, RHONY season 13 prominently featured Ms. McSweeney's conversion to Judaism, which occurred in or around 2022. After Ms. McSweeney converted to Judaism, she made the Defendant Producers and Defendant Cohen aware of her religious dietary restrictions that made her unable to consume pork products.

266.    Defendant Producers, therefore, were acutely aware that Ms. McSweeney would be unable to consume any product at the cast lunch.

267.    Upon information and belief, Ms. McSweeney was the only RHUGT cast member that practiced Judaism's proscription against consumption of pork products.

268. Upon information and belief, Defendants could have reasonably accommodated Ms. McSweeney's religion by providing Ms. McSweeney with non-pork products to consume.

269. Upon information and belief, Defendants intentionally failed to provide Ms. McSweeney with products to consume in lieu of pork products, notwithstanding Ms. McSweeney's protestations that her religion precluded her from eating pork products and requests for non-pork products.

270. Defendants, therefore, forced Ms. McSweeney to starve once again by blatantly discriminating against Ms. McSweeney's religious practices.

271. As a result of Defendants' failure to provide Ms. McSweeney with proper amounts of food, in addition to the severe emotional distress that Ms. McSweeney was experiencing, Ms. McSweeney lost seven pounds while filming RHUGT.

272. Ms. McSweeney's health began to suffer so drastically that she became ill and needed medical treatment.

273. Defendant Shed failed to respond to Ms. McSweeney's medical emergency and refused to provide Ms. McSweeney with medical treatment with intent to cause Ms. McSweeney to suffer extreme emotional distress and to discriminate against Ms. McSweeney's mental health disabilities.

274. As a result, Ms. McSweeney required emergent hospitalization while filming in Thailand. In fact, consistent with Defendants' failure to provide Ms. McSweeney with food and water, Ms. McSweeney was diagnosed with "severe dehydration" and related infections while hospitalized.

275. Upon information and belief, Defendant Producers exploited Ms. McSweeney's mental health diagnoses and trivialized the same, using her hospitalization and exacerbated mental health disorders for fodder, as nothing more than the archetypal, female hysteria.

276. On or around late Fall of 2022, Ms. McSweeney overcame her fears and submitted a formal complaint to Defendants wherein she complained of experiencing discrimination, a hostile work environment, and retaliation throughout her employment on RHUGT.

277. Upon information and belief, the Defendant Companies knew or should have known of Ms. McSweeney's formal complaint.

278. On or around November 3, 2022, Defendant Warner purportedly initiated a formal investigation after a conversation between its counsel, Ms. McSweeney.

279. Upon information and belief, Defendant Warner's "investigation" into Ms. McSweeney's complaints took place in or around November and December of 2022.

280. Upon information and belief, Defendant Warner's 'investigation' was a sham and was not conducted properly nor in good faith.

281. On or around December 21, 2022, Ms. Silisha Platon ("Ms. Platon"), one of the investigators employed by Defendant Warner, verbally told Ms. McSweeney that employment policies were in fact violated and that Defendant Warner was disciplining an employee for the same (although Ms. Platon told Ms. McSweeney that Ms. Platon could not disclose the employee or the discipline, because Ms. McSweeney was also an employee).

282. Subsequently, after weeks of Ms. McSweeney requesting an investigation report, Ms. Platon sent a one-paragraph "Conclusion Letter" changing her position and stating that, "more likely than not, there were no specific policy violations," and offering a time to "discuss further" if Ms. McSweeney wanted additional information about the purported investigation.

283. After Ms. McSweeney complained about discrimination and retaliation, Defendant Bravo retaliated against Ms. McSweeney with increased vigor.

284. For example, Defendant Cohen invited Ms. McSweeney to appear as a guest on WWHL to promote RHUGT. When Ms. McSweeney refused, Defendant Cohen used Ms. McSweeney's name to play a "drinking game" on WWHL, wherein every time a person mentioned Ms. McSweeney's name, Defendant Cohen directed the audience to take a sip of their alcoholic beverages. Defendant Cohen did so even with the knowledge that Ms. McSweeney suffered from alcohol use disorder and that a "call to drink" might trigger Ms. McSweeney to relapse.

285. Despite Defendants' repeated promise to employ Ms. McSweeney on RHONY Legacy, after issuing a formal complaint to Human Resources, Defendants notified Ms. McSweeney that they would not continue her employment.

286. Indeed, on or around November 10th, 2022, Defendant Cohen texted Ms. McSweeney and notified her that she would no longer be considered to be a cast member on RHONY Legacy.

287. In his message, Defendant Cohen referenced Ms. McSweeney's complaint of discrimination that she previously issued to Defendant Bravo employee Sezin Cavusoglu as part of the reason that Defendants Bravo and Cohen declined to cast Ms. McSweeney on RHONY Legacy.

288. Defendant Cohen's message bore a clear implication that Defendants' decision to terminate Ms. McSweeney's employment relationship was direct retaliation against Ms. McSweeney's complaints of discrimination.

289. Indeed, Defendants' retaliation against Ms. McSweeney did not end with their decision to terminate her employment. Immediately prior to one of Ms. McSweeney's RHUGT

43

Confessionals, which was filmed on or around December 2022: Defendant Bravo told Ms. McSweeney to express a desire to be cast on RHONY Legacy, notwithstanding Ms. McSweeney's knowledge that she would not be cast on RHONY Legacy.

290.    In further retaliation against Ms. McSweeney's complaints of discrimination, the Defendant Producers repeatedly pressured Ms. McSweeney to state—on camera—that she was thankful for everything that Defendants "gave her" while she was a part of RHONY and RHUGT. Defendant Producers did so with intent to retaliate against Ms. McSweeney by exacerbating Ms. McSweeney's mental health disabilities and causing her to suffer anxiety and depression related to her complaints of discrimination against Defendants.

291.    Defendant Bravo knew that it promised Ms. McSweeney employment on RHONY Legacy, that it elected not to cast Ms. McSweeney on RHONY Legacy after Ms. McSweeney issued a formal complaint related to Defendants' unlawful employment practices, and that Ms. McSweeney suffered depression and anxiety related to her future employment prospects.

292.    Additionally, before and around Defendant Cohen's November 10, 2022 text message to Ms. McSweeney, Defendant Cohen told Ms. McSweeney that Defendants intended to reboot RHONY and produce RHONY season 14.

293.    Throughout this time, Defendant Shannon maintained close communication with Ms. McSweeney regarding the casting process of RHONY season 14,

294.    In fact, Defendant Cohen and Defendant Shannon asked Ms. McSweeney for cast member recommendations to support their production process for RHONY season 14.

295.    Throughout these conversations, Defendant Cohen and Shannon implied that Ms. McSweeney would either be cast on RHONY Legacy or RHONY season 14.

44

296.     Ms. McSweeney, therefore, understood that Defendants would cast her on RHONY season 14 because Defendant Cohen relayed that she would not be cast on RHONY Legacy.

297.     After Ms. McSweeney formally complained of discrimination on the basis of disability to human resources, however, Defendants reneged their promise to cast Ms. McSweeney on RHONY season 14.

298.     Upon information and belief, Defendants' decision to not cast Ms. McSweeney on RHONY season 14 was direct retaliation against Ms. McSweeney's legally protected activities including her formal complaint to human resources and informal complaints to, *inter alia*, Defendant Cohen and other Defendant Bravo employees of disability discrimination and harassment and requests for accommodation.

299.     As a result of Defendants discriminatory and retaliatory conduct, Ms. McSweeney was hospitalized twice for psychological disturbances and suicidal ideations. In fact, years later, Ms. McSweeney still suffers from Post-Traumatic Stress Disorder induced Obsessive Compulsive Disorder, which significantly detracts from her ability to function in day-to-day life.

300.     On or around February 27, 2024, Ms. McSweeney filed her Complaint and alleged, *inter alia*, sex/gender discrimination, disability discrimination, religious discrimination, hostile work environment, and retaliation claims against Defendants in violation of Title VII, New York State, and New York City employment laws.

301.     Upon information and belief, Ms. McSweeney's act of filing her Complaint constitutes a protected activity.

302.     In direct response to McSweeney's filing of the Complaint in this action, Defendant Cohen further retaliated against Ms. McSweeney.

303.    On or around March 6, 2024, Defendant Cohen's attorney, Orin Snyder, sent a letter to Ms. McSweeney's undersigned counsel and threatened legal action against Ms. McSweeney regarding Ms. McSweeney's claims against Defendant Cohen (the "March Letter").

304.    Upon information and belief, Defendant Cohen was aware that Ms. McSweeney filed the Complaint prior to sending the March Letter because Defendant Cohen's counsel referenced and quoted the Complaint in the March Letter.

305.    The March Letter directs Ms. McSweeney to retract her allegations in the Complaint, or otherwise, Mr. Cohen will "hold [Ms. McSweeney's counsel] and [Ms. McSweeney] accountable to the fullest extent of the law."

306.    The March Letter further threatened Ms. McSweeney, in response to her act of filing her Complaint, and states: "[t]he publication of the complaint was a malicious act that [subjects] [sic][Ms. McSweeney] to substantial compensatory and punitive damages."

307.    Upon information and belief, the March Letter's threats were baseless and was intended—once again—to scare Ms. McSweeney into silence.

308.    Upon information and belief, Defendant Cohen's counsel, Orin Snyder, knew that the March Letter's threats were baseless because, on or around June 15, 2023, Mr. Snyder authored an article advising his law firm, Gibson Dunn, that allegations included in a complaint are absolutely privileged, and yet the March Letter specifically targets Ms. McSweeney's allegations in the Complaint.  *See* Orin Snyder, New York's Highest Court Addresses Recent Anti-SLAPP Amendments and Multiple Aspects of Defamation Law in Lawsuit Against Kesha, Gibson Dunn (June 15, 2023)  https://www.gibsondunn.com/new-york-highest-court-addresses-recent-anti-slapp-amendments-and-multiple-aspects-of-defamation-law-in-lawsuit-against-kesha/.

309. The threat of punitive action against Ms. McSweeney in the March Letter, and the publication of same to the media, was maliciously intended to intimidate Ms. McSweeney against engaging in protected activity, i.e. pursuing her claims against Defendant Cohen in this Court.

310. Defendant Cohen's act of threatening Ms. McSweeney with baseless, frivolous legal action, which Defendant Cohen and his counsel either knew or should have known to be baseless and frivolous, constitutes unlawful retaliation.

311. Upon information and belief, therefore, the March Letter served as direct retaliation against Ms. McSweeney for engaging in protected activity, i.e. filing the Complaint.

312. Upon information and belief, contemporaneously after sending the March Letter to Ms. McSweeney's counsel or shortly thereafter, Defendant Cohen caused the March Letter to be published in various media outlets, such as Page 6, Deadline, Variety, and the Hollywood Reporter.

313. Upon information and belief, Defendant Cohen intentionally caused the March Letter to be published with intent to discourage Ms. McSweeney from further engaging in protected activity by litigating the claims in her Complaint.

314. Upon information and belief, Defendant Cohen also caused the March Letter to be published with intent to discourage other persons that Defendant Cohen supervises and employs from engaging in protected activity by complaining of Defendant Cohen's discriminatory conduct.

315. Upon information and belief, Defendant Cohen's act of causing the March Letter's publication was intended to smear Ms. McSweeney in the media and was intended to dissuade Ms. McSweeney from engaging in protected activity, i.e. proceeding with her claims against Defendant Cohen.

### H. Defendants Established a Willful Practice of Discriminating and Retaliating Against their Employees on the Basis of Sex, Gender, and Disability

316. As one former Housewife stated: "Filming is addictive. It's an adrenaline rush." Dave Quinn, *Not All Diamonds and Rosé*, Andy Cohen Books, Henry Holt and Co., 92 (2021).

317. Though Ms. McSweeney is the sole plaintiff in this action, she is just one of Defendants' many victims. Like many others, Ms. McSweeney had no idea that agreeing to employment with Defendants would result in subjugation by unlawful working environments and those that foster them, with impunity.

318. Defendants know that their employment practices are discriminatory and illegal; however, they choose to perpetuate these unlawful practices for the sake of profitable, salacious reality television.

319. Defendants' individual and collective acts of discrimination against employees who are members of a protective class, other than Ms. McSweeney, may evidence Defendants' individual and collective discriminatory motives.

320. Defendants' individual and collective acts of discrimination against employees who are members of a protective class, other than Ms. McSweeney, may evidence that Defendants created a hostile workplace environment.

### a. Defendants Intentionally Discriminate Against Cast Members' Disabilities.

321. Defendants glorified Housewives' addiction since Defendants conceived the *Real Housewives*.

322. Cast members such as Kim Richards, Sonja Morgan, Luann de Lesseps, and James Kennedy have openly exhibited alcohol and drug addiction while employed by Defendants. *See* Tom Syverson, *From Vanderpump Rules to the Real Housewives, Bravo's Sobering Portrait of*

*Addiction and Recovery*, Paste (April 4, 2017, 3:00PM), https://www.pastemagazine.com/tv/the-real-housewives-of-beverly-hills/from-vanderpump-rules-to-the-real-housewives-of-be.

323.    Additionally, in response to accusations that Defendant Cohen engages in discriminatory workplace behavior, he is quoted as saying: "It's a complicated relationship … I'm a boss, I'm a friend … I'm an adversary, I'm a button pusher. I've become legitimately friends with many of them. I care about them. So it's nuanced. And sometimes it's great and sometimes it's not great. It's an emotional relationship." *See Andy Cohen's Friendships With Former Housewives: Who is He Still on Good Terms With*, Us Weekly (Aug. 22, 2023), https://www.yahoo.com/entertainment/andy-cohen-friendships-former-housewives-152715336.html.

324.    What Defendant Cohen conveniently omits, however, is that as the Housewives' employer, he is legally obligated to ensure safe, fair, nondiscriminatory places of employment.

325.    Specifically, as Ms. McSweeney's employer, Defendant Cohen knew of Ms. McSweeney's disabilities but willfully shirked his legal obligation to reasonably accommodate Ms. McSweeney's disabilities.

326.    Defendant Cohen also received many of Ms. McSweeney's complaints of employment discrimination and failed to investigate or otherwise address Ms. McSweeney's complaints; worse, he himself actively discriminated against her and intentionally exacerbated Ms. McSweeney's mental disability so as to cause her to suffer extreme emotional distress.

327.    In fact, the *Real Housewives* producers hope that the Housewives engage in dangerous behaviors with alcohol. Non-defendant producer, Alex Baskin, is quoted stating: "Vicki [Gunvalson] is great in group scenes, particularly on trips . . . you know sh*t's going to go down

49

and she's probably going to end up in an ambulance." Dave Quinn, *Not All Diamonds and Rosé*, Andy Cohen Books, Henry Holt and Co., 87 (2021).

328.    Similarly, Defendant Producers knew that Ms. de Lessops' suffered from alcohol use disorder through filming Ms. de Lessops' alcohol related arrest, criminal prosecution, parole, and experience in a rehabilitation center. Notwithstanding this knowledge, the Defendant Producers joked to Ms. McSweeney about watching as de Lessops drunkenly entered into a vehicle with two men that she did not know in effort to obtain illicit substances.

329.    Another former Housewife, Brauwyn Windham-Burke also requested that the Defendant Producers not speak about her sobriety on camera, and Defendants also ignored her reasonable requests for accommodations. Dave Quinn, *Not All Diamonds and Rosé*, Andy Cohen Books, Henry Holt and Co., 97 (2021).

330.    Additionally, former Housewives including Bethenny Frankel, Aviva Drescher, and Stephanie Hollman have also complained that Defendants withhold food while forcing Housewives to consume alcohol. *See* Olivia Davis, *'Real Housewives of Dallas' Alum Claims Production 'Over-Served' and 'Starved' Cast Following Bethenny Frankel's Lawsuit Against Bravo*, All About the Tea (Aug. 29, 2023), https://allaboutthetea.com/2023/08/29/real-housewives-of-dallas-alum-claims-production-over-served-and-starved-cast-following-bethenny-frankels-lawsuit-against-bravo/; Dana Schuster, *'Housewives' say Bravo Keeps the Booze Flowing*, Page 6 (June 16, 2018, 3:29 PM), https://pagesix.com/2018/06/16/housewives-say-bravo-keeps-the-booze-flowing/.

331.    Another Bravo cast member is quoted as stating: "[the producers are] like, 'Oh, you know, go out, have dinner, have a good time.' You're like, 'I'd rather just get some sleep' and they're like, 'No, you're gonna drink. You're gonna drink and you're gonna stay up until four in the

morning, and you're going to like it!'" *See* Linda Holmes, *'Below Deck,' reality producers stepped in to stop a drunken assault — this time*, NPR (Aug. 12, 2023), https://www.npr.org/2023/08/12/1193446744/below-deck-down-under-sexual-assault.

332.    These accounts demonstrate that Defendants' pattern of disability discrimination and failure to accommodate is willful.

333.    Furthermore, Defendant Cohen favors Housewives that 'play ball' with his proclivity for substance abuse and discriminates against the sober Housewives that, because of their substance use disorders, cannot.

334.    Upon information and belief, Defendant Cohen also engages in cocaine use with Housewives and other "Bravolebrities" that he employs.

335.    Upon information and belief, Defendant Cohen's proclivity for cocaine usage with his employees is well-known throughout the *Real Housewives* franchise.

336.    In fact, upon information and belief, Defendant Cohen tends to provide the Housewives with whom he uses cocaine with more favorable treatment and edits.

337.    Upon information and belief, Defendant Cohen intentionally uses cocaine with his employees to further promote a workplace culture that thrives off drug and alcohol abuse, which leads to a failure to accommodate employees who are disabled and attempting to remain substance free.

338.    Defendant Cohen's preferred workplace environment, which is fueled with substances and illicit behavior, permeates every aspect of Defendant Bravo productions.

339.    Recently, Defendant Bravo recently, sickeningly aired an episode of its series *Below Deck*, which portrayed a female cast member's sexual assault by a male cast member. *See* Linday Lowe, *Inside the 'Below Deck: Down Under' Consent Incidents that Led to 2 Firings and an*

*Outpouring of Praise*, Today (Aug. 9, 2023, 2:15 PM), https://www.today.com/popculture/tv/below-deck-down-under-consent-controversy-recap-luke-jones-rcna99047.

340.   Upon information and belief, in productions such as RHONY, RHUGT, and *Below Deck*, Defendants provide employees with unlimited, free alcohol and fail to provide any security to keep cast members safe after consuming copious amounts of alcohol.

341.   To the contrary Bravo's entire *modus operandi* is to induce employees to enter into dangerous situations that prey upon their weaknesses, light the proverbial match, and then –Watch What Happens Live.

342.   As one Below Deck cast member stated:

> [W]atching the producers swoop in here *only reminds you how often they do not swoop in*. They watch people get in fights, punch things, scream at each other, drink until they're sick, drink until they have to be carried home, drink until they have no idea what they're doing — in a way, seeing producers become visible in one instance makes them hover like ghosts at the edges in all the past situations they've allowed to unfold (encouraged to unfold?) without any obvious intervention. . . . *I can't remember ever hearing a producer say, "You've had enough, stop drinking, go to bed."*

*See* Linda Holmes, *'Below Deck,' reality producers stepped in to stop a drunken assault — this time*, NPR (Aug. 12, 2023), https://www.npr.org/2023/08/12/1193446744/below-deck-down-under-sexual-assault (emphasis added).

### b. Defendants Routinely Retaliate Against Housewives that Request Accommodations for their Disabilities.

343.   Defendants will go to all lengths to ensure that their cast members remain under their control. When Bravo cast members refuse to 'play ball' with Defendants, Defendants retaliate by tarnishing the cast member's reputation and public image.

344. Like Ms. McSweeney, former RHONY Housewife, Kelly Killoren Bensimon recounted how the Defendant Producers threatened her continued career after Killoren Bensimon requested an accommodation to leave a cast trip due to her mental health disabilities. When Killoren Bensimon ultimately left that cast trip, after Defendant Producers told her that she could not, she recounts:

> I was filming six days a week, from the very beginning to the very end. I filmed all the time, and I thought I was doing great. It was one of my best years. But my agent was like "[Defendant Producers and Defendant Bravo] are really mad at you and they don't know whether they're going to bring you back." I don't know why all this pressure was on me, but there was a lot of animosity and they told me that they were going to cancel me if I didn't go on the trip. That's why I said at the reunion that I was forced.

Dave Quinn, *Not All Diamonds and Rosé*, Andy Cohen Books, Henry Holt and Co., 115 (2021).

345. Also like Ms. McSweeney, former "bravoleberity", Raquel Leviss, also complained that Defendants punished her by originally promising her that she would receive on-set mental health counseling and later reneging that support after Leviss engaged in unauthorized media interviews. *See* Samantha Nungesser, *Rachel Leviss Blasts Andy Cohen For "Damaging Accusation That She Was "Medicated" During the 'Vanderpump Rules' Reunion: "I Feel Like That Violates Some Sort of HIPAA Law"*, The Decider (Aug. 18, 2023), https://decider.com/2023/08/18/rachel-leviss-blasts-andy-cohen-damaging-accusation-medicated-vanderpump-rules-reunion/.

346. Defendants' pattern and practice of retaliation proves that Defendants willfully retaliate against any employee that speaks out against discrimination.

### c. Defendants Sexually Harass Cast Members and Willful Discriminate Against Cast Members on the basis of Sex and Gender.

347. Defendants' biases against women are evidenced by the favorable treatment that male cast members, such as husbands of the Housewives, and male producers receive. The male

cast members are not subjected to the same hostility, sexist comments, or retaliation from producers or any of the Defendants, all of which the women are made to endure on a daily basis.

348. In effect, Defendant Cohen serves as the *Real Housewives* omnificent ringleader. Defendant Cohen curries favors with Housewives that perpetuate and/or acquiesce to unlawful, discriminatory employment practices, and terminates those who speak out.

349. As Defendant Cohen, himself, stated: "I was kind of a nice Jewish boy, talking to women about boob sizes and plastic surgery and their love lives. *These were topics I probably couldn't get away talking about if I were straight, by the way. Certainly not in the same way*." Dave Quinn, *Not All Diamonds and Rosé*, Andy Cohen Books, Henry Holt and Co., 25 (2021) (emphasis added).

350. Defendant Cohen, himself, admits that "I've asked too many inappropriate questions. I've asked women questions about their vaginas, their sex lives, their marriages, their famil[ies]. There is no stone I've left unturned." *See* Alice Li & JulieAnn McKellogg, *Andy Cohen on the art of being inappropriate*, The Washington Post (Dec. 9, 2014), https://www.washingtonpost.com/video/entertainment/andy-cohen-on-the-art-of-being-inappropriate/2014/12/09/43f1bcba-7fb1-11e4-b936-f3afab0155a7_video.html (emphasis added).

351. Thus, since its inception, the *Real Housewives* franchise thrives off the most incendiary portrayals of female cast members. *See* Samantha Swantek, *Stereotyped: Women in Reality TV*, The Artifice (Sept. 11, 2014), https://the-artifice.com/sterotyped-women-in-reality-tv/.

352. Throughout the course of Defendant Cohen's motivation to sexually harass cast members, he encourages those who work for him to do so as well, and created an employment environment where production, executives, and behind-the-scenes staff weaponize their inordinate power over Housewives by engaging in inappropriate behavior, with impunity.

54

353.     Defendant Cohen's sexual harassment and misogyny towards Housewives began as soon as the *Real Housewives* series started. In a book commissioned by Defendant Cohen, he discusses creating the *Real Housewives of Orange County* and states "This is very un-PC to say but I also couldn't get over how big [Lauri Peterson's] boobs were. I just couldn't imagine [Lauri] and Vicki [Gunvalson] selling insurance with those big boobs—I'd never considered that this could be a thing!" Dave Quinn, *Not All Diamonds and Rosé*, Andy Cohen Books, Henry Holt and Co., 7 (2021).

354.     Defendant Cohen subjects Housewives to inappropriate questions regarding their weight—questioning why and how a Housewife has gained weight and whether that weight gain increased the Housewives' bra size. Defendant Cohen also remarks when a Housewife appears to have lost weight and questions whether the Housewife has used the prescription drug product, Ozempic, to effectuate her weight loss.

355.     The disparate treatment of these women by the *RHONY* Employers was also recently made public during the season 13 reunion episode of the *Real Housewives of New Jersey* ("*RHONJ*"). There, Defendant Cohen screamed at one of the *RHONJ* Housewives, Teresa Guidice, to let another male cast member (her brother, Joe Gorga), speak. *See* June 6, 2023, "'RHONJ' fans blast Andy Cohen for 'belittling' women: He 'needs to be put on pause'", https://pagesix.com/2023/06/06/rhonj-fans-slam-andy-cohen-for-belittling-cast-at-reunion/.

356.     Upon information and belief, Bravo Cast Members including Stassi Schroder, Raquel Leviss, Nene Leakes, Bethenny Frankel, Monique Samuels, Aviva Drescher, Gretchen Rossi, Ciara Miller, Mya Allen, Brandi Glanville, Caroline Manzo and Stephanie Hollman have spoken publicly regarding, *inter alia*, Defendants' pervasive culture of sexism and racism.

357.    Marco Vega, a low-level production employee, also sued, *inter alia*, Defendant Bravo. In his Complaint, Mr. Vega alleges that Defendant Bravo overserves Housewives with alcohol and that as a result, Defendant Bravo coaches the Housewives to sexually harass staff. *See Vega v. Bravo Media LLC*, Index No. 157030/2023.

358.    Also, while Ms. McSweeney filmed RHUGT, her and other cast members realized that Defendant Paparazzo sexually harassed lower-level production employees.

359.    Upon information and belief, Defendant Paparazzo routinely sends unsolicited pictures of his genitalia to lower-level, male production employees.

360.    Although the Defendants know or should know about Defendant Paparazzo's sexual harassment, Defendant Companies continue to elevate Defendant Paparazzo to positions of increased power. By failing to take appropriate remedial action, Defendants tacitly send the message to him and all other employees that they can engage in unlawful employment practices with impunity.

361.    Defendant Companies' failure to reprimand or otherwise take action to stop Defendant Paparazzo's sexual harassment further perpetuates an unlawful culture of discrimination, marginalization, sexual harassment, and discrimination.

362.    Upon information and belief, Defendants Warner and Shed conducted multiple investigations into Defendant Paparazzo's conduct.

363.    Upon information and belief, such investigations were 'sham' investigations and concluded that Defendant Paparazzo did not violate any company guidelines, notwithstanding direct evidence of his sexually explicit messages sent to lower-level employees.

364.    In fact, Defendants' habit of sexual harassment and gender/sex discrimination proves that such discrimination and unlawful behavior is willful.

56

### d. Defendants Habitually Fail to Investigate Formal Claims of Discrimination.

365.    Like the 'investigation' that Defendants undertook after Ms. McSweeney formally complained of discrimination on RHUGT, other Defendants habitually ignore other Housewives' claims of discrimination, hostile work environment and retaliation with intent to perpetuate an unlawful, discriminatory and retaliatory work culture.

366.    Following Defendant Cohen's lead, other Defendants, specifically the Defendant Producers, acquiesce to unlawful employment behaviors that create a workplace culture where male producers like Defendant Paparazzo and Defendant Ward have no reason to follow employment law, as Defendants know that they could act however they wished with impunity.

367.    Defendants' failure to take appropriate remedial actions—and active acceptance of unlawful employment practices—creates an environment where perpetrators are never held accountable for wrongdoing.

368.    Moreover, Defendants' systematic silencing of complainants operates only to embolden staff to perpetuate despicable, unlawful practices.

369.    As a result, Defendants created a culture where female employees know all too well that Defendants' Human Resources department refuses to address discriminatory conduct. Female employees, therefore, understand that if they complain to human resources, they will be ostracized and retaliated against. That is exactly what happened to Ms. McSweeney.

370.    Defendants created a culture where women, like Ms. McSweeney, who make any effort to complain or speak out against unlawful employment practices are retaliated against. Indeed, these women are degraded and treated with open hostility, and any complaints of such treatment are met with the Housewives being labeled as a problem, 'not made for [TV]', 'argumentative', and otherwise given negative reputations on- and off-air.

371.    Defendants' routine failure to investigate or otherwise lawfully address instances of discrimination has the intended effect of silencing employees that might wish to speak out against discrimination.

372.    Thus, until recently, Ms. McSweeney and other Housewives were forced to suffer in silence.

373.    Now, Ms. McSweeney intends to hold her abusive employers to account and obtain justice. Ms. McSweeney endured years of sexual harassment, sex and gender discrimination, disability discrimination, retaliation, unsafe working conditions, unlawful working conditions, and threats of blackmail.

374.    Defendants will no longer survive on her silence.

**I.    Defendants' Conspiracy to Commit Employment Law Violations Constitutes Racketeering in Violation of the Racketeer Influenced And Corrupt Organization Act ("RICO).**

375.    Defendants pattern of willful employment law violations demonstrate the cracks in their covert, illegal enterprise.

376.    Upon information and belief, in creating the *Real Housewives* franchise, Defendants created an enterprise whereby Defendants conspired, individually, to violate federal state and city employment laws to create dramatic pseudo-reality television (the "RHONY Enterprise").

377.    Upon information and belief, Defendants, through the RHONY Enterprise, jointly agreed to violate and/or not enforce employment laws to cause Ms. McSweeney to suffer sex, gender, and disability discrimination, a hostile work environment, and retaliation.

378.    Upon information and belief, the Co-Conspirator Companies each create employment policies that their respective employees are bound to follow.

379.     Upon information and belief, Co-Conspirator 1 instigated the RHONY Enterprise conspiracy by beginning to violate employment laws at the *Real Housewives* reunion, where Co-Conspirator 1 sexually harassed Housewives and demeaned Housewives on the basis of, *inter alia*, their gender.

380.     Upon information and belief, Co-Conspirator 1 has direct input on each RHONY cast member's story line, edit, and public image. Co-Conspirator 1, therefore, weaponizes the RHONY Enterprise's conspiracy to violate employment laws against the cast members that complain of employment law violations by ensuring that those cast members are negatively portrayed on RHONY.

381.     Upon information and belief, the Co-Conspirator Companies saw that Co-Conspirator 1's illegal behavior increased *Real Housewives* ratings.

382.     Upon information and belief, the Co-Conspirator Companies agreed to not investigate Co-Conspirator 1's illegal behavior, and instead, jointly agreed to encourage Co-Conspirator 1 to continue to violate employment laws.

383.     After receiving such encouragement, Co-Conspirator 1 agreed to continue to violate employment laws in effort to obtain higher ratings for the *Real Housewives*.

384.     The Co-Conspirator Companies and Co-Conspirator 1 also realized that ratings increased when Housewives excessively consumed alcohol and acted inappropriately while under the influence of alcohol.

385.     Similarly, upon information and belief, Co-Conspirator 1 and the Co-Conspirator Companies noticed that when Housewives exhibited clear signs of mental health disorders on camera, ratings increased.

386.    Thereafter, upon information and belief, Co-Conspirators Warner, NBC, and Bravo and Co-Conspirator 1 reached an agreement with Co-Conspirator Shed to violate employment laws, in effort to induce Housewives to overindulge in alcohol and/or other substances while filming, and to emotionally exploit Housewives so as to cause Housewives to display mental health disorders while filming.

387.    Upon information and belief, Co-Conspirator Shed directed the Co-Conspirator Producers to violate and/or not enforce employment laws in a manner that would cause the Housewives to overindulge in alcohol and/or other substances while filming, and to emotionally exploit Housewives so as to cause Housewives to display mental health disorders while filming.

388.    Upon information and belief, each and every Co-Conspirator agreed not to investigate any allegations of employment law violations in furtherance of the RHONY Enterprise's goals.

389.    For example, a RHONY episode entitled "Scary Island" featured Kelly Killoren Bensimon exhibiting signs of mental distress that included: paranoia, detachment from reality, delusions, and extreme anxiety.

390.    Upon information and belief, the episode "Scary Island" boasted historically high ratings that the RHONY franchise had not previously enjoyed.

391.    Upon information and belief, when the Co-Conspirators hired Ms. McSweeney, the Co-Conspirators immediately decided that Ms. McSweeney would make a similarly perfect target to further the RHONY Enterprise's goals.

392.    Upon information and belief, after Ms. McSweeney told the Co-Conspirators that she suffered from depression, anxiety, bipolar disorder, and alcohol use disorder: Defendants

60

agreed to push Ms. McSweeney to consume alcohol while filming so as to exacerbate her mental health and alcohol use disorders.

393.     Upon information and belief, the Co-Conspirators agreed that, after seeing Ms. McSweeney relapse on the episode entitled "Aint No Party Like a Hamptons Party", they would continue to violate employment laws by discriminating against Ms. McSweeney on the basis of her mental health and alcohol use disorder disabilities, deny Ms. McSweeney any reasonable accommodations for such disorders, and fail to engage in the interactive process to accommodate Ms. McSweeney's disabilities.

394.     Furthermore, upon information and belief, the Co-Conspirators agreed that they would not investigate any potential employment violation complaint that Ms. McSweeney may raise in light of such discrimination.

395.     Upon information and belief, the Co-Conspirators made such an agreement because the Co-Conspirators believed that discriminating against Ms. McSweeney—and filming the direct effects of such discrimination—would further the RHONY Enterprise's goals of achieving higher ratings and viewership.

396.     Upon information and belief, the Co-Conspirators carried out the RHONY Enterprise's agreement throughout Ms. McSweeney's employment on RHONY seasons 12 and 13 and RHUGT.

397.     Upon information and belief, Co-Conspirator 1, in his capacity as Executive Producer of RHONY, directed Co-Conspirator Shed to violate employment laws and discriminate against Ms. McSweeney.

398.     Upon information and belief, with intent to secure higher television ratings and enjoy increased profits, the Co-Conspirators engaged in such conspiracy to cause Ms. McSweeney

to relapse into alcohol use disorder, exacerbate Ms. McSweeney's mental health disabilities and cause Ms. McSweeney to behave erratically on camera.

399. Upon information and belief, the RHONY Enterprise functioned as a continuing unit that was independent from each Co-Conspirators' individual roles with the *Real Housewives* franchise.

400. Upon information and belief, the RHONY Enterprise is an enterprise separate and apart from its illegal activities.

401. Defendant Warner owns various television, streaming, and other multimedia platforms, which operate separate and apart from the RHONY Enterprise.

402. Defendant NBC owns various television, streaming, and other multimedia platforms, which operate separate and apart from the RHONY Enterprise.

403. Defendant Bravo creates, produces, and airs television programs on the Defendant Bravo network that are separate and apart from the RHONY Enterprise.

404. Co-Conspirator 1, who is employed by Defendant Bravo, hosts, produces, and otherwise stars on various other programs that are separate and apart from the RHONY Enterprise.

405. Defendant Shed produces, *inter alia*, RHONY and other shows, which upon information and belief, are job functions separate and apart from the *Real Housewives* Enterprise.

406. The Co-Conspirator Producers are employed by Defendant Shed and produce other television programs that are separate and apart from the RHONY Enterprise.

407. Throughout RHONY seasons 12 and 13 and RHUGT, the Co-Conspirators agreed to violate federal and state employment laws, with respect to Ms. McSweeney, with intent to cause Ms. McSweeney to relapse into alcohol use disorder and exacerbate Ms. McSweeney's mental

health disabilities so that Ms. McSweeney would behave erratically on camera and increase RHONY and RHUGT viewership.

408.    The Co-Conspirators functioned as a continuing unit to further the goals of the RHONY Enterprise throughout RHONY seasons 12 and 13 and RHUGT.

409.    Each individual Defendant engaged in at least two predicate acts in furtherance of the RHONY Enterprise unlawful goals.

410.    Defendant Warner knew of the employment law violations, condoned these violations, and encouraged these violations on RHONY season 12 and failed to take any action to remedy the employment law violations, rather, Defendant Warner actively promoted the fruits of these violations i.e. Ms. McSweeney's relapse into alcohol use disorder and mental health crisis.

411.    Defendant Shed knew of the employment law violations, condoned these violations, and encouraged these violations on RHONY season 12 and failed to take any action to remedy the employment law violations, rather, Defendant Shed actively promoted the fruits of these violations i.e. Ms. McSweeney's relapse into alcohol use disorder and mental health crisis.

412.    Defendant NBC knew of the employment law violations, condoned these violations, and encouraged these violations on RHONY season 12 and failed to take any action to remedy the employment law violations, rather, Defendant NBC actively promoted the fruits of these violations i.e. Ms. McSweeney's relapse into alcohol use disorder and mental health crisis.

413.    Defendant Bravo knew of the employment law violations, condoned these violations, and encouraged these violations on RHONY season 12 and failed to take any action to remedy the employment law violations, rather, Defendant Bravo actively promoted the fruits of these violations i.e. Ms. McSweeney's relapse into alcohol use disorder and mental health crisis.

414.    Defendant Warner knew of the employment law violations, condoned these violations, and encouraged these violations on RHONY season 13 and failed to take any action to remedy the employment law violations, rather, Defendant RHONY actively promoted the fruits of these violations i.e. Ms. McSweeney's relapse into alcohol use disorder and mental health crisis.

415.    Defendant Shed employment law violations, condoned these violations, and encouraged these violations on RHONY season 13 and failed to take any action to remedy the employment law violations, rather, Defendant Shed actively promoted the fruits of these violations i.e. Ms. McSweeney's relapse into alcohol use disorder and mental health crisis.

416.    Defendant NBC knew of the employment law violations, condoned these violations, and encouraged these violations on RHONY season 13 and failed to take any action to remedy the employment law violations, rather, Defendant NBC actively promoted the fruits of these violations i.e. Ms. McSweeney's relapse into alcohol use disorder and mental health crisis.

417.    Defendant Bravo knew of the employment law violations, condoned these violations, and encouraged these violations on RHONY season 13 and failed to take any action to remedy the employment law violations, rather, Defendant Bravo actively promoted the fruits of these violations i.e. Ms. McSweeney's relapse into alcohol use disorder and mental health crisis.

418.    Defendant Warner knew of the employment law violations, condoned these violations, and encouraged these violations on RHUGT and failed to take any action to remedy the employment law violations, rather, Defendant Warner actively promoted the fruits of these violations i.e. Ms. McSweeney's hospitalization.

419.    Defendant Shed knew of the employment law violations, condoned these violations, and encouraged these violations on RHUGT and failed to take any action to remedy the

employment law violations, rather, Defendant Shed actively promoted the fruits of these violations i.e. Ms. McSweeney's hospitalization.

420.    Defendant NBC knew of the employment law violations, condoned these violations, and encouraged these violations on RHUGT and failed to take any action to remedy the employment law violations, rather, Defendant NBC actively promoted the fruits of these violations i.e. Ms. McSweeney's hospitalization.

421.    Defendant Bravo knew of the employment law violations, condoned these violations, and encouraged these violations on RHUGT and failed to take any action to remedy the employment law violations, rather, Defendant Bravo actively promoted the fruits of these violations i.e. Ms. McSweeney's hospitalization.

422.    As stated above, Co-Conspirator 2 repeatedly actively perpetuated employment law violations against Ms. McSweeney by: pressuring Ms. McSweeney to consume alcohol, notwithstanding her known alcohol use disorder disability; denying Ms. McSweeney reasonable accommodations for her alcohol use disorder; intentionally exacerbating Ms. McSweeney's mental health diagnoses; retaliating against Ms. McSweeney's complaints of discrimination, and more.

423.    As stated above, Co-Conspirator 3 repeatedly actively perpetuated employment law violations against Ms. McSweeney by: pressuring Ms. McSweeney to consume alcohol, notwithstanding her known alcohol use disorder disability; denying Ms. McSweeney reasonable accommodations for her alcohol use disorder; intentionally exacerbating Ms. McSweeney's mental health diagnoses; retaliating against Ms. McSweeney's complaints of discrimination, and more.

424.    As stated above, Co-Conspirator 4 repeatedly actively perpetuated employment law violations against Ms. McSweeney by: pressuring Ms. McSweeney to consume alcohol, notwithstanding her known alcohol use disorder disability; denying Ms. McSweeney reasonable

accommodations for her alcohol use disorder; intentionally exacerbating Ms. McSweeney's mental health diagnoses; retaliating against Ms. McSweeney's complaints of discrimination, and more.

425.    Co-Conspirator 1, i.e. Cohen, is the ringleader who spearheads any and all violations of employment law in furtherance of the RHONY Enterprise. Co-Conspirator 1 specifically hired Ms. McSweeney after learning that she was a recovering alcoholic, and upon information and belief, instructed the Co-Conspirator Producers to engage in violations of employment law with intent to exacerbate Ms. McSweeney's alcohol use disorder and mental health disabilities.

426.    Throughout Ms. McSweeney's employment on RHONY and RHUGT, the RHONY Enterprise exhibited a pattern of intent to violate employment laws as they relate to Ms. McSweeney.

427.    The RHONY Enterprise's conspiracy to violate employment laws, and pattern of violating such laws, caused Ms. McSweeney to suffer severe mental and emotional distress for which Ms. McSweeney was twice hospitalized and for which Ms. McSweeney has incurred, and continues to incur, various additional medical expenses related to Ms. McSweeney's ongoing mental health care that Defendants' unlawful enterprise necessitated.

**FIRST CAUSE OF ACTION**
**(DISCRIMINATION BASED ON DISABILITY, pursuant to 42 U.S.C. § 12112(a) –**
**AGAINST THE COMPANY DEFENDANTS)**

428.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

429.    Plaintiff was an employee of Defendants under federal law.

430.    Plaintiff exhausted all administrative remedies available to her and the EEOC issued Right to Sue letters, which allow Plaintiff to pursue her claims against Defendants before this Court.

431.     Defendants are "employer(s)" and "covered entit(ies)" under federal law.

432.     Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

433.     At all relevant times, Plaintiff was a member of a protected of a protected class as a disabled person, was disabled, had record of, and was regarded as having the following impairments: anxiety, depression, bipolar disorder, and alcoholism.

434.     Defendants discriminated against Plaintiff on the basis of her disabilities by failing to engage in the interactive process, failing to provide Plaintiff reasonable accommodations, such as allowing Plaintiff to attend AA meetings; tormenting Plaintiff on the basis of her disability, such as colluding with other cast members to taunt Plaintiff regarding her sobriety; failing to advance Plaintiff due to her mental health diagnoses, and ultimately discharging Plaintiff due to her mental health diagnoses.

435.     Upon information and belief, Defendants did not cast Plaintiff on RHONY Season 14 and/or RHONY Legacy due to Plaintiff's disability, and specifically, Plaintiff's failure to relapse into her alcohol use disorder.

436.     Upon information and belief, the above conduct created a hostile work environment for Plaintiff, significantly altered the terms and conditions of her employment, caused Plaintiff to suffer suicidal ideations, caused Plaintiff to become institutionalized in a psychiatric facility, and has continued to cause ongoing mental pain and suffering.

437. Upon information and belief, Defendant Companies condoned Defendant Cohen's and the Defendant Producers' discriminatory behavior, which was perpetuated by Defendant Cohen and the Defendant Producers as they failed to ask her to be part of RHONY Season 14 or RHONY Legacy because of her disabilities, and all Defendants failed to take any effective or remedial action to guard against such conduct.

438. Defendants' above-described actions constitute discrimination against Plaintiff on the basis of Plaintiff's disabilities.

439. Upon information and belief, Defendants' discrimination against Plaintiff on the basis of Plaintiff's disabilities was willful.

440. Upon information and belief, the willful nature of such Defendants' discrimination against Plaintiff on the basis of disability is further evidenced by the similar treatment of other disabled women employed by Defendants.

441. As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

442. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation.

## SECOND CAUSE OF ACTION
## (DISCRIMINATION BASED ON SEX/GENDER pursuant 42 U.S.C. § 2000e-2(a)(1) – AGAINST THE COMPANY DEFENDANTS)

443.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

444.    Plaintiff was an employee of Defendants under federal law.

445.    Plaintiff exhausted all administrative remedies available to her and the EEOC issued Right to Sue letters, which allow her to pursue her claims against Defendants before this Court.

446.    Defendants are "employer(s)" and "covered entit(ies)" under federal law.

447.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

448.    At all relevant times, Plaintiff was a member of a protected class as a person who identifies as female in both sex and gender.

449.    Defendants discriminated against Plaintiff on the basis of her sex and gender by repeatedly making crude comments regarding Plaintiff's genitalia and breasts, demeaning Plaintiff at her place of work on the basis of her sex and gender, failing to provide equal opportunities to female cast members as provided to male cast members and staff, and demoralizing and trivializing Plaintiff due to her gender and sex.

450.    Upon information and belief, Defendants' discrimination against Plaintiff on the basis of sex and gender was willful.

451.    Upon information and belief, the willful nature of Defendants' discrimination of Plaintiff on the basis of sex and gender is further evidenced by the similar treatment of other women employed by Defendants.

452.    Upon information and belief, the above conduct created a hostile work environment for Plaintiff, significantly altered the terms and conditions of her employment, caused Plaintiff to suffer suicidal ideations, caused Plaintiff to become institutionalized in a psychiatric facility and has continued to cause ongoing mental pain and suffering.

453.    Upon information and belief, Defendant Companies condoned Defendant Cohen and the Defendant Producers discriminatory behavior, which was perpetuated by Defendant Cohen and the Defendant Producers, and all Defendants failed to take any effective or remedial action to guard against such conduct.

454.    Defendants above-described actions constitute discrimination against Plaintiff on the basis of Plaintiff's sex and gender.

455.    As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

456.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation.

## THIRD CAUSE OF ACTION
## (DISCRIMINATION BASED ON DISABILITY, pursuant to N.Y. Exec. Law § 296(1)(a) – AGAINST ALL DEFENDANTS)

457.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

458.    Plaintiff was an employee of Defendants under New York State law.

459.    Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

460.    At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

461.    At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under New York State law.

462.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

463.    Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

464.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

465.    At all relevant times, Plaintiff was disabled, had record of, and was regarded as having the following impairments: anxiety, depression, bipolar disorder, and alcohol use disorder.

71

466.     Defendants discriminated against Plaintiff on the basis of her disabilities by failing to engage in the interactive process, failing to provide Plaintiff reasonable accommodations, such as allowing Plaintiff to attend AA meetings; tormenting Plaintiff on the basis of her disabilities, such as colluding with other cast members to taunt Plaintiff regarding her sobriety; failing to advance Plaintiff due to her mental health diagnoses, and ultimately discharging Plaintiff due to her mental health diagnoses.

467.     Upon information and belief, Defendants did not cast Plaintiff on RHONY Season 14 and/or RHONY Legacy due to Plaintiff's disabilities, and specifically, Plaintiff's failure to relapse into her alcohol use disorder.

468.     Upon information and belief, the Individual Defendants each, respectively, actively participated in discriminating against Plaintiff on the basis of her disabilities with intent and/or a shared common purpose to further such discrimination against Plaintiff on the basis of her disabilities.

469.     Upon information and belief, the Individual Defendants each, respectively, supported, encouraged, condoned, and approved the Company Defendants' and other Individual Defendants' individual and collective acts of discriminatory conduct against Plaintiff on the basis of her disabilities.

470.     Upon information and belief, the Individual Defendants each, respectively, knew of the other Defendants' discrimination against Plaintiff on the basis of her disabilities and failed to take action against the other Defendants' discrimination against Plaintiff on the basis of her disability, nor did any of the Individual Defendants assist Plaintiff in making a complaint regarding the disability discrimination that she faced.

471. Upon information and belief, as Plaintiff's supervisors, the Individual Defendants, failed to take adequate remedial measures in response to Plaintiff's complaints of disability discrimination.

472. Upon information and belief, Defendants' discrimination against Plaintiff on the basis of Plaintiff's disabilities was willful.

473. Upon information and belief, the willful nature of Defendants' discrimination against Plaintiff on the basis of Plaintiff's disabilities is further evidenced by the similar treatment of other disabled persons that Defendants employe(d).

474. Upon information and belief, the above conduct created a hostile work environment for Plaintiff, significantly altered the terms and conditions of her employment, caused Plaintiff to suffer suicidal ideations, caused Plaintiff to become institutionalized in a psychiatric facility and has continued to cause ongoing mental pain and suffering.

475. Upon information and belief, Defendant Companies condoned Defendant Cohen and the Defendant Producers discriminatory behavior, which was perpetuated by Defendant Cohen and the Defendant Producers, and all Defendants failed to take any effective or remedial action to guard against such conduct.

476. Upon information and belief, the above conduct created a hostile work environment for Plaintiff and significantly altered the terms and conditions of her employment.

477. Upon information and belief, in addition, Plaintiff was humiliated and disturbed by Defendants' discriminatory acts, which were committed with reckless indifference.

478. Upon information and belief, the unlawful discrimination of Plaintiff by Defendants based on Plaintiff's disability is in violation of N.Y. Exec. Law § 296(1)(a).

479.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y. Exec. Law § 296(1)(a).

### FOURTH CAUSE OF ACTION
### (DISCRIMINATION BASED ON SEX/GENDER pursuant to N.Y. Exec. Law § 296(1)(a) – AGAINST ALL DEFENDANTS)

480.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

481.     Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

482.     Plaintiff was an employee of Defendants under New York State law.

483.     At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

484.     At all relevant times, Plaintiff was a member of a protected class as a person who identifies as female in both sex and gender under New York State law.

485.     Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

486.     Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

487.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

488.    Defendants discriminated against Plaintiff on the basis of her sex and gender by repeatedly making crude comments regarding Plaintiff's genitalia and breasts, demeaning Plaintiff at her place of work on the basis of her sex and gender, failing to provide equal opportunities to female cast members as provided to male cast members and staff, and demoralizing and trivializing Plaintiff due to her gender and sex.

489.    Upon information and belief, the Individual Defendants each, respectively, actively participated in discriminating against Plaintiff on the basis of her sex/gender with intent and/or a shared common purpose to further such discrimination against Plaintiff on the basis of her sex/gender.

490.    Upon information and belief, the Individual Defendants each, respectively, supported, encouraged, condoned, and approved the Company Defendants' and other Individual Defendants' individual and collective acts of discriminatory conduct against Plaintiff on the basis of her sex/gender.

491.    Upon information and belief, the Individual Defendants each, respectively, knew of the other Defendants' discrimination against Plaintiff on the basis of her sex/gender and failed to take action against the other Defendants' discrimination against Plaintiff on the basis of her sex/gender, nor did any of the Individual Defendants assist Plaintiff in making a complaint regarding the sex/gender discrimination that she faced.

492.    Upon information and belief, the above conduct created a hostile work environment for Plaintiff, significantly altered the terms and conditions of her employment, caused Plaintiff to

suffer suicidal ideations, caused Plaintiff to become institutionalized in a psychiatric facility and has continued to cause ongoing mental pain and suffering.

493.    Upon information and belief, Defendant Companies condoned Defendant Cohen and the Defendant Producers discriminatory behavior, which was perpetuated by Defendant Cohen and the Defendant Producers, and all Defendants failed to take any effective or remedial action to guard against such conduct.

494.    Upon information and belief, throughout Plaintiff's employment, Plaintiff faced unwanted, derogatory sexual remarks and inappropriate contact from at least Defendant Cohen, because of Plaintiff's gender.

495.    In addition, upon information and belief, Defendants did not subject male cast members and staff to unwanted, derogatory sexual remarks and inappropriate conduct.

496.    Upon information and belief, the discrimination of Plaintiff based on sex and gender is further evidenced by the similar treatment of other women employed by Defendants.

497.    Upon information and belief, the above conduct created a hostile work environment for Plaintiff and significantly altered the terms and conditions of her employment.

498.    Upon information and belief, in addition, Plaintiff was humiliated and disturbed by Defendants' discriminatory acts, which were committed with reckless indifference.

499.    Upon information and belief, the unlawful discrimination of Plaintiff by Defendants based on Plaintiff's sex and gender is in violation of N.Y. Exec. Law § 296(1)(a).

500.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y. Exec. Law § 296(1)(a).

## FIFTH CAUSE OF ACTION
## (DISCRIMINATION BASED ON RELIGIOUS BELIEFS, pursuant to N.Y. Exec. Law § 296(1)(a) – AGAINST ALL DEFENDANTS)

501.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

502.    Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

503.    Plaintiff was an employee of Defendants under New York State law.

504.    At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

505.    Throughout RHONY season 13 and RHUGT season 3, Plaintiff was a member of a protected class as a Jewish person under New York State law.

506.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

507.    Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

508.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

509.    In or around 2022, prior to filming RHONY season 13, Plaintiff converted to Judaism.

77

510.    Plaintiff made Defendants aware that she converted to Judaism and Defendants featured her conversion prominently throughout her employment as a cast member of RHONY season 13.

511.    Defendants, therefore, either knew or should have known that Plaintiff is a member of the Jewish creed.

512.    As a part of the Jewish religion, Plaintiff cannot consume pork products. Plaintiff told Defendants that it is against her religious beliefs to consume pork products.

513.    Defendants, therefore, either knew or should have known that Plaintiff's religious beliefs prevented her from consuming pork products.

514.    In or around  July 18, 2022, Defendants employed Plaintiff as a cast member of RHUGT.

515.    While employed by Defendant, Plaintiff attended a cast lunch that was filmed as part of RHUGT.  At this lunch, Defendants served only food products that were cooked with pork products.

516.    Plaintiff requested an accommodation, for her religious beliefs, to be served alternative food that was not cooked in pork products.

517.    Defendants refused to accommodate Plaintiff's religious beliefs and procure food that Plaintiff could consume, and as a result, Defendants forced Plaintiff to starve.

518.    Upon information and belief, Defendants knew that Plaintiff practiced Judaism and could not consume pork products, and Defendants decision to serve only pork products while failing to procure food that Plaintiff could consume constituted intentional discrimination on the basis of Plaintiff's creed.

519. Upon information and belief, the Individual Defendants each, respectively, actively participated in discriminating against Plaintiff on the basis of her religious beliefs with intent and/or a shared common purpose to further such discrimination against Plaintiff on the basis of her religious beliefs.

520. Upon information and belief, the Individual Defendants each, respectively, supported, encouraged, condoned, and approved the Company Defendants' and other Individual Defendants' individual and collective acts of discriminatory conduct against Plaintiff on the basis of her religious beliefs.

521. Upon information and belief, the Individual Defendants each, respectively, knew of the other Defendants' discrimination against Plaintiff on the basis of her religious beliefs and failed to take action against the other Defendants' discrimination against Plaintiff on the basis of her religious beliefs, nor did any of the Individual Defendants assist Plaintiff in making a complaint regarding the religious discrimination that she faced.

522. Upon information and belief, as Plaintiff's supervisors, the Individual Defendants, failed to take adequate remedial measures in response to Plaintiff's complaints of religious discrimination.

523. Upon information and belief, the unlawful discrimination of Plaintiff by Defendants based on Plaintiff's religious beliefs is in violation of N.Y. Exec. Law § 296(1)(a).

524. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y. Exec. Law § 296(1)(a).

**SIXTH CAUSE OF ACTION**
**(DISCRIMINATION BASED ON DISABILITY pursuant to N.Y.C. Admin. Code §§ 8-107(1)(a), 8-502 – AGAINST ALL DEFENDANTS)**

525.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

526.     Plaintiff was an employee of Defendants under New York City law.

527.     Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

528.     At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work was New York City.

529.     At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under New York City law.

530.     Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

531.     Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

532.     Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

533.     At all relevant times, Plaintiff was disabled, had record of, and was regarded as having the following impairments: anxiety, depression, bipolar disorder, and alcohol use disorder.

534. Defendants discriminated against Plaintiff on the basis of her disabilities by failing to engage in the interactive process, failing to provide Plaintiff reasonable accommodations, such as allowing Plaintiff to attend AA meetings; tormenting Plaintiff on the basis of her disabilities, such as colluding with other cast members to taunt Plaintiff regarding her sobriety; failing to advance Plaintiff due to her mental health diagnoses, and ultimately discharging Plaintiff due to her mental health diagnoses.

535. Upon information and belief, Defendants did not cast Plaintiff on RHONY Season 14 and/or RHONY Legacy due to Plaintiff's disability, and specifically, Plaintiff's failure to relapse into her alcohol use disorder.

536. Upon information and belief, the Individual Defendants each, respectively, actively participated in discriminating against Plaintiff on the basis of her disabilities with intent and/or a shared common purpose to further such discrimination against Plaintiff on the basis of her disabilities.

537. Upon information and belief, the Individual Defendants each, respectively, supported, encouraged, condoned, and approved the Company Defendants' and other Individual Defendants' individual and collective acts of discriminatory conduct against Plaintiff on the basis of her disabilities.

538. Upon information and belief, the Individual Defendants each, respectively, knew of the other Defendants' discrimination against Plaintiff on the basis of her disabilities and failed to take action against the other Defendants' discrimination against Plaintiff on the basis of her disability, nor did any of the Individual Defendants assist Plaintiff in making a complaint regarding the disability discrimination that she faced.

539. Upon information and belief, as Plaintiff's supervisors, the Individual Defendants, failed to take adequate remedial measures in response to Plaintiff's complaints of disability discrimination.

540. Upon information and belief, the discrimination of Plaintiff on the basis of disabilities was willful.

541. Upon information and belief, the willful nature of Defendants' discrimination of Plaintiff on the basis of disabilities is further evidenced by the similar treatment of other disabled persons employed by Defendants.

542. Upon information and belief, the above conduct created a hostile work environment for Plaintiff, significantly altered the terms and conditions of her employment, caused Plaintiff to suffer suicidal ideations, caused Plaintiff to become institutionalized in a psychiatric facility and has continued to cause ongoing mental pain and suffering.

543. Upon information and belief, Defendant Companies condoned Defendant Cohen and the Defendant Producers discriminatory behavior, which was perpetuated by Defendant Cohen and the Defendant Producers, and all Defendants failed to take any effective or remedial action to guard against such conduct.

544. Upon information and belief, the above conduct created a hostile work environment for Plaintiff and significantly altered the terms and conditions of her employment.

545. Upon information and belief, in addition, Plaintiff was humiliated and disturbed by Defendants' discriminatory acts, which were committed with reckless indifference.

546. Upon information and belief, Defendants Companies condoned discriminatory conduct, Defendant Cohen and the Defendant Producers perpetuated the discriminatory behavior and all Defendants failed to take any effective or remedial action to guard against such conduct.

547.    Upon information and belief, the unlawful discrimination of Plaintiff by Defendants based on Plaintiff's disability is in violation of N.Y.C. Admin.  Code § 8-107(1)(a).

548.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y.C. Admin.  Code § 8-107(1)(a).

### SEVENTH CAUSE OF ACTION
### (DISCRIMINATION BASED ON SEX/GENDER pursuant to N.Y.C. Admin. Code §§ 8-107(1)(a), 8-502 – AGAINST ALL DEFENDANTS)

549.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

550.    Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

551.    Plaintiff was an employee of Defendants under New York City law.

552.    At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work was New York City.

553.    At all relevant times, Plaintiff was a member of a protected class as a person who identifies as female in both sex and gender person under New York City law.

554.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

555.    Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

83

556.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

557.    Defendants discriminated against Plaintiff on the basis of her sex and gender by repeatedly making crude comments regarding Plaintiff's genitalia and breasts, demeaning Plaintiff at her place of work on the basis of her sex and gender, failing to provide equal opportunities to female cast members as provided to male cast members and staff, and demoralizing and trivializing Plaintiff due to her gender and sex.

558.    Upon information and belief, the Individual Defendants each, respectively, actively participated in discriminating against Plaintiff on the basis of her sex/gender with intent and/or a shared common purpose to further such discrimination against Plaintiff on the basis of her sex/gender.

559.    Upon information and belief, the Individual Defendants each, respectively, supported, encouraged, condoned, and approved the Company Defendants' and other Individual Defendants' individual and collective acts of discriminatory conduct against Plaintiff on the basis of her sex/gender.

560.    Upon information and belief, the Individual Defendants each, respectively, knew of the other Defendants' discrimination against Plaintiff on the basis of her sex/gender and failed to take action against the other Defendants' discrimination against Plaintiff on the basis of her sex/gender, nor did any of the Individual Defendants assist Plaintiff in making a complaint regarding the sex/gender discrimination that she faced.

561.    Upon information and belief, the above conduct created a hostile work environment for Plaintiff, significantly altered the terms and conditions of her employment, caused Plaintiff to

suffer suicidal ideations, caused Plaintiff to become institutionalized in a psychiatric facility and has continued to cause ongoing mental pain and suffering.

562.    Upon information and belief, Defendant Companies condoned Defendant Cohen's and the Defendant Producers' discriminatory behavior, which was perpetuated by Defendant Cohen and the Defendant Producers, and all Defendants failed to take any effective or remedial action to guard against such conduct.

563.    Upon information and belief, throughout Plaintiff's employment, Plaintiff faced unwanted, derogatory sexual remarks and inappropriate contact from at least Defendant Cohen, because of Plaintiff's gender.

564.    In addition, upon information and belief, Defendants did not subject male cast members and staff to unwanted, derogatory sexual remarks and inappropriate conduct.

565.    Upon information and belief, the discrimination of Plaintiff based on sex and gender is further evidenced by the similar treatment of other women employed by Defendants.

566.    Upon information and belief, the above conduct created a hostile work environment for Plaintiff and significantly altered the terms and conditions of her employment.

567.    Upon information and belief, in addition, Plaintiff was humiliated and disturbed by Defendants' discriminatory acts, which were committed with reckless indifference.

568.    Upon information and belief, Defendants Companies condoned discriminatory conduct, Defendant Cohen and the Defendant Producers perpetuated the discriminatory behavior and all Defendants failed to take any effective or remedial action to guard against such conduct.

569.    Upon information and belief, the unlawful discrimination of Plaintiff by Defendants based on Plaintiff's sex and gender is in violation of N.Y.C. Admin.  Code § 8-107(1)(a).

570.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y.C. Admin. Code § 8-107(1)(a).

### EIGHTH CAUSE OF ACTION
### (DISCRIMINATION BASED ON RELIGIOUS BELIEFS pursuant to N.Y.C. Admin. Code §§ 8-107(1)(a), 8-502 – AGAINST ALL DEFENDANTS)

571.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

572.     Plaintiff was an employee of Defendants under New York City law.

573.     Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

574.     At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work was New York City.

575.     Throughout RHONY season 13 and RHUGT season 3, Plaintiff was a member of a protected class as a Jewish person under New York City law.

576.     Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

577.     Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

578. Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

579. In or around 2022, Plaintiff converted to Judaism.

580. Plaintiff made Defendants aware that she converted to Judaism and Defendants featured her conversion prominently throughout her employment as a cast member of RHONY season 13.

581. Defendants, therefore, either knew or should have known that Plaintiff is a member of the Jewish creed.

582. As a part of the Jewish religion, Plaintiff cannot consume pork products. Plaintiff told Defendants that it is against her religious beliefs to consume pork products.

583. Defendants, therefore, either knew or should have known that Plaintiff's religious beliefs prevented her from consuming pork products.

584. In or around July 18, 2022, Defendants employed Plaintiff as a cast member of RHUGT.

585. While employed by Defendant, Plaintiff attended a cast lunch that was filmed as part of RHUGT. At this lunch, Defendants served only food products that were cooked with pork products.

586. Plaintiff requested an accommodation, for her religious beliefs, to be served alternative food that was not cooked in pork products.

587. Defendants refused to accommodate Plaintiff's religious beliefs and procure food that Plaintiff could consume, and as a result, Defendants forced Plaintiff to starve.

87

588. Upon information and belief, Defendants knew that Plaintiff practiced Judaism and could not consume pork products, and Defendants decision to serve only pork products while failing to procure food that Plaintiff could consume constituted intentional discrimination on the basis of Plaintiff's creed.

589. Upon information and belief, the Individual Defendants each, respectively, actively participated in discriminating against Plaintiff on the basis of her religious beliefs with intent and/or a shared common purpose to further such discrimination against Plaintiff on the basis of her religious beliefs.

590. Upon information and belief, the Individual Defendants each, respectively, supported, encouraged, condoned, and approved the Company Defendants' and other Individual Defendants' individual and collective acts of discriminatory conduct against Plaintiff on the basis of her religious beliefs.

591. Upon information and belief, the Individual Defendants each, respectively, knew of the other Defendants' discrimination against Plaintiff on the basis of her religious beliefs and failed to take action against the other Defendants' discrimination against Plaintiff on the basis of her religious beliefs, nor did any of the Individual Defendants assist Plaintiff in making a complaint regarding the religious discrimination that she faced.

592. Upon information and belief, as Plaintiff's supervisors, the Individual Defendants, failed to take adequate remedial measures in response to Plaintiff's complaints of religious discrimination.

593. Upon information and belief, the unlawful discrimination of Plaintiff by Defendants based on Plaintiff's religion is in violation of N.Y.C. Admin. Code § 8-107(1)(a).

594. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well

as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y.C. Admin. Code § 8-107(1)(a).

**NINTH CAUSE OF ACTION**
**(HOSTILE WORK ENVIRONMENT HARASSMENT BASED ON DISABILITY,**
**pursuant to 42 U.S.C. § 12112(a) – AGAINST THE COMPANY DEFENDANTS)**

595.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

596.    Plaintiff exhausted all administrative remedies available to her and the EEOC issued Right to Sue letters, which allow her to pursue her claims against Defendants before this Court.

597.    Defendants are "employer(s)" and "covered entit(ies)" under federal and New York State law.

598.    Plaintiff was an employee of Defendants under federal law.

599.    At all relevant times, Plaintiff was disabled, had record of, and was regarded as having the following impairments: anxiety, depression, bipolar disorder, and alcohol use disorder.

600.    Throughout Plaintiff's employment on RHONY season 12, RHONY season 13, and RHUGT: Plaintiff was forced to work in a work environment wherein Defendants directed abuse against Plaintiff's mental health and addiction disabilities.

601.    Defendants intentionally exacerbated Plaintiff's mental health diagnoses by taunting Plaintiff, isolating Plaintiff, colluding with Plaintiff's cast members to humiliate Plaintiff regarding her mental health diagnoses, and providing Plaintiff with negative performance reviews on the basis of her alcohol use disorder and mental health disabilities.

602.    Defendant Producers and Defendant Cohen also created a hostile work environment on the basis of Plaintiff's addiction disability by forcing Plaintiff to work in environments where

all other cast members consumed alcohol, colluding with cast members to isolate Plaintiff due to Plaintiff's failure to consume alcohol, taunting Plaintiff into believing that all other cast members disliked Plaintiff because she refused to consume alcohol, and failing to reasonably accommodate Plaintiff.

603.     Defendant Companies knew or should have known about the hostile work environment but failed to take any actions designed to stop it.

604.     Plaintiff was employed by the entity Defendants. The individual Defendants, each of them causally linked through their own actions, conduct, and/or inactions or failures to act, created and/or maintained the discriminatory conduct alleged herein.

605.     As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

606.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation.

### TENTH CAUSE OF ACTION
### (HOSTILE WORK ENVIRONMENT HARASSMENT BASED ON SEX/GENDER pursuant to 42 U.S.C. § 12112(a)(2) – AGAINST THE COMPANY DEFENDANTS)

607.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

608.     Plaintiff exhausted all administrative remedies available to her and the EEOC issued Right to Sue letters, which allow her to pursue her claims against Defendants before this Court.

609.     Defendants are "employer(s)" and "covered entit(ies)" under federal law.

610.     Plaintiff was an employee of Defendants under federal law.

611.     At all relevant times, Plaintiff was a member of a protected class on the basis of her identity as a female in sex and gender.

612.     Throughout Plaintiff's employment on RHONY season 12, RHONY season 13, and RHUGT: Plaintiff was forced to work in a sexually hostile work environment.

613.     Plaintiff was continually, routinely, and frequently subjected to offensive comments relating to her genitalia, crude comments speculating Plaintiff's sexuality, degraded, and treated as an unintelligent, archetypical "housewife", and hypersexualized by Defendants.

614.     Specifically, Defendant Cohen repeatedly commented on Plaintiff's breast augmentation surgery and implied that Plaintiff's surgery allowed her to properly fit the role of "housewife."

615.     Defendant Companies knew or should have known about the hostile work environment but failed to take any actions designed to stop it.

616.     Plaintiff was employed by the entity Defendants. The individual Defendants, each of them causally linked through their own actions, conduct, and/or inactions or failures to act, created and/or maintained the discriminatory conduct alleged herein.

617.     As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action,

and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

618. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation.

## ELEVENTH CAUSE OF ACTION
## (HOSTILE WORK ENVIRONMENT HARASSMENT BASED ON DISABILITY, pursuant to N.Y. Exec. Law § 296(1)(h) – AGAINST ALL DEFENDANTS)

619. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

620. Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

621. Plaintiff was an employee of Defendants under New York State law.

622. At all relevant times, Plaintiff was employed in New York State and Plaintiff's principal place of work was New York State.

623. At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under New York State law.

624. Plaintiff was employed by the Company Defendants. The Individual Defendants each supervised Ms. McSweeney's employment. Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

625. Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

626. Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

627. At all relevant times, Plaintiff was disabled, had record of, and was regarded as having the following impairments: anxiety, depression, bipolar disorder, and alcohol use disorder.

628. Throughout Plaintiff's employment on RHONY season 12, RHONY season 13, and RHUGT: Plaintiff was forced to work in a work environment wherein Defendants directed abuse against Plaintiff's mental health and addiction disabilities.

629. Defendants intentionally exacerbated Plaintiff's mental health diagnoses by taunting Plaintiff, isolating Plaintiff, colluding with Plaintiff's cast members to humiliate Plaintiff regarding her mental health diagnoses, and providing Plaintiff with negative performance reviews on the basis of her alcohol use disorder and mental health disabilities.

630. Defendant Producers and Defendant Cohen also created a hostile work environment on the basis of Plaintiff's addiction disability by forcing Plaintiff to work in environments where all other cast members consumed alcohol, colluding with cast members to isolate Plaintiff due to Plaintiff's failure to consume alcohol, taunting Plaintiff into believing that all other cast members disliked Plaintiff because she refused to consume alcohol, and failing to reasonably accommodate Plaintiff.

631. Defendant Companies knew or should have known about the hostile work environment but failed to take any actions designed to stop it.

632.     As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

633.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y. Exec. Law § 296(1)(h).

**TWELFTH CAUSE OF ACTION**
**(HOSTILE WORK ENVIRONMENT HARASSMENT BASED ON SEX/GENDER,**
**pursuant to N.Y. Exec. Law § 296(1)(h) – AGAINST ALL DEFENDANTS)**

634.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

635.     Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

636.     Plaintiff was an employee of Defendants under New York State law.

637.     At all relevant times, Plaintiff was employed in New York State and Plaintiff's principal place of work was New York State.

638.     At all relevant times, Plaintiff was a member of a protected class as a female person in sex and gender under New York State law.

639.     Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to

act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

640. Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

641. Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

642. Throughout Plaintiff's employment on RHONY season 12, RHONY season 13, and RHUGT: Plaintiff was forced to work in a sexually hostile work environment.

643. Plaintiff was continually, routinely, and frequently subjected to offensive comments relating to her genitalia, crude comments speculating Plaintiff's sexuality, degraded, and treated as an unintelligent, archetypical "housewife", and hypersexualized by Defendants.

644. Specifically, Defendant Cohen repeatedly commented on Plaintiff's breast augmentation surgery and implied that Plaintiff's surgery allowed her to properly fit the role of "housewife."

645. Defendant Companies knew or should have known about the hostile work environment but failed to take any actions designed to stop it.

646. As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of

reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

647.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y. Exec. Law § 296(1)(h).

**THIRTEENTH CAUSE OF ACTION**
**(HOSTILE WORK ENVIRONMENT HARASSMENT BASED ON RELIGIOUS BELIEFS pursuant to N.Y. Exec. Law § 296(1)(h) – AGAINST ALL DEFENDANTS)**

648.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

649.    At all relevant times, Plaintiff was a resident of New York City, New York State.

650.    At all relevant times, Defendants operated their principle place of business in New York City, New York State.

651.    Plaintiff was an employee of Defendants under New York State law.

652.    Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

653.    Throughout RHONY season 13 and RHUGT season 3, Plaintiff was a member of a protected class as a Jewish person under New York State law.

654.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

655. Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

656. Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

657. In or around 2022, Plaintiff converted to Judaism.

658. Plaintiff made Defendants aware that she converted to Judaism and Defendants featured her conversion prominently throughout her employment as a cast member of RHONY season 13.

659. Defendants, therefore, either knew or should have known that Plaintiff is a member of the Jewish creed.

660. As a part of the Jewish religion, Plaintiff cannot consume pork products. Plaintiff told Defendants that it is against her religious beliefs to consume pork products.

661. Defendants, therefore, either knew or should have known that Plaintiff's religious beliefs prevented her from consuming pork products.

662. In or around July 18, 2022, Defendants employed Plaintiff as a cast member of RHUGT.

663. While employed by Defendant, Plaintiff attended a cast lunch that was filmed as part of RHUGT. At this lunch, Defendants served only food products that were cooked with pork products.

664. Plaintiff requested an accommodation, for her religious beliefs, to be served alternative food that was not cooked in pork products.

665. Defendants refused to accommodate Plaintiff's religious beliefs and procure food that Plaintiff could consume, and as a result, Defendants forced Plaintiff to starve.

666. Upon information and belief, Defendants knew that Plaintiff practiced Judaism and could not consume pork products, and Defendants decision to serve only pork products while failing to procure food that Plaintiff could consume constituted intentional discrimination on the basis of Plaintiff's creed.

667. As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

668. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y. Exec. Law § 296(1)(h).

### FOURTEENTH CAUSE OF ACTION
### (HOSTILE WORK ENVIRONMENT HARASSMENT BASED ON DISABILITY, pursuant to N.Y.C. Admin. Code § 8-107(1)(a) – AGAINST ALL DEFENDANTS)

669. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

670. Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

671. Plaintiff was an employee of Defendants under New York City law.

672. At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City and Plaintiff's principal place of work was New York City.

673.    At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under New York City law.

674.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

675.    Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

676.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

677.    At all relevant times, Plaintiff was disabled, had record of, and was regarded as having the following impairments: anxiety, depression, bipolar disorder, and alcohol use disorder.

678.    Throughout Plaintiff's employment on RHONY season 12, RHONY season 13, and RHUGT: Plaintiff was forced to work in a work environment wherein Defendants directed abuse against Plaintiff's mental health and addiction disabilities.

679.    Defendants intentionally exacerbated Plaintiff's mental health diagnoses by taunting Plaintiff, isolating Plaintiff, colluding with Plaintiff's cast members to humiliate Plaintiff regarding her mental health diagnoses, and providing Plaintiff with negative performance reviews on the basis of her alcohol use disorder and mental health disabilities.

680.     Defendant Producers and Defendant Cohen also created a hostile work environment on the basis of Plaintiff's addiction disability by forcing Plaintiff to work in environments where all other cast members consumed alcohol, colluding with cast members to isolate Plaintiff due to Plaintiff's failure to consume alcohol, taunting Plaintiff into believing that all other cast members disliked Plaintiff because she refused to consume alcohol, and failing to reasonably accommodate Plaintiff.

681.     Defendant Companies knew or should have known about the hostile work environment but failed to take any actions designed to stop it.

682.     As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

683.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y.C. Admin. Code § 8-107(1)(a).

## FIFTEENTH CAUSE OF ACTION
### (HOSTILE WORK ENVIRONMENT HARASSMENT BASED ON SEX/GENDER, pursuant to N.Y.C. Admin. Code § 8-107(1)(a) – AGAINST ALL DEFENDANTS)

684.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

685.     Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

686.     Plaintiff was an employee of Defendants under New York City law.

687.     At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work in New York City.

688.     At all relevant times, Plaintiff was a member of a protected class as a person who identifies as female in sex and gender under New York City law.

689.     Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

690.     Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Ms. McSweeney was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

691.     Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Ms. McSweeney was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

692.     Throughout Plaintiff's employment on RHONY season 12, RHONY season 13, and RHUGT: Plaintiff was forced to work in a sexually hostile work environment.

693.     Plaintiff was continually, routinely, and frequently subjected to offensive comments relating to her genitalia, crude comments speculating Plaintiff's sexuality, degraded, and treated as an unintelligent, archetypical "housewife", and hypersexualized by Defendants.

694.     Specifically, Defendant Cohen repeatedly commented on Plaintiff's breast augmentation surgery and implied that Plaintiff's surgery allowed her to properly fit the role of "housewife."

695. Defendant Companies knew or should have known about the hostile work environment but failed to take any actions designed to stop it.

696. As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

697. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y.C. Admin. Code § 8-107(1)(a).

## SIXTEENTH CAUSE OF ACTION
### (HOSTILE WORK ENVIRONMENT HARASSMENT BASED ON RELIGIOUS BELIEFS, pursuant to N.Y.C. Admin. Code § 8-107(1)(a) – AGAINST ALL DEFENDANTS)

698. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

699. Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

700. Plaintiff was an employee of Defendants under New York City law.

701. At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work was New York City.

702. Throughout RHONY season 13 and RHUGT season 3, Plaintiff was a member of a protected class as a Jewish person under New York City law.

703. Plaintiff was employed by the Company Defendants. The Individual Defendants each supervised Ms. McSweeney's employment. Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

704. Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

705. Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

706. In or around 2022, Plaintiff converted to Judaism.

707. Plaintiff made Defendants aware that she converted to Judaism and Defendants featured her conversion prominently throughout her employment as a cast member of RHONY season 13.

708. Defendants, therefore, either knew or should have known that Plaintiff is a member of the Jewish creed.

709. As a part of the Jewish religion, Plaintiff cannot consume pork products. Plaintiff told Defendants that it is against her religious beliefs to consume pork products.

710. Defendants, therefore, either knew or should have known that Plaintiff's religious beliefs prevented her from consuming pork products.

711. In or around July 18, 2022, Defendants employed Plaintiff as a cast member of RHUGT.

103

712. While employed by Defendant, Plaintiff attended a cast lunch that was filmed as part of RHUGT. At this lunch, Defendants served only food products that were cooked with pork products.

713. Plaintiff requested an accommodation, for her religious beliefs, to be served alternative food that was not cooked in pork products.

714. Defendants refused to accommodate Plaintiff's religious beliefs and procure food that Plaintiff could consume, and as a result, Defendants forced Plaintiff to starve.

715. Upon information and belief, Defendants knew that Plaintiff practiced Judaism and could not consume pork products, and Defendants decision to serve only pork products while failing to procure food that Plaintiff could consume constituted intentional discrimination on the basis of Plaintiff's creed.

716. As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

717. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to N.Y.C. Admin. Code § 8-107(1)(a).

## SEVENTEENTH CAUSE OF ACTION
## (RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, pursuant to 42 U.S.C. § 2000e-3(a) – AGAINST THE COMPANY DEFENDANTS)

718.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

719.    Plaintiff exhausted all administrative remedies available to her and the EEOC issued Right to Sue letters, which allow her to pursue her claims against Defendants before this Court.

720.    At all relevant times, Plaintiff was a member of a protected class on the basis of sex and gender under federal law.

721.    Defendants are "employer(s)" and "covered entit(ies)" under federal law.

722.    Plaintiff was an employee of Defendants under federal law.

723.    Plaintiff complained to human resources, senior employees at Defendant Company, to Defendant Cohen, and to Defendant Producers regarding, inter alia, Defendants' discrimination against Plaintiff on the basis of sex and gender and Defendants' creation of a hostile work environment on the basis of Plaintiff's sex and gender.

724.    In response, Defendants threatened Ms. McSweeney's continued employment, threatened Plaintiff that her complaints would result in termination, and eventually terminated Plaintiff's employment and denied Plaintiff future employment on RHONY Legacy and/or RHONY season 14.

725.    All the various actions taken by Defendants against Plaintiff subsequent to her complaints of discrimination constitute unlawful retaliation.

726.    As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action,

105

and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## EIGHTEENTH CAUSE OF ACTION
### (RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, pursuant to 42 U.S.C. § 12203(a) – AGAINST THE COMPANY DEFENDANTS)

727. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

728. Plaintiff exhausted all administrative remedies available to her and the EEOC issued Right to Sue letters, which allow her to pursue her claims against Defendants before this Court.

729. At all relevant times, Plaintiff was a member of a protected class on the basis of a person with a disability under federal law.

730. Defendants are "employer(s)" and "covered entit(ies)" under federal law.

731. Plaintiff was an employee of Defendants under federal law.

732. Plaintiff complained to human resources, senior employees at Defendant Company, to Defendant Cohen, and to Defendant Producers regarding, inter alia, Defendants' discrimination against Plaintiff on the basis of Plaintiff's disabilities and Defendants' creation of a hostile work environment on the basis of Plaintiff's disabilities.

733. In response, Defendants threatened Ms. McSweeney's continued employment, threatened Plaintiff that her complaints would result in termination, conspired with Plaintiff's RHONY and RHUGT cast members to torment Plaintiff regarding her disabilities, and eventually terminated Plaintiff's employment and denied Plaintiff future employment on RHONY Legacy and/or RHONY season 14.

734. All the various actions taken by Defendants against Plaintiff subsequent to her complaints of discrimination constitute unlawful retaliation.

735. As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

**NINETEENTH CAUSE OF ACTION**
**(RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES,**
**pursuant to N.Y. Exec. Law §§ 296(7) – AGAINST ALL DEFENDANTS)**

736. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

737. Plaintiff was an employee of Defendants under New York State law.

738. Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

739. At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

740. At all relevant times, Plaintiff was a member of at least one protected class under New York State law.

741. Plaintiff was employed by the Company Defendants. The Individual Defendants each supervised Ms. McSweeney's employment. Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

742.     Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

743.     Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

744.     Upon information and belief, after Plaintiff complained about discrimination on numerous occasions, Defendants subjected Plaintiff to unfair and unwarranted treatment.

745.     Upon information and belief, the unfair and unwanted treatment was in retaliation for Plaintiff's complaint.

746.     Upon information and belief, after Plaintiff complained about discrimination, Plaintiff was terminated and not cast on RHONY Season 14 and/or RHONY Legacy.

747.     Upon information and belief, Defendant's choice to terminate Plaintiff, specifically Defendants' choice not to cast Plaintiff on RHONY Season 14 and/or RHONY Legacy, was in retaliation for her complaints concerning her treatment.

748.     Upon information and belief, Plaintiff's complaints were considered protected activities under New York State Human Rights Law.

749.     Upon information and belief, the retaliatory conduct and termination of Plaintiff by Defendants as a result of Plaintiff's engagement in protected activities is in violation of N.Y. Exec. Law §§ 296(7).

750.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as

well as reasonable attorneys' fees, costs, and other compensation pursuant N.Y. Exec. Law §§ 296(7).

## TWENTIETH CAUSE OF ACTION
### (RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT PRACTICES, pursuant to N.Y. Admin. Code §§ 8–107(7) – AGAINST ALL DEFENDANTS)

751.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

752.     Plaintiff was an employee of Defendants under New York City law.

753.     Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

754.     At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work was New York City.

755.     At all relevant times, Plaintiff was a member of at least one protected class under New York City law.

756.     Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

757.     Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

758.     Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

759. Upon information and belief, after Plaintiff complained about discrimination on numerous occasions, Defendants subjected Plaintiff to unfair and unwarranted treatment.

760. Upon information and belief, the unfair and unwanted treatment was in retaliation for Plaintiff's complaint.

761. Upon information and belief, after Plaintiff complained about discrimination, Plaintiff was terminated and not cast on RHONY Season 14 and/or RHONY Legacy.

762. Upon information and belief, Defendant's choice to terminate Plaintiff, specifically Defendants' choice not to cast Plaintiff on RHONY Season 14 and/or RHONY Legacy, was in retaliation for her complaints concerning her treatment.

763. Upon information and belief, Plaintiff's complaints were considered protected activities under New York City Human Rights Law.

764. Upon information and belief, the retaliatory conduct and termination of Plaintiff by Defendants as a result of Plaintiff's engagement in protected activities is in violation of New York City Human Rights Law § 8-107(7).

765. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant to New York City Human Rights Law § 8-502.

**TWENTY-FIRST CAUSE OF ACTION**
**(RETALIATION FOR DISCLOSURE OF UNSAFE WORKING CONDITIONS, pursuant to NY Labor Law § 215 – AGAINST ALL DEFENDANTS)**

766. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

767. At all relevant times, Plaintiff was a member of a protected class on the basis of religious belief, sex and gender, and as a person with disabilities under New York State law.

110

768.    Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

769.    Plaintiff was an employee of Defendants under New York State law.

770.    At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

771.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

772.    Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

773.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

774.    Plaintiff complained to human resources, senior employees at Defendant Companies, Defendant Producers, and Defendant Cohen regarding, *inter alia*, Defendants' creation of unsafe working conditions by exacerbating Plaintiff's mental illnesses and addiction, which resulted in Plaintiff's hospitalization.

775.    In response, Defendants threatened Ms. McSweeney's continued employment, threatened Plaintiff that her complaints would result in termination, conspired with Plaintiff's RHONY and RHUGT cast members to torment Plaintiff regarding her disabilities, and eventually terminated Plaintiff's employment.

776.    All the various actions taken by Defendants against Plaintiff were subsequent to her complaints of discrimination constitute unlawful retaliation.

777.    As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## TWENTY-SECOND CAUSE OF ACTION
## (WHISTLEBLOWER RETALIATION, pursuant to Labor Law §740 - AGAINST ALL DEFENDANTS)

778.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

779.    At all relevant times, Plaintiff was a member of a protected class on the basis of religious belief, sex and gender, and a person with disabilities under New York State law.

780.    Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

781.    Plaintiff was an employee of Defendants under New York State law.

782.    At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

783.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

784.    Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

785.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

786.    Plaintiff complained to human resources, senior employees at Defendant Companies, Defendant Producers, and Defendant Cohen regarding, *inter alia*, Defendants' creation of unsafe working conditions by exacerbating Plaintiff's mental illnesses and addiction, which resulted in Plaintiff's hospitalization.

787.    In response, Defendants took retaliatory personnel action against Plaintiff by threatening Plaintiff's continued employment, threatening Plaintiff that her complaints would result in termination, conspiring with Plaintiff's RHONY and RHUGT cast members to torment Plaintiff regarding her disabilities, and eventually terminating Plaintiff's employment.

788.    All the various actions taken by Defendants against Plaintiff were subsequent to her complaints of discrimination constitute unlawful retaliation.

789.    As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## TWENTY-THIRD CAUSE OF ACTION
## (FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS, pursuant to 42 U.S.C. § 12112- AGAINST THE COMPANY DEFENDANTS)

790.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

791.    Plaintiff exhausted all administrative remedies available to her and the EEOC issued Right to Sue letters, which allow her to pursue her claims against Defendants before this Court.

792.    Defendants are "employer(s)" and "covered entit(ies)" under federal law.

793.    Plaintiff was an employee of Defendants under federal law.

794.    At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under federal law.

795.    Defendants failed to reasonably accommodate Plaintiff's disabilities by, *inter alia*, allowing accommodations for Plaintiff and other cast members to participate in cast events without alcohol consumption, disallowing Plaintiff from attending AA meetings, and failing to reprimand and/or otherwise stop Defendant's employees from demeaning, taunting, and exacerbating Plaintiff's disabilities.

796.    To the contrary of their obligations, Defendants intentionally exacerbated Plaintiff's disabilities.

797.    All above accommodations would have been reasonable and would not have caused Defendants to suffer undue hardship.

798.    Defendants, by their actions, willfully, intentionally, and with reckless indifference, discriminated against Plaintiff in violation of federal law by refusing to provide reasonable accommodations.

799.     As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

### TWENTY-FOURTH CAUSE OF ACTION
### (FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS, pursuant to N.Y. Exec. Law §§ 296(3) – AGAINST ALL DEFENDANTS)

800.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

801.     Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

802.     Plaintiff was an employee of Defendants under New York State law.

803.     At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

804.     At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under New York State law.

805.     Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

806.     Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

115

807.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

808.    Defendants failed to reasonably accommodate Plaintiff's disabilities by, inter alia, allowing Plaintiff and other cast members to participate in cast events without alcohol consumption, disallowing Plaintiff from attending AA meetings, and failing to reprimand and/or otherwise stop Defendant's employees from demeaning, taunting, and exacerbating Plaintiff's disabilities.

809.    To the contrary of their obligations, Defendants intentionally exacerbated Plaintiff's disabilities.

810.    All above accommodations would have been reasonable and would not have caused Defendants to suffer undue hardship.

811.    Defendants, by their actions, willfully, intentionally, and with reckless indifference, discriminated against Plaintiff in violation of New York State law by refusing to provide reasonable accommodations.

812.    As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## TWENTY-FIFTH CAUSE OF ACTION
### (FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS, pursuant to N.Y. Admin. Code §§ 8–107(28) – AGAINST ALL DEFENDANTS)

813.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

814.    Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

815.    Plaintiff was an employee of Defendants under New York City law.

816.    At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under New York City law.

817.    At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work was New York City.

818.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

819.    Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

820.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

821.    Defendants failed to reasonably accommodate Plaintiff's disabilities by, inter alia, allowing Plaintiff and other cast members to participate in cast events without alcohol consumption, disallowing Plaintiff from attending AA meetings, and failing to reprimand and/or

117

otherwise stop Defendant's employees from demeaning, taunting, and exacerbating Plaintiff's disabilities.

822.    To the contrary of their obligations, Defendants intentionally exacerbated Plaintiff's disabilities.

823.    All above accommodations would have been reasonable and would not have caused Defendants to suffer undue hardship.

824.    Defendants, by their actions, willfully, intentionally, and with reckless indifference, discriminated against Plaintiff in violation of New York City law by refusing to provide reasonable accommodations.

825.    As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## TWENTY-SIXTH CAUSE OF ACTION
## (FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS NECESSARY TO REASONABLE ACCOMMODATIONS, pursuant to 42 U.S.C. § 12112 – AGAINST THE COMPANY DEFENDANTS)

826.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

827.    Plaintiff exhausted all administrative remedies available to her and the EEOC issued the Right to Sue letters, which allow her to pursue her claims against Defendants before this Court.

828.    Defendants are "employer(s)" and "covered entit(ies)" under federal law.

829.    Plaintiff was an employee of Defendants under federal law.

830.    At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under federal law.

831.    Defendants failed to engage in any interactive process necessary to reasonably accommodate Plaintiff's disabilities by, *inter alia*, allowing Plaintiff and other cast members to participate in cast events without alcohol consumption, disallowing Plaintiff from attending AA meetings, and failing to reprimand and/or otherwise stop Defendant's employees from demeaning, taunting, and exacerbating Plaintiff's disabilities.

832.    Defendants entirely failed to discuss any possible accommodation with Plaintiff that would mutually accommodate Plaintiff's disabilities and not cause Defendants to suffer undue hardship.

833.    Defendants, by their actions, willfully, intentionally, and with reckless indifference, discriminated against Plaintiff in violation of federal law by refusing to engage in an interactive process necessary to reasonably accommodate Plaintiff's disabilities.

834.    To the contrary of their obligations, Defendants intentionally exacerbated Plaintiff's disabilities.

835.    As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## TWENTY-SEVENTH CAUSE OF ACTION
## (FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS NECESSARY TO PROVIDE REASONABLE ACCOMMODATIONS, pursuant to N.Y. Exec. Law §§ 296(3) – AGAINST ALL DEFENDANTS)

836.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

837.    Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

838.    Plaintiff was an employee of Defendants under New York State law.

839.    At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

840.    At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under New York State law.

841.    Plaintiff was employed by the Company Defendants.  The Individual Defendants each supervised Ms. McSweeney's employment.  Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

842.    Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

843.    Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

844.    Defendants failed to engage in any interactive process necessary to reasonably accommodate Plaintiff's disabilities by, *inter alia*, allowing Plaintiff and other cast members to

participate in cast events without alcohol consumption, disallowing Plaintiff from attending AA meetings, and failing to reprimand and/or otherwise stop Defendant's employees from demeaning, taunting, and exacerbating Plaintiff's disabilities.

845.    Defendants entirely failed to discuss any possible accommodation with Plaintiff that would mutually accommodate Plaintiff's disabilities and not cause Defendants to suffer undue hardship.

846.    Defendants, by their actions, willfully, intentionally, and with reckless indifference, discriminated against Plaintiff in violation of federal law by refusing to engage in an interactive process necessary to reasonably accommodate Plaintiff's disabilities.

847.    To the contrary of their obligations, Defendants intentionally exacerbated Plaintiff's disabilities.

848.    As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

**TWENTY-EIGHTH CAUSE OF ACTION**
**(FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS NECESSARY TO PROVIDE REASONABLE ACCOMMODATIONS, pursuant to N.Y. Admin. Code §§ 8–107(28) – AGAINST ALL DEFENDANTS)**

849.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

850.    Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

851.    Plaintiff was an employee of Defendants under New York City law.

852. At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work was New York City.

853. At all relevant times, Plaintiff was a member of a protected class as a person with disabilities under New York City law.

854. Plaintiff was employed by the Company Defendants. The Individual Defendants each supervised Ms. McSweeney's employment. Each of the Individual Defendants and Company Defendants are causally linked through their own actions, conduct, and/or inactions or failures to act and each of the Individual and Company Defendants created and/or maintained the discriminatory conduct alleged herein.

855. Upon information and belief, Defendant Cohen was Plaintiff's supervisor and employer for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

856. Upon information and belief, Defendant Producers were Plaintiff's supervisors and employers for the entirety of the time period that Plaintiff was employed as a cast member on RHONY seasons 12 and 13 and RHUGT season 3.

857. Defendants failed to engage in any interactive process necessary to reasonably accommodate Plaintiff's disabilities by, *inter alia*, allowing Plaintiff and other cast members to participate in cast events without alcohol consumption, disallowing Plaintiff from attending AA meetings, and failing to reprimand and/or otherwise stop Defendant's employees from demeaning, taunting, and exacerbating Plaintiff's disabilities.

858. Defendants entirely failed to discuss any possible accommodation with Plaintiff that would mutually accommodate Plaintiff's disabilities and not cause Defendants to suffer undue hardship.

859.     Defendants, by their actions, willfully, intentionally, and with reckless indifference, discriminated against Plaintiff in violation of federal law by refusing to engage in an interactive process necessary to reasonably accommodate Plaintiff's disabilities.

860.     To the contrary of their obligations, Defendants intentionally exacerbated Plaintiff's disabilities.

861.     As a direct and proximate consequence of Defendants' unlawful and discriminatory employment policies and practices, Plaintiff has suffered loss of income, including but not limited to loss of past and future wages and health benefits, has incurred the costs of bringing this action, and has undergone severe emotional distress, mental anxiety, loss of enjoyment of life, loss of reputation and humiliation.  Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

**TWENTY-NINTH CAUSE OF ACTION**
**(VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATION**
**ACT, pursuant to 18 U.S.C. § 1962 – AGAINST ALL DEFENDANTS)**

862.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

863.     The Co-Conspirators created the RHONY Enterprise in effort to violate employment laws so as to create an environment that was intended to produce dramatic reality television.

864.     The RHONY Enterprise is an entity separate and apart from each of the individual Co-Conspirator's employment duties and obligations.

865.     The Co-Conspirators conspired to violate employment laws, with respect to Plaintiff, by *inter alia* failing to engage in the interactive process with respect to her disabilities, failing to provide reasonable accommodations, and intentionally exacerbating her disabilities to

cause her to relapse into alcohol use disorder, intentionally exacerbating her mental health disabilities with intent to create salacious reality television, and subjecting Plaintiff to pervasive gender and sex discrimination, sexual harassment, disability discrimination, a hostile work environment, and retaliation for issuing formal complaints against the RHONY Enterprise.

866.   Co-Conspirator Warner individually engaged a pattern of illegally violating employment laws in furtherance of the RHONY Enterprise's conspiracy throughout RHONY season 12 and 13 and RHUGT by knowing of, condoning, and encouraging the Co-Conspirator Producers and Co-Conspirator 1 to violate employment laws.

867.   Co-Conspirator Shed individually engaged a pattern of illegally violating employment laws in furtherance of the RHONY Enterprise's conspiracy throughout RHONY season 12 and 13 and RHUGT by knowing of, condoning, and encouraging the Co-Conspirator Producers and Co-Conspirator 1 to violate employment laws.

868.   Co-Conspirator NBC individually engaged a pattern of illegally violating employment laws in furtherance of the RHONY Enterprise's conspiracy throughout RHONY season 12 and 13 and RHUGT by knowing of, condoning, and encouraging the Co-Conspirator Producers and Co-Conspirator 1 to violate employment laws.

869.   Co-Conspirator Bravo individually engaged a pattern of illegally violating employment laws in furtherance of the RHONY Enterprise's conspiracy throughout RHONY season 12 and 13 and RHUGT by knowing of, condoning, and encouraging the Co-Conspirator Producers and Co-Conspirator 1 to violate employment laws.

870.   Co-Conspirator 1 led the RHONY Enterprise's conspiracy and individually engaged in a pattern of illegally violating employment laws in furtherance of the RHONY Enterprise's conspiracy throughout RHONY season 12 and 13 and RHUGT by discriminating

against Plaintiff on the basis of sex, gender, and disability, subjecting Plaintiff to a hostile work environment, and retaliating against Plaintiff's act of complaining of discrimination by knowing of, condoning, and encouraging all Defendants to violate employment laws.

871. Co-Conspirator 2 individually engaged in a pattern of illegally violating employment laws in furtherance of the RHONY Enterprise's conspiracy throughout RHONY season 12 and 13 and RHUGT by discriminating against Plaintiff on the basis of sex, gender, and disability, subjecting Plaintiff to a hostile work environment, and retaliating against Plaintiff's act of complaining of discrimination.

872. Co-Conspirator 3 individually engaged in a pattern of illegally violating employment laws in furtherance of the RHONY Enterprise's conspiracy throughout RHONY season 12 and 13 and RHUGT by discriminating against Plaintiff on the basis of sex, gender, and disability, subjecting Plaintiff to a hostile work environment, and retaliating against Plaintiff's act of complaining of discrimination.

873. Co-Conspirator 4 individually engaged in a pattern of illegally violating employment laws in furtherance of the RHONY Enterprise's conspiracy throughout RHONY season 12 and 13 and RHUGT by discriminating against Plaintiff on the basis of sex, gender, and disability, subjecting Plaintiff to a hostile work environment, and retaliating against Plaintiff's act of complaining of discrimination.

874. Co-Conspirators' joint and individual pattern of illegally violating employment laws caused Plaintiff to suffer a significant injury to her business and property, in an amount to be determined at trial, which includes medical expenses related to Plaintiff's hospitalizations and therapy expenses incurred as a result of Co-Conspirators' unlawful enterprise.

## THIRTIETH CAUSE OF ACTION
### (RETALIATION, pursuant to N.Y. Exec. Law §§ 296(7) – AGAINST DEFENDANT COHEN)

875.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

876.    Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

877.    Plaintiff was an employee of Defendants under New York State law.

878.    At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

879.    At all relevant times, Plaintiff was a member of at least one protected class under New York State law.

880.    On or around February 27, 2024, Ms. McSweeney filed her Complaint, against, *inter alia*, Defendant Cohen, and alleged, *inter alia*, sex/gender discrimination, disability discrimination, religious discrimination, hostile work environment, and retaliation claims in violation of Title VII, New York State, and New York City laws.

881.    Upon information and belief, Plaintiff's act of filing the Complaint in this action is protected activity under the New York State Human Rights Law, as it contains specific facts regarding Defendants' violations of New York employment laws and the adverse employment actions that she suffered as a result.

882.    Upon information and belief, after Plaintiff filed the Complaint, Defendant Cohen subjected Plaintiff to unfair and unwarranted treatment by sending Plaintiff the March Letter through his attorneys.

883. Upon information and belief, Defendant Cohen was aware that Ms. McSweeney filed the Complaint prior to sending the March Letter because Defendant Cohen's counsel referenced and quoted the Complaint in the March Letter.

884. In the March Letter, Defendant Cohen, *inter alia*, threatens to sue Ms. McSweeney for defamation and seek "substantial" compensatory and punitive damages if Ms. McSweeney does not retract the allegations of discrimination against Defendant Cohen alleged in her Complaint.

885. Specifically, in the March Letter, Defendant Cohen threatened that if Plaintiff did not retract and withdraw certain allegations in the Complaint, Defendant Cohen would hold Plaintiff "accountable to the fullest extent of the law".

886. In the March Letter, Defendant Cohen also stated that the "publication of the Complaint was a malicious act" that "suggests . . . [Plaintiff] to substantial compensatory and punitive damages".

887. Based on Defendant Cohen's statements in the March Letter, Plaintiff reasonably believed that Defendant Cohen planned to commence a defamation lawsuit against her because she engaged in a protected activity, i.e., the filing of the Complaint.

888. Upon information and belief, Defendant Cohen knew or should have known that his threatened litigation against Ms. McSweeney was baseless because his counsel that authored the letter, Orin Snyder, authored an article advising his law firm, Gibson Dunn, that allegations included in a complaint are absolutely privileged.

889. Upon information and belief, Defendant Cohen's act of threatening Ms. McSweeney with baseless, frivolous legal action, which Defendant Cohen and his counsel either

knew or should have known to be baseless and frivolous, constitutes unlawful retaliation against Ms. McSweeney's engagement in protected activity, i.e. filing the Complaint.

890. Upon information and belief, in further retaliation against Ms. McSweeney, Defendant Cohen caused the March Letter to be published, either contemporaneously with or shortly after sending the March Letter to Ms. McSweeney's counsel, by sending the March Letter to various media outlets, including *inter alia* Page Six, Deadline, Variety, and the Hollywood Reporter.

891. Upon information and belief, Defendant Cohen caused the March Letter to be published in retaliation to Ms. McSweeney's engagement in protected activity, filing her Complaint, and with malicious intent to intimidate Ms. McSweeney out of further pursuing the claims in her Complaint.

892. Upon information and belief, Defendant Cohen also caused the March Letter to be published with malicious intent to discourage other persons that Defendant Cohen supervises from engaging in protected activity by complaining of Defendant Cohen's discriminatory conduct.

893. Upon information and belief, Defendant Cohen caused the March Letter to be published in various media outlets with the malicious intent of deterring current and former employees of Defendants from objecting to Defendants' unlawful activity.

894. Upon information and belief, Defendant Cohen's act of caused the March Letter to be published in various media outlets with the malicious intent of harming Plaintiff's reputation in the entertainment industry, thereby negatively affecting Plaintiff's prospective employment or business opportunities.

895. Upon information and belief, Defendant Cohen's retaliatory conduct, as a result of Plaintiff's engagement in protected activities, is in violation of N.Y. Exec. Law §§ 296(7).

896. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant N.Y. Exec. Law §§296(7).

### THIRTY-FIRST CAUSE OF ACTION
### (RETALIATION, pursuant to N.Y. Admin. Code §§ 8–107(7) – AGAINST DEFENDANT COHEN)

897. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

898. Defendants are "employer(s)" and "covered entit(ies)" under New York City law.

899. Plaintiff was an employee of Defendants under New York City law.

900. At all relevant times, Plaintiff resided in New York City, Plaintiff was employed in New York City, and Plaintiff's principal place of work was New York City.

901. At all relevant times, Plaintiff was a member of at least one protected class under New York City law.

902. On or around February 27, 2024, Ms. McSweeney filed her Complaint, against, *inter alia*, Defendant Cohen, and alleged, *inter alia*, sex/gender discrimination, disability discrimination, religious discrimination, hostile work environment, and retaliation claims in violation of Title VII, New York State, and New York City laws.

903. Upon information and belief, Plaintiff's act of filing the Complaint in this action is protected activity under the New York City Human Rights Law, as it contains specific facts regarding Defendants' violations of New York employment laws and the adverse employment actions that she suffered as a result.

904. Upon information and belief, after Plaintiff filed the Complaint, Defendant Cohen subjected Plaintiff to unfair and unwarranted treatment by sending Plaintiff the March Letter through his attorneys.

905. Upon information and belief, Defendant Cohen was aware that Ms. McSweeney filed the Complaint prior to sending the March Letter because Defendant Cohen's counsel referenced and quoted the Complaint in the March Letter.

906. In the March Letter, Defendant Cohen, *inter alia*, threatens to sue Ms. McSweeney for defamation and seek "substantial" compensatory and punitive damages if Ms. McSweeney does not retract the allegations of discrimination against Defendant Cohen alleged in her Complaint.

907. Specifically, in the March Letter, Defendant Cohen threatened that if Plaintiff did not retract and withdraw certain allegations in the Complaint, Defendant Cohen would hold Plaintiff "accountable to the fullest extent of the law".

908. In the March Letter, Defendant Cohen also stated that the "publication of the Complaint was a malicious act" that "suggests . . . [Plaintiff] to substantial compensatory and punitive damages".

909. Based on Defendant Cohen's statements in the March Letter, Plaintiff reasonably believed that Defendant Cohen planned to commence a defamation lawsuit against her because she engaged in a protected activity, i.e., the filing of the Complaint.

910. Upon information and belief, Defendant Cohen knew or should have known that his threatened litigation against Ms. McSweeney was baseless because his counsel that authored the letter, Orin Snyder, authored an article advising his law firm, Gibson Dunn, that allegations included in a complaint are absolutely privileged.

911. Upon information and belief, Defendant Cohen's act of threatening Ms. McSweeney with baseless, frivolous legal action, which Defendant Cohen and his counsel either knew or should have known to be baseless and frivolous, constitutes unlawful retaliation against Ms. McSweeney's engagement in protected activity, i.e. filing the Complaint.

912. Upon information and belief, in further retaliation against Ms. McSweeney, Defendant Cohen caused the March Letter to be published, either contemporaneously with or shortly after sending the March Letter to Ms. McSweeney's counsel, by sending the March Letter to various media outlets, including *inter alia* Page Six, Deadline, Variety, and the Hollywood Reporter.

913. Upon information and belief, Defendant Cohen caused the March Letter to be published in retaliation to Ms. McSweeney's engagement in protected activity, filing her Complaint, and with malicious intent to intimidate Ms. McSweeney out of further pursuing the claims in her Complaint.

914. Upon information and belief, Defendant Cohen also caused the March Letter to be published with malicious intent to discourage other persons that Defendant Cohen supervises from engaging in protected activity by complaining of Defendant Cohen's discriminatory conduct.

915. Upon information and belief, Defendant Cohen caused the March Letter to be published in various media outlets with the malicious intent of deterring current and former employees of Defendants from objecting to Defendants' unlawful activity.

916. Upon information and belief, Defendant Cohen's act of caused the March Letter to be published in various media outlets with the malicious intent of harming Plaintiff's reputation in the entertainment industry, thereby negatively affecting Plaintiff's prospective employment or business opportunities.

917.    Upon information and belief, Defendant Cohen's retaliatory conduct, as a result of Plaintiff's engagement in protected activities, is in violation of N.Y. Admin. Code §§ 8–107(7).

918.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant N.Y. Admin. Code §§ 8–107(7).

## THIRTY-SECOND CAUSE OF ACTION
### (RETALIATION, pursuant to N.Y. Labor Law § 215 – AGAINST DEFENDANT COHEN)

919.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

920.    Defendants are "employer(s)" and "covered entit(ies)" under New York State law.

921.    Plaintiff was an employee of Defendants under New York State law.

922.    At all relevant times, Plaintiff resided in New York State, Plaintiff was employed in New York State, and Plaintiff's principal place of work was New York State.

923.    At all relevant times, Plaintiff was a member of at least one protected class under New York State law.

924.    On or around February 27, 2024, Plaintiff filed her Complaint, against, *inter alia*, Defendant Cohen, and alleged, *inter alia*, sex/gender discrimination, disability discrimination, religious discrimination, hostile work environment, and retaliation claims in violation of Title VII, New York State, and New York City laws.

925.    Upon information and belief, Plaintiff's act of filing the Complaint in this action is protected activity under the New York State Laws, as it contains specific facts regarding Defendants' violations of New York employment laws and the adverse employment actions that she suffered as a result.

926.     Upon information and belief, after Plaintiff filed the Complaint, Defendant Cohen subjected Plaintiff to unfair and unwarranted treatment by sending Plaintiff the March Letter through his attorneys.

927.     Upon information and belief, Defendant Cohen was aware that Ms. McSweeney filed the Complaint prior to sending the March Letter because Defendant Cohen's counsel referenced and quoted the Complaint in the March Letter.

928.     In the March Letter, Defendant Cohen, *inter alia*, threatens to sue Ms. McSweeney for defamation and seek "substantial" compensatory and punitive damages if Ms. McSweeney does not retract the allegations of discrimination against Defendant Cohen alleged in her Complaint.

929.     Specifically, in the March Letter, Defendant Cohen threatened that if Plaintiff did not retract and withdraw certain allegations in the Complaint, Defendant Cohen would hold Plaintiff "accountable to the fullest extent of the law".

930.     In the March Letter, Defendant Cohen also stated that the "publication of the Complaint was a malicious act" that "suggests . . . [Plaintiff] to substantial compensatory and punitive damages".

931.     Based on Defendant Cohen's statements in the March Letter, Plaintiff reasonably believed that Defendant Cohen planned to commence a defamation lawsuit against her because she engaged in a protected activity, i.e., the filing of the Complaint.

932.     Upon information and belief, Defendant Cohen knew or should have known that his threatened litigation against Ms. McSweeney was baseless because his counsel that authored the letter, Orin Snyder, authored an article advising his law firm, Gibson Dunn, that allegations included in a complaint are absolutely privileged.

133

933.     Upon information and belief, Defendant Cohen's act of threatening Ms. McSweeney with baseless, frivolous legal action, which Defendant Cohen and his counsel either knew or should have known to be baseless and frivolous, constitutes unlawful retaliation against Ms. McSweeney's engagement in protected activity, i.e. filing the Complaint.

934.     Upon information and belief, in further retaliation against Ms. McSweeney, Defendant Cohen caused the March Letter to be published, either contemporaneously with or shortly after sending the March Letter to Ms. McSweeney's counsel, by sending the March Letter to various media outlets, including *inter alia* Page Six, Deadline, Variety, and the Hollywood Reporter.

935.     Upon information and belief, Defendant Cohen caused the March Letter to be published in retaliation to Ms. McSweeney's engagement in protected activity, filing her Complaint, and with malicious intent to intimidate Ms. McSweeney out of further pursuing the claims in her Complaint.

936.     Upon information and belief, Defendant Cohen also caused the March Letter to be published with malicious intent to discourage other persons that Defendant Cohen supervises from engaging in protected activity by complaining of Defendant Cohen's discriminatory conduct.

937.     Upon information and belief, Defendant Cohen caused the March Letter to be published in various media outlets with the malicious intent of deterring current and former employees of Defendants from objecting to Defendants' unlawful activity.

938.     Upon information and belief, Defendant Cohen's act of caused the March Letter to be published in various media outlets with the malicious intent of harming Plaintiff's reputation in the entertainment industry, thereby negatively affecting Plaintiff's prospective employment or business opportunities.

939. Upon information and belief, Defendant Cohen's retaliatory conduct, as a result of Plaintiff's engagement in protected activities, is in violation of N.Y. Labor Law § 215.

940. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant N.Y. Labor Law § 215.

### THIRTY-THIRD CAUSE OF ACTION
### (INTERFERENCE, pursuant to N.Y. Admin. Code §§ 8–107(19) – AGAINST DEFENDANT COHEN)

941. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

942. Upon information and belief, Plaintiff's act of filing the above-captioned lawsuit is protected activity under the New York City Human Rights Law, as it contains specific facts regarding Defendants' violations of New York employment laws and the adverse employment actions that she suffered as a result.

943. Upon information and belief, after Plaintiff filed the Complaint, Defendant Cohen subjected Plaintiff to unfair and unwarranted threats by sending Plaintiff the March Letter through his attorneys.

944. Upon information and belief, Defendant Cohen was aware that Ms. McSweeney filed the Complaint prior to sending the March Letter because Defendant Cohen's counsel referenced and quoted the Complaint in the March Letter.

945. In the March Letter, Defendant Cohen, inter alia, threatens to sue Ms. McSweeney for defamation and seek "substantial" compensatory and punitive damages if Ms. McSweeney does not retract the allegations of discrimination against Defendant Cohen alleged in her Complaint.

946.     Specifically, in the March Letter, Defendant Cohen threatened that if Plaintiff did not retract and withdraw certain allegations in the Complaint, Defendant Cohen would hold Plaintiff "accountable to the fullest extent of the law".

947.     In the March Letter, Defendant Cohen also stated that the "publication of the Complaint was a malicious act" that "suggests . . . [Plaintiff] to substantial compensatory and punitive damages".

948.     Upon information and belief, Defendant Cohen sent the March Letter to Ms. McSweeney to interfere with Ms. McSweeney's right to engage in protected activity, i.e. filing the Complaint.

949.     Upon information and belief, Defendant Cohen's threats to countersue Ms. McSweeney were threats intended to coerce and intimidate Ms. McSweeney into not pursuing this litigation.

950.     Based on Defendant Cohen's statements in the March Letter, Plaintiff reasonably believes that Defendant Cohen plans to commence a defamation lawsuit against her because she engaged in a protected activity, i.e., filing the Complaint.

951.     Upon information and belief, to further coerce and intimidate Ms. McSweeney, Defendant Cohen caused the March Letter to be published, either contemporaneously with or shortly after sending the March Letter to Ms. McSweeney's counsel, by sending the March Letter to various media outlets, including inter alia Page Six, Deadline, Variety, and the Hollywood Reporter.

952.     Upon information and belief, Defendant Cohen caused the March Letter to be published to further interfere with Ms. McSweeney's right to engage in protected activity, i.e. filing the Complaint.

953.    Upon information and belief, Defendant Cohen caused the March Letter to be published in various media outlets with the malicious intent of threatening current and former employees of Defendants from objecting to Defendants' unlawful activity.

954.    Upon information and belief, Defendant Cohen caused the March Letter to be published in various media outlets with the malicious intent of threatening Plaintiff's reputation in the entertainment industry, thereby negatively affecting Plaintiff's prospective employment or business opportunities.

955.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages, and is entitled to the recovery of damages, including punitive damages, as well as reasonable attorneys' fees, costs, and other compensation pursuant N.Y. Admin. Code §§ 8–107(19).

## JURY TRIAL DEMANDED

Plaintiff hereby requests a trial by jury on all causes of action alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgement in her favor and against Defendants, containing the following relief:

    i.    For general and special damages, according to proof;

    ii.    For punitive and/or exemplary damages in an amount to punish Defendants to the extent allowed by law;

    iii.    For attorneys' fees in prosecuting this action to the extent allowed by law;

    iv.    For damages, including compensatory damages, relating to lost wages and lost future earnings for the time that Ms. McSweeney was mentally impaired and unable to work;

v.   For damages, including compensatory damages, relating to mental, emotional, and physical pain and suffering, emotional trauma and distress, impairment of relationships, impairment of life, impairment of mental abilities, lack of enjoyment of life, lost future earnings, and other damages that this Court deems just and proper;

vi.   For pre-judgment interest to the extent allowed by law;

vii.   For post-judgment interest to the extent allowed by law;

viii.   For costs of suit incurred herein;

ix.   For any other damages allowed by statute and/or law;

x.   Any other and further relief as the Court deems necessary and proper.

Dated: June 12, 2024
    New York, New York

Respectfully submitted,

**ADELMAN MATZ P.C.**

By: _____

*Attorneys for Plaintiff*
Sarah M. Matz, Esq.
Gary Adelman, Esq.
1159 Second Ave, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
sarah@adelmanmatz.com
g@adelmanmatz.com

138