UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------
LEAH MCSWEENEY,

                Plaintiff,

     v.

ANDY COHEN, LISA SHANNON, JOHN
PAPARAZZO, DARREN WARD, WARNER BROS.
DISCOVERY, INC, SHED MEDIA US INC.,
NBCUNIVERSAL MEDIA, LLC and BRAVO MEDIA
LLC,

                Defendants.
---------------------------------------------------------------

Case No.: 1:24-cv-01503-LJL

ORAL ARGUMENT
REQUESTED

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ...................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............... 3
     A.   Plaintiff's Factual Allegations ..................................................................... 3
     B.   The Court Dismisses More Than Half of the Claims in the FAC With
          Prejudice ...................................................................................................... 3
     C.   The Court Permits Plaintiff to File the SAC, and Preserves Defendants' Right
          to Move to Dismiss After Ruling on Their Motion to Compel Arbitration............ 4
     D.   The Amended Claims ................................................................................... 4

III. ARGUMENT............................................................................................................... 4
     A.   Standard of Review...................................................................................... 4
     B.   Plaintiff's Letter Retaliation Claims Fail................................................... 5
          1.   Plaintiff's Theory of Collusion with Other Cast Members Is
               Speculative, Lacks Specificity, and Is Implausible .................................. 5
          2.   Plaintiff Fails to Allege an Adverse Action............................................... 7
          3.   Plaintiff Fails to Allege Causation or Harm .......................................... 10
     C.   Plaintiff's Aiding and Abetting Claims Fail ............................................. 12
          1.   Plaintiff Improperly Seeks to Hold the Defendant Producers Liable
               for Aiding and Abetting Their Own Alleged Misconduct........................ 13
          2.   Plaintiff's Aiding and Abetting Claims Are Barred as Extraterritorial .... 15
          3.   The Court Already Held the First Amendment Protects Much of the
               Conduct at Issue in Plaintiff's Aiding and Abetting Claims..................... 18
          4.   Plaintiff Improperly Relies on Group Pleading ....................................... 19
          5.   Plaintiff Fails to Allege Facts to Support her Aiding and Abetting
               Claims .................................................................................................... 20
               a)   Plaintiff's Allegations Regarding the Defendant Producers'
                    Purported Conduct in the Hamptons Fail to State a Claim........... 20
               b)   Plaintiff's Vague and/or Trivial Allegations Are Not
                    Actionable ................................................................................. 22
                    (1)   The "Outing" of Plaintiff's Diagnosis ............................ 22
                    (2)   The Comments About Other Cast Members' Drinking.... 22
                    (3)   The Response to Plaintiff's Stated Desire to Drink .......... 24
                    (4)   The Joking About Plaintiff's Alcoholism......................... 24
                    (5)   The Inquiry About Whether Plaintiff Was Drinking ........ 25
               c)   Plaintiff Does Not Plausibly Allege Involvement by the
                    Defendant Producers in the Decision Not to Cast Her ................. 25

IV.  CONCLUSION............................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Abadi v. NYU Langone Health Sys.*,
714 F. Supp. 3d 387 (S.D.N.Y. 2024)..............................................................................19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................4

*Augustin v. The Yale Club of N.Y.C.*,
274 F. App'x 76 (2d Cir. 2008) .....................................................................................25

*Boonmalert v. City of New York*,
721 F. App'x 29 (2d Cir. 2018) .....................................................................................13

*Brodt v. City of New York*,
4 F. Supp. 3d 562 (S.D.N.Y. 2014) ...............................................................................21

*Chamale-Eustace v. State Univ. of New York at Stony Brook*,
245 A.D.3d 788 (2nd Dep't 2026) .............................................................................13, 14

*Daniel v. Wayans*,
8 Cal. App. 5th 367 (2017) ............................................................................................23

*Davis-Bell v. Columbia Univ.*,
851 F. Supp. 2d 650 (S.D.N.Y. 2012)............................................................................22

*Emanuel v. City of New York*,
2024 WL 3638328 (S.D.N.Y. Aug. 2, 2024)].............................................................13, 14

*Flynn v. McCabe & Mack LLP*,
2018 WL 794631 (S.D.N.Y. Feb. 8, 2018)....................................................................22

*Gibbs v. City of New York*,
87 F. Supp. 3d 482 (S.D.N.Y. 2015)..............................................................................22

*Hardwick v. Auriemma*,
116 A.D.3d 465 (1st Dep't 2014) ...............................................................................13, 14

*Harte v. Woods Hole Oceanographic Inst.*,
495 F. App'x 171 (2d Cir. 2012) ...................................................................................16

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018)...........................................................................9, 10

*Islamic Soc'y of Fire Dep't Pers. v. City of New York*,
205 F. Supp. 2d 75 (E.D.N.Y. 2002) .............................................................................21

ii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Johnson v. J. Walter Thompson U.S.A., LLC*,
224 F. Supp. 3d 296 (S.D.N.Y. 2016)................................................................9, 10

*Kearse v. ATC Healthcare Servs.*,
2013 WL 1496951 (S.D.N.Y. Apr. 8, 2013)..............................................................15

*King v. Aramark Servs. Inc.*,
96 F.4th 546 (2d Cir. 2024) ......................................................................................17

*Klaper v. Cypress Hills Cemetery*,
593 F. App'x 89 (Summary Order) (2d Cir. 2015)....................................................24

*Kraiem v. JonesTrading Institutional Servs. LLC.*,
492 F. Supp. 3d 184 (S.D.N.Y. 2020).......................................................................17

*Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*,
632 F. Supp. 3d 402 (S.D.N.Y. 2022).....................................................................4, 5

*Leon v. Murphy*,
988 F.2d 303 (2d Cir. 1993)........................................................................................6

*Lively v. Wayfarer Studios LLC*,
2026 WL 905447 (S.D.N.Y. Apr. 2, 2026)........................................................8, 9, 23

*Lively v. Wayfarer Studios LLC*,
786 F. Supp. 3d 695 (S.D.N.Y. 2025).......................................................................20

*Luo v. AIK Renovation Inc.*,
2024 WL 4444283 (S.D.N.Y. Oct. 8, 2024) .............................................................14

*M.V. v. Bravo Media LLC*,
2026 WL 731067 (Sup. Ct. N.Y. Cnty. Feb. 27, 2026) ...........................................18

*Murray v. Brag Sales Inc.*,
2024 WL 4635479 (S.D.N.Y. Oct. 31, 2024) ......................................................15, 17

*Oakley v. Dolan*,
833 F. App'x 896 (2d Cir. 2020) ...............................................................................23

*Rice v. Scudder Kemper Invs., Inc.*,
2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003).........................................................18

*Romero v. Garner Env't Servs., Inc.*,
2025 WL 3638397 (S.D.N.Y. Dec. 15, 2025) ...........................................................19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Scott v. Mem'l Sloan-Kettering Cancer Ctr.*,
190 F. Supp. 2d 590 (S.D.N.Y. 2002) ...................................................................................22

*Shaughnessy v. Scotiabank*,
2024 WL 1350083 (S.D.N.Y. Mar. 29, 2024) .......................................................................13

*Shinde v. Chamber Music America, Inc.*,
2025 WL 1042284 (S.D.N.Y. Feb. 25, 2025) ........................................................................13

*Trotter v. Nat'l Football League*,
737 F. Supp. 3d 172 (S.D.N.Y. 2024) ...................................................................................18

*Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*,
370 F.3d 259 (2d Cir. 2004) ..................................................................................................14

*Ziyan Shi v. New York Dep't of State, Div. of Licensing Servs.*,
393 F. Supp. 3d 329 (S.D.N.Y. 2019) ...................................................................................25

## STATUTES

42 U.S.C. § 12114(c)(4) ..........................................................................................................23

N.Y. Labor Law § 215 ..........................................................................................................3, 12

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1, 4, 15

N.Y.C. Admin. Code § 8-102 .................................................................................................23

Defendants Andy Cohen, Lisa Shannon, John Paparazzo, Darren Ward, Warner Bros. Discovery, Inc., Shed Media US Inc., NBCUniversal Media, LLC, and Bravo Media LLC ("Defendants"[1]) respectfully submit this Memorandum of Law in support of their Partial Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 117, "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## I.    PRELIMINARY STATEMENT

Plaintiff seeks to revive the claims that this Court dismissed without prejudice in its Decision and Order on Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 93, the "MTD Decision"). In dismissing those claims, the Court found that: (1) Plaintiff did not adequately allege a retaliation claim against Defendant Cohen based on a letter that Cohen's lawyers sent to Plaintiff's counsel on March 6, 2024 refuting Plaintiff's accusations of drug use (the "March Letter"), which Cohen allegedly subsequently shared with several media outlets; and (2) Plaintiff failed to state a claim against the Defendant Producers. *See* MTD Dec. at 55-68.  The Court set forth the elements that Plaintiff would have to plausibly allege for these claims to survive. *Id.* In the SAC, Plaintiff fails to allege facts supporting these claims, and they must be dismissed with prejudice.

In the MTD Decision, the Court found that Plaintiff had failed to allege facts to establish that the March Letter was sent to the press to deter future complaints against Cohen, or that transmission of the letter to the media impacted or had the prospect to impact Plaintiff's future employment opportunities. MTD Dec. at 56-66. The SAC continues to lack the requisite factual underpinning to support these claims. Plaintiff's expanded allegations contend, upon information

---

[1] At times herein, Shannon, Paparazzo, and Ward are referred to as the "Defendant Producers."

[2] The claims at issue are the Second, Fourth, Seventh, Ninth, Twelfth, Fourteenth, Eighteenth, Twentieth, and Twenty-Second through Twenty-Fifth Causes of Action of the SAC (together, the "Amended Claims").

and belief, that Cohen "directed or induced" current and former Bravo talent to publicly validate the fact that Cohen did not do cocaine with cast and crew. These allegations are speculative and conclusory and should be disregarded. Even if they were supported by factual allegations, they fail to establish that the March Letter was sent in retaliation, rather than to defend Cohen's reputation. The allegations of the SAC also fail to plausibly allege that the March Letter or the cast members' statements "caused Plaintiff any incremental harm or injury, beyond what she would have already caused to herself by the filing of the lawsuit." *See* MTD Dec. at 64 (citation and internal quotation marks omitted). Consequently, Counts Twenty-Three through Twenty-Five (the "Letter Retaliation Claims") should be dismissed with prejudice.

As to Plaintiff's claims against the Defendant Producers (the Second, Fourth, Seventh, Ninth, Twelfth, Fourteenth, Eighteenth, Twentieth, and Twenty-Second Causes of Action (the "Aiding and Abetting Claims")), the SAC fails to assert sufficient facts to support an aiding and abetting theory. All of Plaintiff's allegations regarding the Defendant Producers relate to their own purported misconduct. This Court already explained that such allegations do not state a claim for aiding and abetting. MTD Dec. at 67. While this alone would be enough to dispose of the Aiding and Abetting Claims, they are also defective, independently, because they: (1) hinge on extraterritorial conduct not covered by the New York state or city statutes at issue; (2) seek to hold the Defendant Producers liable for conduct that this Court has already held to be protected by the First Amendment; (3) fail to differentiate the Defendant Producers in improper group pleadings; and/or (4) consist of allegations that are too vague or trivial to state a claim.

Because Plaintiff has failed to allege any new facts that save her Amended Claims, the Court should again dismiss them, with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Plaintiff's Factual Allegations[3]

Plaintiff is a former cast member on the reality television shows *The Real Housewives of New York City* ("RHONY") and *The Real Housewives Ultimate Girls Trip* ("RHUGT"). MTD Dec., p. 2. Defendants are the production company, network, and individual producers of RHONY and RHUGT. *Id.* Plaintiff filed the Complaint on February 27, 2024, asserting, *inter alia*, claims for discrimination based on disability, religion, and sex, all arising from Plaintiff's employment on RHONY and RHUGT. *See* Dkt. No. 1.

### B.    The Court Dismisses More Than Half of the Claims in the FAC With Prejudice

On July 17, 2024, Defendants moved to dismiss the FAC. Dkt. No. 57. On March 31, 2025, the Court dismissed more than half of Plaintiff's claims with prejudice: sex/gender discrimination and retaliation; religious discrimination; ADA discrimination; RICO; NYLL § 215; interactive process under federal and state law; and interference. MTD Dec. at 30-41, 68-93, 99-100.[4]

In addition, the Court dismissed Plaintiff's Letter Retaliation Claims, finding that the FAC did not adequately allege that the publication of the March Letter constituted an adverse employment action. *Id.* at 55-66. The Court also dismissed Plaintiff's disability-related claims against the Defendant Producers because the FAC did not allege that any of the Defendant Producers had hiring or firing power or an ownership interest in RHONY, and Plaintiff failed to allege aiding and abetting. *Id.* at 66-68. With respect to these two categories of claims, the Court permitted Plaintiff the opportunity to move for leave to amend. *Id.* at 98.

---

[3] Defendants respectfully incorporate herein the entirety of their Memorandum of Law in Support of their Motion to Dismiss the First Amended Complaint (Dkt. No. 58), and in particular, Section III thereof, which sets forth the relevant factual background.

[4] While the Court did not dismiss Plaintiff's disability-related hostile work environment claims, it held that "[m]uch of the conduct alleged by Plaintiff is protected by the First Amendment." MTD Dec. at 46-47.

**C.    The Court Permits Plaintiff to File the SAC, and Preserves Defendants' Right to Move to Dismiss After Ruling on Their Motion to Compel Arbitration**

On May 28, 2025, Plaintiff filed a motion for leave to amend the FAC. Dkt. Nos. 100-102. On July 8, 2025, the Court granted the motion "without any ruling with respect to futility and without prejudice to the right of the defendants … to move to dismiss the new allegations in the amended complaint for failure to state a claim for relief" after adjudicating Defendants' then-contemplated motion to compel the case to arbitration. Dkt. No. 118 at 26, 30 (July 8, 2025 Tr.).

Plaintiff filed the SAC on July 11, 2025. Dkt. No. 117. On March 9, 2026, the Court denied Defendants' motion to compel arbitration. Dkt. No. 128.

**D.    The Amended Claims**

The Letter Retaliation Claims in the SAC seek to hold Cohen liable for retaliation under the NYSHRL, NYCHRL, and NYLL. As to the Defendant Producers, the SAC asserts claims for aiding and abetting discrimination, hostile work environment, retaliation, and failure to provide reasonable accommodations under the NYSHRL and NYCHRL, and aiding and abetting failure to engage in an interactive process under NYCHRL.

**III.    ARGUMENT**

**A.    Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss under Rule 12(b)(6), a court accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 435 (S.D.N.Y. 2022) (citation and internal quotation marks omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice, and a complaint must offer more than labels and conclusions, or a formulaic recitation of the elements of a cause of action to survive dismissal." *Id.* (citation omitted). The Court need not credit allegations that are contradicted by documents incorporated in or integral to the complaint. *Id.* at 435-36.

### B.    Plaintiff's Letter Retaliation Claims Fail

In its MTD Decision, the Court held that Plaintiff failed to establish retaliation based on the publication of the March Letter to the media for several independent reasons. MTD Dec. 55-66.  As the Court found, employers are entitled to defend themselves against a potentially "meritless claim, including by sending a letter that "raises the specter" of litigation (*id.* at 58); the content of the letter was typical of a Rule 11 letter and included "an unexceptional, and accurate, statement of law" (*id.* at 59, 64); Plaintiff failed to allege facts sufficient to show that the letter was sent to the media to deter future retaliation claims rather than to defend Cohen's reputation (*id.* at 63); the "letter casts doubt on Plaintiff's allegations and not on Plaintiff's performance as an actor or reputation as an employee in the entertainment industry" (*id.* at 64); to the extent it accuses Plaintiff of being a vexatious liar, it casts the same aspersions on Plaintiff's lawyer, "suggesting that the decision [to file the original Complaint] is as much that of the lawyer as of the client" (*id.*); and Plaintiff fails to allege facts establishing how, regardless of intent, the March Letter "had any impact on Plaintiff's career in the industry or that it had any prospect of doing so" (*id.* at 64-66).

Like her previous claims relating to the March Letter, the amended Letter Retaliation Claims are entirely unsupported, and should be dismissed with prejudice.

#### 1.    Plaintiff's Theory of Collusion with Other Cast Members Is Speculative, Lacks Specificity, and Is Implausible

Plaintiff's theory that Cohen and certain cast members conspired to "blacklist" her is both implausible and insufficient to support her claim for retaliation. The theory that Cohen "requested

or induced" current and former *Real Housewives* cast members to publicly comment in support of him and the March Letter (SAC ¶ 364) is speculative and lacks any specificity. Plaintiff does not allege that she has personal knowledge of such a "coordinate[d] attack." She does not provide any details whatsoever about the time, place, location, or content of the alleged communications. She only speculates "[u]pon information and belief" that cast members would not have made certain comments about her claims in the media "but for Defendant Cohen's direction and/or inducement." *Id.* ¶ 369.[5] This is not enough to state a plausible claim of conspiratorial collusion between Cohen and those cast members. It is axiomatic that conclusory assumptions cannot survive dismissal. *See, e.g.*, *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) ("conclusory, vague, or general allegations of conspiracy … cannot withstand a motion to dismiss.") (citations omitted).

Plaintiff's allegations in the SAC are also implausible, especially when read in the context of her initial pleadings. In her original Complaint, Plaintiff asserted that Cohen took illegal drugs with ***multiple***, ***unnamed*** cast members, and further alleged that the fact of this conduct was well-known among cast members broadly. Dkt. No. 1 ¶¶ 312-13. In the SAC, Plaintiff concedes that she had no personal knowledge to support these allegations.[6] Put differently, Plaintiff, in an extremely public forum, baselessly accused an unspecified and therefore limitless number of *Real Housewives* cast members—a group that she concedes is known for public "bickering and infighting" (Dkt. No. 1 ¶ 50)—of participating in a drug use conspiracy. As the Court noted in

---

[5] Plaintiff also references various industry rumors to support her claim that Cohen has the ability to "blacklist" people from securing positions in reality television. *See* SAC ¶¶ 415-17. Plaintiff claims no personal knowledge of those purported instances of "blacklisting"; she instead relies on the public speculations of other Bravo talent about their statuses in the industry, at different time periods and in different contexts. These allegations are too speculative and attenuated to support Plaintiff's claims.

[6] The supposedly corroborating "evidence" she cites to support her speculations consists of two anonymous cast members who "privately confirmed" her allegations, one former cast member who called Cohen a "cocaine head" after she was not recast as a Housewife, and a "public video" created by an unspecified person that references Cohen's supposed cocaine use. SAC ¶¶ 389, 391. Plaintiff does not cite a ***single*** instance in which she witnessed any cocaine use, nor does she even allege that she was aware of any of the above-referenced "evidence" before she made her Complaint.

dismissing these claims previously, Plaintiff "could reasonably expect that [Cohen] would deny" the drug use allegations. MTD Dec. at 64. It is equally true that, having publicly accused *Real Housewives* cast members of either doing drugs with Cohen or being complicit in such practice, Plaintiff could reasonably expect that those cast members would publicly deny their involvement. "She was not entitled to assume to the contrary." *Id.* The fact that a chorus of cast members denied the truth of Plaintiff's irresponsible and false allegations based on their own experiences, and supported Cohen's character and reputation, is not unexpected; nor is it evidence of retaliation.

### 2. Plaintiff Fails to Allege an Adverse Action

As the Court explained, "[n]o reasonable employee should expect that the employer-defendant would simply surrender in the face of litigation[,]" and the "threat of a vigorous defense … is not the 'retaliation' that Congress had in mind in crafting the retaliation provisions of [federal antidiscrimination law]." MTD Dec. at 58 (citations omitted). Cohen is entitled to defend himself against Plaintiff's accusations of misconduct, and the publication of the March Letter was not an adverse action because it "casts doubt on Plaintiff's allegations and not on Plaintiff's performance as an actor or reputation as an employee in the entertainment industry." *Id.* at 64. Plaintiff failed to allege facts to support her theory that the publication of the March Letter "convey[ed] something negative about [her] job performance or professional reputation or that could bear on [a] future employer's potential hiring decision." *Id.* at 63 (citation omitted).

In the SAC, Plaintiff still fails to plausibly allege anything of the sort. Neither the March Letter itself nor the statements of cast members cited in the SAC speak to Plaintiff's ***professional capabilities*** as a reality television cast member. The March Letter simply seeks to refute a specific allegation regarding Cohen's purported drug use with other cast members, which this Court has recognized could be defamatory *per se* (*id.* at 59) and which Plaintiff has not supported with

personal knowledge.[7] Likewise, while Plaintiff baldly asserts that the cast members referenced in the SAC "disparage[d]" her, she cites no defamatory statements; the only statements that she references either simply deny Plaintiff's allegations of drug use or express support for Cohen. *See* SAC ¶ 369 (alleging that: Lisa Vanderpump said she was "on [Defendant Cohen's] side"; Heather Dubrow "stated that she was 'irritated' by Ms. McSweeney's Complaint because 'no one has ever forced me to drink'"; Kandi Burruss stated that "I have had, and I hope to continue to have, a good relationship with the network"; Dorinda Medley stated that she "feels terrible" for Cohen; Margaret Josephs stated that Plaintiff's allegations were an attempt "to assassinate [Cohen's] character"). Even if these allegations could somehow be imputed to Cohen, they would still be non-actionable consistent with the reasoning of the MTD Decision, as they have nothing to do with Plaintiff's professional capabilities.

This Court recently confirmed that an employer-defendant is entitled to publicly defend against discrimination claims—far more extensively and aggressively than is alleged here—without running afoul of antidiscrimination laws. In *Lively v. Wayfarer Studios LLC*, 2026 WL 905447 (S.D.N.Y. Apr. 2, 2026), the Court held that the defendants "were entitled to engage public relations and crisis management specialists to protect their reputations[,]" to publicly "assert that the claims against them were untrue or misconstrued, and that [the plaintiff] could not be credited[,]" and to "point[] to evidence that [the plaintiff] had ulterior motives for making claims of harassment and that she did not believe the claims she was making." *Id.* at *61. It also held that a defendant is permitted to "use proxies … to defend him or herself." *Id.*[8]

---

[7] Even if the March Letter could be construed to call Plaintiff a liar, Plaintiff fails to explain how that characterization may adversely impact her employment as a reality television personality. Many of Bravo's longest employed and most popular cast members are viewed as "villains" by some, and accusations that a cast member is not telling the truth are routine on the show and in other media.

[8] While the Court in *Lively* held that *some* of the defendants' conduct crossed the line into retaliation, that alleged conduct bears no comparison to what is alleged here. *See id.* at *61-62 (noting that certain conduct could be construed

Plaintiff has not proffered case law to counter this Court's holdings. In her motion to amend, Plaintiff relied primarily on two authorities: *Hughes v. Twenty-First Century Fox, Inc*., 304 F. Supp. 3d 429 (S.D.N.Y. 2018) and *Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296 (S.D.N.Y. 2016). *See* Dkt. No. 101 at 17-19. Neither supports Plaintiff's theory.

In *Hughes*, the employer defendants allegedly responded to the plaintiff's protected activity by attempting to "end [the plaintiff's] career at Fox." 304 F. Supp. 3d at 448 (noting that the defendant was denied a contract and her opportunities on Fox programs diminished).  In addition, the plaintiff alleged that the defendants "told other networks that she was 'not bookable,' thereby precluding her from similar opportunities," which "was tantamount to giving a negative reference to prospective employers solely to punish" the plaintiff. *Id.* (citations omitted).

In *Johnson*, the plaintiff alleged that after her protected activity, the defendants "placed her on paid leave," "put the brakes on [her] future at the company by allegedly placing development in her department on 'hold,'" "publicly criticized her work ethic, 'accus[ing] her of not being available when they needed her and impl[ying] that she is unreliable,'" and made multiple additional statements implying that she was not credible or truthful. 224 F. Supp. 3d at 314. The court held that these allegations, "considered as a whole," sufficed to meet the "adverse action" element." *Id.* at 314-15.

*Hughes* and *Johnson* are materially different from this case for several reasons.  First, in both, the adverse action finding was supported by multiple alleged acts, including the acts of depriving the plaintiffs of opportunities at the defendant companies as a result of the protected conduct. Here, the only adverse actions allegedly supporting the Letter Retaliation Claims are the publication of the March Letter and the comments by cast members. There is no allegation that

---

as directly attacking the plaintiff's professional capabilities (rather than her allegations), such as amplifying the narratives that she is inept at marketing and insensitive to domestic violence survivors)).

Cohen deprived Plaintiff of employment opportunities at the Defendant companies as a result of the March Letter. Second, while both *Hughes* and *Johnson* involved alleged public statements made in response to the protected activity, those allegations bear no legal resemblance to the alleged comments here. Like in the cases cited in the MTD Decision (at 61-62) and in *Lively*, the defendants in *Hughes* and *Johnson* made disparaging comments to prospective employers ***about the plaintiff's professional performance and capabilities***. No such statements are alleged here.

### 3. Plaintiff Fails to Allege Causation or Harm

Even assuming Plaintiff had pled the other elements of retaliation, she still fails to demonstrate how Cohen's purported act of sending the March Letter to the media has caused her harm "beyond what she would have already caused to herself by the filing of the lawsuit and the allegations contained within it." MTD Dec. at 64.

The SAC adds an allegation that the publication of the March Letter caused Plaintiff to lose a branding opportunity with Patti Stanger and caused Plaintiff's branding opportunities overall to decrease by 50%. *See* SAC ¶¶ 421-27. But Plaintiff fails to plausibly allege any causal connection between the March Letter and this purported loss of opportunities. Plaintiff filed her Complaint on February 27, 2024, and the March Letter was sent on March 6, 2024. It is not plausible to suggest that the March Letter, ***as opposed to the Complaint itself***, was the source of lost branding opportunities (if any). This is particularly so because Plaintiff is vague about the timeline of the supposed lost opportunity: she alleges that the opportunity first arose "[i]n or around the first week of March." SAC ¶ 425. Since Plaintiff was the recipient of this alleged offer, there is no reason for her to be so vague about its date of origin, unless that date was unhelpful to her allegation.

Even if the Court were to assume that the alleged branding opportunity arose in the week between the filing of the Complaint and the publication of the March Letter, there is no plausible allegation that the March Letter caused the opportunity to be lost. Critically, by filing her

Complaint, Plaintiff publicly disclosed that the primary driver of her reach and public influence—her association with the *Real Housewives* franchise—had ended. And, as the Court found, by the mere filing of the Complaint, Plaintiff "showed herself to be litigious." MTD Dec. at 64. Plaintiff ignores the likelihood that it was the Complaint, not the March Letter, that led to her supposed loss of branding opportunities.

In any event, it is not plausible to suggest that "Stanger no longer wished to align herself or her brand with Ms. McSweeney" because "the press reported that Defendant Cohen threatened to pursue defamation counterclaims" in the March Letter. SAC ¶ 427. Plaintiff's own proffered theory is that Ms. Stanger and other brand representatives are unwilling "to align themselves with Ms. McSweeney over Defendant Cohen." SAC ¶ 429. But as the Court already noted, Plaintiff affirmatively cast herself in opposition to Cohen and the other Defendants in the Complaint. There is no plausible reason why Ms. Stanger, or any other brand, would: (1) be willing to engage with Plaintiff after learning that she was no longer affiliated with the *Real Housewives*; had pitted herself against Bravo, Cohen, and the other Defendants; had made inflammatory allegations about Cohen's supposed drug use "upon information and belief"; and had revealed herself to be litigious; *but then* (2) become unwilling to engage with Plaintiff because Cohen and others publicly denied the drug use allegations and made a typical public promise to vigorously defend against those claims in the litigation Plaintiff commenced. If Plaintiff is right that brands abandoned her because they were unwilling to "align" with her against Defendants, *then she forced that choice by filing the Complaint*, before the March Letter existed. Plaintiff thus has not plausibly alleged that the March Letter caused her any "incremental harm or injury" beyond the harm caused by the filing of the original Complaint. MTD Dec. at 64.

*       *       *

11

For any of the foregoing reasons, independently or together, Plaintiff's Letter Retaliation Claims must be dismissed for failure to state a claim.[9]

### C.      Plaintiff's Aiding and Abetting Claims Fail

In its MTD Decision, the Court held that Plaintiff failed to state a claim against the Defendant Producers on an aiding and abetting theory. MTD Dec. at 66-68. With respect to the relevant legal standard, the Court explained:

> To state a claim for aiding and abetting unlawful retaliation under both the NYCHRL and NYSHRL laws, a plaintiff must plead both that the "defendant actually participate[d] in the conduct giving rise to the retaliation claim," *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020) (internal quotation marks omitted) … , and that the defendant "share[d] the intent or purpose of the principal actor," *Fried v. LVI Servs., Inc.*, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011) (internal quotation marks omitted). . . . "Significantly, however, 'an individual cannot aid and abet his or her own violation' of the statute." *Emanuel* [*v. City of New York*, 2024 WL 3638328, at *7 (S.D.N.Y. Aug. 2, 2024)] (quoting *Baptiste v. C.U.N.Y.*, 680 F. Supp. 3d 415, 27 (S.D.N.Y. 2023)); *see also Singhal v. Doughnut Plant, Inc.*, 2022 WL 976885, at *5 (S.D.N.Y. Mar. 31, 2022) ("Under the NYSHRL and NYCHRL, [an] individual[ ] may not be held liable merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating that law." (cleaned up)).

MTD Dec. at 66-67.

In the SAC, Plaintiff has added claims of aiding and abetting discrimination, hostile work environment, retaliation, failure to provide reasonable accommodations, and failure to engage in an interactive process under the NYCHRL and NYSHRL.[10] Her allegations are still woefully insufficient for several independent reasons, as discussed below.

---

[9] Plaintiff's Twenty-Fifth Cause of Action for retaliation under N.Y. Labor Law § 215 fails for these reasons, and also because Plaintiff still "does not allege that she complained about conduct that constitutes an independent violation of the New York Labor Laws," as this Court already found. MTD Dec. at 92-93.

[10] Plaintiff does not assert any claims for direct liability against the Defendant Producers.

### 1.    Plaintiff Improperly Seeks to Hold the Defendant Producers Liable for Aiding and Abetting Their Own Alleged Misconduct

This Court has explained that "an individual cannot aid and abet his or her own violation of the statute." MTD Dec. at 67 (citations and internal quotation marks omitted); *see also Emanuel*, 2024 WL 3638328, at *7 (finding that as the alleged "principal actor[s] in the alleged [discriminatory] scheme, [an individual defendant] cannot be held liable on an aiding-and-abetting theory under the NYSHRL and NYCHRL"); *Boonmalert v. City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018) (Summary Order) ("an individual cannot aid and abet their own discriminatory conduct") (citation omitted); *Shinde v. Chamber Music America, Inc.*, 2025 WL 1042284, at *10 (S.D.N.Y. Feb. 25, 2025) (aiding and abetting claim cannot be "brought against the alleged principal actors"); *Shaughnessy v. Scotiabank*, 2024 WL 1350083, at *14 (S.D.N.Y. Mar. 29, 2024) (individual defendants "cannot have aided and abetted their own primary conduct") (citation omitted); *Hardwick v. Auriemma*, 116 A.D.3d 465, 468 (1st Dep't 2014) ("Since it is alleged that Auriemma's own actions give rise to the discrimination claim, he cannot also be held liable for aiding and abetting."); *Chamale-Eustace v. State Univ. of New York at Stony Brook*, 245 A.D.3d 788, 790 (2nd Dep't 2026) (individual "may not be held liable for aiding and abetting his own violation of the NYSHRL") (citations omitted).

*Emanuel* is particularly instructive. In that case, the plaintiff alleged that her supervisor, Rodriguez, engaged in a "campaign of harassment against" the plaintiff, filed a retaliatory complaint against her, and encouraged co-workers to "turn[] on her." 2024 WL 3638328, at *1-2. Based on this conduct, and the conduct of others, the plaintiff sought to hold the employer directly liable under the NYCHRL and NYSHRL, and to hold Rodriguez liable for aiding and abetting. *Id.* at *6. The Court held that Rodriguez, as the alleged "principal actor" in the alleged violations, could not be found liable for aiding and abetting. *Id.* at *7; *see also Luo v. AIK Renovation Inc.*,

13

2024 WL 4444283, at *17 (S.D.N.Y. Oct. 8, 2024) (dismissing aiding and abetting claims against individuals because "[a]n individual cannot aid and abet his or her own violation of the Human Rights Law," although the conduct of those same individuals could create liability for the employer) (quoting *Hardwick*, 983 N.Y.S.2d at 513).[11]

Here, the situation is nearly identical. Plaintiff seeks to hold her alleged employers (all Defendants other than the Defendant Producers) liable based on the alleged conduct of the Defendant Producers. Specifically, the SAC complains that the Defendant Producers refused Plaintiff's requests for accommodation (SAC ¶¶ 172-88, 243, 266-70), encouraged other cast members to ostracize her (*id.* ¶¶ 252-59, 296-98), and pressured her to consume alcohol (*id.* ¶ 89). *See also, e.g.*, *id.* ¶ 519 (alleging that the Defendant Producers "participated in the conduct giving rise to Plaintiff's claims … by: failing to engage in the interactive process, failing to provide Plaintiff reasonable accommodations… ; tormenting Plaintiff on the basis of her disabilities… ; failing to advance Plaintiff due to her mental health diagnoses and alcohol use disorder").[12]

Notably, in the MTD Decision, the Court cited the alleged acts of the Defendant Producers as the basis to permit the claims against Plaintiff's employers to proceed. *See* MTD Dec. at 46-47. While the Court found that these allegations of misconduct by the Defendant Producers could support a direct claim against Plaintiff's alleged ***employers***, the law is clear that such allegations

---

[11] The *Emanuel* court noted that "[a]t least one judge in this District has held that the NYCHRL and the NYCHRL do 'extend[] to ... aiding and abetting allegedly unlawful discrimination by an employer *even where* an individual defendant's actions serve as the predicate for the employer's vicarious liability.'" *Emanuel*, 2024 WL 3638328, at *7 n.9 (quoting *Xiang v. Eagle Enterprises, LLC*, 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020)). The *Emanuel* court disagreed (consistent with the many cases cited above), on grounds that: (1) "even proponents of this view acknowledge that the analysis involves [] 'a strange and confusing circularity where the person who has directly perpetrated the unlawful discrimination only becomes liable through the employer whose liability in turns hinges on the conduct of the direct perpetrator"; and (2) the First Department in *Hardwick* unambiguously held that "[a]n individual cannot aid and abet his or her own violation of the Human Rights Law." *Id.* (citation omitted). The Second Department has since joined the First Department in this holding. *Chamale-Eustace*, 245 A.D.3d at 790. The federal courts are "bound … to apply the law as interpreted by New York's intermediate appellate courts." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 n.5 (2d Cir. 2004).

[12] To be clear, Defendants deny each of these allegations. As with Plaintiffs' other allegations, Defendants treat them as true only to the extent required under Rule 12(b)(6).

14

***cannot also support an aiding abetting claim*** against the Defendant Producers.

For the same reason, Plaintiff's allegations that Defendants failed to investigate her allegations or take remedial action cannot form the basis of an aiding and abetting claim, as these allegations are part of the primary alleged wrongdoing upon which she bases her claim against the alleged employer Defendants. Regardless, the sparse and conclusory allegations of failure to investigate are insufficient to state a claim for the reasons discussed *infra*.

The Aiding and Abetting Claims should be dismissed on this basis, alone.[13]

### 2. Plaintiff's Aiding and Abetting Claims Are Barred as Extraterritorial

Plaintiff's Aiding and Abetting Claims are barred by extraterritorial limitations, and should be dismissed for this reason as well. It is well-settled that the NYCHRL and NYSHRL govern discriminatory conduct that occurs exclusively within the City and State of New York, respectively. *See Kearse v. ATC Healthcare Servs.*, 2013 WL 1496951, at *2 (S.D.N.Y. Apr. 8, 2013) ("[t]o state a claim under the NYCHRL, a plaintiff must allege that the defendant engaged in discriminatory conduct 'within the boundaries of New York City.'") (citations omitted); *see also Murray v. Brag Sales Inc.*, 2024 WL 4635479, at *2 (S.D.N.Y. Oct. 31, 2024) ("Residence in New York City alone does not place a plaintiff under the NYCHRL's protection if he worked and experienced discrimination outside of the City"); *Harte v. Woods Hole Oceanographic Inst.*, 495 F. App'x 171, 172 (2d Cir. 2012) (Summary Order) (affirming dismissal of claims under the NYSHRL where alleged employment discrimination occurred outside New York). Here, nearly all of the alleged conduct underlying Plaintiff's Aiding and Abetting Claims occurred ***outside*** of New York City and/or State.

---

[13] In the few instances where Plaintiff's allegations concern other individuals, Plaintiff does not allege that the Defendant Producers were also involved. *See, e.g.*, SAC ¶¶ 139-43, 147. The Defendant Producers cannot be liable for conduct in which they had no personal involvement.

First, the bulk of the alleged aiding and abetting, including its "peak[]," occurred while Plaintiff and the Defendant Producers were working *in Thailand*. SAC ¶¶ 243-332. This includes the allegations that: the Defendant Producers refused to accommodate Plaintiff's request to attend Alcoholics Anonymous meetings (SAC ¶¶ 243, 266-70); encouraged other cast members to ostracize Plaintiff (*id.* ¶¶ 252-59, 296-98); and retaliated against Plaintiff for stating that she was not allowed to leave a cast trip during an earlier RHONY season (*id.* ¶¶ 285-89). By her own allegations, Plaintiff felt the impact of the Defendant Producers' purported acts in Thailand. This extraterritorial conduct cannot support Plaintiff's claims under the NYCHRL or NYSHRL.

Second, another significant portion of the alleged aiding and abetting occurred while Plaintiff and the Defendant Producers were working in Newport, Rhode Island during RHONY Season 12. *See* SAC ¶¶ 87-94, 131-32. These allegations relate to the "Hurricane Leah" trip, and include that: Defendants Ward and Paparazzo encouraged Plaintiff to drink alcohol and failed to engage in the interactive process or accommodate her while she was inebriated; and Defendant Shannon told Plaintiff to continue drinking "so long as she 'remain[ed] lucid' while filming," and that she would "help 'craft [Plaintiff's] storyline.'" *Id.* ¶¶ 90-93, 132. Like the Thailand allegations, these allegations cannot support Plaintiff's Aiding and Abetting Claims because the purported discrimination did not impact Plaintiff in New York City or State.

Third, Plaintiff's allegations of aiding and abetting discrimination in the Hamptons—including the allegations that Defendant Producers purportedly refused to allow Plaintiff to leave work to visit her grandmother (*id.* ¶¶ 172-86)—also cannot support her claims under the NYCHRL, because they did not impact Plaintiff in New York City.

The mere fact that Plaintiff lived in New York City during the time period at issue is insufficient to avoid the bar against extraterritorial application. Courts are clear that "[r]esidence

16

in New York City alone does not place a plaintiff under the NYCHRL's protection if he worked and experienced discrimination outside of the City." *Murray*, 2024 WL 4635479, at *2 (collecting cases). In *Murray*, for example, the plaintiff, a New York City resident, could not avail himself of the NYCHRL where "the alleged discriminatory acts took place in Garden City." *Id.*

It is also insufficient for Plaintiff to argue that some of the discriminatory conduct alleged in the SAC occurred in New York City or State. In *King v. Aramark Servs. Inc.*, 96 F.4th 546, 558 (2d Cir. 2024), the Second Circuit held that although "*some* of the discriminatory conduct" took place while the plaintiff was working in New York, the "impact" test was not satisfied because "the lion's share of the discriminatory conduct that collectively comprises [the discrimination/harassment/retaliation claims] was directed at her in *Virginia*." Here, in light of her own allegations, Plaintiff cannot plausibly deny the "lion's share" of the allegedly discriminatory acts of the Defendant Producers took place outside of New York State and/or City.[14]

It also makes no difference that the Parties' Talent Agreement contained a New York choice-of-law clause. The Talent Agreement states that "[t]his Agreement shall be construed and enforced in accordance with the internal, substantive laws of the State of New York, applicable to contracts negotiated, executed, and fully performed within that State, regardless of where negotiation, execution and performance of this Agreement may actually occur and without regard to that state's conflict of laws provisions." Dkt. No. 59-1, App'x 1, ¶ 16. "It is settled New York law that language such as [that in the Talent Agreement] creates [chosen state] common law contractual claims but not statutory ones." *Rice v. Scudder Kemper Invs., Inc.*, 2003 WL 21961010, at *4 (S.D.N.Y. Aug. 14, 2003), *aff'd*, 183 F. App'x 147 (2d Cir. 2006) (Summary Order) (citations

---

[14] If the Court finds that *some* discriminatory conduct occurred within New York, it should disregard the extraterritorial conduct in determining whether Plaintiff has stated a claim. *See Kraiem v. JonesTrading Institutional Servs. LLC.*, 492 F. Supp. 3d 184, 198 (S.D.N.Y. 2020) (allowing NYSHRL/NYCHRL claims based on purported conduct in New York City to proceed, but dismissing these claims to the extent they were based on extraterritorial conduct).

17

omitted); *see also M.V. v. Bravo Media LLC*, 2026 WL 731067 (Sup. Ct. N.Y. Cnty. Feb. 27, 2026) (finding that similar language in a *Real Housewives*-related agreement did not encompass statutory claims). Even if the choice-of-law clause were broad enough to cover statutory claims, it would not matter, because such provisions do "not vitiate" the NYSHRL/NYCHRL's "jurisdictional prerequisites." *Rice*, 2003 WL 21961010, at *5 (dismissing NYSHRL claims despite New York choice-of-law agreement); *see also Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 194 (S.D.N.Y. 2024) (territoriality requirement may not "be waived through agreement of the parties").

### 3.    The Court Already Held the First Amendment Protects Much of the Conduct at Issue in Plaintiff's Aiding and Abetting Claims

Many of Plaintiff's allegations supporting her Aiding and Abetting Claims also impermissibly abridge Defendants' First Amendment rights, as this Court has already found. For example, Plaintiff alleges that the Defendant Producers discriminated against her because: they stocked her on-set residence with alcohol and encouraged her to drink while filming (SAC ¶¶ 84-89, 93, 174, 198, 233, 253-55, 273-75, 278); forced her to say lines on camera, such as "time for a drink" (*id.* ¶¶ 105-13); and criticized her sober performances as "boring" (*id.* ¶¶ 159-67; 196-98, 250-51). But the Court already held that ***these specific allegations*** are squarely foreclosed by the First Amendment. *See* MTD Dec. at 46 (the First Amendment protects Defendants' right "to supply cast members with unlimited alcohol free of charge and to encourage drinking while Plaintiff was filming," "direct [Plaintiff] to drink while being filmed," "direct her to say lines such as 'time for a drink,'" and "critique her sober performances as boring").

Other allegations are barred according to the Court's reasoning. *See* SAC ¶¶ 114-15 (Defendants created a highlight episode of "Leah's Best Moments"); *id.* ¶ 153, 175, 199-201 (Defendant Producers continued or refused to stop filming); *id.* ¶ 132 (Defendant Shannon stated she would "craft" Plaintiff's "storyline"); *cf.* MTD Dec. at 38, 40, 46 (Defendants have a First

18

Amendment right to "produce a reality television show based on drinking").

Indeed, Plaintiff alleges that Defendants' actions against her were done "all in the name of selling drama." SAC ¶ 1. As with the claims that the Court already dismissed on First Amendment grounds, these allegations concern conduct that plainly furthers Defendant Producers' constitutionally protected right to produce the show, the constraint of which would impose more than an incidental burden on that speech. Because these allegations would have Defendants held liable for conduct protected by the First Amendment, they cannot support Plaintiff's claims.

### 4.    Plaintiff Improperly Relies on Group Pleading

The Aiding and Abetting Claims are also improper to the extent that they treat the Defendant Producers "in an undifferentiated manner." *Abadi v. NYU Langone Health Sys.*, 714 F. Supp. 3d 387, 392 (S.D.N.Y. 2024) (citation omitted). "A complaint engages in impermissible group pleading when it 'simply lumps or groups defendants together without describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct.'" *Romero v. Garner Env't Servs., Inc.*, 2025 WL 3638397, at *5 (S.D.N.Y. Dec. 15, 2025) (citation omitted). "Group pleading[s]" such as these "are routinely rejected by courts as insufficient to state a claim as to any particular defendant." *Abadi*, 714 F. Supp. 3d at 392 (collecting cases). Courts should "ignore" such allegations in determining whether a claim is supported. *Id.*; *see also Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 738 (S.D.N.Y. 2025) (where it is unclear to whom a group allegation is addressed, "the Court will not parse through the various allegations and documents to determine whether a claim could theoretically be stated").

Here, the overwhelming majority of Plaintiff's allegations supporting the Aiding and Abetting Claims are made against the "Defendant Producers" as a group, even though it is clear in most of those instances that the allegation is not made against all three individuals. *See, e.g.*, SAC ¶¶ 46-49, 62, 64, 68-70, 72-78, 81-85, 88, 91, 95, 99, 102, 105-111, 113, 115-118, 126, 128-131,

19

134, 152-54, 156, 159, 161, 163-65, 168-69, 172-183, 185-86, 188, 197, 203, 220-21, 231, 240, 243-48, 250, 252-53, 258, 267, 269, 270, 272-78, 280-81; 289-91, 293-95, 304, 306, 309-310, 317-19, 322-26, 330, 332, 351, 442-43.

The Court should ignore all allegations that fail to differentiate the Defendant Producers.

### 5.    Plaintiff Fails to Allege Facts to Support her Aiding and Abetting Claims

To the extent any of Plaintiff's allegations survive the deficiencies noted above, they consist, at most, of a handful of allegations about the Defendant Producers that are conclusory, speculative, or trivial. Such purported conduct is not actionable.

### a)    Plaintiff's Allegations Regarding the Defendant Producers' Purported Conduct in the Hamptons Fail to State a Claim

Plaintiff alleges that, during a cast trip to the Hamptons, the Defendant Producers refused to accommodate her request to leave the trip and to temporarily cease filming. SAC ¶ 172-86.[15] Plaintiff also alleges that the Defendant Producers told her that, if they accommodated her request to leave, she would miss five episodes of filming and would not be paid for those episodes. *Id.*

Even if the Court assumes that Plaintiff's request to leave the trip was a request for accommodation connected to her disability (as opposed to her desire to see her grandmother), it cannot support her claim. First, the SAC alleges that when Plaintiff asked to leave the trip, the Defendant Producers ***expressly told her that she could leave***. SAC ¶ 183. The basis for her discrimination claim is her own assumption that the Defendant Producers were being "passive aggressive[]" in stating that she could "leave if she wanted" and that they really meant the opposite of what they said. *Id.* at ¶¶ 176, 183. This inference is not only speculative, it is ***directly contrary to the facts as alleged***. *See Brodt v. City of New York*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014)

---

[15] As noted above, these allegations are barred as extraterritorial under the NYCHRL, though not the NYSHRL.

("In reviewing the sufficiency of a complaint's allegations, a plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination") (citations omitted); *Islamic Soc'y of Fire Dep't Pers. v. City of New York*, 205 F. Supp. 2d 75, 84 (E.D.N.Y. 2002) ("[I]f a plaintiff's subjective feelings regarding his employer's actions controlled, every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.") (citation omitted).

Second, Plaintiff's argument that the Defendant Producers' offer of accommodation was not reasonable because she would not receive payment for missed episodes is unavailing. As an initial matter, Plaintiff does not even allege that she requested as part of her accommodation that she be paid during her leave. And even if she had, this accommodation would be facially unreasonable: Plaintiff's contract states that she will only be paid for episodes in which she appears, and she does not allege that paid leave was provided to any cast members under any circumstances. *See* Dkt. No. 59-2 (Plaintiff's contract for RHONY Season 13, which makes reference to the terms of Plaintiff's contract for RHONY Season 12); Dkt. No. 59-1 § 2(b) (Plaintiff's contract for RHONY Season 12, which sets forth the terms of Plaintiff's fees). *See also, e.g.*, *Scott v. Mem'l Sloan-Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 597 (S.D.N.Y. 2002) (paid leave was not a reasonable accommodation where it was beyond the employer's policy and "plaintiff never requested such a leave"); *Flynn v. McCabe & Mack LLP*, 2018 WL 794631, at *8 n.11 (S.D.N.Y. Feb. 8, 2018) ("the ADA does not require employers to pay employees for time they are absent from work") (citations omitted); *Gibbs v. City of New York*, 87 F. Supp. 3d 482, 497 n.19 (S.D.N.Y. 2015) ("the ADA's requirement that an employer reasonably accommodate an alcoholic employee requires no more than that such employee be given unpaid time off to participate in a treatment program") (citation omitted).

21

### b)    Plaintiff's Vague and/or Trivial Allegations Are Not Actionable

The few remaining allegations that are specific to the Defendant Producers, beyond the allegations discussed above, are either too vague and conclusory to support any claim, or exemplify the kind of petty slights and trivial inconveniences that are not actionable under the NYCHRL or NYSHRL. *See Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) ("[T]he NYCHRL, like … the NYSHRL … is still not a 'general civility code,' and 'petty slights and trivial inconveniences' are not actionable.") (citation omitted and cleaned up).

### (1)    The "Outing" of Plaintiff's Diagnosis

Plaintiff alleges that the Defendant Producers colluded with another cast member to "out" Plaintiff's "confidential" bipolar diagnosis, and then "shamed" Plaintiff for complaining about it. SAC ¶¶ 125-30. But the allegations of collusion are speculative and lack any supporting detail. Furthermore, "[t]he overall context in which [the challenged conduct occurs] cannot be ignored." MTD Dec. at 79 (quoting *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 59 (1st Dep't 2012)). In the context of the twelfth season of a show which "thrives off the most incendiary portrayals of female cast members," and which is widely known to feature the personal and professional lives of its cast members, "most" of whom Plaintiff alleges "openly or privately suffer from mental illness, addiction, and personality disorders," this conduct is trivial. MTD Dec. at 3, 78.[16]

### (2)    The Comments About Other Cast Members' Drinking

Plaintiff alleges that Defendant Shannon told her that another cast member was fired for being a "mean drunk," and glorified another cast member for being "ON" after she began drinking.

---

[16] Although not necessary to dispose of this allegation, the Court can also take judicial notice of the fact that Plaintiff was the one that publicly announced her bipolar diagnosis *years earlier* in an article she wrote. NYSCEF 59-7; *see* MTD Dec. at 80 (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir. 2008) (the Court may take judicial notice of media coverage "to establish that the matters had been publicly asserted," not "for the truth of the matters asserted in them.")).

SAC ¶¶ 145, 166-67.[17] But such comments, in the context of this adult-oriented show, allegedly "based on drinking," are trivial. *See* MTD Dec. at 46, 78. Regardless, they do not support an inference of disability discrimination against Plaintiff—they relate to the assessment of the *performance* of those individuals while they were consuming alcohol. Discrimination laws are clear that employers "may hold an employee … who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the … alcoholism of such employee." 42 U.S.C. § 12114(c)(4); *see also* N.Y.C. Admin. Code § 8-102 (defining alcoholism as a protected disability only when a person "currently is free of such abuse"); *Oakley v. Dolan*, 833 F. App'x 896, 901 (2d Cir. 2020) (Summary Order) (no claim of discrimination was stated where the defendant allegedly took action as a result of the party's "*inebriation at the time* and the resulting disruption") (citation omitted); *Klaper v. Cypress Hills Cemetery*, 593 F. App'x 89, 90 (Summary Order) (2d Cir. 2015) (rejecting discrimination claim where defendant's actions could be explained as reaction to plaintiff's inability to work, as opposed to plaintiff's alcoholism).

Furthermore, according to Plaintiff, Defendant Shannon criticized some cast members for their performances while drinking and celebrated others for their performances while drinking. This does not suggest that Defendant Shannon bore animus toward cast members based on whether

---

[17] The Court found in the MTD Decision that such comments were not entitled to First Amendment protection because they were "only indirectly related to or in service of Defendants' expressive activity." MTD Dec. at 46-47. Defendants respectfully submit that, in light of Plaintiff's allegation that "the *Real Housewives* is a creative work that celebrates (and Plaintiff asserts, exploits) drinking …, through casting and filming real-life women confronting such challenges in their real lives" (*id* at 39), there is "a direct linkage between the allegedly injury-producing off-camera comments and the [show's] creative process." *Daniel v. Wayans*, 8 Cal. App. 5th 367, 383, 385-86 (2017) (acts underlying hostile work environment claim—off-camera use of racially tinged speech and insults about actor's appearance—were "in furtherance of [the defendant's] free speech rights" because they were part of the creative process of making the movie, particularly since the movie was highly improvisational and the creative process is not limited to the period when cameras are rolling). As this Court has noted, "[c]reative artists … must have some amount of space to experiment within the bounds of an agreed script without fear of being held liable for [] harassment." *Lively*, 2026 WL 905447, at *53 (citing *Lyle v. Warner Bros. Television Prods.*, 132 P.3d 211, 225 (Cal. 2006)). It is even more important that the creators of an ***unscripted*** show be given latitude to create a work that is consistent with the creative goals of the production.

23

or not they have a disability of alcoholism; rather, it demonstrates that Shannon was *concerned with their on-camera performances*—i.e., whether they would make for good television. That the alleged comments may be considered offensive in the context of certain workplaces "does not mean that, in the production of the show, Defendants have created a hostile work environment or workplace 'motivated by general hostility to the presence of'" recovering alcoholics. MTD Dec. at 77-78 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

(3)    The Response to Plaintiff's Stated Desire to Drink

Plaintiff alleges that, after she said, "I wish I still f\*\*king drank right now," the Defendant Producers "continue[d] filming" her. SAC ¶¶ 151-53.[18] Plaintiff makes no allegation that the Defendant Producers provided her with a drink at that point. *Id.* The mere act of continuing to film Plaintiff, in the context of a reality television show following the lives of its cast as they confront ordinary and extraordinary situations, is trivial. MTD Dec. at 77-78.

(4)    The Joking About Plaintiff's Alcoholism

Plaintiff alleges that the Defendant Producers "humiliated" her by "joking" about her alcoholism "while filming" Season 12. SAC ¶ 156. This vague and trivial allegation cannot support a claim, particularly in the context of this show. *See Augustin v. The Yale Club of N.Y.C.*, 274 F. App'x 76, 77 (2d Cir. 2008) (Summary Order) ("name-calling, inappropriate behavior …, and other perceived slights…, however regrettable, do not constitute a hostile work environment"); *Ziyan Shi v. New York Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338 (S.D.N.Y. 2019) ("yell[ing] and scream[ing] at Plaintiff … causing Plaintiff to feel humiliated and afraid .… does not rise to the level of an adverse employment action").[19]

---

[18] The allegation that the Defendant Producers "continue[d] filming" Plaintiff is plainly directed at First Amendment-protected conduct, and therefore non-actionable. *See supra* § III.C.3.

[19] For the reasons discussed *supra* note 17, Defendants respectfully submit that claims based on these allegations are also foreclosed by the First Amendment.

24

(5)    The Inquiry About Whether Plaintiff Was Drinking

Plaintiff alleges that Defendants Ward and Paparazzo called her to ask whether she was drinking. SAC ¶ 233. But the mere question of whether Plaintiff was drinking is not discriminatory, particularly in the context of the creation of a show allegedly based on drinking.

### c)    Plaintiff Does Not Plausibly Allege Involvement by the Defendant Producers in the Decision Not to Cast Her

Finally, Plaintiff's conclusory assertion, untethered to time, place, or context, that the Defendant Producers "recommended that the Defendant Companies and Defendant Cohen terminate Plaintiff and not recast [her] on RHONY Season 14 and/or RHONY Legacy," as part of her recitation of claims (*see, e.g.*, SAC ¶ 691) must be rejected. Nowhere does Plaintiff offer any factual allegation to support her speculation that Defendant Producers were involved with these casting decisions, let alone that they aided and abetted retaliation. There is no reference at all to Defendants Paparazzo or Ward being involved with casting. The only allegation relating to Defendant Shannon is that she asked Plaintiff for cast recommendations and "implied" that Plaintiff would be cast on either RHONY Legacy or Season 14. SAC ¶¶ 355-56. Plaintiff makes no allegation that Shannon or any of the other Defendant Producers "actually participate[d]" in denying her a role in retaliation for protected activity, or "share[d]" the alleged retaliatory purpose of the other Defendants. MTD Dec. at 66-67. Her threadbare recitation of a claim cannot withstand scrutiny at the motion to dismiss stage.[20]

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Claims, with prejudice.

DATED:  New York, New York                    MITCHELL SILBERBERG & KNUPP LLP
        April 8, 2026

---

[20] The other purported bases for the aiding and abetting retaliation claims are each covered by one or more of the arguments discussed *supra*.

25

By: /s/ *Jacob D. Albertson*
  Jacob D. Albertson (j1a@msk.com)
  437 Madison Ave., 25th Floor
  New York, New York 10022-7001
  Telephone: (212) 509-3900
  Facsimile: (212) 509-7239

  Adam Levin (axl@msk.com)
  (admitted *pro hac vice*)
  2049 Century Park East, 18th Floor
  Los Angeles, CA 90067
  Telephone: (310) 312-3116
  Facsimile: (310) 312-3100

  *Attorneys for Defendants Andy Cohen,*
  *Lisa Shannon, John Paparazzo, Darren*
  *Ward, Warner Bros. Discovery, Inc., Shed*
  *Media US Inc., NBCUniversal Media,*
  *LLC, and Bravo Media LLC*

26