UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X-------------------------------------------------------X

LEAH MCSWEENEY,                                          Case No.: 1:24-cv-01503-LJL


                        Plaintiff,


                v.



ANDY COHEN, LISA SHANNON, JOHN
PAPARAZZO, DARREN WARD, WARNER
BROS. DISCOVERY, INC, SHED MEDIA US
INC., NBCUNIVERSAL MEDIA, LLC and
BRAVO MEDIA LLC,
                        Defendants.

X-------------------------------------------------------X




**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**




                                        **ADELMAN MATZ P.C.**
                                        **1159 Second Ave, Suite 153**
                                        **New York, New York 10065**
                                        **Phone: (646) 650-2207**
                                        ***Attorneys for Plaintiff***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................2

PRELIMINARY STATEMENT................................................................................................5

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..........................................................6

    I.    BRIEF STATEMENT OF FACTS ...............................................................................6

    II.    RELEVANT PROCEDURAL HISTORY.........................................................................7

    III.    NEW ALLEGATIONS IN THE SAC ..........................................................................9

STANDARD OF REVIEW ...................................................................................................10

ARGUMENT ....................................................................................................................11

    I.    THE LETTER-RETALIATION CLAIMS SHOULD NOT BE DISMISSED......................11

        A.    Pleading Upon Information and Belief is Not a Basis for Dismissal................................12

        B.    The Court Already Held that Plaintiff Adequately Alleged the First Two Elements of the Letter-Retaliation Claims ...........................................................................................14

        C.    The SAC Adequately Pleads Adverse Action...................................................15

        D.    The SAC Adequately Pleads Concrete Professional Harm and Causation........................17

    II.    THE SAC ADEQUATELY PLEADS AIDING AND ABETTING LIABILITY AGAINST THE DEFENDANT PRODUCERS..............................................................................20

        A.    The SAC Plausibly Alleges Actual Participation and Shared Discriminatory Intent ........21

        B.    The Aiding and Abetting Claims Are Not Barred as Extraterritorial...............................26

        C.    Defendants Group Pleading Argument Fails ....................................................28

        D.    The Court Has Already Rejected Defendants' First Amendment Argument.....................29

    III.    SHOULD THIS COURT FIND THAT PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND .......................31

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abadi v. NYU Langone Health Sys.*,
714 F. Supp. 3d 387 (S.D.N.Y. 2024) ..................................................................................28

*Anderson News, L.L.C. v Am. Media, Inc.*,
680 F3d 162 (2d Cir 2012) ...................................................................................................25

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .............................................................................................12, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................11, 12

*Beckett v. Prudential Ins. Co. of Am.*,
893 F. Supp. 234 (S.D.N.Y. 1995) .......................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................6, 11, 17, 25

*Benzinger v. Lukoil Pan Americas, LLC*,
447 F. Supp. 3d 99 (S.D.N.Y. 2020) ....................................................................................14

*Cotiviti, Inc. v. Deagle*,
501 F. Supp. 3d 243 (S.D.N.Y. 2020) ..............................................................................31, 32

*Dapson v City of Rochester, New York*,
2019 WL 591692 (W.D.N.Y. 2019) .......................................................................................15

*Elisa W. v. City of New York*,
2026 WL 890582 (S.D.N.Y. 2026) .....................................................................................26, 28

*Emanuel v City of New York*,
2024 WL 3638328 (S.D.N.Y. 2024) ...........................................................................21, 22, 23, 24

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004) ..................................................................................................21

*Goldberg v Bespoke Real Estate LLC*,
2024 WL 1256006 (S.D.N.Y. 2024) ......................................................................................20

*Hayden v. Cnty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999) ............................................................................................... 31

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010) ................................................................................... 15, 17, 24

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018) ............................................................................... 16

*Johnson v. J. Walter Thompson U.S.A., LLC*,
  224 F. Supp. 3d 296 (S.D.N.Y. 2016) ............................................................................... 15

*Lefkowitz v Bank of New York*,
  676 F. Supp. 2d 229 (S.D.N.Y. 2009) ............................................................................... 11

*Lewis v. Roosevelt Island Operating Corp.*,
  246 F. Supp. 3d 979 (S.D.N.Y. 2017) .......................................................................... 23, 29

*Lively v Wayfarer Studios LLC*,
  2026 WL 905447 (S.D.N.Y. 2026) ............................................................................... 17, 19

*McHenry v. Fox News Network, LLC*,
  510 F. Supp. 3d 51 (S.D.N.Y. 2020) ............................................................................ 14, 15

*McSweeney v Cohen*,
  776 F Supp 3d 200 (S.D.N.Y. 2025) ................................................................................. 12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) ...................................................................................... passim

*Moore v. Hadestown Broadway Ltd. Liab. Co.*,
  722 F. Supp. 3d 229 (S.D.N.Y. 2024) ............................................................................... 15

*Murray v. Brag Sales Inc.*,
  2024 WL 4635479 (S.D.N.Y. 2024) .................................................................................. 28

*Murray v. United Parcel Serv., Inc.*,
  2022 WL 4468295 (E.D.N.Y. 2022) ............................................................................ 12, 13

*Noll v Intl. Bus. Machines Corp.*,
  787 F3d 89 (2d Cir 2015) .................................................................................................. 25

*Pearce v Manhattan Ensemble Theater, Inc.*,
  528 F Supp 2d 175 (S.D.N.Y. 2007) ................................................................................. 26

*Raniola v. Bratton*,
    243 F.3d 610 (2d Cir. 2001) ................................................................................................31

*Rasmy v. Marriott Int'l, Inc.*,
    952 F.3d 379 (2d Cir. 2020) ..........................................................................................18, 19

*Raspardo v. Carlone*,
    770 F.3d 97 (2d Cir. 2014) .................................................................................................29

*Robbins v. Candy Digital Inc.*,
    2024 WL 5056429 (S.D.N.Y. 2024) ..................................................................................10

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ...............................................................................................11

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ..............................................................................................................31

*Szewczyk v. City of New York*,
    2016 WL 3920216 (E.D.N.Y. 2016) ...................................................................................11

*Trump v Vance*,
    480 F Supp 3d 460 (S.D.N.Y. 2020) ..................................................................................20

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) ...........................................................................................17, 19

*Walsh v. New York City Hous. Auth.*,
    828 F.3d 70 (2d Cir. 2016) .................................................................................................11

*Walston & Co., Inc. v New York City Commn. on Human Rights*,
    41 AD2d 238 (1st Dept 1973) .............................................................................................28

*Woo Hee Cho v. Oquendo*,
    2018 WL 9945701 (E.D.N.Y. 2018) ...................................................................................31

## Statutes

Labor Law § 215 ...........................................................................................................12, 14

## Rules

Fed. R. Civ. P. 12 .......................................................................................................26, 29

Fed. R. Civ. P. 15(a) ...................................................................................................31, 32

4

Plaintiff[1] submits this memorandum of law in opposition to Defendants' partial motion to dismiss Plaintiff's SAC [Dkt Nos. 133-134] ("Motion")[2], specifically the Second, Fourth, Seventh, Ninth, Twelfth, Fourteenth, Eighteenth, Twentieth, and Twenty-Second through Twenty-Fifth Causes of Action of the SAC.[3]

## PRELIMINARY STATEMENT

Defendants' Motion is meritless and should be denied in its entirety. The Motion is a transparent attempt to relitigate issues already addressed by this Court, impose heightened pleading requirements inconsistent with Rule 8, *Twombly*, or any applicable law, and invite the Court to improperly resolve factual disputes at the pleading stage. The SAC directly addressed the deficiencies identified in the Court's March 31, 2025 Order [Dkt. No. 93] (the "MTD-Order") by adding substantial factual allegations concerning: (i) the Defendant Producers' coordinated participation in discriminatory and retaliatory conduct; and (ii) Defendant Cohen's retaliatory media campaign following Plaintiff's protected activity, including concrete allegations regarding professional harm, diminished employment opportunities, and chilling effects on other reasonable employees within the entertainment industry.

Rather than accept the SAC's detailed allegations as true, as Rule 12(b)(6) requires, Defendants repeatedly, and improperly, ask the Court to act as a factfinder and draw competing

---

[1] Plaintiff incorporates by reference all defined terms included in her Second Amended Complaint filed July 10, 2025 [Dkt. No. 116]("SAC") by reference as if fully stated and defined herein. Plaintiff's SAC asserts claims against Defendants individually and collectively under the Americans with Disabilities (the "ADA"), Title VII of the Civil Rights Act of 1965 ("Title VII"), the New York State Labor Laws ("NYLL"), New York State Human Rights Laws (Ex. L. §292 et seq.) ("NYSHRL"), and/or the New York City Human Rights Laws (N.Y.C. Admin. Code § 8-130(a) et seq.) ("NYSCHRL").   Plaintiff's claims at issue on this Motion may be categorized as follows: counts 23-25 (the "Letter-Retaliation Claims"); counts 2, 4, 7, 9, 12, 14, 18, 20 and 22 (the "Aiding and Abetting Claims").

[2] To the extent Defendants incorporate "the entirety of their Memorandum of Law" in support of their First Motion to Dismiss (Motion, p. 3 fn. 3), Plaintiff likewise respectfully relies upon and incorporates the arguments set forth in her opposition to same (Dkt. No. 82), except to the extent modified or supplemented herein in response to the SAC and Defendants' present Motion.

[3] Pursuant to the Individual Practices in Civil Cases of the Hon. Lewis J. Liman §2.M, Plaintiff requests oral argument on this Motion.

factual inferences in Defendants' favor, disregard well-pleaded allegations and resolve factual disputes that cannot be decided on a motion to dismiss. The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.8 (2007). At this stage, the Court must draw all reasonable inferences in Plaintiff's favor—not Defendants'.

For these reasons and the reasons stated herein, the SAC plausibly alleges the Letter-Retaliation Claims and the Aiding and Abetting Claims, and the Motion should be denied in its entirety.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**I.      BRIEF STATEMENT OF FACTS[4]**

Plaintiff is a former cast member ("Housewife") of RHONY and RHUGT, where she was employed by the Defendant Employers.  SAC ¶¶22, 36-50.  The Defendant Companies own the network(s) that produce and televise both RHONY and RHUGT.  *Id.* ¶¶37-38, 40-41. Defendant Cohen is an Executive Producer of both RHONY and RHUGT.  *Id.* ¶44-45.  In his role as Executive Producer, Defendant Cohen *inter alia* exercises control over hiring and firing decisions, directly supervises cast members, and controls production of both RHONY and RHUGT.  *Id.*.  The Defendant Producers are employed by Defendant Shed as producers of RHONY and RHUGT.  *Id.* ¶39.  The Defendant Producers supervised and controlled all aspects of Plaintiff's day-to-day employment responsibilities, provided Plaintiff with employment performance reviews, and exercised decision making power over Housewives' continued employment with the Defendant Employers.  *Id.* ¶¶46-49.

---

[4] In the interest of judicial economy, Plaintiff respectfully assumes the Court's familiarity with the factual background and prior procedural history set forth in the Court's MTD-Order and therefore summarizes only those additional allegations added in the SAC that are relevant to the instant Motion.

As alleged throughout the SAC, Plaintiff claims that Defendants: discriminated against her on the basis of her disabilities, which include anxiety, depression, and bipolar disorder, and alcohol use disorder ("Disabilities"); created a hostile work environment on the basis of Plaintiff's disabilities; failed to reasonably accommodate Plaintiff's disabilities; failed to engage in the interactive process with Plaintiff to determine a mutually agreeable reasonable accommodation; and retaliated against Plaintiff for engaging in protected activity. SAC ¶61–188, 243–332, 715–721. Plaintiff further alleges that, after she commenced this Action, Defendant Cohen engaged in a retaliatory public campaign intended to damage Plaintiff's professional reputation and diminish her employment opportunities within the entertainment industry. *Id.* ¶¶367–368, 418–429, 896–902, 931–939.

## II.      RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this Action on February 27, 2024. Dkt. No. 1 (the "Complaint"). Following Defendants' initial Motion to Dismiss (Dkt. No. 33), Plaintiff filed the First Amended Complaint (Dkt. No. 54)(the "FAC"). Defendants thereafter moved to dismiss the FAC. Dkt. Nos. 57–60 (the "First-MTD").

On March 31, 2025, the Court granted, in part, and denied, in part, the First-MTD.  MTD-Order, pp. 98-100.  Relevant here, the Court expressly held that Plaintiff had plausibly alleged disability discrimination and hostile work environment claims under the NYSHRL and NYCHRL. *Id.*, p. 46. Specifically, the Court found that Plaintiff adequately alleged workplace harassment sufficiently "severe or pervasive to alter the conditions of her employment and create an abusive work environment on the basis of her disability." *Id.* The Court further held that several categories of alleged conduct fell outside First Amendment protection, specifically:

> "For example, she alleges that during a meeting to discuss the upcoming Season 13, she was hectored by Defendants' employees about her drinking issues and pressured to say that she did not have a drinking problem, FAC ¶¶ 125–126. She also alleges that Defendants disparaged other cast members about their drinking in

conversation with Plaintiff in order to convey a hostile message, *id.* ¶¶ 127–130, joked about Plaintiff's drinking issues in her presence despite her requests that they stop, *id.* ¶ 136, taunted her about her alcohol use disorder and tried to undermine her sobriety through harassing comments, *id.* ¶¶ 222, 224, 236, directed other cast members to bring up Plaintiff's mental health and substance abuse issues and to call Plaintiff a drug addict, *Id.* ¶¶ 238–239, and coached fellow cast members to further disparage Plaintiff, *id.* ¶¶ 251–253. Plaintiff also alleges that Defendant Producers directly coerced and harassed Plaintiff based on her disabilities, including by making light of her panic attacks and joking about her alcohol use disorder. *Id.* ¶¶ 136, 153–159. These allegations cannot simply be passed off as an exercise of Defendants' First Amendment right to produce a reality television show in which drinking is involved."

MTD-Order, pp. 46-47.

The Court nevertheless dismissed, without prejudice, Plaintiff's Disability and Retaliation Claims against the Defendant Producers after concluding that the FAC did not sufficiently allege either: (i) that the Defendant Producers qualified as Plaintiff's employers; or (ii) that they aided and abetted the Defendant Companies' discriminatory and retaliatory conduct. MTD-Order, pp. 66–68, 99. The Court also dismissed Plaintiff's Letter-Retaliation Claims against Defendant Cohen without prejudice. *Id.*, pp. 56–66, 100.

In doing so, however, the Court expressly held that Plaintiff had adequately alleged that she engaged in protected activity and that Defendant Cohen was aware of such activity. MTD-Order, pp. 55–56. The Court further recognized that dissemination of the March-Letter could potentially constitute actionable retaliatory conduct analogous to blacklisting or a negative employment reference. *Id.* at 60–65. The Court concluded only that the FAC had not yet sufficiently alleged facts plausibly showing that the March-Letter itself "had any impact on Plaintiff's career in the industry or that it had any prospect of doing so" or would deter a reasonable employee from engaging in protected activity. *Id.*

As such, Plaintiff filed the SAC to directly address the specific pleading deficiencies identified by the Court.

8

## III.    NEW ALLEGATIONS IN THE SAC

The SAC substantially expands the factual allegations concerning the Defendant Producers' coordinated participation in discriminatory and retaliatory conduct and Defendant Cohen's retaliatory media campaign following Plaintiff's protected activity.

Specifically, the SAC adds detailed allegations regarding the Defendant Producers' authority over Plaintiff's day-to-day employment and their direct participation in the alleged discriminatory conduct. Plaintiff now specifically alleges that Defendants Ward and Paparazzo were aware Plaintiff had recently regained sobriety before filming RHONY Season 12 and that Plaintiff expressly communicated concerns regarding her alcohol use disorder and desire to remain sober while filming. SAC ¶¶64–68. Plaintiff further alleges that the Defendant Producers controlled significant aspects of her employment, including directing filming schedules, supervising scenes, issuing performance reviews, threatening demotion or termination, and providing Defendant Cohen with daily performance evaluations concerning Plaintiff's work performance. *Id.* ¶¶68–70.

The SAC additionally alleges that Defendant Producers individually and collectively pressured Plaintiff to consume alcohol despite knowing she suffered from alcohol use disorder, including allegations that Defendants Ward and Paparazzo directed Plaintiff to consume alcohol during the "Hurricane Leah" trip notwithstanding Plaintiff's known disabilities and requests for accommodation. SAC ¶¶84–95. Plaintiff also added allegations that Defendant Producers intentionally cultivated confidential information concerning Plaintiff's alcoholism and mental health disabilities and engineered filming scenarios intended to exacerbate those conditions for dramatic effect. *Id.* ¶¶72–78.

The SAC also substantially expands the allegations supporting the Letter-Retaliation Claims against Defendant Cohen. Plaintiff now alleges that, after Plaintiff filed the Complaint, Defendant

9

Cohen engaged in a coordinated retaliatory campaign intended to publicly discredit Plaintiff's claims, damage her professional reputation, and deter both Plaintiff and similarly situated employees from engaging in protected activity. SAC ¶¶361–417. Among other things, Plaintiff alleges that Defendant Cohen caused the March-Letter to be disseminated to entertainment media outlets, including TMZ, Page Six, and Variety, as part of a coordinated public campaign intended to publicly discredit Plaintiff following her protected activity. *Id.* ¶¶395–413. Significantly, Plaintiff alleges that the March-Letter itself expressly referenced those prior public statements, stating that "you know that no such details exist, as a slew of current and former cast members has independently confirmed (*which you well know through press reports*) (emphasis added)". *Id.* ¶384. Plaintiff further alleges that Defendant Cohen subsequently induced the same current and former Bravo-affiliated personalities who had spoken out against Plaintiff previously to publicly disparage Plaintiff and publicly validate the accusations contained in the March-Letter. *Id.* ¶¶361–384.

Critically, the SAC now alleges concrete professional and economic harm resulting from Defendants' retaliatory campaign. Plaintiff alleges that, following the March-Letter and coordinated public attacks, her Brand Deal opportunities substantially declined, she lost at least one (1) prospective collaboration opportunity, and her ability to secure comparable entertainment-industry opportunities decreased by approximately fifty percent (50%). SAC ¶¶418–429. Plaintiff further alleges that Defendant Cohen's retaliatory conduct blacklisted former Bravo employees who complained about workplace misconduct and would deter similarly situated employees from engaging in protected activity in the future. *Id.* ¶¶375, 408–417.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *Robbins v. Candy Digital Inc.*, 2024 WL 5056429, at *3 (S.D.N.Y. 2024). Plaintiff must

allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A 12(b)(6) motion "is not an occasion for the court to make findings of fact." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation omitted).

A plaintiff must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the [Complaint] are true (even if doubtful in fact)." *Bell Atlantic Corp.*, 550 U.S. at 555–56; *see also Szewczyk v. City of New York*, 2016 WL 3920216, at *2 (E.D.N.Y. 2016) ("A claim is plausible when the plaintiff pleads factual content that allowed the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). This does not, however, require heightened pleading standards; rather, the Second Circuit applies a flexible plausibility standard, "which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible, rather than to mandate a 'universal standard of heightened fact pleading.'" *Lefkowitz v Bank of New York*, 676 F. Supp. 2d 229, 248 (S.D.N.Y. 2009). The Second Circuit has emphasized the significance of viewing employment discrimination cases under a totality of the circumstance analysis. *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016).

## ARGUMENT

## I.    THE LETTER-RETALIATION CLAIMS SHOULD NOT BE DISMISSED

Defendants' Motion improperly asks the Court to act as a factfinder at the motion to dismiss stage and resolve factual disputes in Defendants' favor, merely because Defendants dispute those allegations and contend Plaintiff lacks "personal knowledge". Motion, pp. 6-8. However, that is not the Rule 12(b)(6) standard. The SAC contains substantial additional factual allegations specifically addressing the deficiencies identified in the Court's prior MTD Order, including allegations

11

concerning Cohen's immediate dissemination of the March-Letter to entertainment media outlets (SAC ¶¶361–384), coordinated public attacks through Bravo-affiliated personalities (*id.* ¶¶395–413), entertainment-industry blacklisting (*id.* ¶¶375, 408–417), diminished brand opportunities and other concrete reputational and economic harm (*id.* ¶¶418–429). At this stage, those allegations must be accepted as true and all reasonable inferences drawn in Plaintiff's favor. *See McSweeney v Cohen*, 776 F Supp 3d 200, 231 (S.D.N.Y. 2025). Viewed under that standard, the SAC more than plausibly alleges retaliatory conduct reasonably likely to deter protected activity under the NYSHRL, NYCHRL, and Labor Law § 215.

### A.  Pleading Upon Information and Belief is Not a Basis for Dismissal

As an initial matter, Defendants repeatedly argue that Plaintiff's allegations concerning Defendant Cohen's retaliatory conduct are "speculative", "conclusory", "without personal knowledge", and improperly alleged "upon information and belief" and are therefore inadequate to state a claim, which is incorrect and fundamentally misstates the applicable pleading standard. Indeed, prefacing allegations as "upon information and belief" does not eviscerate the sufficiency of a complaint. *See Murray v. United Parcel Serv., Inc.*, 2022 WL 4468295, at *9 (E.D.N.Y. 2022).

"When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that [he] believes to be true." *Murray*, 2022 WL 4468295 at *9. The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible, both of which are the case here. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted); *see also Ashcroft*, 556 U.S. 662. The challenged

12

allegations made upon information and belief in the SAC are squarely within the possession and control of the Defendants, and having not had the opportunity to complete discovery and depositions, Plaintiff includes such allegations that are based upon both her own knowledge and second-hand information that she believes to be true, which is permissible at this stage. *See Murray*, 2022 WL 4468295 at *9–10.

Regardless, virtually all allegations pleaded upon information and belief are corroborated by independently pleaded factual allegations, contrary to Defendants' argument otherwise (Motion, p. 6–8). For example, the allegation that "upon information and belief" certain cast members would not have made comments about Plaintiff's claims in the media "but for Defendant Cohen's direction and/or inducement" (SAC ¶369) is supported by the factual allegation that Defendant Shannon warned Plaintiff during RHUGT season 3 that Defendant Bravo cast members would be directed and/or induced to publicly disparage Plaintiff "with intent to "diminish" (or obliterate) [Plaintiff's] value within the entertainment industry" (SAC ¶¶367, 254–255). It is further corroborated by the March-Letter itself, which stated that "a slew of current and former cast members" had confirmed Cohen's denials "through press reports" (SAC ¶384).

Likewise, Plaintiff's allegations "upon information and belief" that Bravo-affiliated personalities who publicly supported Cohen were rewarded (SAC ¶¶376–377) are supported by the factual allegations that at least of three (3) of the current and former Housewives that assisted Defendant Cohen were cast on a Defendant NBC television show, and at least two (2) former Defendant Bravo cast members received a starring role on new Defendant Bravo television shows. SAC ¶377. Plaintiff's allegations concerning Defendant Cohen's drug use are likewise not speculative where the SAC identifies factual bases supporting Plaintiff's good-faith belief, including statements made by individuals with personal knowledge and public statements by former Bravo-

13

affiliated personalities. SAC ¶¶389–392.

At this stage, Plaintiff need not prove these allegations or possess documentary evidence prior to discovery. Allegations pleaded upon information and belief are appropriate where, as here, the relevant facts are peculiarly within Defendants' knowledge and control. See *Arista Records, LLC*, 604 F.3d at 120. Nor are Plaintiff's retaliation claims subject to any heightened pleading standard. This is not a claim requiring particularity under Rule 9(b)—Plaintiff need only plausibly allege facts from which retaliation may reasonably be inferred, which the SAC plainly does. *Id.*

### B. The Court Already Held that Plaintiff Adequately Alleged the First Two Elements of the Letter-Retaliation Claims

To adequately plead retaliation under the NYSHRL, Plaintiff must allege: "(1) that she participated in an activity protected by [the NYSHRL], (2) that her participation was known to [the defendant], (3) that [the defendant] thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020). Under the NYCHRL, the standard is even broader, requiring only allegations that Defendants engaged in conduct "reasonably likely to deter a person from engaging in protected activity." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013); *McHenry*, 510 F. Supp. 3d at 67. Likewise, retaliation claims under Labor Law § 215 require only allegations that Plaintiff engaged in protected activity, suffered a disadvantageous employment action, and that a causal connection exists between the two. *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 130 (S.D.N.Y. 2020).

The Court's prior MTD-Order already held that Plaintiff plausibly alleged the first two elements of her retaliation claims, i.e. that Plaintiff engaged in protected activity and that Defendants were aware of such activity. MTD-Order at 55–56. Thus, the only remaining question is whether the SAC sufficiently alleges materially adverse retaliatory conduct and resulting harm. It does.

## C. The SAC Adequately Pleads Adverse Action

When evaluating the sufficiency of a retaliation claim that involves a series of alleged retaliatory acts, the Court must consider the cumulative effect of those acts. *Dapson v City of Rochester, New York*, 2019 WL 591692, at *15 (W.D.N.Y. 2019), *citing Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) ("[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable.").

Under the NYCHRL, Plaintiff need not allege that she suffered an "adverse employment action"; rather, Plaintiff need only allege that "something happened that was reasonably likely to deter a person from engaging in protected activity." *McHenry*, 510 F. Supp. 3d at 67; *see also Moore v. Hadestown Broadway Ltd. Liab. Co.,* 722 F. Supp. 3d 229, 254 (S.D.N.Y. 2024) (retaliation claims under the NYCHRL are subject to a "more lenient pleading standard.")  Importantly, as the SAC alleges one of the Letter-Retaliation Claims against Defendant Cohen under the NYCHRL, this Court must "broadly consider"[5] Plaintiff's claims and apply the NYCHRL's lower pleading standard. *Mihalik*, 715 F.3d at 112; *Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 312 (S.D.N.Y. 2016).

New York law "designates blacklisting as an unlawful discriminatory practice." *Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234, 241 (S.D.N.Y. 1995) ("The language of the statute should not be so narrowly construed as to prohibit a plaintiff from maintaining a claim of retaliation based upon alleged blacklisting in the employment discrimination context.").  In fact, the Second Circuit has held that an employer's act of "publicly humiliating" an employee may suffice to state a

---

[5] The sufficiency of the Letter-Retaliation Claim under the NYCHRL must also be analyzed "separately and independently" from the Letter-Retaliation Claim alleged under the NYSHRL. *Mihalik*, 715 F.3d at 116.

15

claim for retaliation as it would "deter a reasonable person from opposing" the discriminatory behavior. *Mihalik*, 715 F.3d at 116.

The SAC plausibly alleges precisely that. Plaintiff alleges that Cohen went far beyond merely defending himself by immediately publicizing the March-Letter to entertainment media outlets, including TMZ, coordinating public attacks through Bravo-affiliated personalities, and leveraging his industry influence to publicly humiliate Plaintiff and damage her professional reputation. SAC ¶¶367–368, 896–902, 934, 937–939. Plaintiff further alleges that the March-Letter appeared in entertainment media virtually simultaneously with its transmission to Plaintiff's counsel and referenced prior statements made by other Housewives in the press, plausibly supporting the inference that the Letter was intended not merely for litigation purposes, but for public dissemination and reputational harm. SAC ¶¶384, 931–934.

Plaintiff further alleges that Cohen used his "immense power" within the entertainment industry to publicly undermine Plaintiff's credibility and diminish her professional standing after she filed the Complaint. SAC ¶¶897–899, 934, 937–939. Plaintiff additionally alleges that Bravo-affiliated personalities who publicly supported Cohen remained professionally favored within the Bravo ecosystem while Plaintiff's own opportunities substantially diminished after she became the subject of Cohen's retaliatory campaign, and specifically the March-Letter. *Id.* Indeed, Plaintiff specifically alleges that, although the Complaint had already been filed, her prospective Brand Deal with Patti Stanger did not fall through until after publication of the March-Letter, plausibly supporting the inference that the March-Letter and related retaliatory publicity independently contributed to Plaintiff's professional harm. *Id.* ¶¶421–429. These allegations plausibly support the inference that Defendants' conduct functioned as a form of entertainment-industry blacklisting designed both to punish Plaintiff and deter others from engaging in protected activity. See *Hughes v. Twenty-First*

16

*Century Fox, Inc.*, 304 F. Supp. 3d 429, 448 (S.D.N.Y. 2018) (allegations that defendants attempted to damage plaintiff's professional reputation and future employment opportunities plausibly alleged retaliatory adverse action). Whether those allegations are ultimately true is not at issue on this Motion. *See Twombly*, 550 U.S. at 563 n.8.

As Defendants acknowledge, the Court in *Lively* recognized that retaliatory conduct becomes actionable where it crosses the line into attacks designed to damage a plaintiff's professional standing or deter protected activity. *Lively v Wayfarer Studios LLC*, 2026 WL 905447, at *61–62 (S.D.N.Y. 2026) ("There comes a point where the accused stops simply defending him or herself and starts taking action that a reasonable jury could view as retaliation[.]" [citations omitted]). Similarly, here, the SAC alleges not merely defensive litigation conduct, but coordinated efforts to publicly isolate Plaintiff, induce industry figures and Bravo-affiliated personalities to disparage her credibility, and diminish her future opportunities within the entertainment industry after she engaged in protected activity. SAC ¶¶367–368, 896–902, 931–939. At minimum, these allegations plausibly allege retaliatory conduct sufficient to survive Rule 12(b)(6).

Defendants also improperly attempt to isolate the March-Letter from the broader retaliatory course of conduct alleged throughout the SAC. Plaintiff alleges a continuing pattern of retaliation beginning after Plaintiff first complained internally regarding discriminatory conduct and escalating through coordinated public attacks and industry blacklisting after Plaintiff commenced litigation. In evaluating retaliation claims, courts consider the alleged retaliatory acts both separately and in the aggregate. See *Hicks*, 593 F.3d at 165.

### D. The SAC Adequately Pleads Concrete Professional Harm and Causation

To plead causation at the motion to dismiss stage, Plaintiff need only plausibly allege facts giving rise to an inference that retaliatory motive played a role in Defendants' conduct. *Vega v.*

17

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). Questions concerning competing explanations for Defendants' conduct, motive, and causation are generally inappropriate for resolution on a Rule 12(b)(6) motion because they present factual disputes reserved for discovery and the jury. *See Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 392 (2d Cir. 2020).

The SAC directly addresses the Court's prior concern that the FAC did not sufficiently allege facts plausibly showing that the March-Letter and related media activity constituted retaliatory conduct intended to deter protected activity. MTD-Order, pp. 62-63. Specifically, the Court found that Plaintiff's theory depended upon plausibly alleging that "the March-Letter was sent to the press not to defend Cohen's reputation but to deter her and others from making claims of discrimination against Cohen," but concluded that Plaintiff had "not alleged facts in her complaint sufficient to make that claim plausible." *Id.* The SAC now directly cures that deficiency by alleging detailed facts concerning coordinated dissemination of the March-Letter to entertainment media outlets, coordinated public attacks by Bravo-affiliated personalities, and concrete resulting professional harm. SAC ¶¶367–368, 384, 418–429, 896–902, 931–939

Specifically, Plaintiff alleges that following publication of the March-Letter and the coordinated public attacks coordinated by Cohen, her ability to secure Brand Deals decreased by more than fifty percent (50%). SAC ¶¶418–421. Plaintiff further alleges that she lost a prospective brand collaboration opportunity with Patti Stanger and has been unable to secure comparable opportunities within the entertainment industry. SAC ¶¶421–429. Plaintiff additionally alleges that brands and industry figures no longer wished to publicly align themselves with Plaintiff after Cohen publicly portrayed her as dishonest. *Id.* These allegations are not speculative or conclusory—Plaintiff alleges concrete economic and professional consequences directly tied to Defendants' retaliatory conduct that, at this stage, the Court must accept as true. Whether Cohen's retaliatory campaign in fact caused

18

Plaintiff's diminished professional opportunities presents a quintessential factual dispute inappropriate for resolution on a motion to dismiss. *C.f. Lively*, 2026 WL 905447 at *61–62.

Defendants also repeatedly ask the Court to draw competing factual inferences regarding what caused Plaintiff's professional harm and whether brands or industry figures reacted to the Complaint itself as opposed to Cohen's retaliatory media campaign (Motion, pp.6-7). However, where multiple plausible inferences exist, the Court may not choose Defendants' preferred explanation over Plaintiff's well-pleaded allegations at the motion to dismiss stage. *See Rasmy*, 952 F.3d at 392 ("[T]he question of what motivated an employer's desire" to engage in the alleged retaliatory conduct is "a quintessential jury function."). Here, Plaintiff plausibly alleges that her livelihood depends substantially upon her public image, reputation, marketability, and continued viability within the reality television industry. SAC ¶¶418–420. Specifically, Plaintiff further alleges that a substantial portion of her income derives from Brand Deals and other opportunities tied directly to her public persona and industry relationships. *Id.* Against that backdrop, the SAC plausibly alleges that the public and immediate dissemination of the March-Letter, together with coordinated public statements by Bravo-affiliated personalities, could materially damage Plaintiff's professional standing and future employment opportunities within the entertainment industry. These allegations plausibly support an inference of materially adverse professional harm sufficient to survive Rule 12(b)(6). *See Vega*, 801 F.3d at 90 (2d Cir. 2015).

Nor does the SAC merely allege that certain individuals independently "supported" Defendant Cohen following Plaintiff's protected activity, as the Court previously recognized could occur naturally in the wake of public litigation. MTD-Order, pp. 62-63. The SAC now alleges substantially more—namely, that Defendant Cohen and Bravo-affiliated personnel coordinated and amplified a retaliatory media campaign designed to publicly discredit Plaintiff, isolate Plaintiff within the

entertainment industry, and deter both Plaintiff and similarly situated employees from engaging in protected activity. Plaintiff specifically alleges coordinated dissemination of the March-Letter to entertainment media outlets, coordinated public attacks by Bravo-affiliated personalities after the filing of the Complaint, and that the March-Letter itself expressly referenced these purportedly "independent" public statements as part of the retaliatory campaign. SAC ¶¶ 367–368, 384, 896–902, 931–939. These allegations plausibly describe coordinated retaliatory conduct far beyond ordinary public disagreement or independent expressions of support. *See Goldberg v Bespoke Real Estate LLC*, 2024 WL 1256006, at *10 (S.D.N.Y. 2024) ("[E]vidence of an ongoing pattern of retaliatory conduct and intent can also establish a causal connection . . . Here, Plaintiffs allege multiple actions suggesting such retaliatory conduct and intent").

Even assuming, *arguendo*, that Defendants' alternative explanation is also plausible, the existence of competing inferences does not warrant dismissal where Plaintiff's allegations plausibly support retaliatory motive. *Trump v Vance*, 480 F Supp 3d 460, 477-78 (S.D.N.Y. 2020), *affd*, 977 F3d 198 (2d Cir 2020) ("[T]he existence of other, competing inferences does not prevent the plaintiff's desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an 'obvious alternative explanation.'" [citation omitted]). Defendants' position would effectively insulate retaliatory public-smear campaigns from scrutiny whenever protected activity first becomes public through litigation—at minimum, the SAC plausibly alleges that Cohen's subsequent public conduct independently contributed to Plaintiff's professional harm. Defendants' causation arguments therefore provide no basis for dismissal.

## II.    THE SAC ADEQUATELY PLEADS AIDING AND ABETTING LIABILITY AGAINST THE DEFENDANT PRODUCERS

Defendants' arguments concerning the Aiding and Abetting Claims similarly fail because they improperly ignore the SAC's substantially expanded factual allegations regarding the Defendant

20

Producers' coordinated participation in discriminatory and retaliatory conduct. The SAC now alleges extensive facts concerning the Defendant Producers' direct involvement in accommodation denials, pressure to consume alcohol despite knowledge of Plaintiff's disabilities, manipulation of filming conditions, retaliatory conduct following Plaintiff's complaints, and coordinated actions with Cohen and the Defendant Companies. At minimum, these allegations plausibly state claims under the NYSHRL and NYCHRL sufficient to survive Rule 12(b)(6).

### A.  The SAC Plausibly Alleges Actual Participation and Shared Discriminatory Intent

To state a claim for aiding and abetting against a non-employer defendant under both the NYSHRL and the NYCHRL, a plaintiff must plausibly allege that the defendant: (i) actually participated in the conduct giving rise to the claim; and (ii) shared the intent or purpose of the principal actor. *See Emanuel v City of New York*, 2024 WL 3638328, at *7 (S.D.N.Y. 2024)(citations omitted); *Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004).[6]

The SAC plausibly alleges both elements required to state aiding-and-abetting claims under the NYSHRL and NYCHRL. Plaintiff alleges extensive facts demonstrating the Defendant Producers' direct participation in the challenged conduct, including *inter alia* denying accommodations, pressuring Plaintiff to consume alcohol despite knowledge of her alcohol use disorder, orchestrating cast harassment, manipulating filming conditions to exacerbate her disabilities, and retaliating against her after she complained and requested accommodations.[7] SAC ¶¶ 89, 155, 172–188, 243, 252–259, 266–270, 296–298, 519. Plaintiff further alleges that the Defendant

---

[6] An identical standard applies to the NYSHRL and NYCHRL when analyzing the sufficiency of an aiding and abetting claim because the two statutes are "virtually identical". *Feingold*, 366 F.3d at 158.

[7] Defendants' assertion that the Defendant Producers cannot be liable for allegations in which they were not personally involved (MTD, p. 15 fn 13), misstates the applicable standard. Plaintiff is not required to allege that every Defendant personally participated in every discriminatory or retaliatory act. Rather, aiding and abetting liability exists where a defendant "actually participates" in the conduct giving rise to the claims. *Feingold*, 366 F.3d at 158.  That some allegations involve additional actors or separate incidents does not defeat aiding and abetting liability where the SAC plausibly alleges coordinated participation in the broader discriminatory and retaliatory scheme. *See Emanuel*, 2024 WL 3638328 at *7 .

Producers controlled the day-to-day conditions of her employment and regularly communicated with Cohen regarding Plaintiff's performance and role on the show. *Id.* ¶¶ 67, 70. Plaintiff therefore has sufficiently alleged the first element.

The SAC also plausibly alleges the second element of shared discriminatory and retaliatory intent among the Defendant Producers, Cohen and the Defendant Companies. Plaintiff alleges that Defendants collectively viewed her disabilities and struggles with sobriety as opportunities to generate storylines and dramatic content, intentionally placed her in situations designed to pressure her to relapse, and coordinated retaliatory conduct after she engaged in protected activity. Id. ¶¶ 75, 154-155, 252–259, 296–298. The SAC thus alleges coordinated conduct among multiple actors working in concert—not isolated conduct by independent individuals. These allegations are more than sufficient to plausibly state aiding and abetting claims under the NYSHRL and NYCHRL at the pleading stage. *See Emanuel*, 2024 WL 3638328 at *7 (allegations of coordinated conduct sufficient to plausibly allege shared discriminatory intent at pleading stage).

The SAC does not allege merely that the Defendant Companies are vicariously liable for the conduct of the Defendant Producers as Defendants argue. Motion, pp. 13-15. Rather, Plaintiff alleges that Cohen, the Defendant Companies, and the Defendant Producers jointly participated in and facilitated discriminatory and retaliatory conduct through distinct but coordinated actions; specifically, that the Defendant Producers allegedly implemented discriminatory conduct during filming and production, while Cohen and the Defendant Companies exercised authority over casting, employment opportunities, responses to Plaintiff's complaints, and post-complaint retaliation. SAC ¶¶46–49, 67, 70, 252–259, 266–270, 296–298. Accordingly, this case does not present the "circularity" concern discussed in *Hardwick* and referenced in *Emanuel*, because employer liability here does not hinge solely on the conduct of the alleged aider and abettor, i.e. the Defendant

22

Producers. Rather, the SAC alleges coordinated conduct by multiple actors who each played distinct roles in the discriminatory and retaliatory scheme, which is sufficient to state a claim against the Defendant Producers. *See Emanuel*, 2024 WL 3638328 at \*7.

Nor does Plaintiff rely solely on allegations of a deficient investigation or passive inaction. The SAC also alleges that the Defendant Producers, who were Plaintiffs direct supervisors, were repeatedly informed of Plaintiff's disabilities, accommodation requests, discriminatory treatment, and retaliation, yet consciously failed to intervene, permitted the misconduct to continue, and participated in subsequent retaliatory conduct. SAC ¶¶61, 64, 106–108, 172–188, 243, 252–259, 266–270. Courts routinely hold that such allegations sufficiently plead personal involvement and aiding and abetting liability. See *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 993 (S.D.N.Y. 2017) (finding personal involvement adequately alleged where supervisors were informed of discrimination and retaliation yet failed to take corrective action).

Defendants' reliance on *Emanuel* is misplaced. In *Emanuel*, the court dismissed aiding and abetting claims only as to the singular "principal actor" whose own conduct served as the sole predicate for the employer's liability. *See Emanuel*, 2024 WL 3638328 at \*7. Here, by contrast, Plaintiff does not allege that the Defendant Producers acted in isolation or merely aided and abetted their own conduct. Rather, the SAC alleges coordinated discriminatory and retaliatory conduct among multiple actors—including the Defendant Producers, Cohen, and the Defendant Companies—who allegedly acted in concert to pressure Plaintiff to consume alcohol despite known disabilities, deny accommodations, retaliate following protected activity, and damage Plaintiff's professional standing. SAC ¶¶172–188, 243–332, 367–368, 715–721, 896–902, 931–939. Thus, unlike in *Emanuel*, Plaintiff alleges shared intent and coordinated participation among multiple actors, not merely vicarious liability predicated upon a single actor's independent conduct. Moreover, the *Emanuel* court

23

simultaneously sustained aiding and abetting claims against other defendants alleged to have facilitated and advanced the retaliatory scheme, further underscoring why dismissal is inappropriate here. *See Emanuel*, 2024 WL 3638328 at *7.

Moreover, Defendants repeatedly attempt to isolate Plaintiff's individual allegations as to the Defendant Producers from the broader factual context alleged in the SAC and recharacterize them as "trivial", "speculative", or insufficiently discriminatory when viewed in isolation—however, that is not the proper inquiry under either the NYSHRL or the NYCHRL. Courts evaluating discrimination, hostile work environment, accommodation, and retaliation claims must consider the alleged conduct collectively and in context. *See Hicks*, 593 F.3d at 165; *Mihalik*, 715 F.3d 102, 113 (2d Cir. 2013).

Here, the SAC alleges a sustained pattern of disability-related conduct by the Defendant Producers, including but not limited to: repeated pressure to consume alcohol despite knowledge of Plaintiff's alcohol use disorder; disclosure and exploitation of Plaintiff's bipolar diagnosis; manipulation of filming conditions; pressure to continue filming during periods of emotional distress; failures to accommodate Plaintiff's disabilities; retaliatory conduct following Plaintiff's complaints; and coordinated efforts to diminish Plaintiff's professional standing within the Bravo-related industry. SAC ¶¶ 84–93, 105–113, 125–130, 151–167, 172–188, 196–198, 233, 243–287, 296–302, 367–368, 896–902. Defendants' attempt to characterize these allegations as mere "petty slights" or ordinary workplace interactions improperly ignores both the cumulative nature of the alleged conduct and the realities of the workplace at issue.

For example, Defendants argue that Plaintiff was "permitted" to leave the Hamptons trip and that any contrary interpretation is speculative and merely Plaintiff's subjective feelings. Motion, pp. 20–21. However, the SAC alleges substantially more than that—Plaintiff alleges that, after requesting to leave due to deteriorating mental health and the need to visit her dying grandmother, Defendant

Producers informed Plaintiff that leaving would result in missed episodes and lost compensation while simultaneously pressuring her to remain for filming. SAC ¶¶ 172–186. Whether Defendants' purported "permission" to leave was genuine or instead conveyed coercive pressure discouraging Plaintiff from exercising her accommodation request presents a factual question inappropriate for resolution on a motion to dismiss. *See Noll v Intl. Bus. Machines Corp.*, 787 F3d 89, 94 (2d Cir 2015) ("The reasonableness of an employer's accommodation is a "fact-specific" question[.]").

Defendants similarly attempt to dismiss as allegedly "speculative" Plaintiff's allegations that Defendant Producers disclosed and exploited Plaintiff's bipolar diagnosis for on-camera drama, and that Defendant Producers repeatedly pressured and encouraged alcohol consumption despite knowledge of Plaintiff's alcohol use disorder, celebrated intoxication for entertainment value, mocked sobriety as "boring", and fostered conditions designed to exacerbate Plaintiff's addiction-related disabilities for dramatic effect. Motion, pp.18-19. However, Defendants' characterization of these allegations as speculative merely reflects their preferred interpretation, while Plaintiff plausibly alleges a different one—namely, that Defendant Producers intentionally exploited Plaintiff's known disabilities and addiction-related vulnerabilities to generate dramatic content at Plaintiff's expense. At the pleading stage, the Court must accept these allegations as true and may not weigh competing factual interpretations or act as a factfinder. *See Twombly*, 550 U.S. at 555-556; *see also Anderson News, L.L.C. v Am. Media, Inc.*, 680 F3d 162, 190 (2d Cir 2012) ("But on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives."). Viewed collectively and in context, these allegations plausibly support discriminatory and retaliatory inferences under the NYSHRL and NYCHRL, and whether such conduct was humiliating, stigmatizing, or reasonably likely to contribute to a hostile work environment cannot be resolved as a matter of law, especially under the NYCHRL's broad standards.

25

*See Mihalik*, 715 F.3d at 110–114 (under NYCHRL, plaintiff need only plausibly allege she was treated "less well" at least in part because of protected status).

### B. The Aiding and Abetting Claims Are Not Barred as Extraterritorial

As an initial matter, Defendants' extraterritoriality argument is procedurally improper. Rule 12(g)(2) bars successive Rule 12 motions raising defenses that were previously available but omitted from an earlier motion. Fed. R. Civ. P. 12(g)(2). Here, Defendants' territoriality argument relies principally on allegations concerning filming in Thailand (SAC ¶¶ 243-332), the Hamptons (*id.* ¶¶172-186) and Rhode Island (see Motion, pp. 15-16)—allegations that appeared in substantially similar form in the FAC. Compare *id.* with FAC ¶¶ 204- 262 (Thailand), ¶¶ 149-165) (Hamptons).[8] Defendants nevertheless elected not to raise any territoriality challenge in their First-MTD, despite the fact that the SAC did not materially alter the underlying factual allegations concerning filming locations or Plaintiff's New York-centered employment relationship. To the extent Defendants now seek to assert a territoriality challenge based on materially unchanged allegations, Rule 12(g)(2) bars such successive motion practice. *See Elisa W. v. City of New York*, 2026 WL 890582, at *8 (S.D.N.Y. 2026). In any event, Defendants' territoriality argument also fails on the merits.

Defendants improperly reduce the territoriality inquiry to the locations where certain filming activities occurred. However, the relevant inquiry under the NYCHRL and NYSHRL is not merely where Plaintiff happened to be physically located at the time of the alleged discriminatory acts; rather, courts examine where the impact of the discriminatory conduct was felt and whether the employment relationship was sufficiently centered in New York. *C.f. Pearce v Manhattan Ensemble Theater, Inc.*,

---

[8] Although the SAC newly identifies Rhode Island as the location of the "Hurricane Leah" trip, the underlying allegations concerning Defendants' conduct during that trip were already alleged in the FAC. Compare FAC ¶¶ 82–86 with SAC ¶¶ 87–94. In any event, Defendants' current territoriality argument relies principally on allegations concerning Thailand and the Hamptons, both of which were expressly alleged in the FAC.

528 F Supp 2d 175, 185 (S.D.N.Y. 2007) ("[B]oth the City and the State Human Rights Laws require Plaintiff to show Defendants' discriminatory actions had an actual impact in New York.").

Here, the SAC plausibly alleges a New York-centered employment relationship and New York-based discriminatory impact.[9] Plaintiff was employed as on-air talent for RHONY, a New York-based franchise produced and controlled by New York-based entities and executives, including Cohen and the Defendant Companies. SAC ¶¶8–20, 36–46, 61. The SAC alleges that Defendants exercised control over Plaintiff's employment, casting opportunities, compensation, production decisions, and post-complaint retaliation from New York. SAC ¶¶36–46, 61–62, 70, 285–298. Plaintiff alleges that "Defendant Producers provided Defendant Cohen with daily performance reviews regarding *inter alia* her work performance while filming" (SAC ¶ 70), thereby plausibly alleging that even if filming out of the country, Defendant Producers were reporting to and coordinating with Cohen and the Defendant Companies who were based in New York. Plaintiff further alleges that the retaliatory and discriminatory impact—including damage to her employment opportunities, reputation, and continued participation in RHONY-related programming—was felt in New York, where her career and employment relationship were centered. *Id.* ¶¶ 418–429, 896–902, 931–939.

Defendants' focus on temporary filming trips to Thailand, Rhode Island, and the Hamptons (Motion, pp.16-17) ignores the broader context of Plaintiff's New York-based employment. Reality television production necessarily involves travel, and Defendants cite no authority holding that temporary out-of-state filming locations categorically defeat NYCHRL or NYSHRL protections for employees working within a fundamentally New York-centered employment relationship. Accepting Defendants' position would improperly allow New York employers to evade anti-discrimination laws

---

[9] To the extent the Court believes additional allegations concerning Plaintiff's New York-centered employment relationship or New York-based impact are necessary, Plaintiff respectfully requests leave to further amend. *See infra* § III.

simply by temporarily relocating productions outside state lines.

The cases Defendants cite are readily distinguishable. In *Murray v. Brag Sales Inc.*, the plaintiff worked and experienced discrimination principally outside New York City. 2024 WL 4635479, at *2 (S.D.N.Y. 2024). Likewise, in *King v. Aramark Services Inc.*, the Second Circuit emphasized that the plaintiff principally worked in Virginia and that the "lion's share" of the discriminatory conduct occurred there. 96 F.4th 546, 558 (2d Cir. 2024). Here, by contrast, Plaintiff's employment relationship, supervisory structure, casting decisions, and retaliatory harm were centered in New York. At minimum, the SAC plausibly alleges sufficient New York impact to present a fact-intensive jurisdictional question unsuitable for resolution on a motion to dismiss. *See Walston & Co., Inc. v New York City Commn. on Human Rights*, 41 AD2d 238, 242 (1st Dept 1973) ("[T]he issue of jurisdiction is one of fact. It is not clear from the record whether the allegedly discriminatory acts occurred in New York or elsewhere.").

### C.  Defendants Group Pleading Argument Fails

Group pleading is improper only where a complaint fails to provide defendants fair notice of the conduct alleged against them or merely recites conclusory allegations without identifying any defendant-specific conduct. See *Abadi v. NYU Langone Health Sys.*, 714 F. Supp. 3d 387, 392 (S.D.N.Y. 2024). The SAC does neither.

Far from relying solely on "undifferentiated" allegations, the SAC repeatedly identifies specific conduct attributable to each of the Defendant Producers. For example, Plaintiff alleges that Defendant Shannon made statements intending to pressure Plaintiff to drink, such as that the audience would not like Plaintiff because she was not drinking, and promised to "craft" Plaintiff's storyline around her intoxication. SAC ¶¶132, 162, 196–198, 251, 255, 278–280, 287. Plaintiff further alleges that Defendants Ward and Paparazzo encouraged Plaintiff to consume alcohol despite knowing of her

28

alcohol use disorder and failed to engage in the interactive process regarding her accommodation requests, and cites specific statements that Ward and Paparazzo each made. *Id.* ¶¶64–67, 88–90, 233, 243, 260–270, 283, 287, 302.

Moreover, allegations referring collectively to the "Defendant Producers" are entirely appropriate because the SAC alleges coordinated conduct undertaken jointly by members of the production team. Courts routinely permit collective allegations where defendants allegedly acted in concert and the complaint otherwise provides fair notice of the nature of the claims. See *Lewis*, 246 F. Supp. 3d 979 at 992–993 ("Jointly planned or perpetrated acts of harassment ... may be attributed to each of the defendants.")(quoting *Raspardo v. Carlone*, 770 F.3d 97, 115 n.21 (2d Cir. 2014)). Indeed, Defendants cannot simultaneously argue that Plaintiff failed to allege coordinated discriminatory conduct while also contending that allegations of coordinated conduct constitute impermissible group pleading.

At minimum, the SAC provides more than sufficient notice regarding each Defendant Producer's alleged role in the discriminatory and retaliatory scheme to satisfy Rule 8. Defendants' attempt to have the Court "ignore" substantial portions of the SAC improperly seeks a heightened pleading standard inconsistent with Rule 12(b)(6).

### D.  The Court Has Already Rejected Defendants' First Amendment Argument

Defendants mischaracterize the Court's prior First Amendment ruling as categorically immunizing all conduct occurring in connection with the production of *RHONY* and *RHUGT*. Motion, pp.18-19. This is not what the Court held. Rather, the Court held only that certain creative and expressive production decisions—such as producing a reality television show involving drinking and interpersonal conflict, directing cast members to drink on camera, or directing Plaintiff to say lines such as "time for a drink"—implicated First Amendment protections. MTD-Order, pp. 38, 40, 46.

29

However, the Court also expressly recognized that Plaintiff alleged "additional conduct regarding the means Defendants employed to generate their message that can be regulated while imposing only an incidental burden on expressive speech." *Id.*, p. 46. Specifically, the Court held that allegations that Defendants harassed Plaintiff regarding her drinking issues, pressured her to deny she had a drinking problem, mocked her alcoholism and panic attacks, attempted to undermine her sobriety through harassing comments, directed cast members to call Plaintiff a "drug addict," and coached cast members to further disparage Plaintiff "cannot simply be passed off as an exercise of Defendants' First Amendment right to produce a reality television show in which drinking is involved." *Id.* at 46–47.

The SAC further amplifies these non-protected allegations with additional factual detail concerning Defendant Producers' discriminatory and retaliatory conduct. Specifically, Plaintiff alleges, inter alia, that Defendants Ward and Paparazzo informed Plaintiff that Defendant Shannon was "pissed" at Plaintiff for requesting accommodations relating to her sobriety and mental health disabilities. SAC ¶287. Plaintiff further alleges that Defendant Producers directed RHUGT cast members not to interact with Plaintiff unless and until she consumed alcohol, thereby intentionally ostracizing Plaintiff because of her sobriety, while Defendant Shannon told Plaintiff that her "value" as a Housewife would "diminish" if she failed to make connections with cast members through drinking and socializing. *Id.* ¶¶252–256, 278–280. Plaintiff additionally alleges that Defendants Ward, Paparazzo, and Shannon failed to investigate or remedy concerns that cast members were attempting to undermine Plaintiff's sobriety. Id. ¶¶260, 264, 283, 302. The SAC further alleges that Defendant Producers intentionally cultivated confidential information concerning Plaintiff's alcoholism and mental health disabilities in order to engineer filming scenarios designed to exacerbate those conditions for dramatic effect. *See* SOF §III, *supra*. Such allegations concern discriminatory

30

and retaliatory workplace conduct, not merely protected editorial or creative decision making, and therefore fall well outside the narrow First Amendment protections recognized in the MTD-Order. *See also Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) ("[I]t has never been deemed an abridgment of freedom of speech ... to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language.") (citation omitted).

Defendants improperly attempt to isolate select allegations while ignoring the SAC's allegations of non-expressive discriminatory and retaliatory conduct supporting Plaintiff's claims. As the Court previously recognized, "not every factual allegation in the complaint need itself independently establish liability so long as the complaint plausibly alleges sufficient facts to support the claim for relief." MTD-Order at 19.  Thus, even to the extent certain allegations involve expressive or production-related components, those allegations nevertheless remain relevant factual context supporting Plaintiff's broader allegations regarding discriminatory intent, retaliatory motive, coordinated conduct and Defendants' treatment of Plaintiff within the workplace to survive dismissal. *See Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001) (courts assessing discrimination claims must consider the "totality of the circumstances" rather than viewing allegations in isolation).

**III.    SHOULD THIS COURT FIND THAT PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND**

According to Rule 15(a), a party may amend a pleading "by leave of court or by written consent of the adverse party […] [L]eave shall be freely given when justice so requires [.]" *See* Fed. R. Civ. P. 15(a). In the Second Circuit, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Woo Hee Cho v. Oquendo*, 2018 WL 9945701, at *12 (E.D.N.Y. 2018), quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (sua sponte granting leave to file a second

amended complaint where plaintiff could provide missing facts necessary to support its claims).

As set forth above, the Court should not dismiss any part of Plaintiff's SAC. However, in the event that the Court believes the SAC requires any further factual enhancement, Plaintiff should be afforded an opportunity to amend pursuant to Rule 15(a). Plaintiff has already substantially expanded the factual allegations in response to the Court's prior MTD-Order, including detailed allegations concerning Defendants' coordinated retaliatory conduct, media dissemination efforts, industry blacklisting, and resulting professional harm. Moreover, additional relevant facts concerning Defendants' alleged retaliatory media campaign and Plaintiff's resulting professional harm have continued to emerge even after filing of the SAC. Specifically, Plaintiff has obtained additional information concerning the alleged coordination of the public statements by Bravo-affiliated personalities alleged in the SAC (¶¶367–368, 384, 896–902, 931–939) and related public-relations efforts involving Defendant Cohen's publicist, Jennifer Geisser, who holds a high-level executive role at Defendant NBC. In addition, to the extent the Court believes further allegations concerning Plaintiff's New York-centered employment relationship or New York-based impact are necessary, Plaintiff could further supplement such allegations through amendment. Plaintiff has also continued to experience ongoing professional harm, including in New York, and also including a further decline in prospective entertainment and Brand Deal opportunities. These developments further demonstrate that amendment would not be futile should the Court identify any remaining pleading deficiencies.

In addition, meaningful discovery has not yet commenced, and many relevant facts concerning Defendants' internal communications, coordinated media activities, retaliatory decision-making, and industry influence remain uniquely within Defendants' possession and control. Under these circumstances, amendment would not be futile, and leave should be freely granted. See *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (granting leave to amend where "it is possible

that [plaintiff] could provide some of the missing facts necessary to support its claims through further

investigation").

Dated: New York, New York
      May 26, 2026

Respectfully submitted,

ADELMAN MATZ P.C.


/s/   Sarah M. Matz          
Sarah M. Matz, Esq.
*Attorneys for Plaintiff*
1159 Second Ave, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
E-mail: sarah@adelmanmatz.com

33

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that this memorandum of law complies with the applicable word-count limitation because it contains 8,750 words, excluding the parts of the document exempted by Local Civil Rule 7.1(c). I further certify that the foregoing word count was prepared using the word-processing system used to prepare this memorandum.

Dated: New York, New York
       May 26, 2026

Respectfully submitted,

ADELMAN MATZ P.C.

/s/   Sarah M . Matz
Sarah M. Matz, Esq.
*Attorneys for Plaintiff*
1159 Second Ave, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
E-mail: sarah@adelmanmatz.com

34