UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
LEAH MCSWEENEY,

                Plaintiff,

    v.

ANDY COHEN, LISA SHANNON, JOHN
PAPARAZZO, DARREN WARD, WARNER BROS.
DISCOVERY, INC., SHED MEDIA US INC.,
NBCUNIVERSAL MEDIA, LLC and BRAVO MEDIA
LLC,

                Defendants.

-------------------------------------------------------------

Case No.: 1:24-cv-01503-LJL

ORAL ARGUMENT
REQUESTED

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................ 1

I.      PLAINTIFF FAILS TO PLEAD THE LETTER RETALIATION CLAIMS. ................... 1

II.      PLAINTIFF FAILS TO PLEAD AIDING AND ABETTING CLAIMS. ......................... 4

III.      FURTHER LEAVE TO AMEND SHOULD BE DENIED. .............................................. 9

CONCLUSION ......................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AK Meeting IP, LLC v. Epic Games, Inc.*,
  2025 WL 1865953 (S.D.N.Y. July 7, 2025) ...............................................................................9

*Emanuel v. City of New York*,
  2024 WL 3638328 (S.D.N.Y. Aug. 2, 2024) ...............................................................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) ............................................................................6

*King v. Aramark Servs., Inc.*,
  96 F.4th 546 (2d Cir. 2024) ........................................................................................................7

*Kraiem v. JonesTrading Institutional Servs. LLC.*,
  492 F. Supp. 3d 184 (S.D.N.Y. 2020).........................................................................................7

*Lewis v. Roosevelt Island Operating Corp.*,
  246 F. Supp. 3d 979 (S.D.N.Y. 2017).....................................................................................5, 9

*Lively v. Wayfarer Studios LLC*,
  2026 WL 905447 (S.D.N.Y. Apr. 2, 2026)..........................................................................2, 3, 10

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013)........................................................................................................3

*Noll v. Int'l Bus. Machines Corp.*,
  787 F.3d 89 (2d Cir. 2015)..........................................................................................................7

*Patel v. Contemp. Classics of Beverly Hills*,
  259 F.3d 123 (2d Cir. 2001)........................................................................................................6

*Romero v. Garner Env't Servs., Inc.*,
  2025 WL 3638397 (S.D.N.Y. Dec. 15, 2025) ............................................................................9

*Schanfield v. Sojitz Corp. of Am.*,
  663 F. Supp. 2d 305 (S.D.N.Y. 2009).........................................................................................3

*Shaughnessy v. Scotiabank*,
  2024 WL 1350083 (S.D.N.Y. Mar. 29, 2024) ............................................................................5

*Torres v. City of New York*,
  2018 WL 1737542 (S.D.N.Y. Feb. 14, 2018).............................................................................10

*Trump v. Vance*,
  480 F. Supp. 3d 460 (S.D.N.Y.), *aff'd*, 977 F.3d 198 (2d Cir. 2020) ......................................3

**TABLE OF AUTHORITIES**
<u>continued</u>

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    12(b)(6) .................................................................................................................................8
    12(g)(2) ................................................................................................................................6
    12(h)(2) ................................................................................................................................6
    12(h)(2)(C) ...........................................................................................................................6

Plaintiff's[1] opposition (Dkt. No. 146, "Opposition") confirms that dismissal is appropriate. First, Plaintiff's retaliation claims fail for the same reason the Court dismissed them the first time: they rest on conduct that this Court already held to be non-retaliatory, and they fail to allege any adverse action, causation, or harm. Her new allegations are speculative and conclusory and cannot revive her claims. Second, Plaintiff's aiding and abetting claims fail for several independent reasons: the Defendant Producers cannot aid and abet their own conduct; they are based on laws that do not apply extraterritorially; they are based on conduct protected by the First Amendment; they lack sufficient supporting factual allegations; and they are impermissibly group-pleaded. Because Plaintiff cannot cure these defects, leave to amend should be denied.

## ARGUMENT

## I.    PLAINTIFF FAILS TO PLEAD THE LETTER RETALIATION CLAIMS.

***The Collusion Theory is Speculative and Implausible.*** Plaintiff does not and cannot argue that the SAC alleges any actual communication between Cohen and any cast member who publicly defended him. Instead, Plaintiff relies on three allegations that she claims corroborate her theory of collusion: (1) Shannon's alleged warning about Plaintiff's relationships with other cast members; (2) the March Letter's reference to other cast members' public statements; and (3) certain cast members' receipt of new roles on television shows. Opp. at 12–14. None supports an inference of collusion.

*First*, Shannon allegedly warned Plaintiff that she should "make connections with her cast members" since otherwise "her 'value' as a Housewife would 'diminish.'" SAC ¶ 254; *see* Opp. at 13. If true, that statement merely reflects the reality that the Housewives franchise tells the story of the authentic relationships between a group of female friends and that production made efforts

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Defendants' Memorandum of Law in support of their Partial Motion to Dismiss (Dkt. No. 134, "Memorandum").

to help McSweeney be successful; it bears no logical connection to a collusion campaign by Cohen to retaliate against McSweeney. *Second*, the March Letter's statement that "a slew of current and former cast members" had confirmed Cohen's denials "through press reports," Opp. at 13 (quoting SAC ¶ 384), shows only that Cohen's counsel was aware of those public statements, not that Cohen orchestrated them. *Third*, the alleged fact that a small subset of cast members later received roles on television shows assumes causation from mere temporal sequence but does not establish it. The SAC alleges no facts connecting those casting decisions to the public statements.

    ***Plaintiff Fails to Allege Any Adverse Employment Action.*** Plaintiff does not identify a single statement in the March Letter or the cast members' public comments that attacks her professional capabilities. That deficiency is dispositive. This Court has recognized that cases of adverse post-employment conduct "turn on the fact that the [communications] convey something negative about the employee's job performance or professional reputation or that could bear on the future employer's potential hiring decision." MTD Dec. at 63.

    Here, however, the March Letter merely denied drug-use allegations and raised the prospect of defamation claims, thus engaging in quintessential defensive litigation conduct that this Court already found to be non-retaliatory. *See* MTD Dec. at 58 (an "employer can send a letter that does not actually initiate litigation but simply raises the specter of it" "without running afoul of the retaliation provisions of the antidiscrimination laws"). Plaintiff does not allege any new factual support to the contrary. Instead, she argues that *Lively v. Wayfarer Studios LLC*, 2026 WL 905447 (S.D.N.Y. Apr. 2, 2026), "recognized that retaliatory conduct becomes actionable where it crosses the line into attacks designed to damage a plaintiff's professional standing or deter protected activity." Opp. at 17. As explained in Defendants' Memorandum, *Lively* supports dismissal here. There, the defendants crossed the line when they "put into action" a "plan to

destroy [the plaintiff] and her career" and "attack [] her professional reputation and livelihood," including by messaging that the plaintiff was a "HOLLYWOOD VILLAIN." 2026 WL 905447, at *61–62. Notably, other conduct by the *Lively* defendants—denying the plaintiff's allegations, asserting she was not credible, and engaging public relations specialists and other proxies to protect their reputations—was **not actionable**. *Id.* at *61; Mem. at 8.

The March Letter did not cross the line recognized in *Lively*: As this Court recognized, the March "[L]etter casts doubt on Plaintiff's allegations and not on Plaintiff's performance as an actor or reputation as an employee in the entertainment industry." MTD Dec. at 64. Even assuming, *arguendo*, that Cohen engaged other cast members to join in his efforts to attack Plaintiff's credibility, *Lively* holds that this, too, would be non-actionable.

Nor, under the NYCHRL standard, was the March Letter "reasonably likely to deter" protected activity. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013). No reasonable employee would be deterred by an employer's non-frivolous defense of its own reputation. *Cf. Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 343 (S.D.N.Y. 2009) (employer's "commencement of meritorious counterclaims" against former employee is not "adverse for purposes of making out *a prima facie* case" under the NYCHRL).

***Plaintiff Fails to Allege Causation or Harm.*** Plaintiff also fails to allege how Cohen's transmission of the March Letter to the media caused her harm beyond what she caused to herself by filing this lawsuit. Plaintiff cites *Trump v. Vance*, 480 F. Supp. 3d 460 (S.D.N.Y.), *aff'd*, 977 F.3d 198 (2d Cir. 2020), for the proposition that "[t]he existence of other, competing inferences does not prevent the plaintiff's desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an 'obvious alternative explanation.'" *Id.* at 477–78 (citation omitted); *see* Opp. at 20. Here, however, this Court **already recognized** the

obvious alternative explanation: Plaintiff's own decision to "show[] herself to be litigious by filing a lawsuit which she would have known, from its targets, would receive public attention."  MTD Dec. at 64.  Plaintiff's new allegations are just as implausible as the previous ones: there is no reason why a brand would be unbothered by Plaintiff's Complaint—which publicly announced her split from Bravo and hurled inflammatory, speculative allegations against her former employer—but would break from Plaintiff only because Cohen and others denied the allegations. Mem. at 10–11.  Plaintiff's deliberate vagueness regarding the timeline of her only specific example of alleged loss underscores the obvious alternative explanation that this lawsuit, not the March Letter, caused the alleged loss.  Mem. at 10–11.  Plaintiff fails to respond to this point.

*The New York Labor Law § 215 Claim Independently Fails.*  The Opposition, like the SAC, does not address Plaintiff's failure to "allege that she complained about conduct that constitutes an independent violation of the New York Labor Laws."  MTD Dec. at 92–93.

## II.    PLAINTIFF FAILS TO PLEAD AIDING AND ABETTING CLAIMS.

*The Defendant Producers Cannot Aid and Abet Their Own Conduct.*  As this Court and many others have recognized, and Plaintiff does not dispute, "an individual cannot aid and abet his or her own violation of the" NYCHRL or NYSHRL.  MTD Dec. at 67 (citations omitted); *see also* Mem. at 13–15 (collecting cases).  Yet the SAC relies on the Defendant Producers' conduct as the basis for employer liability and re-labels that same conduct as "aiding and abetting."

The relevant alleged facts here are substantively identical to those in *Emanuel v. City of New York*, 2024 WL 3638328 (S.D.N.Y. Aug. 2, 2024), contrary to Plaintiff's argument otherwise. Opp. at 22–24.  Here, the Defendant Producers are the alleged primary wrongdoers, just like the supervisor in *Emanuel* against whom aiding and abetting claims could not proceed, and unlike the bystander employees against whom such claims survived.  *See* 2024 WL 3638328, at *1–2, *7 (dismissing aiding and abetting claims against the "principal actor" supervisor who engaged in a

"campaign of harassment against" the plaintiff); *see also, e.g.*, *Shaughnessy v. Scotiabank*, 2024 WL 1350083, at *14 (S.D.N.Y. Mar. 29, 2024) (where "the individual Defendants' conduct was itself discriminatory," they "cannot have aided and abetted their own primary conduct").

In her Opposition, Plaintiff argues that "Cohen, the Defendant Companies, and the Defendant Producers jointly participated in and facilitated discriminatory and retaliatory conduct through distinct but coordinated actions." Opp. at 22. But every allegation Plaintiff cites as purportedly establishing these distinct roles describes the Defendant Producers' own alleged misconduct: denying accommodations, pressuring Plaintiff to drink, "orchestrating" cast behavior, and retaliating. Opp. at 21–23. Even if these allegations could implicate principal liability, they do not establish that the Defendant Producers provided any assistance to the other Defendants; they are simply allegations about the Defendant Producers' own conduct.

Plaintiff also appears to argue that the aiding and abetting claims should survive because the Defendant Producers "consciously failed to intervene, permitted the misconduct to continue, and participated in subsequent retaliatory conduct." Opp. at 23. But in *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979 (S.D.N.Y. 2017), the only case Plaintiff cites, the plaintiff adequately alleged his supervisors' personal involvement where they were informed of *another person's* discriminatory behavior directed at the plaintiff but failed to intervene. *Id.* at 992–93. Here, by contrast, the Defendant Producers are the alleged principal wrongdoers, so they cannot also be the bystanders who failed to intervene. This, alone, is dispositive. And regardless, *Lewis* did not address whether a defendant can aid and abet his own actions.

***The New York City and State Statutes Do Not Apply Extraterritorially to the Alleged Acts in Thailand, Rhode Island, and the Hamptons.*** Plaintiff's principal argument in support of extraterritorial application of the New York statutes is that Defendants waived their argument

5

under Federal Rule of Civil Procedure 12(g)(2).  This misreads the rule, and no waiver occurred.

Rule 12(g)(2) includes an express carveout "as provided in Rule 12(h)(2)."  Fed. R. Civ. P.

12(g)(2).  Under Rule 12(h)(2), "[f]ailure to state a claim upon which relief can be granted … may

be raised" at any time through "trial."  *Id.* 12(h)(2)(C). "Thus, the defense of failure to state a claim

is not waivable."  *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

Defendants do not waive such an argument "by not raising the argument in their initial motion to

dismiss."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2019 WL 1331830, at *29 n.84

(S.D.N.Y. Mar. 25, 2019) (citing Fed. R. Civ. P. 12(h)(2)).[2]

On the merits, Plaintiff cannot reasonably dispute that her aiding and abetting claims are

not viable, as nearly all the allegedly discriminatory conduct of the Defendant Producers occurred

in Thailand, Rhode Island, and the Hamptons, not in New York City and/or State.  Mem. at 15–18

(citing cases); SAC ¶¶ 87–94; 131–32; 172–86; 243–332.[3]

Plaintiff argues that her "employment relationship, supervisory structure, casting decisions,

and retaliatory harm were centered in New York."  Opp. at 28.  Even assuming, *arguendo*, that is

true with respect to her claims against any of the **other Defendants**, it is not true with respect to

her aiding and abetting claims against the Defendant Producers.  The Defendant Producers are not

New York residents (SAC ¶¶ 10–12), were not her employers (*id.* ¶ 50), and had no alleged control

over casting (Mem. at 25).  More importantly, this motion turns on the impact of the alleged

---

[2] In any event, the aiding and abetting claims are **newly pleaded** in the SAC, so any extraterritoriality defense was not previously available as to these claims.  This Court dismissed McSweeney's disability-related claims in the FAC as to the Defendant Producers because those primary-liability claims were not cognizable.  MTD Dec. at 66–68.

[3] McSweeney suggests that the SAC "present[s] a fact-intensive jurisdictional question unsuitable for resolution on a motion to dismiss" because "[i]t is not clear from the record whether the allegedly discriminatory acts occurred in New York or elsewhere."  Opp. at 28 (citation omitted).  Not so.  The SAC alleges that the purported discriminatory conduct occurred in Thailand, Rhode Island, and the Hamptons. SAC ¶¶ 87–94; 131–32; 172–86; 243–332.

6

conduct **only of the Defendant Producers**. *Kraiem v. JonesTrading Institutional Servs. LLC.*, 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) (dismissing claims as to "any individual defendant that is not alleged to have engaged in discrimination or retaliation in New York City," while allowing claims to proceed against other defendants). And the SAC makes clear that the "lion's share" of Defendant Producers' aiding and abetting occurred outside of New York and therefore cannot support a claim. *King v. Aramark Servs., Inc.*, 96 F.4th 546, 558 (2d Cir. 2024).

Plaintiff's allegations regarding *RHUGT* are particularly improper. **All** of Plaintiff's work on that show was performed in Thailand, and all the alleged aiding and abetting occurred while the Defendant Producers and Plaintiff were in Thailand. Furthermore, Plaintiff's employment on that show was governed by a new, separate contract. *See* Dkt. No. 59-3. The fact that Plaintiff returned to New York **after** her work on that show was completed is, as a matter of law, not enough to invoke the protections of the NYCHRL and NYSHRL. *See* Mem. at 15–18 (citing cases).

***The Aiding and Abetting Claims are Factually Deficient.*** Plaintiff's aiding and abetting claims also lack the requisite supporting factual allegations and are belied by her own pleading. For example, Plaintiff contradicts her argument that Defendant Producers refused her request to leave the Hamptons. *See* SAC ¶ 183 (alleging that "Defendant Producers told Ms. McSweeney that she could leave the Hampton's Trip"). Plaintiff's allegations thus establish that she was offered the requested accommodation. And the only case that Plaintiff (selectively) quotes in support of this argument recognized that where "the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is plainly reasonable." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (internal quotation omitted); *see* Opp. at 25. That the Defendant Producers allegedly reminded Plaintiff that she was not entitled to compensation for

episodes in which she does not appear is an unremarkable acknowledgment of the parties' deal. Mem. at 21 (citing Talent Agreement).

Plaintiff offers no substantive response to the arguments that the remaining allegations—the "outing" of her bipolar diagnosis, comments about other cast members' drinking, continuing to film, joking about alcoholism, asking if she was drinking—are speculative, vague, or trivial in the context of the show. Plaintiff argues that her "preferred interpretation" is that these allegations demonstrate discriminatory animus, Opp. at 25, but her interpretation is implausible in the creative context of the show, which this Court has recognized "celebrate[s] a party life and the drinking of alcohol" with a cast "who could consume large quantities of alcohol." MTD Dec. at 40.

***The First Amendment Protects the Complained-Of Conduct.*** This Court already held that the First Amendment protects many of the alleged actions underlying Plaintiff's aiding and abetting claims. *See* MTD Dec. at 46. Plaintiff does not deny this point, but attempts to sidestep the First Amendment by arguing, without citation, that protected speech "nevertheless remain[s] relevant factual context supporting [the] broader allegations regarding discriminatory intent, retaliatory motive, coordinated conduct and Defendants' treatment of Plaintiff within the workplace." Opp. at 31. To accept this argument would be to impose civil liability for protected expression—precisely what the First Amendment forbids. *Cf.* MTD Dec. at 46 ("If Defendants have a First Amendment right to produce a reality television show based on drinking, they also have a right to direct cast members to drink while being filmed for that show.").

Furthermore, while the Court held, under the permissive Rule 12(b)(6) standard, that certain allegations in the FAC were "only indirectly related to or in service of Defendants' expressive activity," MTD Dec. at 47, Plaintiff now avers that all of Defendants' alleged conduct giving rise to her amended claims was intended "to generate dramatic content," Opp. at 25; *see*

8

*also id.* (asserting that alleged off-camera conduct by the Defendant Producers was undertaken to create "on-camera drama," "entertainment value," and "dramatic effect"). This further supports Defendants' argument that "there is a direct linkage between the allegedly injury-producing off-camera comments and the [show's] creative process." Mem. at 23 n.17 (citation omitted).

***Plaintiff's Group Pleadings Are Inappropriate.*** This Court should also disregard the impermissible group pleading about the "Defendant Producers." *First*, Plaintiff simply does not address the overwhelming volume of these undifferentiated allegations. *See* Opp. at 28–29. *Second*, Plaintiff attempts to justify the group pleading by arguing that the Defendant Producers engaged in "coordinated conduct undertaken jointly." *Id.* at 29. But this argument is circular because Plaintiff wields the group allegations to establish coordination while she invokes coordination to justify the group allegations, yet most allegations are clearly not made against all three Defendant Producers. *See* Mem. at 19–20. *Third*, Plaintiff provides no authority that allows such a group pleading, instead citing only one case in which the court attributed jointly planned or perpetrated harassment to two specified defendants. *Lewis*, 246 F. Supp. 3d at 992–93; *see* Opp. at 29. But by contrast, the SAC "simply lumps or groups defendants together without describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct." *Romero v. Garner Env't Servs., Inc.*, 2025 WL 3638397, at *5 (S.D.N.Y. Dec. 15, 2025) (citation omitted).

## III.    FURTHER LEAVE TO AMEND SHOULD BE DENIED.

Having already "amended [her] complaint twice," including once "with the benefit of a ruling from the Court," Plaintiff should not be given yet another opportunity to amend. *AK Meeting IP, LLC v. Epic Games, Inc.*, 2025 WL 1865953, at *7 (S.D.N.Y. July 7, 2025). "If Plaintiff had a plausible theory … , [she] could and should have presented that theory in one of the three versions of [her] complaint." *Id.* (citation omitted).

Plaintiff's suggestion that she could plead additional facts regarding the "professional harm" she has suffered should be rejected.  Opp. at 32.  Such facts (if they exist) have always been within Plaintiff's possession and control, so any pleading deficiencies are the result of her own litigation strategy.  *See, e.g.*, *Torres v. City of New York*, 2018 WL 1737542, at *9 (S.D.N.Y. Feb. 14, 2018) (denying in relevant part motion to amend complaint for a second time where plaintiff "could have cured any deficiencies … when he amended his complaint" but "chose not to do so").

Plaintiff's claim that she could plead additional facts related to "the alleged coordination" of the same public statements she has already alleged by persons affiliated with or employed by Bravo also fails.  Opp. at 32.  As explained *supra* pp. 1–2, such facts would have no legal bearing on Plaintiff's claims.  *See Lively*, 2026 WL 905447, at *61 (holding as inactionable employer's "engage[ment of] public relations and crisis management specialists to protect [its] reputation[]").[4]

Plaintiff's claim she could plead additional facts "concerning [her] New York-centered employment relationship or New York-based impact," Opp. at 32, also fails.  The Defendant Producers were not her employers, and Plaintiff cannot change, through artful pleading, the situs of the alleged discrimination and its impact.

Even if Plaintiff could cure each of these deficiencies, further amendment would be futile because there are several other independent grounds for dismissal of all the Amended Claims, as discussed in the Memorandum and herein.

### CONCLUSION

For the foregoing reasons and those stated in the Memorandum, the Court should dismiss the Amended Claims, with prejudice.

---

[4] Plaintiff's allegation that a nonparty Bravo communications and talent relations executive participated in the purported collusion is legally irrelevant for the reasons set forth above.  More troubling, the combination of Plaintiff's complete lack of specificity as to the executive's alleged involvement and the inclusion of her full name suggests a motivation for press, not legal merit.

DATED:  New York, New York
          June 24, 2026

MITCHELL SILBERBERG & KNUPP LLP


By: /s/ *Jacob D. Albertson*
    Jacob D. Albertson (j1a@msk.com)
    437 Madison Ave., 25th Floor
    New York, New York 10022
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239

    Adam Levin (axl@msk.com)
    (admitted *pro hac vice*)
    2049 Century Park East, 18th Floor
    Los Angeles, CA 90067
    Telephone: (310) 312-3116
    Facsimile: (310) 312-3100

    *Attorneys for Defendants Andy Cohen, Lisa Shannon, John Paparazzo, Darren Ward, Warner Bros. Discovery, Inc., Shed Media US Inc., NBCUniversal Media, LLC, and Bravo Media LLC*

11